**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADRIAN ALEXANDRU, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED THERAPEUTICS, INC., SHOSHANA SHENDELMAN, and RICCARDO PERFETTI,<br><br>Defendants. | Case No. 1:24-cv-09715 (DLC) |
| MOHAMMAD ALI IKRAM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED THERAPEUTICS, INC., and SHOSHANA SHENDELMAN,<br><br>Defendants. | Case No. 1:24-cv-09973 (DLC) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**MOHAMMAD ALI IKRAM FOR CONSOLIDATION OF THE RELATED ACTIONS,**
**APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF**
**HIS SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................... ii

I.    PROCEDURAL BACKGROUND ................................................................................. 1

II.   SUMMARY OF THE ALLEGED CLAIMS ................................................................. 2

III.  ARGUMENT ................................................................................................................. 4

    A.    The Related Actions Should Be Consolidated ........................................................ 4

    B.    The PSLRA Standard for Appointing Lead Plaintiff .............................................. 5

    C.    Mr. Ikram Is the "Most Adequate Plaintiff" under the Exchange Act .................... 6

        1.    Mr. Ikram Has Satisfied the PSLRA's Procedural Requirements .............. 7

        2.    Mr. Ikram Has the Largest Financial Interest in the Relief Sought
            by the Class ................................................................................................. 7

    D.    Mr. Ikram Is Qualified Under Rule 23 ................................................................... 7

        1.    Mr. Ikram's Claims Are Typical of the Claims of the Class ...................... 9

        2.    Mr. Ikram Will Fairly and Adequately Represent the Class'
            Interests ...................................................................................................... 9

        3.    This Court Should Approve Mr. Ikram's Choice of Counsel .................... 10

IV.   CONCLUSION ............................................................................................................ 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Born v. Quad/Graphics, Inc.*,
  No. 19 Civ. 10376 (VEC), 2020 WL 994427 (S.D.N.Y. Mar. 2, 2020)...........................8, 9, 10

*Faig v. Bioscrip, Inc.*,
  No. 13 Civ. 6922, 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013)..............................................4

*Goldenberg v. NeoGenomics, Inc.*,
  No. 22 Civ. 10314 (JHR), 2023 WL 6389101 (S.D.N.Y. Oct. 2, 2023).........................8, 9, 10

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
  No. 16 Civ. 03495, 2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) ...............................................8

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990)......................................................................................................4

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) .....................................................................................4, 5, 9, 10

*KuxKardos v. Vimpelcom, LTD.*,
  151 F. Supp. 3d 471 (S.D.N.Y 2016)..........................................................................................4

*Logan v. QRx Pharma Ltd.*,
  No. 15 Civ. 4868, 2015 WL 5334024 (S.D.N.Y. Sept. 14, 2015).............................................9

*Samit v. CBS Corp.*,
  No. 18 Civ. 7796 (VEC), 2018 WL 11224303 (S.D.N.Y. Nov. 30, 2018)................................8

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)...............................................................................................*passim*

15 U.S.C. § 78j(b) .........................................................................................................................1

15 U.S.C. § 78t(a) .........................................................................................................................1

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................................*passim*

Fed. R. Civ. P. 42 ..................................................................................................................1, 4, 5

**Regulations**

17 C.F.R. § 240.10b-5 ......................................................................................................... 2

Putative class member Mohammad Ali Ikram ("Mr. Ikram"), by his counsel, respectfully submits this memorandum of law under the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an order: (i) consolidating the above captioned related actions (the "Related Actions") under Rule 42 of the Federal Rules of Civil Procedure; (ii) appointing Mr. Ikram as lead plaintiff; (iii) approving his selection of the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to serve as lead counsel; and (iv) granting such other and further relief as the Court may deem just and proper.

Mr. Ikram believes that with losses of approximately $9,026.90 that he has the largest financial interest in the outcome of this litigation and that he otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Thus, he is presumptively entitled to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## I.    PROCEDURAL BACKGROUND

Presently pending in this District are two related securities class actions brought on behalf of purchasers of Applied Therapeutics, Inc. ("Applied" or the "Company") securities under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, against Applied and certain of its current or former executives for violations of federal securities laws.

On December 17, 2024, the action captioned *Alexandru v. Applied Therapeutics, Inc., et al.,* No. 1:24-cv-09715-(DLC) (S.D.N.Y. 2024) (the "*Alexandru* Action") was filed. *Alexandru* Action, ECF No. 1. Also on December 17, 2024, in accordance with the PSLRA, notice of the *Alexandru* Action was published to class members on *Globe Newswire* (the "Notice") advising purchasers of Applied securities during the period January 3, 2024 through December 2, 2024 (the "Class Period") of the existence of a lawsuit against defendants and the nature of defendants'

statements, omissions and alleged conduct.[1] The Notice further advised class members of their right to move the Court to be appointed lead plaintiff by February 18, 2025. *See also Alexandru Action*, ECF No. 9 (Order stating that "[m]embers of the purported class . . . have until February 18, 2025 to move the Court to serve as lead plaintiffs.").[2]

Mr. Ikram now moves this Court to be appointed as lead plaintiff for the Related Actions.

