## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIAN ALEXANDRU, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:24-cv-09715-DLC |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| APPLIED THERAPEUTICS, INC., SHOSHANA SHENDELMAN, and ROCCARDO PERFETTI, | |
| Defendants. | |
| MOHAMMED ALI IKRAM, Individually and on behalf of all others similarly situated, | Case No. 1:24-cv-09973-DLC |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| APPLIED THERAPEUTICS, INC. and SHOSHANA SHENDELMAN, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DR. ANDREW SAW FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF HIS SELECTION <u>OF LEAD COUNSEL, AND CONSOLIDATION</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND.................................................................................................... 2

ARGUMENT............................................................................................................................ 4

    A.     Dr. Saw Is The Most Adequate Plaintiff.......................................................................... 4

           1.     Dr. Saw's Motion is Timely.....................................................................................5

           2.     Dr. Saw Believes He Has The Largest Financial Interest In The Relief Sought By The Class ............................................................................................................5

           3.     Dr. Saw Otherwise Satisfies The Requirements Of Rule 23 ...................................6

    B.     Dr. Saw Selected Well-Qualified Lead Counsel To Represent The Class ...................... 8

    C.     Consolidation is Warranted............................................................................................. 9

CONCLUSION...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bo Young Cha v. Kinross Gold Corp.*,
2012 WL 2025850 (S.D.N.Y. May 31, 2012) ...............................................................6

*Chilton v. Chiumento Grp.*,
365 F. App'x 298 (2d Cir. 2010) ................................................................................5

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
2021 WL 396343 (S.D.N.Y. Feb. 4, 2021)...............................................................5, 6

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)..............................................................................................2, 5, 6

*Husson v. Garrett Motion Inc.*,
2021 WL 211541 (S.D.N.Y. Jan. 21, 2021) ..............................................................7, 8

*Lax v. First Merchs. Acceptance Corp.*,
1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .................................................................6

*Taylor v. Barnes & Noble, Inc.*,
2014 WL 12769396 (S.D.N.Y. July 16, 2014) ...........................................................10

**Rules**

Fed. R. Civ. P. 23............................................................................................. *passim*

Fed. R. Civ. P. 23(a)(4).............................................................................................7

Fed. R. Civ. P. 42(a) .....................................................................................1, 9, 10

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)(i)(II)...............................................................................5

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................................1, 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)...........................................................................1, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .......................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)......................................................................5, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ..............................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(v) ...........................................................................................8

**Other Authorities**

17 C.F.R. § 240.10b-5..........................................................................................................1

Dr. Andrew Saw respectfully submits this memorandum of law in support of his motion: (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of his selection of Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel for the putative Class; (3) for consolidation of the above-captioned securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above captioned related securities class actions allege Applied Therapeutics, Inc. ("Applied Therapeutics" or the "Company"), and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, the actions allege that from January 3, 2024 through December 2, 2024, inclusive (the "Class Period"), Defendants misrepresented the prospects for approval by the U.S. Food and Drug Administration ("FDA") of Applied Therapeutics' New Drug Application ("NDA") for its drug candidate govorestat, as well as the Company's interactions with the FDA regarding the NDA.

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, Dr. Saw is the "most adequate plaintiff"

by virtue of, among other things, the approximately $94,000 in losses he incurred on his investments in Applied Therapeutics securities during the Class Period, as assessed under the U.S. Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  Dr. Saw also satisfies the relevant requirements of Rule 23 because his claims are typical of all members of the Class, and he will fairly and adequately represent the Class.  Indeed, Dr. Saw is an experienced investor who fully understands the Lead Plaintiff's obligations to the Class under the PSLRA.  He is willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee vigorous prosecution of this action.  *See* Declaration of Javier Bleichmar ("Bleichmar Decl."), Ex. A.

Dr. Saw has further demonstrated his adequacy by selecting BFA, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class.  Accordingly, Dr. Saw respectfully requests that the Court appoint him as Lead Plaintiff and otherwise grant his motion.

