UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIAN ALEXANDRU, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED THERAPEUTICS, INC., SHOSHANA SHENDELMAN, and RICCARDO PERFETTI,<br><br>Defendants. | Case No.  1:24-cv-09715-DLC |
| MOHAMMAD ALI IKRAM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED THERAPEUTICS, INC., and SHOSHANA SHENDELMAN,<br><br>Defendants. | Case No.  1:24-cv-09973-DLC |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ROBERT SHANE REEDER
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF,
AND APPROVAL OF LEAD COUNSEL

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ........................................................................................................................ 6

    I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR
        ALL PURPOSES ................................................................................................ 6

    II.    REEDER SHOULD BE APPOINTED LEAD PLAINTIFF ................................. 7

        A.    Reeder Is Willing to Serve as Class Representative ................................... 8

        B.    Reeder Has the "Largest Financial Interest"................................................ 9

        C.    Reeder Otherwise Satisfies the Requirements of Rule 23 ........................ 10

        D.    Reeder Will Fairly and Adequately Represent the Interests of the
            Class and Is Not Subject to Unique Defenses........................................... 13

    III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD
        BE APPROVED ................................................................................................ 13

CONCLUSION.................................................................................................................... 14

CERTIFICATE OF WORD COUNT ......................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

Cases

*Alexandru v. Applied Therapeutics, Inc. et al.*,
No. 1:24-cv-09715 .................................................................................................................1, 8

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ................................10

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) .............................................................................................7

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992) ...........................................................................................11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) .............................................................................................6

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018)............................9

*Dookeran v. Xunlei Ltd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) .....................................12

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ...........................................................................................12

*Ikram v. Applied Therapeutics, Inc. et al.*,
No. 1:24-cv-09973 .................................................................................................1, 2, 10, 11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....................................................................................................9

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ....................9, 14

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)...................................................................................................11

*In re GE Sec. Litig.*,
No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ................................6, 7

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) .........................................................................................9

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ...................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................11

*In re Petrobras Securities Litigation*,
No. 14-cv-09662 (S.D.N.Y.).............................................................................................14

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ........................................................................................6

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ......................................................................................11

*Johnson v. Celotex Corp.*,
899 F.2d 1281 (2d Cir. 1990)..............................................................................................6

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................................10

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) ......................................................................................13

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................................9

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997).................................................9

*Malcolm v. Nat'l Gypsum Co.*,
995 F.2d 346 (2d Cir. 1993)................................................................................................6

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ......................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)...............................................................................13

Statutes

15 U.S.C. § 78u-4 ............................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ................................................. *passim*

Securities Exchange Act of 1934.......................................................................... *passim*

Rules

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Fed. R. Civ. P. 42 .................................................................................................1, 2, 6

Robert Shane Reeder ("Reeder") respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Reeder as Lead Plaintiff on behalf of a class (the "Class") consisting of all investors who purchased or otherwise acquired Applied Therapeutics, Inc. ("Applied Therapeutics" or the "Company") securities between January 3, 2024 and December 2, 2024, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

## PRELIMINARY STATEMENT

The complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Applied Therapeutics investors, including Reeder, incurred significant losses following the disclosures of Defendants' alleged fraud, which caused Applied Therapeutics' stock price to fall sharply, damaging Reeder and other Applied Therapeutics investors.

---

[1] On December 17, 2024, the first-filed of the Related Actions was filed in this District, styled *Alexandru v. Applied Therapeutics, Inc. et al.*, No. 1:24-cv-09715 (the "*Alexandru* Action"), on behalf of a class including all investors who purchased or otherwise acquired Applied Therapeutics securities during the Class Period. *See* Dkt. No. 1 ¶ 1. On December 27, 2024, a second action alleging substantially the same wrongdoing as the *Alexandru* Action against overlapping defendants was filed in this District, styled *Ikram v. Applied Therapeutics, Inc. et al.*, No. 1:24-cv-09973 (the "*Ikram* Action"), on behalf of a more limited class of investors including all purchasers of Applied Therapeutics common stock during the Class Period. *See Ikram* Action, Dkt. No. 1 ¶ 1. Therefore, without conceding that it is the appropriate class, to avoid excluding any potential class members, this motion has adopted the most expansive class alleged in the *Alexandru* Action.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are putative class actions alleging violations of the Exchange Act by overlapping Defendants arising from substantially the same alleged fraud.  As such, the Related Actions involve common questions of both law **and** fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   During the Class Period, Reeder purchased 32,746 shares of Applied Therapeutics common stock, expended $311,114 on these purchases, retained 10,040 of his shares of Applied Therapeutics common stock as of November 27, 2024, when the truth regarding Defendants' alleged fraud began to emerge (*see* Dkt. No. 1 ¶¶ 4-5, 38-39; *Ikram Action*, Dkt. No. 1 ¶¶ 7, 32-33, 72-76), and, as a result of the disclosure of Defendants' alleged fraud, incurred losses of approximately $79,428 in connection with his Class Period transactions in Applied Therapeutics securities.  *See* Declaration of J. Alexander Hood II in Support of Motion ("Hood Decl."), Exhibit ("Ex.") A.  Accordingly, Reeder believes that he has the largest financial interest in the relief sought in this litigation.  Beyond his considerable financial interest, Reeder also meets the applicable requirements of Rule 23 because his claims are typical of those of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Reeder has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully

