**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLIED THERAPEUTICS SECURITIES LITIGATION | Case No. 1:24-cv-09715 (DLC) (VF) |
| | **CLASS ACTION** |
| | **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**RICCARDO PERFETTI'S MOTION TO DISMISS THE**
**SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**MCGUIREWOODS LLP**

1251 Avenue of the Americas
20th Floor
New York, New York 10020
Telephone: (212) 548-2100
Facsimile: (212) 548-2150

*Counsel for Defendant Riccardo Perfetti*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STANDARD OF REVIEW.........................................................................................3

ARGUMENT...............................................................................................................4

    I.      The SAC Fails to State a Claim Against Dr. Perfetti Under Section 10(b). ...........4

         A.    Plaintiff Fails to Allege Any Actionable Omission by Dr. Perfetti. ...........5

             1.    Dr. Perfetti Was Not Required to Disclose the Dosing Errors or Dosing Errors Clinical Data.............................................7

             2.    Dr. Perfetti Was Not Required to Disclose the Data Deletion. ..............................................................................................8

         B.    Dr. Perfetti is Not the "Maker" of Three Statements Attributed to Him. ..................................................................................................9

             1.    Dr. Perfetti is Not the Maker of Statement 1...............................10

             2.    Dr. Perfetti is Not the Maker of Statement 2...............................11

              3.    Dr. Perfetti is Not the Author or Presenter of Statement 3. ..........13

         C.    Plaintiff Fails to Plead Scienter Against Dr. Perfetti..............................15

             1.    Plaintiff's Motive Allegations are Deficient. ..............................16

              2.    Plaintiff's Recklessness Allegations are Deficient. .....................19

              3.    Plaintiff Impermissibly Relies on Group Pleading to Infer Scienter...................................................................................21

         D.    Plaintiff Fails to Plead Loss Causation.................................................22

    II.     Plaintiff Fails to Adequately Plead Scheme Liability.........................................23

    III.    Dr. Perfetti Had No Duty to Correct a Statement in the Company's 2023 Form 10-K. ..............................................................................................25

    IV.    Plaintiff's Section 20(a) Claim Against Dr. Perfetti Fails...................................26

CONCLUSION..........................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Abercrombie & Fitch Co. Sec. Litig.*,
No. M21-83 (TPG), 2003 WL 22705131 (S.D.N.Y. Nov. 17, 2003) ....................................13

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995) ...................................................................................................16

*In re Alkermes Pub. Ltd. Co. Sec. Litig.*,
523 F. Supp. 3d 283 (E.D.N.Y. 2021)..................................................................................21

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005) .............................................................................26, 27

*Anderson v. Abbott Lab'ys*,
140 F. Supp. 2d 894 (N.D. Ill. 2001), *aff'd, Gallagher v. Abbott Lab'ys*, 269
F.3d 806 (7th Cir. 2001) .......................................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .........................................................................................................3, 4

*In re AstraZeneca Sec. Litig.*,
559 F. Supp. 2d 453 (S.D.N.Y. 2008) ..................................................................................16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ...............................................................................................4, 26

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ..............................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................................................................3, 4

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004).................................................................................17

*C.D.T.S. v. UBS AG*,
No. 12-CV-4924 (KBF), 2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), *aff'd
sub nom.*, *Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5
(2d Cir. 2015)........................................................................................................................22

*In re CarLotz, Inc. Sec. Litig.*,
No. 21-CV-5906 (AS), 2024 WL 3924708 (S.D.N.Y. Aug. 23, 2024) ................................24

*In re Carter-Wallace, Inc. Sec. Litig.*,
  220 F.3d 36 (2d Cir. 2000) ...................................................................................................19

*Castillo v. Dean Witter Discover & Co.*,
  No. 97-CV-1272 (RPP), 1998 WL 342050 (S.D.N.Y. June 25, 1998)..................................23

*In re Checkpoint Therapeutics Sec. Litig.*,
  No. 24-CV-2613 (PAE), 2025 WL 1434400 (S.D.N.Y. May 19, 2025).......................... 20, 21

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) ............................................................................................. 4, 16

*City of Brockton Ret. Sys. v. Avon Prod., Inc.*,
  No. 11-CV-4665 (PGG), 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) .............................20

*Cohen v. Stevanovich*,
  722 F. Supp. 2d 416 (S.D.N.Y. 2010)..................................................................................27

*Cozzarelli v. Inspire Pharms., Inc.*,
  549 F.3d 618 (4th Cir. 2008) ...............................................................................................18

*In re CRM Holdings, Ltd. Sec. Litig.*,
  No. 10-CV-975 (RPP), 2012 WL 1646888 (S.D.N.Y. May 10, 2012)..................................23

*In re DDAVP Direct Purchaser Antitrust Litig.*,
  585 F.3d 677 (2d Cir. 2009) .......................................................................................... 21, 22

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ....................................................................................... 4, 6, 16

*Elec. Specialty Co. v. Int'l Controls Corp.*,
  409 F.2d 937 (2d Cir. 1969) .................................................................................................14

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
  No. 20-CV-9992 (PAC), 2021 WL 5854075 (S.D.N.Y. Dec. 9, 2021) .................................26

*In re Eventbrite, Inc. Sec. Litig.*,
  No. 5:18-CV-02019 (EJD), 2020 WL 2042078 (N.D. Cal. Apr. 28, 2020).............................7

*In re Fannie Mae 2008 Sec. Litig.*,
  891 F. Supp. 2d 458 (S.D.N.Y. 2012).....................................................................................9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  352 F. Supp. 2d 429 (S.D.N.Y. 2005).....................................................................................26

*Frazier v. VitalWorks, Inc.*,
  341 F. Supp. 2d 142 (D. Conn. 2004) ...................................................................................18

iii

*In re Genzyme Corp.*,
 No. 09-CV-11267 (GAO), 2012 WL 1076124 (D. Mass. Mar. 30, 2012)..............................9

*In re GeoPharma, Inc. Sec. Litig.*,
 411 F. Supp. 2d 434 (S.D.N.Y. 2006)...............................................................................19

*In re Gildan Activewear, Inc. Sec. Litig.*,
 636 F. Supp. 2d 261 (S.D.N.Y. 2009)........................................................................ 16, 17

*Gillis v. QRX Pharma Ltd.*,
 197 F. Supp. 3d 557 (S.D.N.Y. 2015).................................................................................21

*In re Glob. Crossing, Ltd. Sec. Litig.*,
 No. 02-CV-910 (GEL), 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005).................................27

*In re Health Mgmt., Inc. Sec. Litig.*,
 970 F. Supp. 192 (E.D.N.Y. 1997).....................................................................................22

*In re IBM Corp. Sec. Litig.*,
 163 F.3d 102 (2d Cir. 1998) ...................................................................................... 14, 26

*Janus Cap. Grp. v. First Deriv. Traders*,
 564 U.S. 135 (2011) ...................................................................... 9, 11, 13, 14

*Johnson v. Pozen Inc.*,
 No. 1:07-CV-599, 2009 WL 426235 (M.D.N.C. Feb. 19, 2009) ..........................................18

*Kalnit v. Eichler*,
 264 F.3d 131 (2d Cir. 2001) ...................................................................................... 16, 19

*In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*,
 No. 13-CV-755 (KBF), 2014 WL 585658 (S.D.N.Y. Feb. 14, 2024)...................................17

*In re Keyspan Corp. Sec. Litig.*,
 383 F. Supp. 2d 358 (E.D.N.Y. 2003)................................................................................22

*Kleinman v. Elan Corp.*,
 706 F.3d 145 (2d Cir. 2013) ......................................................................................5, 6

*Lentell v. Merrill Lynch & Co.*,
 396 F.3d 161 (2d Cir. 2005) ..............................................................................................22

