**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE APPLIED THERAPEUTICS SECURITIES LITIGATION | Case No. 1:24-CV-09715 (DLC) (VF)<br><br>**ECF Case** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT SHOSHANA SHENDELMAN'S MOTION TO DISMISS**
**THE SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Rachel M. Fritzler
Bella F. Gianani
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
Rachel.Fritzler@kirkland.com
Bella.Gianani@kirkland.com

Mark Filip, P.C.
Jules H. Cantor
KIRKLAND & ELLIS LLP
333 W. Wolf Point Plaza
Chicago, Illinois 60654
(312) 862-2000
Mark.Filip@kirkland.com
Jules.Cantor@kirkland.com

*Attorneys for Shoshana Shendelman*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.     THE COMPLAINT FAILS TO PLEAD SCIENTER ........................................... 1

      A.     Plaintiff Fails to Allege Motive ................................................................ 2

           1.     Dr. Shendelman's Stock Sales ....................................................... 2

           2.     Vesting of RSUs ............................................................................ 3

      B.     Plaintiff Fails to Allege Strong Circumstantial Evidence of Scienter ....................................................................................................... 5

      C.     Plaintiff's Remaining Scienter Allegations Are Insufficient ..................... 8

II.    CERTAIN ALLEGED MISSTATEMENTS ARE INACTIONABLE .................. 9

      A.     Dr. Shendelman's NDA Approval and Regulatory Process Statements are Inactionable ........................................................................ 10

      B.     Dr. Shendelman's Statements About the FDA's Review and PDUFA Date Were Not Materially Misleading ......................................... 11

CONCLUSION .................................................................................................................. 12

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Group, Inc.*,
　47 F.3d 47 (2d Cir. 1995)............................................................................................3, 4

*In re Alkermes*,
　523 F. Supp. 3d 283 (E.D.N.Y Feb. 26, 2021) .........................................................7

*In re Arqit Quantum Inc. Sec. Litig.*,
　774 F. Supp. 3d 505 (E.D.N.Y. Mar. 28, 2025)..........................................................9

*In re Axsome Therapeutics, Inc. Sec. Litig.*,
　2025 WL 965265 (S.D.N.Y. Mar. 31, 2025) ...........................................................10

*In re Bristol-Myers Squibb Sec. Litig.*,
　312 F. Supp. 2d 549 (S.D.N.Y. 2004)........................................................................11

*Christiansen v. Spectrum Pharmaceuticals*, *Inc.*,
　2024 WL 246020 (S.D.N.Y. Jan 23, 2024) .............................................................10

*In re Didi Global Inc. Sec. Litig.*
　2024 WL 1119483 (S.D.N.Y. Mar. 14, 2024) ...........................................................4

*Fort Worth Employers' Retirement Fund v. Biovail Corp.*
　615 F. Supp. 2d 218 (S.D.N.Y. 2009).......................................................................11

*Gillis v. QRX Pharma Ltd.*,
　197 F. Supp. 3d 557(S.D.N.Y. July 6, 2016)..............................................................6

*Glaser v. The9, Ltd.*,
　772 F. Supp. 2d 573 (S.D.N.Y. Mar. 28, 2011).......................................................6, 7

*Kalnit v. Eichler*,
　264 F.3d 131 (2d Cir. 2001)......................................................................................2, 5

*In re Lottery.com, Inc. Sec. Litig.*
　715 F. Supp. 3d 506 (S.D.N.Y. 2024)..........................................................................4

*Malin v. XL Capital, Ltd.*,
　312 Fed. Appx. 400 (2d Cir. 2009)...............................................................................2

*Marksman Partners LP v. Chantal Pharm. Corp.*,
　927 F. Supp. 1297 (C.D. Cal. 1996) .............................................................................3

*In re MELA Sciences, Inc. Sec. Litig.*,
    2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012)........................................................................12

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)........................................................................................................1

*Oklahoma Police Pension Fund & Ret. Sys. v. Teligent, Inc.*,
    2020 WL 3268531 (S.D.N.Y. June 17, 2020) ..........................................................................10

*In re Oxford Health Plans*, *Inc.*,
    187 F.R.D. 133 (S.D.N.Y. 1999) .................................................................................................3