## II.    SUMMARY OF THE ALLEGED CLAIMS

The Related Action allege claims under the Exchange Act on behalf of all investors who purchased or otherwise acquired Applied securities during the Class Period.[3]  The claims asserted in the Related Actions are alleged against Applied, Shoshana Shendelman ("Shendelman"), the Company's founder, and former President and Chief Executive Officer ("CEO"), and Riccardo Perfetti ("Perfetti"), the Chief Medical Officer of Applied, and arise under Sections 10(b) and 20(a) of the Exchange, and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

Applied purports to be a clinical-stage biopharmaceutical company whose lead drug candidate, govorestat (also referred to as AT-007), is intended to treat rare metabolic diseases, including Galactosemia, a pediatric metabolic disease that affects how the body processes a simple

---

[1] *See* Declaration of Jeffrey P. Campisi in Support of the Motion of Mohammad Ali Ikram for Consolidation of the Related Actions, Appointment as Lead Plaintiff and Approval of his Selection of Lead Counsel ("Campisi Decl."), dated February 18, 2025, Ex. A (Notice).

[2] On January 7, 2025, the action captioned *Ikram v. Applied Therapeutics, Inc.*, et al, 24-cv-9715 ("*Ikram* Action") was accepted as related to the *Alexandru* Action.  On January 14, 2025, the Court ordered that the plaintiff in the *Ikram* Action shall be bound by the scheduling order in the *Alexandru* Action.  The *Alexandru* Action and the *Ikram* Action are together referred to as the "Related Actions."

[3] The *Alexandru* Action asserts claims on behalf of all investors who purchased or otherwise acquired Applied securities, whereas the *Ikram* Action asserts claims on behalf of purchasers of Applied common stock.

sugar called galactose, and for which there is no known cure or approved treatment available. ¶ 2.[4]  According to the Company's annual report for the year ended December 31, 2023 filed with the SEC on Form 10-K on March 6, 2024, the Company does "not have any product candidates approved for sale and ha[s] not generated any revenue." If approved, govorestat would be the first medication indicated for the treatment of Galactosemia and would be Applied's first commercial product. ¶ 3.

During the Class Period, defendants made positive representations about the Company's New Drug Application ("NDA") for govorestat and defendants' interactions with the U.S. Food and Drug Administration ("FDA") concerning the NDA for govorestat, such as "things are going very well with the FDA" and that there were no "major sticking points" with the FDA concerning the NDA for govorestat. ¶ 4. In response to defendants' positive representations about the govorestat NDA, Applied's stock price significantly increased and defendants took advantage of Applied's inflated stock price. ¶ 5. The Company sold approximately $100 million in Applied securities through a private placement that valued the Company's shares at $7 per share. Defendant Shendelman sold Applied shares on the open market for over $4.7 million in net proceeds. *Id*.

However, unknown to investors, during the Class Period, the FDA had serious concerns about the NDA for govorestat and the study data results supporting the NDA, including undisclosed Dosing Errors and Study Data Deletion issues. ¶ 6. These data integrity issues were sticking points for the NDA for govorestat and were objectionable conditions observed by the FDA during its inspections of the Company and its clinical sites. *Id*. Defendants knew of, or recklessly

---

[4] Citations to "¶_" refer to paragraphs of the complaint filed in the *Ikram* Action.

disregarded, these material negative facts that cut against their positive representations to investors through defendants' meetings and correspondence with the FDA. *Id*.

On November 27, 2024, the truth began to partially be disclosed, when the Company disclosed receipt of a complete response letter ("CRL") from the FDA stating it was unable to approve the NDA for govorestat in its current form, citing deficiencies in the govorestat NDA, a disclosure that caused the Company's stock to crash over 80%. ¶ 7. On December 2, 2024, the Class Period ends when, after the close of trading, the Company disclosed that it received a Warning Letter from the FDA relating to the NDA for govorestat, a disclosure that caused Applied's shares to further decline. *Id*. Shortly after the end of the Class Period, Defendant Shendelman "stepped down" as President and CEO of the Company. *Id*.

## III.    ARGUMENT

### A.    The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title [] has been filed," courts shall appoint a lead plaintiff "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also Faig v. Bioscrip, Inc.*, No. 13 Civ. 6922, 2013 WL 6705045, at *1 (S.D.N.Y. Dec. 19, 2013) ("The Court must decide whether to consolidate the actions before deciding on the competing motions for appointment as lead plaintiff.").