### FACTUAL BACKGROUND

Applied Therapeutics is a clinical-stage biopharmaceutical company.  ¶2.[1]  Its lead drug candidate is govorestat, a treatment for metabolic diseases including Galactosemia, a rare, progressive disease caused by a genetic inability to metabolize the simple sugar galactose, which can cause central nervous system complications, including deficiencies in speech, cognition, behavior, and motor skills.  ¶¶2, 49-51.  On January 3, 2024, the Company announced that it submitted an NDA for govorestat for the treatment of Galactosemia to the FDA.  ¶8.

---

[1] All citations to ¶__ refer to the complaint filed in *Ikram v. Applied Therapeutics, Inc.*, No. 1:24-cv-09973 (S.D.N.Y. Dec. 27, 2024), ECF No. 1, unless otherwise indicated.

During the Class Period, Defendants repeatedly misrepresented the prospects for approval of the govorestat NDA as well as the Company's interactions with the FDA regarding the NDA. ¶4.  For instance, Defendants stated, "things are going very well with the FDA," "we have worked very successfully with them," interactions with the FDA are "all going very well and on track and we feel very encouraged" and "very positive and sort of normal course," and there are no "major sticking points with the agency."  ¶¶61-62.

In truth, as alleged, the NDA did not adhere to FDA requirements.  ¶9.  The study results Applied Therapeutics relied on and submitted with its NDA suffered from an undisclosed dosing error and the deletion of certain study data which Defendants failed to adequately address in the NDA.  ¶¶6, 9-11, 14-22, 27-28, 71.  These data integrity issues were, in fact, "sticking points," for the FDA in terms of its review of the NDA because the Company did not provide the agency with sufficient information to enable it to make an informed decision regarding the impact of the dosing errors, and because certain data was deleted, the FDA could not verify relevant study data.  ¶71.

Investors allegedly began to learn the truth on November 27, 2024, when Applied Therapeutics disclosed in a press release that it received a complete response letter ("CRL") from the FDA.  ¶72.  According to the Company, "[t]he CRL indicates that the FDA completed its review of the application and determined that it is unable to approve the NDA in its current form, citing deficiencies in the clinical application."  *Id.*  On this news, Applied Therapeutics' stock price declined $6.54 per share, or more than 76%, from $8.57 per share on November 27, 2024, to $2.03 per share on November 29, 2024.  ¶73.

Days later, on December 2, 2024, the Company disclosed that it had also received a Warning Letter from the FDA.  ¶77.  According to Applied Therapeutics, the letter "identified issues related to electronic data capture" and "a dosing error in the dose-escalation phase of the

3

study." *Id.* The next day, December 3, 2024, the FDA posted the Warning Letter on its website. ¶36. The Warning Letter revealed that the dosing error occurred in June 2021, and that the Company failed to provide the FDA with any description or analysis of the nature and extent of the dosing error in the NDA, which left the FDA unable to make an informed decision about the impact of the error on the study data supporting the NDA. ¶¶10-11. The Warning Letter also revealed that a significant deletion of certain study data from a Phase 3 trial of govorestat occurred in March 2024, and that the FDA had repeatedly informed Applied Therapeutics that without access to the missing data, it could not verify the accuracy, consistency and completeness of the study data. ¶¶14, 17-22, 28.

On December 4, 2024, multiple news outlets reported on the Warning Letter. ¶37. For example, Fierce Biotech published an article titled "Applied Therapeutics' trial conduct scrutinized in FDA warning letter" which detailed the contents of the Warning Letter related to the dosing error and data deletion issues. *Id.*

On this news, Applied Therapeutics stock declined $0.37 per share, or more than 21%, from $1.75 per share on December 2, 2024, to $1.38 per share on December 4, 2024. ¶79. The Company's stock declined an additional $0.11 per share, or nearly 8%, from $1.38 per share on December 4, 2024 to $1.29 per share on December 5, 2024. *Alexandru*, ECF No. 1 at ¶7.

## ARGUMENT

### A.    Dr. Saw Is The Most Adequate Plaintiff

Dr. Saw respectfully submits that he is entitled to be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that has "the largest financial interest in the relief

4

sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) & (cc); *see also Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for Lead Plaintiff presumption).  As set forth below, Dr. Saw believes he is the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

### 1.   Dr. Saw's Motion is Timely

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  On December 17, 2024, Plaintiff Adrian Alexandru filed the first of the related actions.  *See Alexandru*, ECF No. 1.  On the same day, counsel for Dr. Alexandru published notice of the pendency of the action on *Globe Newswire*, which alerted investors to the pendency of the action and set the deadline to seek Lead Plaintiff status as February 18, 2025.  *See* Bleichmar Decl. Ex. B.  As such, through the filing of this motion, Dr. Saw's application is timely.