2

prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Reeder respectfully requests that the Court enter an order consolidating the Related Actions, appointing Reeder as Lead Plaintiff for the Class, and approving his selection of Pomerantz as Lead Counsel for the Class.

STATEMENT OF FACTS

As alleged in the complaints in the Related Actions, Applied Therapeutics purports to be a clinical-stage biopharmaceutical company whose lead drug candidate, govorestat (also referred to as AT-007), is intended to treat rare metabolic diseases, including Galactosemia, a pediatric metabolic disease that affects how the body processes a simple sugar called galactose, and for which there is no known cure or approved treatment available.

According to the Company's annual report for the year ended December 31, 2023, filed with the U.S. Securities and Exchange Commission on Form 10-K on March 6, 2024, the Company does "not have any product candidates approved for sale and ha[s] not generated any revenue."  If approved, govorestat would be the first medication indicated for the treatment of Galactosemia and would be Applied Therapeutics' first commercial product.

Defendants provided investors with material information concerning Applied Therapeutics' Phase III INSPIRE trial results for govorestat and the drug's efficacy in treating Galactosemia.  Defendants' statements included, among other things, confidence in the Company's New Drug Application ("NDA") to the U.S. Food and Drug Administration ("FDA") for govorestat, submission of a Marketing Authorization Authority to the European Medicines Agency for the same, positive clinical outcomes data from the Phase 3 registrational ACTION-Galactosemia Kids study in children age 2-17 with Galactosemia, the Phase 1/2 ACTION-

3

Galactosemia study in adult patients with Galactosemia, and preclinical data as well as positive interim trial results from the Phase III INSPIRE trial.

In response to Defendants' positive representations about the govorestat NDA, Applied Therapeutics' stock price significantly increased and Defendants took advantage of Applied Therapeutics' inflated stock price. The Company sold approximately $100 million in Applied Therapeutics securities through a private placement that valued the Company's shares at $7.00 per share. Defendant Shoshana Shendelman ("Shendelman"), the Company's founder and former President and Chief Executive Officer ("CEO"), sold Applied Therapeutics shares on the open market for over $4.7 million in net proceeds.

Defendants provided the aforementioned positive statements to investors while, at the same time, disseminating false and materially misleading statements and/or concealing material adverse facts concerning the true state of Applied Therapeutics' Phase III INSPIRE trial; notably, electronic data capture issues and a dosing error in the dose-escalation phase of the study. Such statements absent these material facts caused the plaintiffs in the Related Actions and other shareholders to purchase Applied Therapeutics' securities at artificially inflated prices.

Investors began to question the veracity of Defendants' public statements on November 27, 2024, when Applied Therapeutics issued a press release announcing that it had received a Complete Response Letter ("CRL") for the NDA for govorestat. The CRL indicated that the FDA completed its review of the application and determined that it was unable to approve the NDA in its current form citing deficiencies in the clinical application.

Investors and analysts reacted immediately to Applied Therapeutics' revelation. The price of Applied Therapeutics' common stock declined dramatically. From a closing market price of $10.21 per share on November 26, 2024, Applied Therapeutics' stock price fell to $8.57

per share on November 27, 2024 before falling further to $2.03 on November 29, 2024 and $1.75 per share on December 2, 2024, a total decline of more than 80%.

Then, after market hours on December 2, 2024, Applied Therapeutics disclosed it received a "warning letter" from the FDA referring to the clinical trial issues underlying the CRL. According to the Company's description of the "warning letter," the FDA stated in pertinent part that: "The letter identified issues related to electronic data capture, which the Company believes were addressed in prior communications with the agency, including by providing detailed paper and video records. The letter also refers to a dosing error in the dose-escalation phase of the study resulting in slightly lower levels than targeted in a limited number of patients, which was remedied prior to achieving maintenance dosing. Detailed records were maintained by the Company under FDA regulatory requirements, and this information was provided to FDA. The Company intends to respond within the permitted 15 business days to address these issues."