*Levy v. Maggiore*,
 48 F. Supp. 3d 428 (E.D.N.Y. 2014)............................................................................21, 22

*Lipow v. Net1 UEPS Techs., Inc.*,
 131 F. Supp. 3d 144 (S.D.N.Y. 2015)................................................................................20

*Liu v. Intercept Pharms., Inc.*,
 No. 17-CV-7371 (LAK), 2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020)......................... 12, 13

*In re Livent, Inc. Noteholders Sec. Litig.*,
 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................27

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
 797 F.3d 160 (2d Cir. 2015) ..............................................................................23

*In re Lululemon Sec. Litig.*,
 14 F. Supp. 3d 553 (S.D.N.Y. 2014) ...................................................................6

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011) .............................................................................................6

*In re Mindbody, Inc. Sec. Litig.*,
 489 F. Supp. 3d 188 (S.D.N.Y. 2020) ...............................................................25

*Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*,
 15 F. Supp. 3d 336 (S.D.N.Y. 2014)..................................................................23

*In re Nat'l Instruments Corp. Sec. Litig.*,
 No. 23-CV-10488 (DLC), 2024 WL 4108011 (S.D.N.Y. Sept. 6, 2024) ................6

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
 423 F. Supp. 2d 364 (S.D.N.Y. 2006).................................................................20

*In re Norfolk S. Corp. Bond/Note Sec. Litig.*,
 No. 23-CV-4068 (LAK), 2025 WL 641089 (S.D.N.Y. Feb. 27, 2025) ...................6

*In re Omega Healthcare Invs., Inc.*,
 563 F. Supp. 3d 259 (S.D.N.Y. 2021).................................................................6, 7

*Overton v. Todman & Co., CPAs, P.C.*,
 478 F.3d 479 (2d Cir. 2007) ..............................................................................14

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*,
 603 F.3d 144 (2d Cir. 2010) ................................................................................4

*In re Paysafe f/k/a Foley Trasimene Acquisition Corp. II Sec. Litig.*,
 No. 21-CV-10611 (ER), 2025 WL 1003322 (S.D.N.Y. Mar. 31, 2025)..............9, 12

*In re Philip Servs. Corp. Sec. Litig.*,
 383 F. Supp. 2d 463 (S.D.N.Y. 2004)................................................................26

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
 11 F.4th 90 (2nd Cir. 2021) ...............................................................................24

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) ................................................................... 20

*Puddu v. 6D Glob. Techs., Inc.*,
    No. 1:15-CV-0861 (AJN), 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) ............................ 10

*Resnik v. Swartz*,
    303 F.3d 147 (2d Cir. 2002) ........................................................................... 6

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ....................................................................... 4, 12

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016) .............................................................. 7, 16

*In re Sanofi-Aventis Sec. Litig.*,
    774 F. Supp. 2d 549 (S.D.N.Y. 2011) ................................................................. 27

*Sec. & Exch. Comm'n v. Rio Tinto plc*,
    41 F.4th 47 (2d. Cir. 2022) ......................................................................... 25

*In re Shanda Games Ltd. Sec. Litig.*,
    128 F.4th 26 (2d Cir. 2025) ......................................................................... 22

*In re Sina Corp. Sec. Litig.*,
    No. 05-CV-2154 (NRB), 2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006) ............................... 17

*South Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009) .......................................................................... 16

*In re SunEdison, Inc. Sec. Litig.*,
    300 F. Supp. 3d 444 (S.D.N.Y. 2018) ................................................................. 27

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................................. 15, 16

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) ......................................................................... 11, 12

*Total Equity Cap., LLC v. Flurry, Inc.*,
    No. 15-CV-4168 (JMF), 2016 WL 3093993 (S.D.N.Y. June 1, 2016) ................................ 11, 12

*In re Tyson Foods, Inc. Sec. Litig.*,
    275 F. Supp. 3d 970 (W.D. Ark. 2017) ................................................................ 17

*United States v. Schiff*,
    602 F.3d 152 (3d Cir. 2010) ...................................................................... 14, 26

vi

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
   504 F. Supp. 3d 224 (S.D.N.Y. 2020).................................................................................10

*Xu v. Gridsum Holding Inc.*,
   624 F. Supp. 3d 352 (S.D.N.Y. 2022).................................................................................11

RULES AND REGULATIONS

17 C.F.R. § 240.10b-5................................................................................................*passim*

Fed. R. Civ. P. 9(b) ..................................................................................................*passim*

Fed. R. Civ. P. 12(b) ....................................................................................................1, 3

STATUTES

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)..........................................*passim*

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)..........................*passim*

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) ..........................*passim*

Dr. Riccardo Perfetti, M.D., Ph.D. respectfully submits this Memorandum of Law in Support of his Motion to Dismiss the Second Consolidated Amended Class Action Complaint ("SAC") (ECF No. 99), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Even with a third chance, Lead Plaintiff Dr. Martin Dietrich ("Plaintiff") continues to rely on speculative and conclusory allegations that fail to state a viable claim against Dr. Perfetti. The SAC only adds arguments—without providing necessary factual support that Dr. Perfetti omitted material information when supposedly making certain statements, most of which he did not make. Notably, the SAC removed allegations against Dr. Perfetti for 67 statements, underscoring that this case is fundamentally about alleged misstatements and omissions by Applied Therapeutics, Inc. ("Applied" or the "Company") and Dr. Shoshana Shendelman—Applied's founder and former CEO, President, and Board Chair. These allegedly violative statements concern the Company's New Drug Application ("NDA") for govorestat (also known as AT-007) submitted to the U.S. Food and Drug Administration ("FDA") in December 2023 and rejected in November 2024.

Insofar as it relates to Dr. Perfetti, the SAC advances three theories in the hopes of pleading alleged violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. Each theory fails for overlapping and independent reasons.

Plaintiff's first theory involves alleged material omissions from four statements attributed to Dr. Perfetti. Specifically, Plaintiff alleges that when purportedly making these statements, Dr. Perfetti omitted that: (i) certain participants in the 2021 study evaluating the safety and efficacy of AT-007 in pediatric patients with Classic Galactosemia (the "Pediatric Study") incorrectly received a lower dosage of govorestat during the dose-escalation period (the "Dosing Errors"); (ii) the NDA did not include a discussion of the Dosing Errors or the clinical data relating to the Dosing

1

Errors (the "Dosing Errors Clinical Data"); and (iii) electronic data for 47 subjects of the Pediatric Study was deleted in March 2024 (the "Data Deletion").

For each of the four statements Plaintiff attributes to Dr. Perfetti, Plaintiff does not adequately allege a nexus between the statement and the alleged omissions sufficient to give rise to a duty to disclose. Nor does the SAC adequately plead scienter or loss causation. Regarding scienter, the securities transactions cited to show motive and opportunity were minimal, routine, and executed for tax purposes; they were neither suspicious in timing nor indicative of fraudulent intent. There is no allegation suggesting that Dr. Perfetti harbored doubts about NDA approval or acted with improper motive. As for loss causation, Plaintiff's effort to attribute damages to the FDA's November 27, 2024 Complete Response Letter (the "CRL") denying the NDA and the Warning Letter that followed are misplaced. Neither event revealed nor corrected any of the statements Plaintiff alleges Dr. Perfetti made. Rather, they reflect the materialization of a known regulatory risk.

Further, Dr. Perfetti did not "make" three of the four statements Plaintiff attributes to him in the SAC. Plaintiff's attempt to hold him liable for the omission of allegedly material information from these statements, based on irrelevant factors such as his title at Applied or the Company being one of many sponsors of a symposium, runs afoul of clear Supreme Court precedent that only the "maker" of a misstatement can be liable under Section 10(b) and Rule 10b-5(b).