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. Jan. 28, 2015) ...................................................................6, 7, 8

*Schaeffer v. Nabriva Therapeutics*
    2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020).............................................................................7

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001)...........................................................................................................9

*Skiadas v. Acer Therapeutics Inc.*
    2020 WL 3268495 (S.D.N.Y. June 16, 2020) ............................................................................5

*In re Solucorp Indus., Ltd. Sec. Litig.*,
    2000 WL 1708186 (S.D.N.Y. Nov. 15, 2000)............................................................................4

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
    551 U.S. 308 (2007)................................................................................................................1, 9

*In re The Hain Celestial Grp. Inc. Sec. Litig.*,
    2019 WL 1429560 (E.D.N.Y. Mar. 29, 2019)............................................................................4

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016).......................................................................................................10

*In re Travelzoo Inc. Sec. Litig.*,
    2013 WL 1287342 (S.D.N.Y Mar. 29, 2013) .............................................................................3

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)............................................................................8

*Van Dongen v. CNinsure Inc.*,
    951 F. Supp. 2d 457 (S.D.N.Y. 2013).........................................................................................3

*In re Vertiv Holdings Co. Sec. Litig.*,
    2024 WL 358106 (S.D.N.Y. Jan. 31, 2024) ...............................................................................9

**Statutes**

PSLRA ...............................................................................................................................1, 5

Securities Exchange Act Section 10(b)..........................................................................9

**INTRODUCTION**

Plaintiff's opposition to Dr. Shendelman's motion to dismiss and accompanying memorandum (the "Motion") recites general legal standards and then, without more, asserts he has met them. These protestations cannot remedy the Complaint's fatal deficiencies. The Motion should be granted because Plaintiff's theories of scienter are consistently rejected, and his motive allegations do not tie Dr. Shendelman's stock sales and the vesting of restricted stock units ("RSUs") to the alleged fraud. Moreover, his arguments on scienter and the falsity of the challenged alleged misstatements (the "Challenged FS") fail because the Complaint lacks particularized facts showing Dr. Shendelman knew or recklessly disregarded that the Dosing Errors[1] and Data Deletion necessarily prevented approval of the NDA.

**ARGUMENT**

**I.     THE COMPLAINT FAILS TO PLEAD SCIENTER**

The PSLRA requires Plaintiff to plead "particularized" facts, *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000), raising a "strong inference" of scienter. *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007). Lacking any such allegations in the Complaint, Plaintiff relies on misleading citations and conclusions that general legal standards are met. These efforts fail.

The Parties agree there are two ways to plead scienter: (1) motive and opportunity or (2) circumstantial allegations of conscious misbehavior or recklessness. Mot. 8; Opp. 16. The Complaint establishes neither. Plaintiff lacks particularized facts establishing motive concerning Dr. Shendelman's Sales or the vesting of certain incentive-based RSUs. Accordingly, "the

---

[1]     Capitalized terms not defined herein have the same meanings as in the Motion.

1

strength of [Plaintiff's] circumstantial allegations [of scienter] must be correspondingly greater," *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001)—a bar Plaintiff cannot meet.[2]

Plaintiff faults Dr. Shendelman for "evaluat[ing] each set of allegations" separately instead of holistically.  Opp. 4.  But where "none of plaintiffs' allegations show[s] even a weak inference of scienter, there is no logical way" that the combined allegations "form a ***strong*** inference of scienter."  *Malin v. XL Capital, Ltd.*, 312 Fed. Appx. 400, 402 (2d Cir. 2009) (emphasis in original).  "Plaintiff[] cannot establish scienter by combining inadequate allegations of motive with inadequate allegations of recklessness."  *Id.*

### A. Plaintiff Fails to Allege Motive

#### 1. Dr. Shendelman's Stock Sales

Plaintiff argues Dr. Shendelman's Sales during the Class Period provide "strong evidence of motive and scienter."  Opp 17.  Plaintiff is wrong for two reasons.