Under Rule 42(a), consolidation is appropriate where the actions involve common questions of law or fact. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *KuxKardos v. Vimpelcom, LTD.*, 151 F. Supp. 3d 471, 474 (S.D.N.Y 2016). The Court has "broad discretion to determine whether consolidation is appropriate" under Rule 42(a). *Bioscrip*, 2013 WL 6705045, at *1 (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *KuxKardos*, 151 F. Supp. 3d at 475 (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)). Courts

4

have recognized that class action shareholder suits are well-suited for consolidation because unification conserves judicial resources, expedites pretrial proceedings, reduces case duplication, and lessens the confusion and delay that may result from prosecuting related class action cases separately. *See*, *e.g.*, *Kaplan*, 240 F.R.D. at 92 (consolidating securities class actions with common allegations noting "'the well[-]recognized' principle that the 'consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs'") (internal citation omitted).

The Related Actions involve common questions of law or fact because they concern similar parties, arise out of the same misconduct during the same class periods, involve substantially similar alleged issues of fact, and assert the same claims under the Exchange Act on behalf of similar proposed classes. *Compare* complaint filed in *Ikram* Action (ECF No. 1), *with* Complaint filed in *Alexandru* Action (ECF No 1). Accordingly, consolidation of the Related Actions is warranted under Rule 42.

**B.**     **The PSLRA Standard for Appointing Lead Plaintiff**

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(3)(B)(i). Specifically, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)     that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as lead plaintiff in response to any such notice within 90 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. 15 U.S.C. § 78u-4(a)(3)(B).

Under the Exchange Act, the Court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person which:

> (aa)   has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## C.   Mr. Ikram Is the "Most Adequate Plaintiff" under the Exchange Act

Mr. Ikram respectfully submits that he is the "most adequate plaintiff" because he has complied with the PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements. He has duly signed and filed a certification stating that he is willing to serve as the representative party on behalf of the class, and has losses as a result of his purchase of Applied securities of approximately $9,026.90. *See Ikram* Action, ECF No. 1 (complaint with Mr. Ikram's PSLRA certification); Campisi Decl., Ex. B (loss chart). Finally, Mr. Ikram has selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See id.*, Ex. C (Firm resume of Kaplan Fox & Kilsheimer LLP). Accordingly, Mr. Ikram satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff and, therefore, should be appointed lead plaintiff.

### 1.    Mr. Ikram Has Satisfied the PSLRA's Procedural Requirements

On December 17, 2024, the *Alexandru* Action was filed and the *Alexandru* Notice was published over the *Globe Newswire* the same day. *Alexandru* ECF No. 1; Campisi Decl., Ex. A. Accordingly, the time period in which class members may move to be appointed lead plaintiff in this case expires on February 18, 2025. *See* 15 U.S.C. § 78u-4(a)(3)(A); *see also Alexandru* Action, ECF No. 9. Under the PSLRA's provisions, and within the requisite time frame after publication of the required notice, Mr. Ikram timely moves this Court to be appointed lead plaintiff on behalf of all members of the class.

### 2.    Mr. Ikram Has the Largest Financial Interest in the Relief Sought by the Class

Under the PSLRA, a rebuttable presumption exists whereby the plaintiff with the largest financial interest in the litigation and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff to lead the action. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Here, Mr. Ikram suffered substantial losses of approximately $9,026.90 as a result of purchasing shares of Applied securities at artificially inflated prices during the Class Period.  *See Ikram* Action, ECF No. 1 (complaint with Mr. Ikram's PSLRA certification); Campisi Decl., Ex. B; Ex. D (Declaration of Mohammad Ali Ikram, dated Feb. 17, 2025). Mr. Ikram is not aware of any other movant with a larger financial interest and believes he has the largest financial interest of any lead plaintiff movant. Therefore, he believes he is presumptively entitled to appointment as the lead plaintiff.

### D.    Mr. Ikram Is Qualified Under Rule 23

The PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule

23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1)    the class is so numerous that joinder of all members is impracticable;
>
> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representatives. *Goldenberg v. NeoGenomics, Inc.,* No. 22 Civ. 10314 (JHR), 2023 WL 6389101, at *3 (S.D.N.Y. Oct. 2, 2023) ("However, of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative, and they are therefore the only Rule 23(a) [requirements] relevant to the determination of lead plaintiff under the PSLRA.") (internal citations and quotations omitted); *Samit v. CBS Corp.*, No. 18 Civ. 7796 (VEC), 2018 WL 11224303, at *1 (S.D.N.Y. Nov. 30, 2018) ("[A] would-be lead plaintiff must make 'only a prima facie showing that the requirements of Rule 23 are met,' and the Court need only consider Rule 23's typicality and adequacy-of-representation requirements"); *Born v. Quad/Graphics, Inc.*, No. 19 Civ. 10376 (VEC), 2020 WL 994427, at *1 (S.D.N.Y. Mar. 2, 2020) (same); *see also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16 Civ. 03495, 2016 WL 5867497, at *4 (S.D.N.Y. Oct. 4, 2016). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. As detailed

below, Mr. Ikram satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying his appointment as lead plaintiff.