### 2.   Dr. Saw Believes He Has The Largest Financial Interest In The Relief Sought By The Class

Dr. Saw believes that he has the largest financial interest in the relief sought by the class and thus should be appointed Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  Dr. Saw incurred a recoverable loss of approximately $94,000 on his investments in Applied Therapeutics securities during the Class Period as assessed under the Supreme Court's ruling in *Dura*.  "Though *Dura* concerned a motion to dismiss a securities class action, courts [in this District] nonetheless apply *Dura* when considering [the] financial interest for the purposes of appointing a lead plaintiff."  *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021) (collecting cases).  This is because "courts should consider only those losses that will actually be recoverable in the class action . . . and make determinations of largest

financial interest only based on the facts alleged in the complaint." *Id.* (internal quotations & citations omitted).

Courts in this District may also rely on inventory accounting methodologies known as first-in, first-out ("FIFO") and last-in, first-out ("LIFO"), without considering the impact of *Dura*, to assess financial interest. When considering the most appropriate inventory accounting method, virtually every court finds LIFO to be more reliable than FIFO. *See Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012). Under both methodologies, Dr. Saw also incurred a loss of roughly $94,000 on his investments in Applied Therapeutics securities.[2]

To the best of Dr. Saw's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation. Accordingly, Dr. Saw believes that he has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3.    Dr. Saw Otherwise Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Dr. Saw otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). "[I]n deciding a motion to serve as lead plaintiff, the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met."

---

[2] In addition to losses, courts often consider various other metrics, typically referred to as "*Lax* factors," to further analyze a movant's financial interest when warranted. *See Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (identifying (1) total number of shares purchased; (2) number of net shares purchased; (3) total net funds expended; and (4) approximate losses suffered, as four factors for courts to consider when determining the largest financial interest). Dr. Saw's PSLRA-required Certification and chart setting forth calculations of his financial interest provide all the trading information necessary to calculate his financial interest under all possible metrics and does not presuppose that there is only one valid methodology. *See* Bleichmar Decl. Exs. C-D.

*Husson v. Garrett Motion Inc.*, 2021 WL 211541, at *3 (S.D.N.Y. Jan. 21, 2021).  Here, Dr. Saw satisfies both requirements.

Dr. Saw's claims are typical of the claims of other investors in Applied Therapeutics. "Typicality is satisfied if each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (internal quotations omitted).  Here, Dr. Saw's and all other Class members' claims arise from the same course of events and their legal arguments to prove Defendants' liability are nearly identical.  Like all other Class members, Dr. Saw: (1) invested in Applied Therapeutics securities during the Class Period; (2) invested at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth was disclosed to the market.  *Id.* (typicality met when movant "appear[s] to seek the same relief and advance the same legal theories as other class members").  As such, Dr. Saw is a typical Class representative.

Dr. Saw likewise satisfies the adequacy requirement of Rule 23.  Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequacy means that there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants, the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy." *Garrett Motion*, 2021 WL 211541, at *3 (internal quotations omitted).

Dr. Saw satisfies these elements because his substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class's claims.  Further, Dr. Saw's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way.  There are no facts to suggest any actual or potential conflict of interest or other

7

antagonism between Dr. Saw and other Class members, and there is no collusion among the litigants. *See id.* (adequacy found when "[t]here is nothing in the record that suggests the [movant has] conflicts with other class members").

Indeed, Dr. Saw is committed to discharge his obligations as Lead Plaintiff under the PSLRA to oversee and supervise the litigation separate and apart from counsel and submitted a sworn declaration as to his willingness and ability to fulfill those duties. *See* Bleichmar Decl. Ex. A. What's more, Dr. Saw's Declaration provides the Court with additional information supporting his bona fides, including explaining who he is, that he is an experienced investor with approximately 34 years of investment experience, and given his substantial financial interest in the litigation, that he intends to continue to actively oversee counsel, confer with counsel regarding litigation strategy, attend important court proceedings, hearings, depositions and mediations, and review and authorize the filing of important litigation documents. *See id.* ¶¶2-8.