Applied Therapeutics' disclosure of the "warning letter" prompted a further decline in its stock price as investors discovered the seriousness and severity of the Company's clinical trial errors. From a closing market price of $1.75 per share on December 2, 2024, Applied Therapeutics' stock price fell to $1.69 per share on December 3, 2024 before falling further to $1.38 per share on December 4, 2024 and $1.29 per share on December 5, 2024.

Shortly after the end of the Class Period, Defendant Shendelman "stepped down" as Chair and CEO of the Company.

The Related Actions seek to recover the losses investors sustained as a result of Defendants' violations of the federal securities laws.

ARGUMENT

I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each of the Related Actions has been filed in this District, alleging similar factual and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder, by overlapping defendants, arising from the public dissemination of false and misleading information to investors.  Accordingly, the Related

6

Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the prices of Applied Therapeutics securities and subsequently damaged the Class when the Company's share price plummeted as the truth emerged.  Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *GE*, 2009 WL 2259502, at *2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

II.     REEDER SHOULD BE APPOINTED LEAD PLAINTIFF

Reeder should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate.  *See id.* § 78u-4(a)(3)(B).

7

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Reeder satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

A.      Reeder Is Willing to Serve as Class Representative

On December 17, 2024, counsel for plaintiff in the first-filed of the Related Actions (*i.e.*, the *Alexandru* Action) caused the statutorily required Notice to be published via *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Applied Therapeutics and other defendants, and advising investors in Applied Therapeutics securities that they had until February 18, 2025—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Hood Decl., Ex. B.

Reeder has filed the instant motion pursuant to the Notice, and he has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Reeder satisfies the first requirement to serve as Lead Plaintiff of the Class.

B.       Reeder Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Reeder has the largest financial interest of any Applied Therapeutics investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).  In accord with other courts nationwide,[2] these so-called *Lax* factors have been adopted and routinely applied by courts in this District.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).  Of the *Lax* factors, courts in this District tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See Nurlybaev*, 2017 WL 5256769, at *1; *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015).

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

During the Class Period, Reeder: (1) purchased 32,746 shares of Applied Therapeutics common stock; (2) expended $311,114 on these purchases; (3) retained 10,040 of his shares of Applied Therapeutics common stock as of November 27, 2024, when the truth regarding Defendants' alleged fraud began to emerge (*see* Dkt. No. 1 ¶¶ 4-5, 38-39; *Ikram* Action, Dkt. No. 1 ¶¶ 7, 32-33, 72-76); and (4) as a result of the disclosure of Defendants' alleged fraud, incurred losses of approximately $79,428 in connection with his Class Period transactions in Applied Therapeutics securities.  *See* Hood Decl., Ex. A.  To the extent that Reeder possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C.    Reeder Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23."  *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of

10

typicality and adequacy is required."). In addition, "[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998). Moreover, the complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Reeder. *See* Dkt. No. 1 ¶¶ 54, 57; *Ikram* Action, Dkt. No. 1 ¶¶ 89-91.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Reeder's claims are typical of those of the Class. Reeder alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Applied Therapeutics, or by omitting to state material facts necessary to make the statements they did make not misleading. Reeder, like other Class members, purchased Applied Therapeutics securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those

11

misrepresentations and/or omissions that drove Applied Therapeutics' share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

Reeder is an adequate representative for the Class. As set forth in greater detail below, in Pomerantz, Reeder has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions, such as these Related Actions, and submits his choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Reeder's interests and those of the Class. Moreover, Reeder has submitted a sworn Certification declaring his commitment to protect the interests of the Class (*see* Hood Decl., Ex. C), and his significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating his adequacy, Reeder has submitted a signed Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. D.

D.      Reeder Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption favoring Reeder's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Reeder's ability and desire to fairly and adequately represent the Class has been discussed above. Reeder is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class. Accordingly, Reeder should be appointed Lead Plaintiff for the Class.

III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See id.* § 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))).

Here, Reeder has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as

13

detailed in its firm resume submitted herewith. *See* Hood Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Related Actions, Reeder's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute the Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Reeder's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

CONCLUSION

For the foregoing reasons, Reeder respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Reeder as Lead Plaintiff for the Class; and (3) approving his selection of Pomerantz as Lead Counsel for the Class.

14

Dated:  February 18, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ J. Alexander Hood II*
J. Alexander Hood II
Jeremy A. Lieberman
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Robert Shane Reeder and*
*Proposed Lead Counsel for the Class*

15

<u>CERTIFICATE OF WORD COUNT</u>

The undersigned, counsel of record for Robert Shane Reeder, certifies that this brief contains 4,245 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on February 18, 2025.

/s/ *J. Alexander Hood II*
J. Alexander Hood II

16