Plaintiff's second theory of liability asserts that Dr. Perfetti participated in a scheme to deceive and artificially inflate the price of Applied's securities. This theory too fails because it rests entirely on the same alleged material omissions underlying Plaintiff's first theory, which does not comport with clear precedent requiring deceptive conduct distinct from alleged misstatements

2

or omissions under Section 10(b) and Rule 10b-5(a) and (c) thereunder. Conspicuously absent from the SAC are particularized allegations of an inherently deceptive act undertaken by Dr. Perfetti sufficient to impose scheme liability.

Plaintiff's third theory of Section 10(b) liability seeks to impose upon Dr. Perfetti a duty to correct a statement in the Company's 2023 Form 10-K and restated on April 22, 2024 in Applied's Annual Report to Stockholders relating to the process required by the FDA before a drug may be marketed in the U.S. This theory fails because Dr. Perfetti did not make the statement in question, which even Plaintiff acknowledges was accurate when made, thus obviating the requirement for the speaker (not Dr. Perfetti) to correct the statement based on subsequent events.

In addition to claims for violations of Section 10(b) and Rule 10b-5, Plaintiff attempts to assert control person liability under Section 20(a) of the Exchange Act. But this too misses the mark. Allegations of control based on title, and conclusory allegations of involvement in drafting, producing, reviewing and/or disseminating the complained of statements without more fails to sufficiently state a control person liability claim.

For these reasons, detailed more fully below, the claims against Dr. Perfetti in this action should be dismissed with prejudice.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Although the Court must take as true factual allegations, it is "not bound to accept as true a legal conclusion couched as a factual allegation" or "naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks and citations omitted).

Further, Plaintiff must allege "facts" establishing a "plausible" claim under *Twombly*, 550 U.S. at 547, and *Iqbal*, 556 U.S. at 678, and must also satisfy the heightened pleading requirements of both Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA").  *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).  Rule 9(b) mandates pleading fraud or mistake "with particularity."  Fed. R. Civ. P. 9(b); *see Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996).  Under the PSLRA, a plaintiff must (i) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" and (ii) "with respect to each [alleged] act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" (*i.e.*, scienter).  15 U.S.C. §§ 78u-4(b)(1), (2).  The Second Circuit requires that a securities fraud complaint (1) specify the fraudulent statements, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  "Allegations that are conclusory or unsupported by factual assertions are insufficient."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

## ARGUMENT

### I.        The SAC Fails to State a Claim Against Dr. Perfetti Under Section 10(b).

To state a claim under Section 10(b) and Rule 10b-5 of the Exchange Act, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 151 (2d Cir. 2010) (citation omitted).  The SAC fails to allege facts to support multiple requirements for a valid Section 10(b) claim.

### A.    Plaintiff Fails to Allege Any Actionable Omission by Dr. Perfetti.

Plaintiff points to four statements that he attributes to Dr. Perfetti and alleges are actionable:[1] (1) a March 11, 2024 Investor Presentation incorporated by reference in the Company's Form 8-K ("Statement 1" or the "Investor Presentation");[2] (2) an August 7, 2024 analyst report by RBC Capital Markets ("Statement 2" or the "RBC Report");[3] (3) 15 slides used by a panelist (but not Dr. Perfetti) at the September 4, 2024 Annual Symposium of the Society for the Study of Inborn Errors of Metabolism ("Statement 3" or the "SSIEM Slides");[4] and (4) a November 6, 2024 article in *The Journal of Clinical Pharmacology* ("Statement 4" or the "November 2024 Article").[5]  To be clear, the SAC does not allege that Statements 1-4 were themselves materially false when made.  Instead, Plaintiff argues that the statements were misleading because Dr. Perfetti failed to disclose certain additional information.  *See* SAC ¶¶ 3, 4, 10, 124–125, 214–217, 223, 246, 274, 276.  Plaintiff alleges that Statements 1-4 were materially misleading because they omitted any mention of the Dosing Error and the Dosing Errors Clinical Data, and that Statement 2 was also misleading because it omitted any reference to the Data Deletion and Applied's receipt of an FDA Form 483 relating to the Data Deletion.  SAC at ¶¶ 3, 4, 10, 124, 125, 214-217, 223, 246, 274, 276.  Plaintiff alleges that Dr. Perfetti's failure to disclose

---

[1] The facts are taken from the SAC and documents incorporated by reference.  *See, e.g., Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) ("We may also 'consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference[.]'").

[2] Declaration of Jeffrey J. Chapman in Support of Defendant Perfetti's Motion to Dismiss ("Chapman Decl.") Ex. 1; SAC at ¶¶ 121-125.

[3] *See* Chapman Decl. Ex. 2; SAC at ¶¶ 222-224.

[4] *See* Chapman Decl. Ex. 3; SAC at ¶¶ 240-249.

[5] *See* Chapman Decl. Ex. 4; SAC at ¶¶ 273-280.

this additional information (collectively, the "Omissions") is actionable because it showed that the NDA would be rejected.

To be actionable under Section 10(b), a statement "must be false and . . . must be material. Neither immaterial false statements nor material true statements are actionable." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988)); *see also In re Nat'l Instruments Corp. Sec. Litig.*, No. 23-CV-10488 (DLC), 2024 WL 4108011, at *4 (S.D.N.Y. Sept. 6, 2024). A claim for securities fraud premised on a misstatement or omission "cannot occur unless an alleged material misstatement was false at the time it was made." *Lululemon*, 14 Supp. 3d at 571. For an omission to be considered material under Section 10(b), there must be a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *See ECA, Loc.*, 553 F.3d at 197.

Federal securities laws "do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Information need not be disclosed "simply because it may be relevant or of interest to a reasonable investor." *Kleinman v. Elan Corp.*, 706 F.3d 145, 153 (2d Cir. 2013) (quoting *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002)). Instead, Plaintiff must establish a "sufficiently close nexus between the affirmative statement and the alleged omission." *See In re Omega Healthcare Invs., Inc.*, 563 F. Supp. 3d 259, 272 (S.D.N.Y. 2021); *In re Norfolk S. Corp. Bond/Note Sec. Litig.*, No. 23-CV-4068 (LAK), 2025 WL 641089, *5 (S.D.N.Y. Feb. 27, 2025) (same). Disclosure is only required "when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx*, 563 U.S. at 44 (quoting 17 C.F.R. § 240.10b-5(b)).

1.  Dr. Perfetti Was Not Required to Disclose the Dosing Errors or Dosing Errors Clinical Data.

Plaintiff challenges Statements 1-4, alleging they were materially misleading because Dr. Perfetti failed to disclose the Dosing Errors and the Dosing Errors Clinical Data when supposedly discussing the contents and approvability of the NDA.  SAC ¶¶ 3, 4, 10, 124–125, 214, 215, 223, 246, 274, 276.  However, the SAC does not plausibly allege that the challenged statements were misleading absent disclosure of the Dosing Errors and Dosing Errors Clinical Data.  To the contrary, the alleged omitted information bears no meaningful connection to the substance of the challenged statements, which do not by any stretch address the likelihood of NDA approval or its completeness.  *See In re Eventbrite, Inc. Sec. Litig.*, No. 5:18-CV-02019 (EJD), 2020 WL 2042078, at *13 (N.D. Cal. Apr. 28, 2020).

The Court's decision in *Omega* is instructive.  There, plaintiffs challenged statements made by defendants in a press release about the company's earnings, alleging that defendants' duty to disclose the company's deteriorating financial condition and missed rent payments arose from generic statements regarding the company's overall balance sheet. 563 F. Supp. 3d at 272-73.  The Court held that plaintiffs could not establish a "sufficiently close nexus between the affirmative statement and the alleged omission to demonstrate that defendants specifically put [the company's] financial condition and missed rent payments 'in play' and thus had a duty to disclose the omitted information." *Id.* at 272.  Similarly, in *In re Sanofi Sec. Litig.*, the court found no duty to disclose an alleged illegal marketing scheme where the omissions were not sufficiently related to the company's public disclosures to render those statements misleading.  155 F. Supp.3d 386, 403 (S.D.N.Y. 2016).