First, the March and June 2024 Sales were ***non-discretionary*** to "cover tax withholding obligations ***in connection with the vesting and settlement of compensatory [RSUs].***"  Exs. C–D. Executives routinely sell stock to offset tax obligations when shares vest, and courts find such sales unsuspicious.  Mot. 9 (collecting cases).  Plaintiff questions why the Sales were necessary and why Dr. Shendelman did not satisfy her obligations with cash.  Opp. 17.  But Plaintiff has no answer to Dr. Shendelman's relevant authority, and his argument that she should have used cash is wholly unsupported.  *Id*.

Second, Plaintiff fails to show Dr. Shendelman's Sales were at all suspicious.  Plaintiff does not dispute the Sales combined equaled 13.8% of her pre-Sales holdings, and no individual Sale represented more than 9.06%.  Mot. 10.  Nor does Plaintiff rebut caselaw holding "the

---

[2]     Unless otherwise noted, all internal citations are omitted, and all emphases added.

inference of scienter is weakened" where sales are "only a small fraction of [the seller's] shares[.]" *In re Travelzoo Inc. Sec. Litig.*, 2013 WL 1287342, at *10 (S.D.N.Y Mar. 29, 2013); *see also* Mot. 10–11 (collecting cases, including with higher percentages of holdings sold).

Instead, Plaintiff argues that "even stock sales that were comparatively small in amount, but were unusual because of their timing can evince a finding of scienter." Opp. 17.  But Plaintiff's cases are distinguishable and fail to show how the Sales—over three months before the first alleged corrective disclosure ("CD")—were suspiciously timed.  *See Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 475–76 (S.D.N.Y. 2013) (sale directly connected to first alleged CD); *In re Oxford Health Plans*, *Inc.*, 187 F.R.D. 133, 139 (S.D.N.Y. 1999) (sales occurred just two months before first alleged CD).[3]

Plaintiff also does not rebut authority finding sales *closer* to alleged CDs *unsuspicious*. *See* Mot. 11 n.11.  And Plaintiff's attempt to distinguish *Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995), is misplaced.  *Acito* analyzed two discrete sales.  The one Plaintiff distinguishes was disclosed in advance and an exercise of stock options.  Opp. 18.  But the sale analogous to Dr. Shendelman's sale involved 11% of defendant's holdings and was *neither* disclosed nor an exercise of stock options—but was still deemed unsuspicious.  *Id*. at 54.

Accordingly, Plaintiff's stock-sale allegations are insufficient to plead motive-based scienter.

### 2.  Vesting of RSUs

Alternatively, Plaintiff argues Dr. Shendelman was motivated to inflate Applied's stock price to receive 400,000 additional shares of RSUs.  Opp. 18–19.  Plaintiff alleges the RSUs vested

---

[3]    Plaintiff's out-of-circuit cases also fail.  For instance, in *Marksman Partners LP v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1313 (C.D. Cal. 1996), the insider sold no stock the previous three years, then sold 20% of her holdings.  Plaintiff alleges no such facts here.

only if Applied stock traded above $6.00 for 20 consecutive days, which occurred after September 18, 2024. *Id.* But the Second Circuit instructs that "executive compensation dependent upon stock value does not give rise to a strong inference of scienter." *Acito*, 47 F.3d at 54. Plaintiff argues this principle is inapplicable because he alleges a "specific" motive regarding incentive compensation, distinguishable from "'generic allegations'" applying to "any corporate executive." Opp. 19. But courts dismiss such claims, even where the alleged motive is more directly tied to the executive's compensation.[4]

For instance, in *In re Lottery.com, Inc. Securities Litigation*, plaintiffs alleged defendants were awarded RSUs "contingent on [a] business combination occurring" and were "motivated to deceive investors … because they stood to benefit personally from the … transaction." 715 F. Supp. 3d 506, 554 (S.D.N.Y. 2024). The court rejected this argument as "not compelling" as the Second Circuit has "reaffirmed … many times" *Acito*'s proposition that "[i]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated." *Id.* Analogous cases involving bonus-based compensation dependent on stock price are in accord. *In re Solucorp Indus., Ltd. Sec. Litig.*, 2000 WL 1708186, at *5 (S.D.N.Y. Nov. 15, 2000) (executives' "personal gain" from "bonus plan which tracked the company's stock price" insufficient for motive under *Acito*); *In re The Hain Celestial Grp. Inc. Sec. Litig.*, 2019 WL 1429560, at *20–21 (E.D.N.Y. Mar. 29, 2019) (similar).