### 1. Mr. Ikram's Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a) is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Born*, 2020 WL 994427, at *2; *see Goldenberg*, 2023 WL 6389101, at *4. The claims asserted by Mr. Ikram are based on the same legal theory and arise out of the same course of events as the other purported class members' claims. He purchased Applied securities, as did each member of the proposed class, at prices artificially inflated by defendants' false and misleading statements and was damaged thereby. *Logan v. QRx Pharma Ltd.*, No. 15 Civ. 4868, 2015 WL 5334024, at *3 (S.D.N.Y. Sept. 14, 2015) (finding the typicality requirement met where movants' claims and injuries arose from the same conduct from which the other class members' claims and injuries arose). Thus, Mr. Ikram satisfies the typicality requirement of Rule 23(a).

### 2. Mr. Ikram Will Fairly and Adequately Represent the Class' Interests

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A lead plaintiff is adequate when: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Born*, 2020 WL 994427, at *2 (citing *Kaplan*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007)); *Goldenberg*, 2023 WL 6389101, at *4. Here, Mr. Ikram's interests are aligned with the members of the proposed class, and there is no evidence of any antagonism between Mr. Ikram's interests and those of the class. As detailed above, Mr. Ikram's claims raise similar questions of

law and fact as claims of the members of the class, and his claims are typical of the members of the class.

Further, Mr. Ikram has demonstrated his adequacy and willingness to serve as and assume the responsibilities of a lead plaintiff. *See* Campisi Decl., Ex. D (Declaration of Mr. Ikram). Mr. Ikram understands that a lead plaintiff is required to oversee counsel and direct litigation on behalf of the Class, stay apprised of all material developments of the litigation, and that as lead plaintiff, he would owe duties to the Class to act in its best interest. *See id.* Having suffered substantial losses, Mr. Ikram will be a zealous advocate on behalf of the class. Indeed, Mr. Ikram filed one of the Related Actions.

In addition, Mr. Ikram has selected Kaplan Fox—counsel highly experienced in prosecuting securities class actions—to represent him and the proposed class. *See id.*, Ex. C. Thus, the close alignment of interests between Mr. Ikram and other class members, and his strong desire to prosecute the Related Actions on behalf of the class, provide ample reason to grant his motion for appointment as lead plaintiff in the Related Actions. Accordingly, Mr. Ikram satisfies the prerequisites for appointment as lead plaintiff pursuant to the Exchange Act.

### 3. This Court Should Approve Mr. Ikram's Choice of Counsel

The Exchange Act vests authority in the lead plaintiff to select and retain lead counsel, subject only to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also Born,* 2020 WL 994427, at *3 ("[T]he PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval.") (citing *Kaplan,* 240 F.R.D at 96); *Goldenberg*, 2023 WL 6389101, at *6. Mr. Ikram has retained Kaplan Fox to file moving papers on his behalf seeking appointment as lead plaintiff and to serve as lead counsel to pursue this litigation on behalf of him and the class. Kaplan Fox possesses extensive experience in the area of securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors,

10

including in this District. *See* Campisi Decl., Ex. C. Thus, the Court may be assured that, in the event the instant motion is granted, the members of the class will receive the highest caliber of legal representation available.

## IV.    **CONCLUSION**

For all of the foregoing reasons, Mr. Ikram respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint him as lead plaintiff; (3) approve his selection of Kaplan Fox as lead counsel; and (4) grant such other relief as the Court may deem just and proper.

Dated: February 18, 2025        Respectfully submitted,

*/s/ Jeffrey P. Campisi*

Jeffrey P. Campisi
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
jcampisi@kaplanfox.com

*Attorneys for Movant Mohammad Ali Ikram and Proposed Lead Counsel for the Proposed Class*

11

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 3,837 words and complies with the type-volume limitation of Local Civil Rule 7.1(c) of the Local Rules of United States District Courts for the Southern and Eastern District of New York. I also certify that this brief complies with the typeface and type style requirements of Local Civil Rule 7.1(b)(1)(2)(3).

/s/ Jeffrey P. Campisi<br>
Jeffrey P. Campisi

## CERTIFICATE OF SERVICE

I, Jeffrey P. Campisi, hereby certify that, on February 18, 2025, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

*/s/ Jeffrey P. Campisi*

Jeffrey P. Campisi