Dr. Saw has also demonstrated his adequacy through his selection of BFA as Lead Counsel to represent the Class in this action. As discussed more fully below, BFA is highly qualified and experienced in the area of securities class actions and has repeatedly demonstrated an ability to conduct complex securities class actions effectively.

**B.    Dr. Saw Selected Well-Qualified Lead Counsel To Represent The Class**

The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Lead Plaintiff's choice of counsel is not to be disturbed unless doing so is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

BFA is among the foremost securities class action law firms in the country. BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of investors in securities class

8

actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Bleichmar Decl. Ex. E. For example, BFA recently achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd.*, No. 3:17-cv-00558-SRU (D. Conn.). BFA also recently secured a $129 million resolution on behalf of investors in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.). Previously, in this District, BFA secured a $234 million resolution for the benefit of the class in *In re MF Global Holdings Ltd. Securities Litigation*, No. 1:11-cv-07866-VM (S.D.N.Y.), as well as a $120 million recovery in *Freedman v. Weatherford Int'l Ltd.*, No. 1:12-cv-02121-LAK (S.D.N.Y.). BFA also secured a $219 million resolution in *In re Genworth Fin., Inc. Securities Litigation*, 3:14-cv-00682-JAG (E.D. Va.), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia. Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## C.    Consolidation is Warranted

There are two related actions pending in this District against Defendants:

| Case | Civil No. | Date Filed |
|---|---|---|
| *Alexandru v. Applied Therapeutics, Inc.* | 1:24-cv-09715 | December 17, 2024 |
| *Ikram v. Applied Therapeutics, Inc.* | 1:24-cv-09973 | December 27, 2024 |

These actions present substantially similar factual and legal issues because they each allege claims under Sections 10(b) and 20(a) of the Exchange Act, against some of the same defendants, relating to the same period of time, and are premised on substantially similar types of misstatements. Rule 42(a) grants broad discretion to courts to consolidate cases that involve common questions of law or fact, as here; the actions need not be identical. *See Taylor v. Barnes & Noble, Inc.*, 2014 WL 12769396, at *2-4 (S.D.N.Y. July 16, 2014).

9

**CONCLUSION**

For the reasons discussed above, Dr. Saw respectfully requests that the Court: (1) appoint him to serve as Lead Plaintiff; (2) approve his selection of BFA as Lead Counsel for the putative Class; (3) consolidate all related actions pursuant to Rule 42(a); and (4) grant any such further relief as the Court may deem just and proper.

Dated: February 18, 2025                          Respectfully submitted,

                                                  **BLEICHMAR FONTI & AULD LLP**

                                                  _/s/ Javier Bleichmar_
                                                  Javier Bleichmar
                                                  300 Park Avenue, Suite 1301
                                                  New York, New York 10022
                                                  Telephone: (212) 789-1340
                                                  Facsimile: (212) 205-3960
                                                  jbleichmar@bfalaw.com

                                                  -and-

                                                  Ross Shikowitz
                                                  75 Virginia Road
                                                  White Plains, New York 10603
                                                  Telephone: (914) 265-2991
                                                  Facsimile: (212) 205-3960
                                                  rshikowitz@bfalaw.com

                                                  -and-

                                                  Adam C. McCall (*pro hac vice* forthcoming)
                                                  1330 Broadway, Suite 630
                                                  Oakland, California 94612
                                                  Telephone: (212) 789-2303
                                                  Facsimile: (415) 445-4020
                                                  amccall@bfalaw.com

                                                  *Counsel for Proposed Lead Plaintiff Dr. Andrew Saw, and Proposed Lead Counsel for the Putative Class*

10

**CERTIFICATION OF WORD-COUNT COMPLIANCE**

The undersigned hereby certifies that the foregoing brief complies with the word limit set forth in Local Civil Rule 7.1(c).  The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 2,933 according to the word-processing system used to prepare the document.


Dated: February 18, 2025                          _/s/ Javier Bleichmar_____
                                                                    Javier Bleichmar

11