So too here the statements Plaintiff challenges—three regarding the results of the Pediatric Study (Statements 1, 3, and 4) and one regarding what the Company emphasized about its

7

disclosure that day regarding the formula used for their cognition and motor skills scores from the Galactosemia Phase III trial (Statement 2)—do not address, let alone make representations about, the NDA's likelihood of approval or whether the NDA submission was complete. Plaintiff's theory hinges on the speculative and conclusory assertion that investors might have inferred such representations from the statements. But such inferences, without more, do not meet the applicable pleading standard. Because there is no direct and specific nexus between the statements and the omitted information, Plaintiff has failed to establish a duty to disclose.

### 2. Dr. Perfetti Was Not Required to Disclose the Data Deletion.

Plaintiff asserts that the RBC Report (Statement 2) was also misleading because nonspecific comments to an analyst regarding Applied's data re-analysis in connection with the Galactosemia Phase III trial ahead of an Advisory Committee meeting and the FDA's targeted action date allegedly omitted mention of the Data Deletion and receipt of the Form 483. SAC ¶¶ 216, 217, 223. According to Plaintiff, these omissions concealed the projected impact of those issues on the potential commercialization of govorestat and the likelihood of NDA approval. *Id.* This theory fails, however, because Plaintiff's allegations do not establish any connection between the data for the cognition and motor skills scores covered in the RBC Report and the contents or approvability of the NDA, to say nothing about what "the mgmt. team" said to the analyst versus the contents of the RBC Report. Without those links in the chain, there was no affirmative duty to disclose either the Data Deletion or receipt of the related Form 483.

Courts have consistently held that in highly regulated industries, such as pharmaceuticals, the mere existence of regulatory or quality issues does not render otherwise truthful corporate statements materially misleading. *Anderson v. Abbott Labys*, 140 F. Supp. 2d 894, 902 (N.D. Ill. 2001) (failure to disclose FDA inspection letters and warning letters did not render statements

8

materially misleading), *aff'd, Gallagher v. Abbott Labs.*, 269 F.3d 806 (7th Cir. 2001).  As one court explained, "[i]t simply cannot be that every critical comment by a regulatory agency – even about matters as important as [Good Manufacturing Practices]–has to be seen as material for securities law reporting purposes, especially in an industry like [Applied's], where there is constant and close supervision by the FDA."  *In re Genzyme Corp.*, No. 09-CV-11267 (GAO), 2012 WL 1076124, at *10 (D. Mass. Mar. 30, 2012) (finding no affirmative duty to disclose Form 483).

Here, Plaintiff alleges no specific facts establishing the specifics of the Company's discussion with the analyst, or that Statement 2 affirmatively addressed, let alone misrepresented, the state of the NDA or triggered a duty to disclose the Data Deletion or Form 483.  Absent such a duty, Plaintiff cannot premise liability on the omission of regulatory developments that, on their own, do not render the statements misleading.

**B.     Dr. Perfetti is Not the "Maker" of Three Statements Attributed to Him.**

Dr. Perfetti is not the "maker" of Statements 1-3 because, per the Supreme Court in *Janus Cap. Grp. v. First Deriv. Traders*, he did not have "ultimate authority over the statement[s], including [their] content[s] and whether and how to communicate it."  564 U.S. 135, 142 (2011). "[A]n officer's position within a company—without more—is [not] enough to render that officer a 'maker' of the company's statements."  *In re Paysafe f/k/a Foley Trasimene Acquisition Corp. II Sec. Litig.*, No. 21-CV-10611 (ER), 2025 WL 1003322, at *25 (S.D.N.Y. Mar. 31, 2025).

Courts in this Circuit recognize that "an executive may be held accountable [for a company's statement] where the executive had ultimate authority over the company's statement; signed the company's statement; ratified and approved the company's statement; or where the statement is attributed to the executive."  *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 473 (S.D.N.Y. 2012).  A defendant's status as the "maker" of a statement may be inferred from

9

circumstantial evidence, but merely holding a position of authority or influence is not enough. *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 261 (S.D.N.Y. 2020). More substantial evidence, such as signing a statement and editing and approving a document, is required to draw an inference of authorship. *Id*. at 262.

### 1.    Dr. Perfetti is Not the Maker of Statement 1.

The SAC claims Dr. Perfetti is the maker of the Investor Presentation based on an illusory "strong inference" that he bore responsibility over the statements in the Presentation given his position at the Company and his authorship of the Pediatric Study. SAC at ¶ 123. This allegation falls short of the applicable legal standard. Title or authorship of one statement is not enough to create an inference of making a different one.

The Court's reasoning in *Puddu v. 6D Glob. Techs., Inc.* is instructive. No. 1:15-CV-0861 (AJN), 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021). In *Puddu*, the Court found there was a "plausible inference" that the defendant was a maker of statements in SEC filings where the defendant "reviewed SEC filings, provided instructions on what to include and not include, and participated in conference calls concerning the preparation of [the company's] 10-Ks and 10-Qs." *Id.*, at *8. Additionally, the plaintiffs asserted more broadly that the defendant's "involvement in the day-to-day activities at [the company] was so extensive that [the company's] executives . . . both saw and acknowledged [the defendant] as their superior." *Id.*

Unlike *Puddu*, Plaintiff has not plausibly alleged that Dr. Perfetti was the "ultimate authority" over Statement 1. The Investor Presentation does not tie the statements to any specific individual, and certainly not Dr. Perfetti. Dr. Perfetti did not sign the Form 8-K incorporating by reference the Investor Presentation. Moreover, Plaintiff does not plead any specific facts, supported by evidence, that Dr. Perfetti was responsible for investor communications, participated

10

in meetings or calls concerning Statement 1, disseminated Statement 1, or otherwise possessed ultimate authority over Statement 1.  Plaintiff alleges only that Dr. Perfetti served as CMO of Applied and was an author of the Pediatric Study.  SAC at ¶¶ 39, 123.  There are no particularized allegations regarding the Company's internal operations, let alone any facts establishing Dr. Perfetti's authority or role in 2024, or his specific responsibility (if any) for SEC filings, generally, or the Investor Presentation, specifically.  Without such particularized allegations, Plaintiff fails to sufficiently plead that Dr. Perfetti made Statement 1.  *See Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 362 (S.D.N.Y. 2022) (dismissing claim under *Janus* because the fact "that [individuals] were co-CFOs is not enough to make them 'makers' of [a corporate] press release").

### 2.  Dr. Perfetti is Not the Maker of Statement 2.

Plaintiff's allegations to establish Dr. Perfetti made the statements in the RBC Report attributed to Applied's "mgmt. team" also fail.  *See* Chapman Decl. Ex. 2; SAC at ¶¶ 222-224.  Plaintiff claims a "strong inference" that either Drs. Shendelman or Perfetti spoke to RBC, alleging they were the management who spoke publicly on behalf of Applied regarding govorestat.  SAC at ¶ 224.  But Plaintiff does not specify the details of that discussion.  These vague and conclusory allegations fall far short of the heightened pleading requirements.

Courts in this Circuit routinely find that unattributed quotes, such as here, fail to satisfy the heightened pleading standard applicable to fraud and securities law claims.  For example, in *In re Time Warner Inc. Sec. Litig.* the Second Circuit held that "anonymous quotes or paraphrases of statements from alleged [corporate] insiders" will not suffice to plead fraud with particularity under Rule 9(b).  9 F.3d 259, 264-65 (2d Cir. 1993).  Similarly, this Court in *Total Equity Cap., LLC v. Flurry, Inc.* dismissed a Section 10(b)(5) claim based on statements attributed to the defendants in an analyst article that did not identify the defendants who made the statements or

11

show that the defendants were involved in approving the article. No. 15-CV-4168 (JMF), 2016 WL 3093993, at *3 (S.D.N.Y. June 1, 2016).