Tellingly, Plaintiff lacks authority finding motive on similar facts. The cases cited regarding "specific economic motives" are far afield and distinguishable. Opp. 19. In *In re Didi Global Inc. Securities Litigation*, plaintiffs pled motive "specific to defendants' circumstances as a Chinese technology company" seeking an IPO, where "the Chinese government appeared poised

---

[4]    Notably, Plaintiff's Complaint lacks facts supporting the logical leap that Dr. Shendelman knew her alleged misstatements would inflate the stock price above $6.00 ***and keep it there for 20 days***.

to 'crack[ ]down' on Chinese technology companies" such that "'the window for … Chinese IPOs … could close very soon.'" 2024 WL 1119483, at *16–17 (S.D.N.Y. Mar. 14, 2024). Similarly, in *Skiadas v. Acer Therapeutics Inc.*, the court found motive because "[t]here [was] substantial doubt about the [c]ompany's ability to continue as a going concern within one year," and in that context, there is "a stronger incentive to bet the farm in a reckless gamble because the alternative is certain failure." 2020 WL 3268495, at *11 (S.D.N.Y. June 16, 2020). Plaintiff has not alleged Applied was under unique time pressure or in such financial peril at the time of the alleged misstatements that "the alternative [was] certain failure." *Id*. On the facts alleged, Plaintiff fails to meet his own standard.

**B. Plaintiff Fails to Allege Strong Circumstantial Evidence of Scienter**

Lacking motive, Plaintiff's circumstantial allegations of scienter must be "correspondingly greater." *Kalnit*, 264 F.3d at 142. Conclusory allegations that Dr. Shendelman "knowingly did this" or "recklessly did that" are insufficient—the PSLRA requires ***particularized facts*** showing scienter. Plaintiff has none.

Plaintiff asserts Dr. Shendelman knew the NDA was "materially deficient," and that the FDA knew of issues with the NDA, so her alleged misstatements were knowing and reckless. Opp. 20. But Plaintiff cites no definition—let alone authority—explaining what makes an NDA "materially deficient." The sole basis for Plaintiff's assertion that the NDA was "materially deficient" is his own conclusion that the Dosing Errors and Data Deletion rendered it so—and the hindsight fact that Applied received a CRL. Opp. 20–23. If by "materially deficient" Plaintiff means the NDA would "necessarily" be rejected, there are no particularized facts supporting or even suggesting that assertion. This is fatal to Plaintiff's claims. *See* Mot. 12–18 (detailing the Complaint's failure to allege Dr. Shendelman contemporaneously knew or recklessly disregarded that the Dosing Errors and Data Deletion would necessarily prevent approval of the NDA).

5

Plaintiff argues that "necessarily prevent approval" is not the required standard, offering three purported alternatives. Opp. 21–22. First, Plaintiff asserts scienter is pled through "sufficient factual allegations to indicate that defendants understood that their public statements were inaccurate, or were 'highly unreasonable' in failing to appreciate that possibility[,]" Opp. 21 (citing *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 534 (S.D.N.Y. Jan. 28, 2015)). Second, he argues it is sufficient to allege Dr. Shendelman "had access to non-public information contradicting [her] public statements[.]" Opp. 22 (citing *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 579, 601(S.D.N.Y. July 6, 2016)).

These first two standards are **not** alternatives to the "necessarily prevent approval" standard. Rather, they state the general legal principle, which courts apply in this context as requiring a showing that flaws would "necessarily prevent approval." *Gillis,* 197 F. Supp. 3d at 579 ("***In the context of the development and approval process for a new drug***, if the management knows that certain facts will necessarily prevent the regulatory approval and conceals these facts from the investing public, then there is scienter.") (cleaned up).

Plaintiff's third alternative—that scienter exists "if the management is reckless in dealing with such adverse facts," Opp. 22 (quoting *Gillis*, 197 F. Supp. 3d at 579)—is an **elaboration** of the "necessarily prevent approval" standard. "[S]uch adverse facts" directly refers to facts that "necessarily prevent … regulatory approval." *Gillis*, 197 F. Supp. 3d at 579.