To plead an executive had ultimate authority over a statement they did not author or sign, "allegations [must] plausibly raise[] the inference that they were makers who controlled the 'content and whether and how to communicate' [the] challenged statements." *Paysafe*, 2025 WL 1003322, at *25. Narrowing the speaker to two possible candidates is not enough. Like in *Total Equity*, the SAC alleges no facts, supported by evidence, that Dr. Perfetti spoke with RBC, or reviewed, approved, or disseminated Statement 1.

To state a claim based on the RBC Report, Plaintiff must allege facts demonstrating that Dr. Perfetti either "intentionally fostered a mistaken belief concerning a material fact that was incorporated" therein or that he "adopted or placed their 'imprimatur' on the" RBC Report. *Rombach*, 355 F.3d at 174-75; *accord Liu v. Intercept Pharms., Inc.,* No. 17-CV-7371 (LAK), 2020 WL 1489831, at *6 (S.D.N.Y. Mar. 26, 2020). Plaintiff here alleges no such facts.

This Court's holding in *Liu* is instructive. The plaintiffs relied on alleged statements in analyst reports regarding a drug's safety and efficacy. *Liu*, 2020 WL 1489831, at *6. The Court held that plaintiffs met their pleading requirement with respect to one statement by alleging the date of the statement and identifying the speaker and circumstances in which it was made. However, the Court held plaintiffs failed to meet their burden with respect to other statements because the complaint failed to "identify the speaker and attribute[d] the comments only to 'management.'" *Id.* The same result is warranted here: speculation that the statements must have come from some subset of management does not suffice.

Statements generally attributed to "management" may be actionable in some cases, such as where specific officers regularly interact with analysts and participated in the relevant meetings.

12

*See In re Abercrombie & Fitch Co. Sec. Litig.,* No. M21-83 (TPG), 2003 WL 22705131, at *4 (S.D.N.Y. Nov. 17, 2003).  However, allegations, such as those here, that fail to specify who attended analyst meetings or assert claims against officers who neither participated in those meetings nor routinely communicated with analysts are routinely rejected.  *See Liu*, 2020 WL 1489831, at *6; *see also Abercrombie*, 2003 WL 22705131, at *4.

Although Plaintiff alleges that Drs. Shendelman and Perfetti were the only members of Applied's management team who spoke publicly regarding govorestat during the Class Period, *see* SAC at ¶ 224, the SAC contains only two specific instances of public statements by Dr. Perfetti—slides presented at a symposium and an article published in a medical journal—both of which followed Statement 2 and neither of which involved communications with analysts or concerned FDA interactions or the contents or approvability of the NDA.  This speculative, unsupported allegation cannot transform Dr. Perfetti into the "maker" of statements in an analyst report that he is not alleged to have reviewed, approved, or disseminated.

### 3.   Dr. Perfetti is Not the Author or Presenter of Statement 3.

Plaintiff seeks to hold Dr. Perfetti liable for information omitted from slides 40 and 42 through 55 of a 66-slide presentation at the SSIEM Symposium, despite his not authoring or presenting those slides.  *See* Chapman Decl. Ex. 3; SAC at ¶¶ 240-249.  As the Supreme Court made clear in *Janus*, "it is the speaker who takes credit—or blame—for what is ultimately said." 564 U.S. at 143.  Preparing, editing, or participating in the making of a statement on behalf of someone else does not make one its "maker."  *Id.*  Reviewing or suggesting edits does not suffice either.  *Id.*

Faced with this dilemma, Plaintiff attempts to pin liability on Dr. Perfetti by arguing that (i) he *participated* in the presentation, (ii) he was designated to present certain other slides (not

13

alleged to be actionable), and (iii) the full slide deck was submitted in advance.  SAC at ¶¶ 240-243.  These assertions do not make Dr. Perfetti responsible for the slides at issue.[6]  Plaintiff's conclusory allegation of "a strong inference that Dr. Perfetti reviewed, approved, and adopted the entire . . . Presentation" is argument, not a fact and does nothing to strengthen Plaintiff's conclusory allegation.  *See* SAC at ¶ 242.

Essentially, Plaintiff argues that Dr. Perfetti should be held liable for failing to proactively correct someone else's future omission.  But the law is clear: a duty to disclose arises only from a speaker's own omissions, and a duty to correct arises only "if and when *a speaker* learns that a prior statement was misleading."  *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 109 (2d Cir. 1998) (emphasis added).  That duty does not extend outside the speaker "to rectify misstatements of others."  *United States v. Schiff*, 602 F.3d 152, 167 (3d Cir. 2010).  Courts reject liability in such scenarios—whether it is a company failing to correct inaccurate press reports not attributable to it (*Elec. Specialty Co. v. Int'l Controls Corp.*, 409 F.2d 937, 949 (2d Cir. 1969)), one executive not bearing responsibility for another's misstatements (*Schiff*, 602 F.3d at 162-69), or an accountant not being liable for a corporation's unaudited statements or press releases about those statements (*Overton v. Todman & Co., CPAs, P.C.*, 478 F.3d 479, 486-87 (2d Cir. 2007)).  Dr. Perfetti's role as CMO "and key employee of Applied" does not confer "ultimate authority" over Applied's public disclosures, much less materials at a medical symposium that he did not author or present. *Janus*, 564 U.S. at 142.

---

[6] *See* Dr. Barbara Burton, et al., *Development of Govorestat (AT-007), the First Potential Treatment for Patients with Classic Galactosemia*, at slide 5 (Sept. 4, 2024), Chapman Decl. Ex. 3.  On slide 5, it is clear that Dr. Perfetti did not present the slides in question.  *Id.*

Plaintiff further asserts that Applied being a Bronze sponsor of the SSIEM Symposium and the presentation featuring only Applied employees (apart from the session chair) constituted a "Company-led presentation that directly promoted the clinical merits of govorestat," further underscoring Dr. Perfetti's control over the content of the entire presentation. *See* SAC at ¶ 244. Interestingly, Plaintiff fails to include that Applied was one of 14 Bronze sponsors—the lowest tier of sponsorship—and that there were 24 additional sponsors across the Silver, Gold, and Platinum tiers.[7] Far from a "Company-led presentation," it was part of a broader scientific forum, with multiple panels, designed to allow members of the academic and medical communities "to share expertise, learn from others, and contribute to the [Society's] collective mission of improving the lives of those affected with inborn errors of metabolism."[8] These circumstances do not satisfy the requirements for sufficiently pleading Dr. Perfetti made the statements at issue.

Accordingly, because Dr. Perfetti did not make the statements at issue, he cannot be found liable for any omission in the SSIEM Slides.

### C.    Plaintiff Fails to Plead Scienter Against Dr. Perfetti.

The scienter pleading requirement demands that, with respect to each statement, a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," *i.e.*, that the defendant intended "to deceive, manipulate, or defraud." *See* Section 21D(b)(2)(A) of the Exchange Act; *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313-14 (2007). "To qualify as 'strong' within the intendment of [the PSLRA] . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as

---

[7] *See Sponsors*, SSIEM 2024 ANNUAL SYMPOSIUM 03-06 SEPTEMBER PORTO, PORTUGAL EXPLORING NEW HORIZONS, https://www.ssiem2024.org/industry/sponsors.

[8] *See Welcome Message*, SSIEM 2024 ANNUAL SYMPOSIUM 03-06 SEPTEMBER PORTO, PORTUGAL EXPLORING NEW HORIZONS, https://www.ssiem2024.org/symposium/welcome-message.

compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw . . . " *Id.* at 324; *see also In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 471-72 (S.D.N.Y. 2008).