The Complaint meets no articulation of the standard. It lacks allegations that Dr. Shendelman was informed—by the FDA, or otherwise—that approval was unlikely or impossible. Mot. 12–18. Alleged awareness of FDA regulations, *see, e.g.,* Compl. ¶¶6, 383, is not tantamount to contemporaneous knowledge that the Data Deletion and Dosing Errors foretold the NDA's denial. *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. Mar. 28, 2011) (scienter

6

allegations must "show that individual defendants actually possessed the knowledge highlighting the falsity of public statements"; in contrast, that defendants allegedly "'were aware' of certain information," or "'would have' or 'should have' had such knowledge is insufficient"). Nor do the alleged facts demonstrate that Dr. Shendelman knew, or recklessly disregarded, that certain FDA regulations would *necessarily* prevent approval. Mot. 12–18.

At most, Plaintiff alleges Dr. Shendelman was aware of *potential* regulatory hurdles. Compl. ¶¶ 335–371. But submitting an imperfect NDA is not securities fraud, and FDA feedback need not be consistently positive. Courts recognize that in the "continuous dialogue between the FDA and the proponent of a new drug," "[p]roblems, issues, and questions arise" which "tend to get answered in the process." *Sanofi*, 87 F. Supp. 3d at 542. Plaintiff lacks facts supporting an inference that Dr. Shendelman should have considered the FDA's knowledge of the Data Deletion and Dosing Errors as anything other than part of normal, imperfect progress through FDA review.

Plaintiff also argues scienter can be inferred from information allegedly provided in the Form 483. Opp. 22. This ignores decisions in this Circuit and regulatory guidance holding Forms 483 constitute "interim feedback" and are inactionable. *See Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at *12 (S.D.N.Y. Apr. 28, 2020) (awareness of Form 483 insufficient to support scienter); *see also* Mot. 5 n.6, 16.[5]

Finally, Plaintiff has no meaningful response to the FDA's decision to continually advance the NDA, even after learning of the Dosing Errors and Data Deletion, which undermines an inference that Dr. Shendelman recklessly disregarded that those issues necessarily prevented approval. Mot. 15, 17. Plaintiff suggests the progress was FDA *in*action, and only specific action

---

[5]     Plaintiff's attempt to distinguish *In re Alkermes*, 523 F. Supp. 3d 283 (E.D.N.Y Feb. 26, 2021) fails. The *Alkermes* court found no evidence of "information conveyed to [the company] that should reasonably have been interpreted to suggest that FDA approval … was not possible or even unlikely," *id.* at 294—a deficiency shared by the Complaint.

can be an "encouraging regulatory decision" that courts recognize as inconsistent with recklessness. Opp. 23 (quoting *Sanofi*, 87 F. Supp. 3d at 545). Even if this distinction were supported, Plaintiff alleges the FDA took action—by holding the Mid-Cycle and Late-Cycle Meetings. Compl. ¶¶254, 261. And Plaintiff's unsupported claim that the NDA's progress throughout the Class Period is "not material" to recklessness is inconsistent with established law. *Sanofi*, 87 F. Supp. 3d at 545.

In sum, Plaintiff lacks particularized facts supporting that Dr. Shendelman knew, or should have known, the NDA would necessarily be denied. As a result, he has not pled scienter.

## C. Plaintiff's Remaining Scienter Allegations Are Insufficient

Plaintiff's remaining allegations do not support a strong inference of scienter.

*First,* Dr. Shendelman's role as Applied's CEO does not establish knowledge that the NDA would necessarily be rejected—which is the relevant inquiry. *See supra* 6–7.

*Second*, even if core operations allegations were viable supplementary evidence of scienter, there is nothing to supplement—Plaintiff's scienter theories are deficient. Mot. 20.

*Third*, scienter is unsupported by the allegation that Dr. Shendelman "spoke regularly" about the NDA. Opp. 25. Plaintiff ignores authorities finding this argument "circular" and "without merit." Mot. 20.

*Fourth*, Plaintiff has no response to Dr. Shendelman's argument that her separation from Applied does not support scienter. Plaintiff merely restates that argument, citing authority where an executive's departure was *in*sufficient to infer scienter. Opp. 25 (citing *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *18 (S.D.N.Y. Sept. 28, 2012)).