### 1. Plaintiff's Motive Allegations are Deficient.

Plaintiff points to certain stock sales by Dr. Perfetti as evidence that he had "motive and opportunity" to commit fraud, but fails to allege Dr. Perfetti "made a misrepresentation in order to sell [his] own shares at a profit." *Sanofi*, 155 F. Supp. 3d at 405 (citing *ECA, Loc.*, 553 F.3d at 198). Allegations of motive and opportunity must demonstrate that defendants "benefited in a concrete and personal way from the purported fraud." *South Cherry St., LLC v. Hennessee Grp. LLC¸* 573 F.3d 98, 110 (2d Cir. 2009). Motives that can be ascribed to "virtually all corporate insiders" (*id.* at 109) or "any publicly-owned, for-profit endeavor" are not sufficient. *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001); *Chill*, 101 F. 3d at 268. Examples include "(1) the desire for the corporation to appear profitable and (2) the desire to keep stock prices high to increase officer compensation." *Kalnit*, 264 F.3d at 139. "The mere fact that insider stock sales occurred does not suffice to establish scienter." *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009) (citation omitted). Rather, a plaintiff must demonstrate that the sales are "unusual" or "suspicious" in timing or amounts. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995); *Gildan Activewear*, 636 F. Supp. 2d at 270-71. Plaintiff does not allege a single fact supporting such a strong inference.

*First,* the same SEC filings on which Plaintiff relies make clear Dr. Perfetti's sales were nondiscretionary "sell to cover" transactions to satisfy tax obligations resulting from the vesting

settlement of Restricted Stock Units.[9]  Courts routinely hold that such sales are neither unusual nor suspicious, and therefore not probative of scienter.  *See, e.g.*, *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (finding that records showing "a consistent pattern of trading undertaken primarily to make payments required for the exercise of stock options or to pay taxes" did not support an inference of scienter); *In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*, No. 13-CV-755 (KBF), 2014 WL 585658, at *13 (S.D.N.Y. Feb. 14, 2024) (finding that "sales . . . executed to cover the tax withholding obligations due upon the vesting of shares of restricted stock" . . . "are not indicative of fraud"); *In re Tyson Foods, Inc. Sec. Litig.*, 275 F. Supp. 3d 970, 1001 (W.D. Ark. 2017) (finding that "stock sold by defendants for tax purposes following the vesting of performance shares" is not at all probative of scienter).

*Second,* the timing of Dr. Perfetti's stock sales does not suggest any connection to the alleged fraud.  Courts reject scienter allegations where insider sales are not closely tied to corrective disclosures.  *See Gildan Activewear*, 636 F. Supp. at 271 ("Plaintiffs' allegations are empty vessels, as the trades occurred weeks before the principal allegation of material misstatement, and many months before the release of any negative information"); *In re Sina Corp. Sec. Litig.*, No. 05-CV-2154 (NRB), 2006 WL 2742048, at *12 (S.D.N.Y. Sept. 26, 2006) (finding no inference of scienter "because [ ] the sales occurred more than a month before" a corrective disclosure).  Applied made multiple public disclosures in early 2024, but Dr. Perfetti's first sale occurred on March 14, 2024, without any alleged connection to a material event.  *See* Chapman Decl. Ex. 7; SAC at ¶ 339.  His second sale, on June 6, 2024, occurred approximately one month

---

[9] *See* SEC Form 4 for Dr. Riccardo Perfetti (Mar. 18, 2024), https://appliedtherapeutics.gcs-web.com/static-files/43c9ef91-3cbe-4f89-b1ff-54a80b369b9a, Chapman Decl. Ex. 7; SEC Form 4 for Dr. Riccardo Perfetti (June 10, 2024), https://appliedtherapeutics.gcs-web.com/static-files/2764f615-0170-408c-8bc3-ad5b68d645f6, Chapman Decl. Ex. 8; SEC Form 4 for Dr. Riccardo Perfetti (Aug. 23, 2024), https://appliedtherapeutics.gcs-web.com/static-files/436bf501-cd23-4000-9c43-e3ec48d3ea00, Chapman Decl. Ex. 9.

*after* Applied responded to the FDA's Form 483 and a month *before* Applied's July 1, 2024 press release announcing Applied had been added to the Russell 3000 Index.[10]  *See* Chapman Decl. Ex. 8; SAC at ¶ 339.  Nor is there any alleged connection between his August 23, 2024 sale and a material event; it was well before the September 18, 2024 press release regarding the FDA not intending to hold an Advisory Committee meeting.[11]  *See* Chapman Decl. Ex. 9; SAC at ¶ 339. These sales were not made "on the eve" of any news and do not fit the pattern of an executive trading on inside information.  *See Frazier v. VitalWorks, Inc.*, 341 F. Supp. 2d 142, 161-62 (D. Conn. 2004) (nine- and seven-week gaps between sales and bad news did not raise a "'strong inference' . . . that defendants were trying to sell off stock on the basis of inside information.").

As pled, the SAC lacks any coherence or plausibility.  Plaintiff alleges that Applied, Dr. Shendelman, and Dr. Perfetti knew the Pediatric Study results were incomplete and therefore inadequate for FDA approval.  SAC at ¶¶ 4, 29, 79, 83, 84, 86.  Yet, according to the SAC, Applied nevertheless invested significant time and resources preparing for commercialization despite allegedly knowing the NDA was destined to fail while simultaneously misleading the public by suggesting approval was likely.  *See* SAC at ¶¶ 9, 16, 206-224.  That theory defies common sense, and courts routinely reject such implausible narratives.  *See, e.g.*, *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 627 (4th Cir. 2008) ("It is improbable that [Defendant] would stake its existence on a drug and a clinical trial that the company thought was doomed to failure."); *Johnson v. Pozen Inc.*, No. 1:07-CV-599, 2009 WL 426235, at *25 (M.D.N.C. Feb. 19, 2009) (inference of scienter undermined where defendants pointed out that "if they had known in 2006 that the FDA would

---

[10] *See generally,* Press Release, Applied Therapeutics Added to Russell 3000 Index (Jul. 1, 2024), Chapman Decl. Ex. 12.

[11] *See generally,* Press Release, Applied Therapeutics Provides Regulatory Update on Govorestat for the Treatment of Classic Galactosemia (Sept. 18, 2024), Chapman Decl. Ex. 11.

require an additional study beyond [that included in their application], [they] would have conducted the study then, therefore speeding up FDA approval.").

Nor could the alleged scheme have continued. The FDA's rejection of the NDA—an inevitable and foreseeable outcome under Plaintiff's theory—would have publicly exposed any misrepresentations. As one court observed, "the tenuous plausibility of the alleged scheme substantially weakene[d] the overall strength of plaintiffs' scienter allegations[,] . . . [where defendants] must have . . . realized that . . . [the public would] quickly uncover the scheme." *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 446-47 (S.D.N.Y. 2006). The SAC offers no rational explanation for why Dr. Perfetti would incur such a risk.

2.  Plaintiff's Recklessness Allegations are Deficient.

Scienter can also be established if the complaint alleges "strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit*, 264 F.3d at 138-39. As set forth in *In re Carter-Wallace, Inc. Sec. Litig.*, "to survive dismissal under the conscious misbehavior theory, the [Plaintiff] must show that they alleged reckless conduct by the [Defendants], which is, at the least, conduct which is highly unreasonable and [ ] represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." 220 F.3d 36, 39 (2d Cir. 2000) (internal quotation marks omitted). The SAC fails on this score too.

Plaintiff attempts to infer scienter by alleging Dr. Perfetti was aware of the observations in the Form 483[12] (which had nothing to do with the Dosing Errors or the Dosing Errors Clinical

---

[12] *FDA Form 483 Frequently Asked Questions*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/inspection-references/fda-form-483-frequently-asked-questions (last visited May 23, 2025) ("The FDA Form 483 does not constitute a final Agency determination[.]"). *See* SAC at ¶ 155.