*Fifth*, post-class-period statements are relevant only where they "confirm[]" what a defendant knew or should have known, but did not disclose, during the class period. *In re*

*Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001).  Plaintiff's authority **supports** this rule, and he does not dispute that the alleged podcast statements are consistent with Defendants' statements during the Class Period.  *See* Mot. 22.  Having failed to show Dr. Shendelman's post-Class-Period statements were misleading, these statements are irrelevant to scienter.

*        *        *

In sum, Plaintiff's scattered theories do not raise an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.  Because the more compelling inference is that Dr. Shendelman believed the NDA could be approved, the Complaint must be dismissed.[6]

### II.        CERTAIN ALLEGED MISSTATEMENTS ARE INACTIONABLE

Plaintiff's assertion that the Court need not address Dr. Shendelman's arguments on actionability because she challenged only **some** alleged misstatements, Opp. 10, is unsupported. In Plaintiff's authority, the court deferred ruling on certain actionability arguments on **Section 11 claims** (which Plaintiff does not raise) after finding at least some survived.  *In re Arqit Quantum Inc. Sec. Litig.*, 774 F. Supp. 3d 505, 537 n.27 (E.D.N.Y. Mar. 28, 2025).  By contrast, courts frequently grant partial dismissal under Section 10(b) as to specific inactionable statements.  *See In re Vertiv Holdings Co. Sec. Litig.*, 2024 WL 358106, *3 (S.D.N.Y. Jan. 31, 2024) (noting benefit of dismissing challenged misstatements, as "the litigation will be streamlined," and "[t]he parties should not be required to focus their efforts in discovery" on inactionable statements).  The Court should similarly examine and dismiss every Challenged FS.

---

[6]        Absent a primary violation of Section 10(b), Plaintiff's Section 20(a) claim also fails.  Mot. 27.

9

### A. Dr. Shendelman's NDA Approval and Regulatory Process Statements are Inactionable

Plaintiff insists even puffery or statements of opinion may be actionable if the speaker was aware of contradicting facts. Opp. 11–14. But Plaintiff fails to allege with particularity any such facts. Without contradicting facts, Plaintiff's cited authority confirms the alleged misstatements are inactionable.

To not be puffery, an optimistic statement must contain "misrepresentations of existing facts" when the speaker "knew the contrary was true." *In re Axsome Therapeutics, Inc. Sec. Litig.*, 2025 WL 965265, at *7 (S.D.N.Y. Mar. 31, 2025). Similarly, for an alleged omission, "[t]he core inquiry is whether the omitted facts would ***conflict*** with what a reasonable investor would take from the statement itself." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016). Plaintiff's assertion that Dr. Shendelman "knew that the NDA was materially deficient and that the FDA had discovered the [Data Deletion]," Opp. 11, does not show the necessary direct conflict with Dr. Shendelman's general optimistic statements regarding the NDA review.[7]

Unlike Plaintiff's cases, the Complaint does not allege Dr. Shendelman was aware of "negative information that is ***likely to cause delays or rejection*** of the NDA." Opp. 11–12; *see supra* 5–8. Absent contrary facts, Plaintiff's authority confirms Dr. Shendelman's optimistic statements were puffery. *See Teligent, Inc.*, 2020 WL 3268531, at *12 (statements regarding defendants' "cooperation with the FDA" and the company's "commit[ment] to its FDA responsibilities" were puffery even where Forms 483 were undisclosed).

---

[7]    Courts have found a "direct conflict" showing falsity where, for instance, defendants: (i) touted agreement with the FDA regarding appropriate dosage despite being informed otherwise by FDA officials, *Christiansen v. Spectrum Pharmaceuticals, Inc.*, 2024 WL 246020, at *8 (S.D.N.Y. Jan 23, 2024); and (ii) denied "any FDA communications regarding deficiencies" despite receiving a Form 483, *Oklahoma Police Pension Fund & Ret. Sys. v. Teligent, Inc.*, 2020 WL 3268531, at *16 (S.D.N.Y. June 17, 2020). The Complaint alleges nothing analogous.