Data) based on no more than his position and authorship of the manuscript of the Pediatric Study. SAC at ¶ 153-154, 358. But "positional scienter" is legally insufficient. "[T]o establish an inference of scienter, Plaintiff[s] must do more than allege that the Individual Defendants had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions." *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 406 (S.D.N.Y. 2006). Courts in this Circuit have consistently held that "accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *City of Brockton Ret. Sys. v. Avon Prod., Inc.*, No. 11-CV-4665 (PGG), 2014 WL 4832321, at *19 (S.D.N.Y. Sept. 29, 2014) (citation omitted); *see also In re Checkpoint Therapeutics Sec. Litig.*, No. 24-CV-2613 (PAE), 2025 WL 1434400, at *25 (S.D.N.Y. May 19, 2025) (rejecting complaint's "attempt to derive scienter from the fact that a defendant is a 'key officer' well versed in a company's business" due to case law which "rejects the premise of *ex officio* omniscience of all business risks").

In support, Plaintiff cites a 2023 notice from the FDA addressed to Dr. Perfetti concerning an unrelated clinical trial, reminding Dr. Perfetti to submit results to ClinicalTrials.gov. Chapman Decl. Ex. 12; SAC at ¶ 154. But this notice concerns a clinical trial not relevant to Plaintiff's claims and says nothing about what information Dr. Shendelman may have shared with him in May 2024 concerning her communications with the FDA. This type of speculation—untethered to specific facts regarding meetings, documents, or witness accounts—does not support a strong inference of scienter under the PSLRA. *See Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) ("[A]ccusations founded on nothing more than a defendant's corporate position are entitled to no weight.");

20

*Checkpoint*, 2025 WL 1434400, at \*26 ("The AC's allegations do not 'support the probability that a person in [Defendant's] position . . . would possess the information alleged.'") (citation omitted).

Plaintiff further alleges that Dr. Perfetti's awareness of the Dosing Errors and Data Deletion, combined with interim feedback from the FDA, created a known barrier to FDA approval. SAC at ¶ 29. But scienter requires knowledge that such issues would *necessarily* preclude approval. *See Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 579 (S.D.N.Y. 2015). Plaintiff offers no particularized facts to support the conclusory allegation that Dr. Perfetti believed the Dosing Errors or Data Deletion would inevitably block approval of the NDA.

Interim FDA feedback alone does not support an inference of scienter. Courts have rejected similar claims where drugs continued through the regulatory approval process despite known FDA concerns. *See In re Alkermes Pub. Ltd. Co. Sec. Litig.*, 523 F. Supp. 3d 283, 295 (E.D.N.Y. 2021). Govorestat's continued progression through the review process undermines any inference of recklessness. The FDA could have issued a CRL at multiple points but chose not to. The ongoing dialogue between the FDA and the Company suggested a collaborative, iterative process. Absent any indication that approval was foreclosed, no strong inference of recklessness arises.

3.  Plaintiff Impermissibly Relies on Group Pleading to Infer Scienter.

Plaintiff improperly relies on group pleading and fails to allege with particularity how Dr. Perfetti possessed the requisite scienter for the statements attributed to him. While the group pleading doctrine permits a presumption that corporate insiders are responsible for group-published documents, such as press releases or annual reports, it does not excuse compliance with Rule 9(b)'s requirement to plead specific facts establishing scienter as to *each* defendant. *Levy v. Maggiore*, 48 F. Supp. 3d 428, 448-49 (E.D.N.Y. 2014) (citations and punctuation omitted); *In re*

*DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009); *C.D.T.S. v. UBS AG*, No. 12-CV-4924 (KBF), 2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom.*, *Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015). Allegations based on guilt by association are insufficient.

To successfully attribute a statement to a director or officer using group pleading, a plaintiff must meet the heightened pleading standards of PSLRA and allege specific facts giving rise to a strong inference that the individual acted with scienter in making the statement. *See Levy*, 48 F. Supp. 3d at 457. Allegations that a defendant, by virtue of their position, knowingly or recklessly failed to disclose facts necessary to avoid misleading investors are insufficient to plead scienter. *See id.* Pleadings of knowledge based on access to confidential information are similarly insufficient. *See In re Health Mgmt., Inc. Sec. Litig.*, 970 F. Supp. 192, 204-05 (E.D.N.Y. 1997).

Here, Plaintiff alleges Dr. Perfetti misled investors but offers no facts showing he played any role authoring, reviewing, or approving any investor communications or SEC filings. A "strong inference" that Dr. Perfetti must have reviewed and approved the statements based on his role at Applied is insufficient. *See Levy*, 48 F. Supp. 3d at 457. These pleading deficiencies are fatal under well settled law. *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 388 (E.D.N.Y. 2003) (dismissing securities fraud claim where plaintiffs' conclusory and vague allegations failed to show specific information that contradicted individual defendants' statements).

### D.     Plaintiff Fails to Plead Loss Causation.

To adequately plead loss causation, Plaintiff must allege that the purported fraudulent statement or omission was the cause of his claimed loss. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005); *see also In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 57 (2d Cir. 2025). While he need not rule out every alternative cause, Plaintiff must still allege facts

22

showing he would have avoided some or all of his loss but for the alleged fraud. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 189 (2d Cir. 2015).

Plaintiff does not come close to meeting this burden. Rather than plead facts showing the requisite causal link for *each* alleged omission, *see Castillo v. Dean Witter Discover & Co.*, No. 97-CV-1272 (RPP), 1998 WL 342050, at *5 (S.D.N.Y. June 25, 1998), Plaintiff lumps all challenged statements together and claims losses "when the true facts were disclosed to the market," after the Company disclosed the issuance of the CRL. SAC at ¶ 31. But the CRL did not correct or contradict any of Dr. Perfetti's purported statements, nor did it reveal any previously undisclosed falsehoods in Dr. Perfetti's interpretation of the Pediatric Study data. Indeed, Plaintiff does not point to any public statement by Dr. Perfetti about the contents or approvability of the NDA, and Applied expressly disclosed the risk that the FDA might not agree with its interpretation of the Pediatric Study data.[13]

The stock price decline following the CRL reflects the materialization of a known regulatory risk—not the exposure of hidden fraud. Courts are clear: known risks coming to pass do not establish loss causation. *See Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 358 (S.D.N.Y. 2014), *accord In re CRM Holdings, Ltd. Sec. Litig.*, No. 10-CV-975 (RPP), 2012 WL 1646888, at *30-31 (S.D.N.Y. May 10, 2012). Accordingly, Plaintiff has not alleged the purported omissions were the proximate cause of his loss, and his claims fail for lack of loss causation.

## II.     Plaintiff Fails to Adequately Plead Scheme Liability.

Count I of the SAC also alleges that Dr. Perfetti engaged in a scheme to defraud investors

---

[13] *See generally,* Press Release, Applied Therapeutics Provides Regulatory Update on Govorestat for the Treatment of Classic Galactosemia (Sept. 18, 2024), Chapman Decl. Ex. 11.

in violation of Section 10(b) and Rule 10b-5(a) and (c).  SAC at ¶¶ 433-434.  To state such a claim, a plaintiff must show, among other things, "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance."  *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2nd Cir. 2021) (citation omitted).  Rule 9(b) further requires that "a plaintiff must specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue."  *See In re CarLotz, Inc. Sec. Litig.*, No. 21-CV-5906 (AS), 2024 WL 3924708, at *2 (S.D.N.Y. Aug. 23, 2024).