Plaintiff also fails to distinguish *In re Bristol-Myers Squibb Securities Litigation*, 312 F. Supp. 2d 549, 554 (S.D.N.Y. 2004). That the drug in *Bristol-Myers* was developed by another company, Opp. 13–14, was irrelevant to the holding that the relevant statements were inactionable. *Id.* at 558. And, as in *Bristol-Myers*, Defendants acknowledged the risk of non-approval throughout the Class Period in documents quoted in the Complaint. *See* Ex. F ("Forward-looking statements in this release involve substantial risks and uncertainties … includ[ing] … our ***ability to obtain*** and timing of regulatory approval of our current and future product candidates[.]"); Ex. G (same); Ex. H (same); Ex. I (same). Plaintiff identifies no reason this Court should not similarly conclude that Dr. Shendelman's statements merely "expressed personal optimism about regulatory events not under [Applied]'s control." 312 F. Supp. 2d at 558.

### B. Dr. Shendelman's Statements About the FDA's Review and PDUFA Date Were Not Materially Misleading

Plaintiff argues Dr. Shendelman's November 2024 statements—that the NDA was in the "very late stages of regulatory review" and confirming the previously scheduled PDUFA date— are actionable because they "falsely implied that the NDA was progressing as planned towards approval." Opp. 14. This ignores analogous decisions holding that true statements of historical fact are not misleading by omission of what would happen in the future.

For instance, in *Fort Worth Employers' Retirement Fund v. Biovail Corp.*, a statement "merely referr[ing] to the historical fact … that the FDA gave [defendant] a 'PDUFA' date" was not misleading because it "sa[id] nothing about what the FDA's response was expected to say." 615 F. Supp. 2d 218, 230 (S.D.N.Y. 2009). The same is true of Dr. Shendelman's statements, and Applied's risk disclosures that approval was not guaranteed, *supra* 11, undercut that these true statements misled investors to believe approval was guaranteed. Plaintiff's assertion that *Biovail* did not involve relevant material omissions, Opp. 15, is simply wrong. There, the court directly

11

rejected plaintiffs' allegation—like Plaintiff's here—that defendants omitted "that the … NDA was at greater risk of non-approval (or delayed approval)." *Id.* at 231.[8]

On these allegations, Dr. Shendelman's optimistic statements and her November 2024 statements of historical fact are independently inactionable, and all the Challenged FS, *see* Appx. A, must be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice in its entirety.

---

[8]    Plaintiff fails to distinguish additional authority.  Opp. 15.  For example, Plaintiff highlights *In re MELA Sciences, Inc. Securities Litigation,* 2012 WL 4466604, at *12 (S.D.N.Y. Sept. 19, 2012), arguing a statement is inactionable when it "does not allege facts showing … statements regarding the timing of approval were false when made[.]"  Opp 15.  That premise applies.  Plaintiff has never asserted the NDA was ***not*** in the "very late stages of regulatory review" or the PDUFA date was ***not*** November 28, 2024.  Like in *MELA Sciences*, these are "accurate statements of fact" and "in no way misleading."  2012 WL 4466604, at *34–35.

12

Dated: July 18, 2025                                Respectfully submitted,

/s/ Rachel M. Fritzler
_____

Rachel M. Fritzler
Bella F. Gianani
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
Rachel.Fritzler@kirkland.com
Bella.Gianani@kirkland.com

Mark Filip, P.C.
Jules H. Cantor
KIRKLAND & ELLIS LLP
333 W. Wolf Point Plaza
Chicago, Illinois 60654
(312) 862-2000
Mark.Filip@kirkland.com
Jules.Cantor@kirkland.com

*Attorneys for Shoshana Shendelman*

13

## <u>LOCAL RULE 7.1(c) CERTIFICATION</u>

I hereby certify that the foregoing Memorandum of Law complies with the word-count limitations as set forth in Local Rule 7.1(c).  The foregoing Memorandum contains 3,499 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but does include material contained in footnotes, according to the word processing software used to prepare it.

Dated: New York, New York
      July 18, 2025                   Respectfully submitted,

                                      */s/ Rachel M. Fritzler*

                                      Rachel M. Fritzler