Plaintiff primarily contends that Dr. Perfetti, "by virtue of [his] receipt of information reflecting the true facts of Applied, [his] control over, and/or receipt and/or modification of Applied's allegedly materially misleading statements, and/or [his] associations with the Company which made [him] privy to confidential propriety information concerning Applied" engaged in a fraudulent scheme by making and disseminating materially false or misleading statements which "(a) deceive[d] the investing public . . . ; (b) artificially inflate[d] and maintain[ed] the market price of Applied common stock; and (c) caused Plaintiff . . . to purchase or otherwise acquire Applied common stock at artificially inflated prices."  SAC at ¶¶ 434, 437.  Specifically, Dr. Perfetti is alleged to have deceived investors by "omitting to disclose information required to be included in the NDA," failing to disclose the NDA was deficient, and failing to disclose the Data Deletion causing the inability to verify data for 11 clinical test participants.  *Id.* at ¶ 434.

However, established law in this Circuit "require[s] scheme claims to be premised on deceptive acts that are distinct from misstatements and omissions that underlie an accompanying Rule 10b-5 claim."  *Danske Bank A/S*, 11 F.4th at 105 n.6 (collecting cases); *see also See In re*

24

*Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 217 (S.D.N.Y. 2020) (no scheme liability where claim was "indistinguishable from the misstatements and omissions alleged under [the Rule 10b-5 claim]"). While "misstatements and omissions can form part of a scheme liability claim, . . . an actionable scheme liability claim also requires something beyond misstatements and omissions, such as dissemination." *Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022).

The NDA submission itself was not "a deceptive or manipulative act" separate from any alleged omission. Plaintiff alleges that Dr. Perfetti engaged in fraud by failing to disclose information regarding deficiencies in the NDA and underlying clinical data. But those allegations sound in omission-based liability and are tethered directly to the content and context of later alleged misstatements—not to any inherently deceptive conduct related to the submission itself. The submission of an NDA, even if it later proved to be deficient, is not by itself deceptive unless accompanied by conduct designed to intentionally mislead investors or regulators in a way that constitutes more than just a failure to disclose. *See Rio Tinto plc*, 41 F.4th at 49.

Plaintiff has not alleged the NDA submission involved such independent deceit or manipulation, and instead bases the scheme liability claim on the same alleged misstatements underlying the Rule 10b-5(b) claim. Therefore, the SAC fails to plead the requisite predicate act necessary to support liability under Rule 10b-5(a) and (c). This failure is dispositive, and the scheme liability claims must be dismissed.

## III.    Dr. Perfetti Had No Duty to Correct a Statement in the Company's 2023 Form 10-K.

Plaintiff further seeks to impose liability for violations of Section 10(b) and Rule 10b-5(b) based on Dr. Perfetti's alleged duty to correct statements in the Company's 2023 Form 10-K (and restated on April 22, 2024 in Applied Annual Report to Stockholders). SAC at ¶ 162. Significantly, the SAC acknowledges that the statements were accurate when made and contends

the supposed duty to correct arose due to subsequent events. But the SAC pleads no facts as to how Dr. Perfetti made the statements, such as that he signed the Form 10-K, or authored, reviewed, or approved the statements in question (he did none). As such, there was no duty to correct, particularly by someone who was not the speaker. *See IBM*, 163 F.3d at 109; *see also Schiff*, 602 F.3d at 167.

IV.    **Plaintiff's Section 20(a) Claim Against Dr. Perfetti Fails.**

To state a claim under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], a plaintiff must plead "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, No. 20-CV-9992 (PAC), 2021 WL 5854075, at *8 (S.D.N.Y. Dec. 9, 2021) (quoting *ATSI Commc'ns*, 493 F.3d at 108). Plaintiff's attempt to plead a Section 20(a) claim here fails for at least two reasons.

*First*, Plaintiff has not pled any facts showing Dr. Perfetti controlled the Company. The title of CMO alone does not support such an inference, much less for the statements at issue. *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (holding that "officer or director status alone does not constitute control for the purposes of Section 20(a) liability."). The SAC does not point to any press release, earnings call transcript, or analyst report that specifically attributes any statement to Dr. Perfetti. Nor did he certify or sign any Company SEC filing. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 457 (S.D.N.Y. 2005) (concluding that officers or directors who signed a registration statement controlled the company at time of the company's IPO; but dismissing control-person claims against individuals who did not sign a registration statement); *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 485 (S.D.N.Y. 2004) (holding that directors who also signed a registration statement controlled those

26

who wrote the report); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 437 (S.D.N.Y. 2001) (holding that a director and audit committee member who signs an SEC filing is presumed to have the power to control those who write the report).

*Second,* Plaintiff alleges no facts showing that Dr. Perfetti had actual power or control over any alleged wrongdoer. *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010). Officer status alone is insufficient. *In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02-CV-910 (GEL), 2005 WL 1907005, *12 (S.D.N.Y. Aug. 8, 2005). Vague claims that a defendant was a "decision-making official" or had "access to material information" are also insufficient. *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 572 (S.D.N.Y. 2011).

To survive dismissal, Plaintiff must show Dr. Perfetti not only had control over the alleged primary violator, but also over the specific statements at issue. *Alstom*, 406 F. Supp. 2d at 487. Plaintiff has not pled any facts showing that Dr. Perfetti (Applied's CMO) controlled Dr. Shendelman (Applied's founder and former CEO, President, and Board Chair), who is the only other individual defendant alleged to have made a false or misleading statement and who *outranked* Dr. Perfetti. *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 497 (S.D.N.Y. 2018) (dismissing controlling person claim against company's CFO where alleged primary violator was company's CEO and a board member). Therefore, the Section 20(a) claim remains legally insufficient as a matter of law and should be dismissed.

27

**CONCLUSION**

For the reasons set forth above, the Court should dismiss the claims in the SAC against

Defendant Riccardo Perfetti with prejudice.

Dated: New York, New York
      June 27, 2025

                                    Respectfully submitted,


                                    MCGUIREWOODS, LLP


                                    By:      */s/ Jeffrey J. Chapman*
                                             Jeffrey J. Chapman
                                             Stephen G. Foresta
                                             Louis D. Greenstein
                                             Lauren H. Mann
                                             1251 Avenue of the Americas
                                             20th Floor
                                             New York, New York 10020
                                             Telephone: (212) 548-7060
                                             jchapman@mcguirewoods.com
                                             sforesta@mcguirewoods.com
                                             lgreenstein@mcguirewoods.com
                                             lmann@mcguirewoods.com

                                             *Counsel for Riccardo Perfetti*

## <u>LOCAL RULE 7.1(c) CERTIFICATION</u>

I hereby certify that the foregoing Memorandum of Law complies with the word-count limitations set forth in Local Rule 7.1(c).  The foregoing Memorandum contains 8,719 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but does include material contained in footnotes, according to the word processing software used to prepare it.

Dated: New York, New York
June 27, 2025

Respectfully submitted,


MCGUIREWOODS, LLP


By:    */s/ Jeffrey J. Chapman*
Jeffrey J. Chapman
Stephen G. Foresta
Louis D. Greenstein
Lauren H. Mann
1251 Avenue of the Americas
20th Floor
New York, New York 10020
Telephone: (212) 548-7060
jchapman@mcguirewoods.com
sforesta@mcguirewoods.com
lgreenstein@mcguirewoods.com
lmann@mcguirewoods.com

*Counsel for Riccardo Perfetti*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June, 2025, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record in the above-referenced case.

MCGUIREWOODS, LLP

By:     */s/ Jeffrey J. Chapman*
        Jeffrey J. Chapman
        Stephen G. Foresta
        Louis D. Greenstein
        Lauren H. Mann
        1251 Avenue of the Americas
        20th Floor
        New York, New York 10020
        Telephone: (212) 548-7060
        jchapman@mcguirewoods.com
        sforesta@mcguirewoods.com
        lgreenstein@mcguirewoods.com
        lmann@mcguirewoods.com

        *Counsel for Riccardo Perfetti*