UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLIED THERAPEUTICS SECURITIES LITIGATION | Case No. 1:24-cv-09715 (DLC) (VF)<br><br>CLASS ACTION |

STIPULATION OF SETTLEMENT

## TABLE OF CONTENTS

PREAMBLE ................................................................................................................. 1

WHEREAS CLAUSES ............................................................................................... 1

    A.    Procedural Background of the Litigation................................................. 1

    B.    The Settlement ....................................................................................... 6

    C.    Defendants' Denials of Liability............................................................ 6

    D.    Lead Plaintiff's Claims and the Benefits of Settlement......................... 7

TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT ........... 7

    1.    Definitions............................................................................................. 8

    2.    The Settlement ..................................................................................... 19

        a.    The Settlement Amount ............................................................ 20

        b.    The Cash Settlement Amount ................................................... 21

        c.    The Warrant Settlement Amount .............................................. 22

        b.    The Escrow Agent ..................................................................... 23

        c.    Taxes and Tax Expenses ........................................................... 25

        d.    Termination of Settlement ........................................................ 27

        e.    Resale Registration Statement .................................................. 28

    3.    Class Certification................................................................................ 29

    4.    Preliminary Approval Order, Notice, and Settlement Hearing............ 30

    5.    Releases................................................................................................ 31

    6.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund....................... 33

    7.    Objections and Requests for Exclusion .............................................. 39

    8.    Lead Counsel's Attorneys' Fees and Expenses ................................... 40

    9.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination.................................................................................... 43

10.    No Admission of Liability ............................................................ 47

11.    Miscellaneous Provisions............................................................. 48

## PREAMBLE

This Stipulation of Settlement, dated as of November 4, 2025 (together with all Exhibits hereto, the "Stipulation"), is made and entered into by and between: (i) Lead Plaintiff Dr. Martin Dietrich ("Lead Plaintiff"), on behalf of himself and each Class Member;[1] (ii) Applied Therapeutics, Inc. ("Applied" or the "Company"); and (iii) Shoshana Shendelman, Ph.D. and Riccardo Perfetti, M.D., Ph.D. (the "Individual Defendants," collectively with Applied, the "Defendants"), by and through their undersigned counsel. The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, release, settle, and dismiss with prejudice the Litigation and the Released Claims and Released Defendants' Claims (both defined below), subject to the approval of the Court and the terms and conditions set forth in this Stipulation (the "Settlement").

Throughout this Stipulation, all terms used with initial capitalization, but not immediately defined, shall have the meanings ascribed to them in Section 1 below.

## WHEREAS CLAUSES

### A.    Procedural Background of the Litigation

1.      The action is currently pending before the Honorable Denise L. Cote in the United States District Court for the Southern District of New York (the "Court"), under the caption *In re Applied Therapeutics Securities Litigation*, Case No. 1:24-cv-09715-DLC-VF (the "Litigation").

2.      The initial complaint was filed on December 17, 2024 (ECF No. 1) under the caption *Alexandru v. Applied Therapeutics, Inc. et al.*, No. 1:24-cv-09715 (S.D.N.Y.). A related action was filed on December 27, 2024 titled *Ikram v. Applied Therapeutics, Inc. et al.*, No. 1:24-cv-09973 (S.D.N.Y.).

---

[1]      All capitalized terms not otherwise defined shall have the meanings ascribed to them in §IV.1 herein.

1

3.      On January 7, 2025, the Court accepted *Ikram* as related to *Alexandru*, and on January 14, 2025 issued an Order binding *Ikram* to the schedule set in *Alexandru*. *Ikram* ECF No. 11.

4.      On March 7, 2025, the Court held a pre-trial conference to address pending motions for appointment as lead plaintiff in the Litigation, and on March 11, 2025, issued an Order that consolidated *Alexandru* and *Ikram* into the Litigation, appointed Dr. Martin Dietrich as Lead Plaintiff, and approved Lead Plaintiff's selection of Wolf Popper LLP as Lead Counsel. ECF No. 59. The Order also set deadlines for (i) Lead Plaintiff to file an amended complaint, (ii) the Defendants to answer or file motions to dismiss that amended complaint, (iii) the parties to file joint or separate proposals for a schedule for further pre-trial proceedings, including proposed schedules for discovery and briefing on any motion for class certification and preferences for the forum and timing of settlement communications, and (iv) the parties to file a proposed protective order and a proposed order concerning discovery of electronically stored information ("ESI").

5.      Lead Plaintiff's First Amended Consolidated Complaint for Violations of the Federal Securities Laws was filed on May 2, 2025 (the "CAC"). ECF No. 72. On May 16, 2025, the parties filed a joint proposal for a schedule of pre-trial proceedings, in response to the Court's March 11, 2025 Order. ECF No. 77.

6.      On May 23, 2025, Applied answered the CAC, and the Individual Defendants each separately moved to dismiss the CAC. ECF Nos. 78-86.

7.      On May 27, 2025, the Court issued an Order lifting the PSLRA discovery stay. ECF No. 87. The Order set a deadline for the parties to exchange their Rule 26(a)(1) initial disclosures, and scheduled a Court conference to set a pre-trial schedule for the Litigation.

8.      On May 30, 2025, the parties filed a joint proposed protective order and joint proposed order concerning discovery of ESI, which the Court entered on June 2, 2025. ECF Nos. 88-89, 91-92.

9.      On June 6, 2025, consistent with the Court's March 11, 2025 Scheduling Order, Lead Plaintiff informed the Court that it would amend the CAC in response to the pending motions to dismiss the CAC. ECF No. 94.

10.     On June 9, 2025, the Court denied the pending motions to dismiss the CAC as moot and set a schedule for the Defendants to respond to the expected second amended complaint. ECF No. 95.

11.     On June 12, 2025, the Court held a Rule 16 pre-trial conference where the Court and the parties discussed a schedule for pre-trial proceedings. On June 13, 2025, the Court issued a Pretrial Scheduling Order that set a schedule and deadlines for (i) the parties to complete fact and expert discovery, (ii) Lead Plaintiff to move for class certification, and (iii) the parties to move for summary judgment or file a joint pretrial order. ECF No. 98.

12.     On June 13, 2025, Lead Plaintiff filed the Second Consolidated Amended Class Action Complaint (the "Complaint"). ECF No. 99. The Complaint alleged that Defendants violated Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. The Complaint's allegations are brought on behalf of a "Class" of all persons and entities that purchased or otherwise acquired the publicly traded common stock of Applied on a U.S.-based exchange between January 3, 2024 and December 2, 2024, inclusive (the "Class Period"), and who were damaged thereby.

13.     The Complaint alleged that Defendants made materially false and misleading statements, with scienter, in violation of Section 10(b) and Rule 10b-5 during the Class Period

concerning, among other things: the viability of Applied's New Drug Application to the U.S. Food and Drug Administration ("FDA") for govorestat to treat Classic Galactosemia ("Galactosemia"), a rare genetic metabolic disorder that can be fatal if untreated (the "NDA"); Defendants' interactions with the FDA concerning the NDA; the reliability of the data underlying the NDA; and alleged known material deficiencies with the NDA. Lead Plaintiff alleged that these misrepresentations and omissions caused the price of Applied's common stock to trade at artificially inflated levels throughout the Class Period, until the market learned the truth through, among other things, the November 27, 2024 disclosure of a complete response letter ("CRL") from the FDA to Applied rejecting the NDA and the December 3, 2024 disclosure of the contents of a Warning Letter from the FDA to Applied that identified two significant issues with the NDA, including the deletion of study data and that clinical study patients received the incorrect dose of govorestat, which Defendants failed to disclose to the FDA. Lead Plaintiff alleged that as a result of these and other disclosures, from November 27, 2024 through December 20, 2024, the price of Applied's common stock plummeted $7.69 per share, or 89.7%, causing significant damages to Lead Plaintiff and the Class.

14.      On June 27, 2025, the Individual Defendants each moved to dismiss the Complaint pursuant to Rule 12(b)(6), and Applied separately filed an Answer to the Complaint. ECF Nos. 100-108. Lead Plaintiff opposed the motions to dismiss on July 11, 2025. ECF Nos. 109-110. The Individual Defendants filed reply submissions in further support of their motions to dismiss on July 18, 2025. ECF Nos. 111-113. The Court has not yet ruled on the Individual Defendants' motions to dismiss.

15.     On July 3, 2025, Lead Plaintiff served on all Defendants Requests for Production of Documents ("RFPs") and Interrogatories. On August 4, 2025, the Defendants each served responses and objections to the Requests for Production of Documents and Interrogatories.

16.     On August 19, 2025, the Settling Parties participated in a full-day confidential settlement mediation with Jed D. Melnick, Esq., an experienced mediator. The mediation was preceded by the submission and exchange of mediation statements by the Settling Parties. Further, prior to the mediation, Lead Plaintiff provided the Defendants with a list of documents responsive to Lead Plaintiff's RFPs that Lead Plaintiff requested Defendants prioritize and produce in advance of the mediation. Prior to the mediation, Applied produced 255 pages of documents in response to Lead Plaintiff's discovery requests.

17.     Following good-faith negotiations, on August 19, 2025, the Settling Parties reached an agreement-in-principle to resolve the Litigation, subject to the negotiation of a formal Stipulation of Settlement and approval by the Court. The agreement-in-principle included payment to the Class of fifteen million dollars ($15,000,000) in cash and the issuance of Warrants (as defined below) to purchase up to 1,000,000 shares of Applied common stock, with an exercise price of $0.48 per share, the closing price of Applied common stock on August 19, 2025, with such Warrants to expire on the one-year anniversary of the Effective Date (as defined in this Stipulation); provided that in the event Applied is acquired or merges or otherwise engages in or is subject to an extraordinary transaction that could impact the value of the Warrants prior to the Effective Date, the Warrants will be considered issued and outstanding for purposes of such a transaction. The consideration for the Settlement is more fully described herein.

18.     This Stipulation (together with the Exhibits hereto) reflects the final and binding agreement, and a compromise of all matters that are in dispute, between the Settling Parties.

### B.    The Settlement

1.    As set forth herein, the Parties desire to settle and resolve any and all actual or potential claims by, between, or among Lead Plaintiff and the Class, on the one hand, and Defendants, on the other hand, arising out of or relating to the subject matter of the Litigation, including the allegations of the Complaint.

### C.    Defendants' Denials of Liability

1.    Throughout the course of this Litigation and in this Stipulation, Defendants expressly have denied, and continue to deny, each and all of the claims and contentions alleged by Lead Plaintiff, as well as any and all allegations of fault, liability, wrongdoing, or damages whatsoever arising out of any of the conduct, statements, acts, or omissions that have been alleged, or that could have been alleged, in the Litigation. Defendants continue to believe that the claims asserted against them in the Litigation are without merit and that the Litigation itself should not be certified as a class action for purposes of trial or adjudication of liability and damages. Defendants maintain that they have meritorious defenses to the claims alleged in the Litigation.

2.    As set forth below, neither the Settlement itself nor any of the terms of this Stipulation shall be construed or deemed to be evidence of or to constitute an admission, concession, or finding of any fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted in the Litigation. Defendants are entering into this Stipulation solely to eliminate the burden, expense, and uncertainty of further protracted litigation. Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as this Litigation. Defendants have determined that it is desirable and beneficial to them that the Litigation be settled, fully and finally, in the manner and upon the terms and conditions set forth in this Stipulation.

### D.    Lead Plaintiff's Claims and the Benefits of Settlement

1.    Lead Plaintiff and Lead Counsel believe that the claims asserted in the Litigation have merit and that the investigation undertaken to date supports the claims asserted therein. However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation through trial and through appeals. Lead Plaintiff and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in this Litigation. Lead Plaintiff and Lead Counsel have also taken into account the financial condition of Applied at the time of Settlement. Lead Plaintiff and Lead Counsel also are mindful of the burdens of proof under, and possible defenses to, the securities law violations asserted in the Litigation. Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class. Based on their own investigation and evaluation, Lead Plaintiff and Lead Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Lead Plaintiff and the Class.

2.    The Stipulation, whether or not consummated, any proceedings relating to any settlement, or any of the terms of any settlement, whether or not consummated, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of Lead Plaintiff or the Class concerning any infirmity in the claims asserted in the Litigation.

### TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and between Lead Plaintiff (on behalf of himself and the Class) and Defendants, by and through their respective undersigned counsel, that, subject to the approval of the Court pursuant to Rule 23(e), and in consideration of the benefits flowing to the parties from the Settlement, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation

7

shall be dismissed with prejudice upon and subject to the terms and conditions of this Stipulation, as follows:

### 1.    Definitions

As used in this Stipulation the following terms, when capitalized, have the meanings specified below:

1.1    "Authorized Claimant" means any Class Member who submits a valid Claim to the Claims Administrator that is approved by the Claims Administrator or Court for payment from the Net Settlement Fund.

1.2    "Applied" or the Company means Applied Therapeutics, Inc.

1.3    "CAFA Notice" means the form of notice that Defendants must provide to satisfy the requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1711-1715 ("CAFA").

1.4    "Cash Settlement Amount" has the meaning set forth in ¶ 1.53.

1.5    "Claim(s)" means a paper claim submitted on a Proof of Claim and Release form, substantially in the form attached hereto as Exhibit A-4, or an electronic claim that is submitted to the Claims Administrator.

1.6    "Claimant" means any person who submits a Claim to the Claims Administrator in such form and manner, and within such time, as the Court shall prescribe.

1.7    "Claims Administrator" means the firm of Angeion Group, LLC, which shall administer the Settlement.

1.8    "Class" means all Persons or entities who purchased or otherwise acquired the publicly traded common stock of Applied on a U.S. based exchange between January 3, 2024 and December 2, 2024, inclusive (the Class Period). Excluded from the Class are: (i) Defendants; (ii) the current and former officers, directors, and employees of Applied (the "Excluded Persons"); (iii) any person or entity that purchased Applied securities in the March 1, 2024 Private Placement

(the "Private Placement Investors"); (iv) members of Defendants', Excluded Persons', or Private Placement Investors' immediate families, legal representatives, heirs, successors or assigns; and (v) any entity in which Defendants, the Excluded Persons, or the Private Placement Investors have or had a controlling interest. Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely excludes himself, herself, or itself therefrom pursuant to the terms of the Stipulation and the Preliminary Approval Order.

1.9    "Class Member" or "Member of the Class" mean a Person who falls within the definition of the Class as set forth in ¶ 1.8 above.

1.10    "Class Period" means the period from January 3, 2024 through December 2, 2024, inclusive.

1.11    "Complaint" or "SAC" means the Second Consolidated Amended Class Action Complaint filed on June 13, 2025, ECF No. 99.

1.12    "Court" means the United States District Court for the Southern District of New York, as set forth in Section I.

1.13    "Defendants" mean Applied and the Individual Defendants.

1.14    "Defendants' Counsel" means Wilmer Cutler Pickering Hale and Dorr LLP, McGuireWoods LLP, and Kirkland & Ellis LLP.

1.15    "Effective Date," or the date upon which this Settlement becomes "Effective," means the first date by which all of the events and conditions specified in ¶ 9.1 of the Stipulation have occurred, or have been waived.

1.16    "Escrow Account" means an interest-bearing escrow account established by the Escrow Agent.

1.17    "Escrow Agent" means the Huntington Bank or its respective successor(s).

1.18    "Exchange Act" means the Securities Exchange Act of 1934.

1.19    "Excluded Persons" has the meaning set forth in ¶ 1.8.

1.20    "Fee and Expense Application" means the application submitted by Lead Counsel seeking attorneys' fees, expenses and costs, and a Lead Plaintiff Award.

1.21    "Fee and Expense Award" means the attorneys' fees, expenses and costs, as may be awarded by the Court to Lead Counsel.

1.22    "Final" means, with respect to any order or Judgment of the Court, that such order or Judgment represents a final and binding determination of all issues within its scope and has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage of time for seeking appellate review, without action. Without limitation, an order or Judgment becomes final when: (a) either no appeal therefrom has been filed and the time has passed for any notice of appeal to be timely filed therefrom; or (b) an appeal has been filed and either (i) the court of appeals has affirmed the order or Judgment or dismissed that appeal, and the time for any reconsideration or further appellate review has passed; or (ii) a higher court has granted further appellate review and that court has either affirmed the underlying order or judgment or affirmed the court of appeals' decision affirming the judgment or dismissing the appeal. For purposes of this paragraph, an "appeal" shall include any motion for reconsideration, or petition for a writ of *certiorari* or other writ that may be filed in connection with approval or disapproval of this Settlement. Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to: (i) attorneys' fees, costs, or expenses, (ii) the Plan of Allocation (as submitted or subsequently modified), or (iii) the procedures for determining Authorized

Claimants' recognized Claims, shall not in any way delay, affect, or preclude the Judgment from becoming Final.

    1.23    "Fundamental Transaction" has the meaning set forth in the Warrant Agreement attached as Exhibit C.

    1.24    "Individual Defendants" means Shoshana Shendelman, Ph.D., and Riccardo Perfetti, M.D., Ph.D.

    1.25    "Judgment" means the Final Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B, as well as any form of final judgment that may be entered by the Court in a form other than the form attached hereto as Exhibit B and where none of the Settling Parties elects to terminate this Settlement by reason of such variance, consistent with the terms of this Stipulation.

    1.26    "Lead Counsel" or "Class Counsel" means the law firm of Wolf Popper LLP.

    1.27    "Lead Plaintiff" or "Class Representative" means Dr. Martin Dietrich.

    1.28    "Litigation" or "Action" means *In re Applied Therapeutics Securities Litigation*, Case No. 1:24-09715-DLC-VF (S.D.N.Y.), and all other cases consolidated therewith.

    1.29    "Lead Plaintiff Award" means reimbursement to Lead Plaintiff by the Court pursuant to 15 U.S.C. § 78u-4(a)(4) of his reasonable costs and expenses (including lost wages) directly relating to the representation of the Class.

    1.30    "Longform Notice" means the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached as Exhibit A-3.

1.31    "Net Settlement Fund" means the Settlement Fund less: (i) any Court-awarded Fee and Expense Award to Lead Counsel, and interest thereon; (ii) any Court-ordered Lead Plaintiff Award; (iii) Notice and Administration Expenses (as defined in ¶ 1.32) that are paid incurred, or due and owing; (iv) Taxes and Tax Expenses (defined in ¶ 2.19(c) below) that are paid, incurred, or due and owing; (v) any Warrant Exercise Expenses that are paid, incurred, or due and owing; (vi) any Warrant Registration Expenses that are paid, incurred, or due and owing; and (vii) other Court-approved deductions that are paid, incurred, or due and owing.

1.32    "Notice and Administration Expenses" means all costs, fees, and expenses associated with the Notice Program and otherwise administering or carrying out the terms of the Settlement. Such costs may include, without limitation: Escrow Agent costs; any costs necessary to administer the Escrow Account or Securities Escrow Account; Taxes or Tax Expenses; the costs of creating and administering a plan of allocation; the costs of publishing the Summary Notice; the costs of printing and mailing the Postcard Notice, the Longform Notice, or the Proof of Claim and Release forms; the costs of the Settlement Website; the costs of communicating with Persons regarding the proposed Settlement and claims administration process and assisting with the submission of Claims; the costs of receiving, reviewing and processing Proof of Claim and Release forms; and the costs of distributing the Net Settlement Fund or otherwise administering the Settlement Fund, as directed by the Court. Such costs do not include legal fees and shall not be deemed to be attorneys' fees, costs, or expenses.

1.33    "Notice Date" means the date on which Lead Plaintiff causes the Claims Administrator to mail, by first-class mail, postage prepaid, or, where practicable, email, a copy of the Postcard Notice to each Member of the Class and third-party nominees and custodians who can be identified by reasonable effort.

1.34    "Notice Program" or "Notices" means the full program to provide notice of pendency of class action to the Class as approved by the Court, including the Postcard Notice, the Summary Notice, the Longform Notice, and the Settlement Website.

1.35    "Person(s)" means an individual, corporation (including all divisions and subsidiaries thereof), limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, limited liability company, joint venture, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and all of their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees when acting in their capacity as such.

1.36    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund, whereby the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of this Stipulation, and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.37    "Postcard Notice" means the Postcard Notice of Proposed Settlement of Class Action, substantially in the form attached as Exhibit A-1.

1.38    "Preliminary Approval Order" means an order entered by the Court, substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation pursuant to Rule 23(e)(2), certification of the Class for Settlement purposes only, and approval for the Notice Program.

1.39    "Private Placement Investors" has the meaning set forth in ¶ 1.8.

1.40    "Proof of Claim and Release" means the Proof of Claim and Release form for submitting a Claim that a Class Member must complete and submit in order to seek to share in a

distribution of the Net Settlement Fund. The Proof of Claim and Release shall be substantially in the form attached hereto as Exhibit A-4, subject to approval of the Court.

1.41    "PSLRA" means the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 *et seq.*

1.42    "Related Parties" means any Person's former, present or future parents, subsidiaries, divisions, controlling persons, associates, related entities and affiliates, any entity in which a Person has a controlling interest, and each and all of their respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors (including financial or investment advisors), accountants, auditors, consultants, underwriters, investment bankers, commercial bankers, entities providing fairness opinions, general or limited partners or partnerships, limited liability companies, members, joint ventures and insurers and reinsurers or co-insurers of each of them; as well as the predecessors, successors, estates, immediate family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such.

1.43    "Released Claims" means any and all rights, liabilities, suits, debts, obligations, demands, damages, losses, judgment, matters, issues, claims (including "Unknown Claims," as defined in ¶ 1.61 hereof), and causes of action, of every nature and description whatsoever, in law, equity, or otherwise, whether known or unknown, asserted or unasserted, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, whether arising under federal, state, local, statutory, common, or foreign law, or any other law, rule, or regulation, whether class and/or individual in nature, that (a) Lead Plaintiff or any other Class Member asserted or could have asserted in the Litigation, or could in the future assert in any court or forum based upon, relating to, in connection

14

with, or arising from the allegations, transactions, facts, matters or occurrences, errors, representations, misrepresentations, actions, failures to act, or omissions that were alleged, set forth, or referred to in the Litigation, including claims for sanctions, and (b) also relate to the purchase of publicly traded shares of Applied common stock on a U.S. based exchange during the Class Period. "Released Claims" does not include: (i) derivative claims; (ii) ERISA claims; and (iii) claims to enforce the Settlement.

1.44    "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, against Lead Plaintiff, Lead Counsel or any Class Member that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Litigation, including claims for sanctions. Released Defendants' Claims do not include claims relating to the enforcement of the Settlement.

1.45    "Released Defendant Party" or "Released Defendant Parties" means each and all of Defendants, Defendants' Counsel, and any of their Related Parties.

1.46    "Released Parties" means the Released Defendants' Parties and Released Plaintiff's Parties.

1.47    "Released Plaintiff's Party" or "Released Plaintiff Parties" means each and all of Lead Plaintiff, Class Members, Lead Counsel, and any of their Related Parties.

1.48    "Resale Registration Statement" has the meaning set forth in ¶ 2.22.

1.49    "RFPs" has the meaning set forth in Whereas ¶ A.15.

1.50    "Rule" means a Federal Rule of Civil Procedure.

1.51    "Securities Escrow Account" means a securities account established by the Escrow Agent of Lead Counsel.

1.52 "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.53 "Settlement Amount" means (i) Fifteen Million U.S. Dollars (U.S. $15,000,000) to be paid by check, ACH payment, or wire transfer to the Escrow Agent pursuant to ¶ 2.6 of this Stipulation (the "Cash Settlement Amount"), and (ii) warrants to purchase up to one million (1,000,000) shares of Applied common stock (the "Warrant Settlement Amount") to be deposited into the Securities Escrow Account pursuant to ¶ 2.7. The Settlement Amount includes all Notice and Administration Expenses, any Fee and Expense Award to Lead Counsel (as allowed by the Court), any Lead Plaintiff Award (if allowed by the Court), Class Member benefits, and any other costs, expenses, or fees of any kind whatsoever associated with the Settlement, except, as set forth herein, the cost of the CAFA Notice shall be paid by Applied.

1.54 "Settlement Fund" means the Settlement Amount, plus (i) any Warrant Proceeds and (ii) all interest and accretions to the Settlement Amount or Warrant Proceeds.

1.55 "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) to consider final approval of the Settlement.

1.56 "Settlement Website" means www.APLTSecuritiesSettlement.com, a website created by the Claims Administrator in connection with administration of the Settlement.

1.57 "Settling Parties" means, collectively, Defendants and Lead Plaintiff, on behalf of himself and the Class.

1.58 "Summary Notice" means the Summary Notice of Proposed Settlement of Class Action, substantially in the form attached as Exhibit A-2.

1.59 "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and

additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.

1.60    "Tax Expenses" has the meaning set forth in ¶ 2.19.

1.61    "Unknown Claims" means: (a) any and all Released Claims, which any of the Lead Plaintiff, Members of the Class, or Lead Counsel do not know or suspect to exist in their favor at the time of the release of the Released Defendant Parties, which, if known by them, might have affected their settlement with and release of the Released Defendant Parties, or might have affected their decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement; and (b) any and all Released Defendants' Claims that any of the Defendants or Defendants' Counsel do not know or suspect to exist in their favor at the time of the release of Released Plaintiff Parties, which, if known by them might have affected their settlement and release of Released Plaintiff Parties. With respect to (a) any and all Released Claims against the Released Defendant Parties, and (b) any and all Released Defendants' Claims against Released Plaintiff Parties, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive, and each Released Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive, and each Released Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to

California Civil Code § 1542. The Released Plaintiff Parties and Released Defendant Parties acknowledge that they may hereafter discover facts, legal theories or authorities in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but (a) the Released Plaintiff Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish and release, and each Released Plaintiff Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and, upon the Effective Date, and by operation of the Judgment, shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Claims against the Released Defendant Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed, or may hereafter exist, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities, and (b) the Released Defendant Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish and release, and, upon the Effective Date, and by operation of the Judgment, shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Defendants' Claims against the Released Plaintiff Parties, the Class and Lead Counsel, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without

18

regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. The Settling Parties acknowledge, and the Released Plaintiff Parties and Released Defendant Parties shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is an essential element of the Settlement of which this release is a part.

1.62    "Warrants" means the warrants to purchase up to 1,000,000 shares of Applied common stock, in substantially the form of Exhibit C attached hereto.

1.63    "Warrant Certificate" has the meaning set forth in ¶ 2.7.

1.64    "Warrant Exercise Expenses" means the amount of money paid from the Settlement Fund to exercise the Warrants, up to a maximum of $480,000.

1.65    "Warrant Registration Expenses" means the amount of money paid from the Settlement Fund relating to the U.S. Securities and Exchange Commission filing fee associated with the filing of the Resale Registration Statement, including any amendments or supplements thereto, as required under applicable securities laws, up to a maximum of one hundred dollars ($100) in total.

1.66    "Warrant Settlement Amount" has the meaning set forth in ¶ 1.53.

1.67    "Warrant Proceeds" means any securities or cash issued or paid in connection with a Fundamental Transaction or a sale of the Applied common stock underlying the Warrants.

**2.    The Settlement**

2.1    The obligations incurred pursuant to the Stipulation: (a) are subject to approval by the Court and subject to the Judgment, reflecting such approval, becoming Final; and (b) shall fully and finally dispose of the Litigation and any and all Released Claims and Released Defendants' Claims upon and subject to the terms and conditions set forth herein.

### a.    The Settlement Amount

2.2    In full and final settlement of the claims asserted in the Litigation and in consideration of the releases specified in ¶¶ 5.1-5.4 herein, Applied shall pay, or shall cause to be paid on Defendants' behalf, the Cash Settlement Amount and the Warrant Settlement Amount.

2.3    Other than Applied's obligation to pay or cause to be paid the Cash Settlement Amount and the Warrant Settlement Amount into the Settlement Fund as set forth in ¶¶ 2.1-2.12, and to file the Resale Registration Statement pursuant to ¶¶ 2.22- 2.24, herein, the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any Claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, Tax Expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

2.4    Other than Applied's obligation to pay or cause the payment of the Settlement Amount in accordance with the terms of ¶¶ 2.1-2.12, and to file the Resale Registration Statement pursuant to ¶¶ 2.22- 2.24, neither Defendants nor any of their insurers shall have any obligation to make any other payments pursuant to the Stipulation, including, without limitation, compensation to any Class Member, payment of attorneys' fees and expenses awarded by the Court, payment of any fees or expenses incurred by any Class Member or Lead Counsel, or interest on the Settlement Amount of any kind and relating to any time period (including prior to the payment of the

Settlement Amount into the Escrow Account), except that, as provided herein, Applied shall pay the cost of CAFA Notice.

2.5    The parties acknowledge and agree that the payment(s) to be made under this Agreement are made for fair consideration and reasonably equivalent value. The parties further represent and warrant that the payment(s) are not intended to hinder, delay, or defraud any creditor, and that such payment(s) do not constitute a fraudulent transfer or conveyance under the United States Bankruptcy Code (11 U.S.C. §§ 548 et seq.), any applicable state fraudulent conveyance or transfer laws, or any similar applicable law. Each party acknowledges that it is entering into this Agreement in good faith and that the transactions contemplated herein are arm's-length, made in the ordinary course of business, and constitute a settlement of a bona fide dispute.

### b.    The Cash Settlement Amount

2.6    Applied shall pay, or shall cause to be paid, the Cash Settlement Amount to the Escrow Account by check, ACH payment, or wire transfer within thirty (30) calendar days after the later of (a) entry of the Preliminary Approval Order, or (b) Lead Counsel having provided: (i) a tax identification number and W-9 form for the Escrow Account; (ii) a completed wire transfer, ACH transfer, or similar anti-fraud payment request form signed by an authorized representative of the Escrow Account; and (iii) all required funding instructions and information, including payee name, telephone and e-mail contact information and a physical address for the Escrow Agent. The Escrow Agent shall deposit the Settlement Amount plus any accrued interest and Warrant Proceeds paid in cash from time to time in the Escrow Account. The Escrow Account shall be managed by the Escrow Agent under the supervision of Lead Counsel, subject to the Court's supervisory authority, for the benefit of Lead Plaintiff and the Class in accordance with the terms of the Stipulation and any order of the Court. The Escrow Account shall require a signature from a partner of the law firm of Wolf Popper LLP to release any portion of the Settlement Fund.

### c.    The Warrant Settlement Amount

2.7    Applied shall deliver, or shall cause to be delivered, to the Securities Escrow Account a warrant certificate registered in the name of the Lead Plaintiff on behalf of himself and each Class Member, to purchase up to the Warrant Settlement Amount (the "Warrant Certificate"), within fourteen (14) calendar days after the later of (a) entry of Final Judgment, or (b) Lead Counsel having provided: (i) a tax identification number and W-9 form for the Securities Escrow Account; (ii) a completed wire transfer, ACH transfer, or similar anti-fraud payment request form signed by an authorized representative of the Securities Escrow Account; and (iii) all required funding instructions and information, including payee name, telephone and e-mail contact information and a physical address for the Escrow Agent. The Escrow Agent shall deposit the Warrant Certificate plus any Warrant Proceeds paid in securities from time to time in the Securities Escrow Account. The Securities Escrow Account shall be managed by the Escrow Agent under the supervision of Lead Counsel, subject to the Court's supervisory authority, for the benefit of Lead Plaintiff and the Class in accordance with the terms of the Stipulation and any order of the Court. The Securities Escrow Account shall require a signature from a partner of the law firm of Wolf Popper LLP to release any portion of the Settlement Fund.

2.8    In addition, Applied shall deliver, or shall cause to be delivered, any Warrant Proceeds to the Escrow Account or Securities Escrow Account within thirty (30) calendar days after the later of (a) the effective date of a Fundamental Transaction or a sale of the Applied common stock underlying the Warrants or (b) Applied's receipt of the information set forth in ¶¶ 2.6 or 2.7, as applicable.

2.9    Neither the Warrant nor any part of the Warrant will be distributed to Class members.  At any time after payment of the Warrant Settlement Amount, Lead Counsel, at its sole discretion and acting on behalf of the Class, may direct the Escrow Agent to pay an amount up to

the Warrant Exercise Expense from the Escrow Account in order to exercise, sell, or monetize the Warrants as part of the Net Settlement Fund. Lead Counsel shall have no obligation to exercise the Warrant on behalf of the Class in the event that the value of the Warrant Proceeds to be received upon execution is less than the value of the Warrant Exercise Expenses necessary to execute the Warrant. Lead Counsel and the Escrow Agent shall have no liability for any action taken in connection with this paragraph except for willful misconduct.

2.10    If the Warrant is exercised and Warrant Proceeds are paid in the form of securities, then at any time after payment of Warrant Proceeds in the form of securities, Lead Counsel, at its sole discretion and acting on behalf of the Class, may direct the Securities Escrow Agent to sell or otherwise monetize the Warrant Proceeds paid in the form of securities as part of the Net Settlement Fund. Lead Counsel and the Escrow Agent shall have no liability for any action taken in connection with this paragraph except for willful misconduct.

2.11    In the event a Warrant Exercise Expense is incurred, and the Effective Date does not occur or the Settlement is terminated under the terms of this Stipulation, such that the Settlement Fund will revert to the Defendants, any Warrant Proceeds and all other consideration paid by Applied into the Settlement Fund shall be recoverable by and revert to Defendants.

2.12    The Parties shall cooperate in good faith to effectuate the issuance and (if applicable) the delivery of the Warrants in accordance with the terms of this Stipulation. Applied will bear all expenses it incurs with respect to the Warrants, including but not limited to expenses related to the issuance or exercise of the Warrants, the issuance of any Warrant Proceeds, and the distribution of the Warrant Proceeds to Class Members.

### b.    The Escrow Agent

2.13    The Escrow Agent shall invest the Cash Settlement Amount and any Warrant Proceeds in the form of cash deposited pursuant to ¶ 2.6 hereof in United States Agency or

Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund. The Released Defendant Parties, their counsel, and their insurers shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for the actions of the Escrow Agent.

2.14    The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of Defendants' Counsel.

2.15    Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Stipulation. The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for any transaction executed by the Escrow Agent.

2.16    All funds and securities held by the Escrow Agent or in the Escrow Account or Securities Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.17    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants and/or order of the Court, reasonable costs and expenses not to exceed $200,000 in Notice and Administration Expenses.

2.18    It shall be Lead Counsel's responsibility to disseminate the Notices to potential Class Members in accordance with this Stipulation and as ordered by the Court. The Released Defendant Parties shall have no responsibility for or liability whatsoever with respect to the notice process or the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto, including any claims that may arise from any failure of the notice process. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for any acts, omissions, or determinations made in the notice process and any Notice and Administration Expenses.

c.    **Taxes and Tax Expenses**

2.19    The Settling Parties agree as follows:

(a)    The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and the regulations promulgated thereunder. The Settling Parties and the Escrow Agent further agree that the Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treas. Reg. § 1.468B-1(c)(1). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.19, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to

timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)    For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treas. Reg. § 1.468B-2(k)(3)) shall be the Claims Administrator. The Claims Administrator shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the elections described in ¶ 2.19(a) hereof) shall be consistent with this ¶ 2.19 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 2.19(c) hereof.

(c)    All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Defendant Parties or their counsel with respect to any income earned by the Settlement Fund for any period after the deposit of the Settlement Amount and during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 2.19 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 2.19) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events, the Released Defendant Parties and their counsel shall have no liability or responsibility whatsoever for the Taxes or the Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for

Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay any Taxes and Tax Expenses, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). Neither the Released Defendant Parties nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.19.

2.20    This is not a claims-made settlement. As of the Effective Date, the Released Defendant Parties, and/or any other Person funding the Settlement on their behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason, and shall not have any liability should Claims made exceed the amount available in the Settlement Fund for payment of such Claims. The Released Defendant Parties shall not be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for the payment of Claims, Taxes and Tax Expenses, legal fees, or any other expenses payable from the Settlement Fund.

### d.    Termination of Settlement

2.21    In the event that this Stipulation is not approved or the Settlement is not approved, or is terminated or canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event that the Judgment is reversed or vacated or altered following any appeal taken therefrom, or is successfully collaterally attacked, or otherwise does

not become Final, then the Settlement Fund less Notice and Administration Expenses, Taxes or

Tax Expenses, or Warrant Exercise Expenses paid, incurred, or due and owing pursuant to ¶¶ 2.11,

2.17, and 2.19 hereof in connection with the Settlement provided for herein, plus Warrant

Proceeds, shall be refunded to Applied and/or its insurance carriers by the Claims Administrator

and/or the Escrow Agent, within thirty (30) calendar days of Lead Counsel's receipt of all written

instructions from Applied's counsel for such transfer and in accordance with ¶ 9.7 herein. Written

instructions for a refund of the balance of the Settlement Fund pursuant to this paragraph must

include: (a) a description of the event that triggers the refund of the balance of the Settlement Fund;

(b) tax identification number(s) and Form W-9(s) for the account(s) into which the balance of the

Settlement Fund will be transferred; (c) completed wire transfer, ACH transfer, or similar anti-

fraud payment request form(s) signed by an authorized representative of Applied and/or its

insurance carriers; and (d) all required funding instructions and information, including payee

name, telephone and e-mail contact information and a physical address for the account(s) into

which the balance of the Settlement Fund will be transferred. For the avoidance of doubt, if the

Effective Date does not occur or the Settlement is otherwise terminated under the terms of this

Stipulation, the following expenses that are paid, incurred, or due and owing shall not be

recoverable: Notice and Administration Expenses, Taxes or Tax Expenses, or Warrant Exercise

Expenses.

### e.    Resale Registration Statement

2.22    If this Stipulation and the Settlement are approved, as soon as practicable (and in

any event within sixty (60) calendar days of the Effective Date), the Company shall file a

registration statement on Form S-3 (or other appropriate form if the Company is not then eligible

to use Form S-3) providing for the resale by the Lead Plaintiff of the shares of Applied common

stock or other securities issuable upon exercise of the Warrants (the "Resale Registration

Statement"). The Company shall use reasonable efforts to cause such Resale Registration Statement to become effective and to keep such Resale Registration Statement effective at all times until the Lead Plaintiff does not own any Warrants or shares of Applied common stock issuable upon exercise thereof.

2.23    At any time after the payment of the Warrant Settlement Amount (but in any event within fifty (50) calendar days of the Effective Date), Lead Counsel, acting on behalf of the Class, shall direct the Escrow Agent to pay an amount up to the Warrant Registration Expense from the Escrow Account as part of the Net Settlement Fund, to the Company or the U.S. Securities and Exchange Commission pursuant to written instructions from Defendants' Counsel. All Warrant Registration Expenses shall be borne solely by the Class, and the Company shall have no obligation to file the Resale Registration Statement in the event that the Warrant Registration Expenses are not timely paid pursuant to this ¶ 2.23. For the avoidance of doubt, the maximum amount of Warrant Registration Expenses that will be paid by the Class will not exceed one hundred dollars ($100) in total.

2.24    In the event of a Fundamental Transaction that results in the holder of the Warrant having the right to receive securities of an acquiring or successor corporation which are then registered pursuant to Section 12(b) of the Securities Act of 1933, as amended, then the obligations of the Company set forth in paragraphs ¶¶ 2.22 and 2.23 shall apply to such acquiring or successor corporation, *mutatis mutandis*; provided, however, that such rights shall not be available to the Lead Plaintiff at such time as there is an effective registration statement available for the issuance or resale of such securities.

**3.    Class Certification**

3.1    The Judgment shall certify the Class for purposes of this Settlement only. However, in the event that the Judgment does not become Final or the Settlement fails to become effective

Docusign Envelope ID: 08DCB633-C269-4149-AF18-A9B24923E67A

for any reason, the parties agree that the Class shall be decertified without prejudice, and that the parties shall revert to their pre-settlement positions.

**4.      Preliminary Approval Order, Notice, and Settlement Hearing**

4.1     Immediately following execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall apply for entry of a Preliminary Approval Order.

4.2     Within seven (7) business days after entry of the Preliminary Approval Order, Applied shall provide to Lead Counsel and the Claims Administrator, at no cost to Lead Plaintiff or the Class, reasonably available transfer, holder, and nominee records in electronic and searchable form, such as Microsoft Excel, containing the names, last known addresses, and email addresses of Persons who purchased Applied common stock during the Class Period. It shall be solely Lead Counsel's responsibility to disseminate the Notices to the Class in accordance with this Stipulation and as ordered by the Court. Class Members shall have no recourse as to the Released Defendant Parties with respect to any claims they may have that arise from any failure of the notice process.

4.3     Pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, no later than ten (10) calendar days after this Stipulation is filed with the Court, Applied shall complete service of the CAFA Notice on the appropriate federal and state government officials and shall thereafter notify Lead Counsel as to completion of such service. Applied shall pay the costs of providing the CAFA Notice required by law. The cost of CAFA Notice shall not be paid from the Settlement Fund or be considered Notice and Administration Expenses.

4.4     Within twenty-eight (28) calendar days of the entry of the Preliminary Approval Order, the Claims Administrator shall mail, by first-class mail, postage prepaid, a copy of the Postcard Notice to each member of the Class who can be identified by reasonable effort, within

the time provided. The Postcard Notice shall be substantially in the form attached hereto as Exhibit A-1. On or before the Notice Date, the Claims Administrator shall publish the Longform Notice (substantially in the form attached hereto as Exhibit A-3) and Proof of Claim and Release (substantially in the form attached hereto as Exhibit A-4) in a form available for download (i.e. PDF) on the Settlement Website. The Claims Administrator shall also mail or email a copy of the Full Notice and Proof of Claim and Release to any Class Member that requests one by phone, email, or mail. On or before the Notice Date, the Claims Administrator shall cause the Summary Notice substantially in the form of Exhibit A-2 attached hereto to be published once over PRNewswire or a similar wire service with similar reach within the time provided by the Court's Preliminary Approval Order. The cost of providing such Notice shall constitute Notice and Administrative Expenses. Subject to the requirements of the Preliminary Approval Order, Lead Counsel and the Claims Administrator shall submit to the Court affidavits demonstrating the adequacy of its efforts to provide notice to the Class Members. The Defendants shall have no responsibility with respect to the tasks enumerated or described in this paragraph.

4.5    Lead Counsel shall request that, after notice is given and following the filing of this Stipulation, the Court hold the Settlement Hearing and approve the Settlement of the Litigation as set forth herein. Lead Counsel shall request that the Court schedule the Settlement Hearing for a date that is no earlier than one hundred and eighteen (118) calendar days after the entry of the Preliminary Approval Order.  At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**5.    Releases**

5.1    Upon the Effective Date, each and every Released Plaintiff Party, including, but not limited to, Lead Plaintiff and the Members of the Class, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished,

discharged, and dismissed with prejudice each and every one of the Released Claims against each and every one of the Released Defendant Parties, and shall forever be barred and enjoined from asserting, commencing, instituting, prosecuting, continuing to prosecute, or maintaining in any court of law or equity, arbitration tribunal, or administrative forum any and all of the Released Claims against any and all of the Released Defendant Parties, whether or not such Released Plaintiff Party executes and delivers the Proof of Claim and Release or shares in the Net Settlement Fund. Nothing contained herein shall release or bar any Released Plaintiff Party or Released Defendant Party from bringing any action or claim to enforce the terms of this Stipulation or the Final Judgment.

5.2    Any Proof of Claim and Release that is executed by Class Members shall release all Released Claims against the Released Defendant Parties and shall be substantially in the form contained in Exhibit A-4 attached hereto.

5.3    Upon the Effective Date, each of the Released Defendant Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Defendants' Claims against Lead Plaintiff, the Class and Lead Counsel. Claims to enforce the terms of this Stipulation are not released.

5.4    The parties shall request that the Court enter a Contribution Bar Order (the "Bar Order") in the Judgment, as follows: To the fullest extent permitted by law, all Persons shall be permanently enjoined, barred, and restrained from bringing, commencing, prosecuting, or asserting any claims, actions, or causes of action for contribution, indemnity, or otherwise against any of the Released Defendant Parties seeking as damages or otherwise the recovery of all or any part of any liability, judgment, or settlement which they pay, are obligated to pay, agree to pay, or that are paid on their behalf to the Class or any Class Member arising out of, relating to or

concerning any acts, facts, statements, or omissions that were or could have been alleged in the Litigation, whether arising under state, federal, or foreign law as claims, cross-claims, counterclaims, third-party claims, or otherwise, in the Court or any other federal, state, or foreign court, or in any arbitration proceeding, administrative agency proceeding, tribunal, or any other proceeding or forum. For avoidance of doubt, nothing in the Bar Order shall bar or otherwise affect any claim for insurance coverage, indemnity, or advancement between Released Defendant Parties.

**6.      Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

6.1      The Claims Administrator, subject to such supervision and direction of Lead Counsel and the Court as may be necessary or as circumstances may require, shall administer and calculate the Claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund, including the Warrant Settlement Amount, if applicable, to Authorized Claimants. The Released Defendant Parties and Defendants' Counsel shall have no responsibility for or interest whatsoever in the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability whatsoever to the Released Plaintiff Parties, including Lead Plaintiff, any other Class Members, or Lead Counsel, in connection with such administration, including, but not limited to: (i) any act, omission, or determination by Lead Counsel, the Escrow Agent, and/or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any Claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or

(vi) the payment or withholding of any Taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

6.2    The Settlement Fund shall be applied as follows:

(a)    to pay any Warrant Exercise Expenses from the Cash Settlement Amount;

(b)    to pay all Notice and Administration Expenses from the Cash Settlement Amount or Warrant Proceeds;

(c)    to pay the Taxes and Tax Expenses from the Cash Settlement Amount or Warrant Proceeds;

(d)    to pay any Fee and Expense Award, if and to the extent allowed by the Court, from the Cash Settlement Amount or Warrant Proceeds;

(e)    to pay any Lead Plaintiff Award, if and to the extent allowed by the Court, from the Cash Settlement Amount or Warrant Proceeds; and

(f)    after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as provided by this Stipulation, the Plan of Allocation, or the orders of the Court.

6.3    After the Effective Date, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the provisions of this Stipulation.

6.4    Within one hundred and ten (110) calendar days after (a) the Notice Date, or (b) such other time as may be set by the Court, each Class Member who seeks to receive any payment pursuant to the terms of this Stipulation shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-4 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of

Claim and Release. All Proof of Claim and Release forms must be postmarked or received within the time provided by the Court in the Preliminary Approval Order. A Proof of Claim and Release shall be deemed to have been submitted when posted, if received with a legible postmark on the envelope and if mailed by first-class or other posted mail and addressed in accordance with the instructions thereon; in all other cases, the Proof of Claim and Release Form shall be deemed to have been submitted when actually received by the Claims Administrator.

6.5    Except as provided herein or otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim and Release shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will, in all other respects, be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will forever be barred from bringing any action against the Released Defendant Parties concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion.

6.6    Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to ¶ 6.8 below.

6.7    Proof of Claim and Release forms that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim and Release in whole or in part, the Claims

Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the Proof of Claim and Release submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of ¶ 6.8 below.

6.8    If any Claimant whose timely Claim has been rejected in whole or in part for a curable deficiency desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶ 6.7 above, or a lesser period of time if the Claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the Claimant's request for review to the Court.

6.9    Each Class Member who has not been excluded from the Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the Released Claims, including, but not limited to, all releases provided for herein and in the Judgment, and, to the extent applicable, any Claim submitted by such Claimant, which will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the Claimant's status as a Class Member and the validity and amount of the Claimant's Claim. In connection with processing the Proofs of Claim and Release, no discovery shall be allowed on the merits of the Litigation or the Settlement. All proceedings with respect to the

administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court, but shall not, in any event, delay or affect the finality of the Judgment. All Class Members, Claimants, and parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

6.10    Following the Effective Date, the Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than (x) ten dollars ($10.00) in cash or (y) ten whole shares of Applied common stock or other securities that constitute Warrant Proceeds, calculated on an adjusted basis. Notwithstanding the foregoing, nothing in this paragraph shall require the distribution of securities.

6.11    If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall, if feasible and economical, be redistributed in an equitable and economic fashion among Authorized Claimants who have cashed their checks. These redistributions shall be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute to Class Members. Any balance that still remains in the Net Settlement Fund after re-distribution(s) and that is not feasible or economical to reallocate, after payment of Notice and Administration Expenses, Taxes and Tax Expenses, and attorneys' fees and expenses, shall be

donated to an appropriate 501(c)(3) non-profit organization selected by Lead Counsel and approved by the Court. To facilitate the orderly distribution the Net Settlement Fund under this paragraph, all checks issued to Authorized Claimants shall contain a legend that the check will expire after one hundred eighty (180) calendar days from date of the check.

6.12    The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of Claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection with any of the foregoing. No Person shall have any claim of any kind against the Released Defendant Parties with respect to the matters set forth in ¶¶ 6.1-6.12 hereof; and the Released Plaintiff Parties release the Released Defendant Parties from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

6.13    No Person shall have any claim against the Released Defendant Parties, Released Plaintiff Parties, the Escrow Agent, or the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

6.14    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's Claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the

finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to the Stipulation.

### 7.    Objections and Requests for Exclusion

7.1    Any Class Member who intends to object to the fairness of the Settlement must do so within the time and in the manner provided by the Court's Preliminary Approval Order. The deadline for submitting objections to the fairness of the Settlement shall be received on or before twenty-one (21) calendar days before the Settlement Hearing, or as the Court may otherwise direct. Any Class Member who fails to timely file and serve a written objection and notice of his, her or its intent to appear at the Settlement Hearing, pursuant to this paragraph and the Preliminary Approval Order, shall not be permitted to object to the approval of the Settlement at the Settlement Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Stipulation, by appeal or other means, unless the Court orders otherwise. Any objection to the fairness of the Settlement must be in writing and signed under penalty of perjury by the Class Member, and must include the information required as set forth in the Preliminary Approval Order.

7.2    Eligible Persons requesting exclusion must do so within the time and in the manner provided by the Court's Preliminary Approval Order. The deadline for submitting requests for exclusion shall be received on or before twenty-one (21) calendar days before the Settlement Hearing, or as the Court may otherwise direct. Any request for exclusion must be in writing and signed under penalty of perjury by the beneficial owner(s) of the shares of Applied common stock that are the subject of the request for exclusion, and must include the information required as set forth in the Preliminary Approval Order.

7.3    The Claims Administrator shall scan and send electronically copies of all requests for exclusion from, and objections to, the Stipulation, Settlement, the Plan of Allocation, or the Fee and Expense Application, in PDF format (or such other format as shall be agreed), to counsel

for Applied and to Lead Counsel, expeditiously after the Claims Administrator receives such requests for exclusion or objections.

7.4     As part of their reply papers in support of their motion for final approval of the settlement of the Litigation, Lead Counsel will provide a list of all Persons who have requested exclusion from the Class and all of the information provided to the Claims Administrator under ¶ 7.2 of this Stipulation for those persons requesting exclusion, and shall certify that all requests for exclusion received have been copied and provided to Defendants' Counsel.

**8.     Lead Counsel's Attorneys' Fees and Expenses**

8.1     Lead Counsel may submit a Fee and Expense Application for distribution from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) any interest earned on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court; plus (d) a Lead Plaintiff Award. Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

8.2     The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court. Any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes the Judgment and an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof.

8.3     In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or this Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review, and in the event that the Fee and Expense Award has

been paid to any extent, then Lead Counsel, including their partners and/or shareholders, and Lead Plaintiff who have received any portion of the Fee and Expense Award shall, within thirty (30) calendar days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund all such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned by the Settlement Fund in an amount consistent with such reversal, modification, cancellation or termination, and such fees and expenses shall be returned to the Settlement Fund in accordance with ¶ 9.7. A notice requesting refund fees and expenses pursuant to this paragraph shall include: (a) a description of the event that triggers the refund of fees and expenses; (b) a tax identification number and Form W-9 for the account into which the fees and expenses will be transferred; (c) a completed wire transfer, ACH transfer, or similar anti-fraud payment request form signed by an authorized representative of Applied; and (d) all required funding instructions and information, including payee name, telephone and e-mail contact information and a physical address for the account into which the fees and expenses will be transferred. Any refunds required pursuant to this ¶ 8.3 shall be the obligation of Lead Counsel, including its partners, and/or shareholders, that received fees or expenses to make appropriate refunds or repayments to the Settlement Fund. Lead Counsel, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that (a) such Person and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph, and (b) are severally liable for the full amount of all fees, expenses, and/or costs paid to them from the Settlement Fund together with the interest paid thereon. Without limitation, Lead Counsel and their partners, shareholders, and/or members agree that the Court may, upon application of Defendants and notice to Lead Counsel, summarily issue orders, including, but not limited to,

judgments and attachment orders, and may make appropriate findings of or sanctions for contempt, should Lead Counsel or its partners, shareholders, or members fail to timely repay fees and expenses pursuant to this paragraph.

8.4     The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses to be paid out of the Settlement Fund is not part of the Settlement set forth in this Stipulation, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and shall have no effect on the terms of the Stipulation or on the validity or enforceability of this Settlement. The approval of the Settlement, and it becoming Final, shall not be contingent on the award of attorneys' fees and expenses to Lead Counsel, any award to Lead Plaintiff, or any appeals from such awards. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth therein, or any other orders entered pursuant to the Stipulation of Settlement.

8.5     Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund. With the sole exception of Applied's obligation to pay or cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶¶ 2.1-2.8, the Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or expenses (including Taxes) to Lead Counsel, or any other counsel or Person who receives payment from the Settlement Fund.

8.6     The Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation between Lead Counsel and/or any other Person who may

assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

8.7    The Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses (including Taxes) incurred by or on behalf of any Class Member, whether or not paid from the Escrow Account.

**9.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

9.1    The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Preliminary Approval Order, or an order substantially in the form of Exhibit A attached hereto or as may be subsequently agreed to by the Settling Parties per ¶ 9.5 below, directing notice to the Class, as required by ¶ 4.1 hereof;

(b)    the Cash Settlement Amount has been deposited into the Escrow Account by Applied or Defendants' insurers, and Applied has caused the Warrant Settlement Amount to be issued and deposited into the Escrow Settlement Account, in accordance with ¶¶ 2.6-2.7 hereof;

(c)    Neither Settling Party has exercised its option to terminate the Stipulation pursuant to ¶¶ 9.3, 9.4, or 9.6 hereof;

(d)    the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto or as may be subsequently agreed to by the Settling Parties per ¶ 9.5 below;

(e)    the Judgment has become Final, as defined in ¶ 1.22 hereof; and

(f)    the Litigation has been dismissed with prejudice.

9.2    Upon the Effective Date, any and all remaining interest or right of Applied and any other Persons who contributed to the Settlement Fund in or to the Settlement Fund, if any, shall be

absolutely and forever extinguished. The Released Defendant Parties shall not have any liability, obligation, or responsibility for the payment of Claims, any Fee and Expense Award, Notice and Administration Expenses, Taxes and Tax Expenses, legal fees, or any other expenses payable from the Settlement Fund. If the conditions specified in ¶ 9.1 hereof are not met, then the Settlement shall be canceled and terminated subject to ¶¶ 9.7-9.8 hereof unless the Settling Parties mutually agree in writing to proceed with the Settlement. For avoidance of doubt, no order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, expenses, and interest awarded by the Court to Lead Counsel shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of the Stipulation.

9.3    As set forth in a separate agreement (the "Supplemental Agreement") executed between Lead Plaintiff and Defendants, by and through their counsel, Applied may, in its sole discretion, terminate the Settlement and render it null and void in the event that Members of the Class who collectively purchased more than a certain amount of Applied common stock during the Class Period exclude themselves from the Class. The Settling Parties agree to maintain the confidentiality of the Supplemental Agreement, which is being executed concurrently herewith. The Supplemental Agreement shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement), unless and until the Court requires the Settling Parties to submit the Supplemental Agreement or disclose its terms. If submission of the Supplemental Agreement is ordered by the Court or is necessary to resolve a dispute between Lead Plaintiff and Defendants, the Settling Parties will seek to have the Supplemental Agreement submitted to the court *in camera* or filed under seal, but such disclosure shall be carried out to the

fullest extent possible in accordance with the practices of the Court so as to preserve the confidentiality of the Supplemental Agreement, particularly the threshold aggregate number of shares.

9.4    Lead Plaintiff may terminate the Settlement and render it null and void in the event that Applied fails to pay or cause to be paid the Cash Settlement Amount or the Warrant Settlement Amount under the deadlines set forth herein, or in the event that the Settlement Amount is subject to a final, non-appealable order requiring a claw-back or its return or preventing its distribution resulting from a bankruptcy proceeding. However, if any part of the Settlement Amount has not been paid under the deadlines set forth herein, then, prior to termination, Lead Counsel must notify Applied's counsel and Applied will have twenty-one (21) calendar days from notification to rectify such failure before Lead Plaintiff will be able to terminate the Settlement.

9.5    In the event the Court declines to enter the Preliminary Approval Order in substantially the form of Exhibit A attached hereto, or the Judgment in substantially the form of Exhibit B attached hereto, the Settling Parties agree to work in good faith to make appropriate modifications, as may be necessary, to the Stipulation, Notice, Summary Notice, Proof of Claim and Release, and Judgment.

9.6    Each of Lead Plaintiff and Defendants shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within fourteen (14) calendar days of: (a) the Court's refusal to enter an order preliminarily approving the Settlement and/or permitting Notice of the Settlement to Class Members; (b) the Court's refusal to approve this Stipulation in any material respect; (c) the Court's refusal to approve the Settlement; (d) the Court's refusal to enter the Bar Order in any material respect; (e) the Court's refusal to enter the Judgment; (f) the date upon which the

Judgment is reversed or vacated or altered following any appeal taken therefrom, or is successfully collaterally attacked, or otherwise does not become Final; (g) the Court's refusal to dismiss the Litigation with prejudice; or (h) the failure of the Effective Date to occur for any reason.

9.7      Unless otherwise ordered by the Court, in the event this Stipulation is not approved or this Stipulation or the Settlement is terminated, or canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or altered following any appeal taken therefrom, or is successfully collaterally attacked, or otherwise does not become Final, within thirty (30) calendar days after written notification of such event is sent by Defendants' Counsel to Lead Counsel and the Escrow Agent, the Settlement Fund (including accrued interest) less Notice and Administration Expenses, Taxes or Tax Expenses, or Warrant Exercise Expenses paid, incurred, or due and owing pursuant to ¶¶ 2.11, 2.17, and 2.19 hereof in connection with the Settlement provided for herein, plus Warrant Proceeds, shall be refunded by the Escrow Agent to Applied and/or its insurance carriers pursuant to written instructions from Applied's counsel. Written instructions for a refund under this paragraph must include (a) a description of the event that triggers the refund of the balance of the Settlement Fund; (b) tax identification number(s) and Form W-9(s) for the account(s) into which the balance of the Settlement Fund will be transferred; (c) completed wire transfer, ACH transfer, or similar anti-fraud payment request form(s) signed by an authorized representative of Applied and/or its insurance carriers; and (d) all required funding instructions and information, including payee name, telephone and e-mail contact information and a physical address for the account(s) into which the balance of the Net Settlement Fund will be transferred. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds,

after deduction of any fees or expenses incurred in connection with such application(s) for refund

to Applied and/or its insurance carriers pursuant to written instructions from Applied's counsel.

9.8     In the event that this Stipulation is not approved or this Stipulation or the Settlement

is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, the Settling

Parties shall be restored to their respective positions in the Litigation as of August 19, 2025. In

such event, the terms and provisions of the Stipulation with the exception of ¶¶ 2.11, 2.15-2.17,

2.19-2.21, 8.3, 9.7, 10.1, 11.5, 11.7, and 11.9 hereof, shall have no further force and effect with

respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for

any purpose, and any judgment or order entered by the Court in accordance with the terms of this

Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court, or modification or

reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and

Expense Award, shall operate to terminate or cancel this Stipulation or constitute grounds for

cancellation or termination of this Stipulation.

**10.     No Admission of Liability**

10.1     Neither the Settlement, this Stipulation (whether or not consummated), including

the Exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation

that may be approved by the Court), the negotiations leading to the execution of this Stipulation

and the Settlement, nor any proceedings, communications, drafts, documents or agreements taken

pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any

arguments proffered in connection therewith):

(a)     shall be offered or received against Defendants as evidence of or construed

as or deemed to be evidence of any presumption, concession, or admission by Defendants of the

truth of any allegations by Lead Plaintiff or any Member of the Class or the validity of any claim

that has been or could have been asserted in the Litigation, or the deficiency of any defense that

has been or could have been asserted in the Litigation or in any other litigation, including, but not limited to, litigation of the Released Claims, or of any liability, negligence, fault, or wrongdoing of any kind of Defendants or in any way referred to for any other reason as against Defendants, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)    shall be offered or received against or to the prejudice of Defendants as evidence of a presumption, concession, or admission of liability for any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Defendants, or against Lead Plaintiff or any Member of the Class as evidence of any infirmity in the claims of Lead Plaintiff and the Class;

(c)    shall be offered or received against Defendants as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing or in any way referred to for any other reason as against any of the parties to this Stipulation, in any other civil, criminal, or administrative action or proceeding; provided, however, that if this Stipulation is approved by the Court, Released Defendant Parties may refer to it to effectuate the releases granted them hereunder; and

(d)    shall be construed against Defendants, Lead Plaintiff, or the Class as evidence of a presumption, concession or admission that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial or in any proceeding other than this Settlement.

## 11.    Miscellaneous Provisions

11.1    The Settling Parties: (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and

implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

11.2    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between the Class and the Defendants with respect to the Litigation. The Settlement shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties with the assistance of an experienced mediator, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

11.3    The Settling Parties and their counsel agree not to assert in any statement made to any media representative (whether or not for attribution) that the Litigation was commenced or prosecuted by Lead Plaintiff or defended by Defendants in bad faith or without a reasonable basis, nor will they deny that the Litigation was commenced and prosecuted and defended in good faith and is being settled voluntarily after consultation with competent legal counsel. In all events, the Settling Parties and their counsel shall not make any accusations of wrongful or actionable conduct by any party concerning the prosecution, defenses and resolution of the Litigation, and shall not otherwise suggest that the Settlement constitutes an admission or infirmity of any claim or defense alleged. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

11.4    Released Defendant Parties may file this Stipulation and/or the Judgment from this action in any other action in order to support a defense or counterclaim based on principles of *res*

*judicata*, collateral estoppel, release, statute of limitations, statute of repose, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection under any applicable insurance policy. The Settling Parties may file this Stipulation and/or the Judgment in any action that may be brought to enforce the terms of this Stipulation and/or the Judgment. All Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

11.5    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

11.6    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

11.7    This Stipulation, along with its Exhibits, may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

11.8    This Stipulation and the Exhibits attached hereto constitute the entire agreement among the Settling Parties hereto as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties. Each Settling Party expressly disclaims any reliance on any representations, warranties, or inducements concerning this Stipulation or its Exhibits, other than the representations, warranties, and covenants contained and memorialized in such documents.

11.9    Except as otherwise provided herein, or otherwise agreed to in writing by the parties hereto, each party shall bear his, her, or its own fees and costs.

11.10   Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation

to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class which it deems appropriate.

11.11   Each counsel or other Person executing this Stipulation, its Exhibits, or any related Settlement document, on behalf of any party hereto hereby warrants that such Person has the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.12   This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court. Signatures sent by facsimile, pdf'd via e-mail, provided by an electronic service such as Docusign, or affixed based on written instructions from another party, shall be deemed originals.

11.13   All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given (i) when delivered personally to the recipient, (ii) when sent by email, delivery and read receipt requested and delivery receipt received, (iii) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid), or (iii) ten (10) calendar days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

*If to Lead Plaintiff or to Lead Counsel:*

WOLF POPPER LLP
Robert C. Finkel
Joshua W. Ruthizer
845 Third Avenue, 12th Floor
New York, NY 10022
Email: rfinkel@wolfpopper.com
Email: jruthizer@wolfpopper.com

*If to Defendants or to Defendants' Counsel:*

WILMER CUTLER PICKERING
HALE AND DORR LLP
Tamar Kaplan-Marans
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Email: tamar.kaplan-marans@wilmerhale.com

KIRKLAND & ELLIS LLP
Rachel M. Fritzler
601 Lexington Avenue
New York, New York 10022
Email: rachel.fritzler@kirkland.com

MCGUIREWOODS LLP
Jeffrey J. Chapman
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Email: JChapman@mcguirewoods.com

11.14   This Stipulation shall be binding upon, and inure to the benefit of, the successors

and assigns of the Settling Parties.

11.15   The Court shall retain jurisdiction with respect to implementation and enforcement

of the terms of this Stipulation, and all Settling Parties submit to the jurisdiction of the Court for

purposes of implementing and enforcing the Settlement embodied in this Stipulation and matters

related to the Settlement.

11.16   The waiver by one Settling Party of any breach of this Stipulation by any other

party shall not be deemed a waiver by any other Settling Party or a waiver of any other prior or

subsequent breach of this Stipulation.

11.17   Pending approval of the Court of this Stipulation and its Exhibits, all non-

settlement-related proceedings in this Litigation shall be stayed and all Members of the Class shall

be barred and enjoined from prosecuting any of the Released Claims against any of the Released Defendant Parties.

11.18   This Stipulation and its Exhibits shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to its choice-of-law principles, except to the extent that federal law requires that federal law govern.

11.19   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.20   This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

11.21   Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

11.22   Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated November 4, 2025.

WOLF POPPER LLP

Signed by:

*Joshua Ruthizer*

EFB2D6408F8D47E...

Robert C. Finkel

rfinkel@wolfpopper.com

Joshua W. Ruthizer
jruthizer@wolfpopper.com
Emer Burke
eburke@wolfpopper.com
Samuel Coffin
scoffin@wolfpopper.com
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: (212) 759-4600

*Lead Counsel for Lead Plaintiff*

WILMER CUTLER PICKERING
HALE AND DORR LLP

*Michael G. Bongiorno*

Michael G. Bongiorno
michael.bongiorno@wilmerhale.com
Tamar Kaplan-Marans
tamar.kaplan-marans@wilmerhale.com
Ripley Shiarella
ripley.shiarella@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

*Attorneys for Defendant Applied Therapeutics, Inc.*

MCGUIREWOODS LLP

Jeffrey J. Chapman
jchapman@mcguirewoods.com
Stephen G. Foresta
sforesta@mcguirewoods.com
Louis D. Greenstein
lgreenstein@mcguirewoods.com
Lauren H. Mann
lmann@mcguirewoods.com
1251 Avenue of the Americas
20th Floor
New York, New York 10020
Telephone: (212) 548-7060

*Attorneys for Defendant Riccardo Perfetti*

KIRKLAND & ELLIS LLP

Signed by:

Rachel M. Fritzler
Rachel.Fritzler@kirkland.com
Bella F. Gianani
Bella.Gianani@kirkland.com
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

Mark Filip, P.C.
Mark.Filip@kirkland.com
Jules H. Cantor
Jules.Cantor@kirkland.com
333 W. Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000

*Attorneys for Defendant Shoshana Shendelman*

**Exhibit A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLIED THERAPEUTICS SECURITIES LITIGATION | Case No. 1:24-cv-09715 (DLC) (VF)<br><br>CLASS ACTION |

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL PURSUANT
TO FED. R. CIV. P. 23(e)(1), CERTIFYING CLASS FOR SETTLEMENT PURPOSES, AND
APPROVING FORM OF NOTICE AND DIRECTING CLASS NOTICE TO THE CLASS

WHEREAS, the above-captioned action is pending before this Court (the "Litigation");

WHEREAS, Lead Plaintiff, having made a motion pursuant to Federal Rule of Civil Procedure 23(e) for an order preliminarily approving the Settlement of this Litigation, certifying the Class for Settlement Purposes, and approving of the form of Notice and directing Notice to the Class, in accordance with a Stipulation of Settlement (the "Stipulation"), which, together with the Exhibits annexed thereto, sets forth the terms and conditions for a proposed Settlement of the Litigation between the Settling Parties and for dismissal of the Litigation with prejudice upon, and subject to, the terms and conditions set forth therein; and the Court having read and considered: (1) the motion, and the papers filed and arguments made in connection therewith, and (2) the Stipulation and the Exhibits annexed thereto;

WHEREAS, the Settling Parties having consented to the entry of this Order;

WHEREAS, unless otherwise defined, all terms used herein have the same meanings as set forth in the Stipulation;

WHEREAS, the Court preliminarily finds that:

(a)    the Settlement resulted from informed, extensive arm's-length negotiations between experienced counsel, including mediation under the direction of an experienced mediator, Jed D. Melnick, Esq.;

(b)    the proposed Settlement eliminates the risks to the Settling Parties of continued litigation;

(c)    the Settlement does not provide undue preferential treatment to Lead Plaintiff or to segments of the Class;

(d)    Lead Plaintiff and Lead Counsel have adequately represented the Class;

(e)    the Settlement does not provide excessive compensation to Lead Counsel; and

(f)    the Settlement appears to fall within the range of possible approval and is therefore sufficiently fair, reasonable, and adequate to warrant providing notice of the Settlement to the Class.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      The Court hereby preliminarily approves the Settlement set forth in the Stipulation, subject to further consideration at the Settlement Hearing described below.

2.      Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and for purposes of this Settlement only, the Litigation is hereby certified as a class action on behalf of all Persons and entities who purchased or otherwise acquired Applied common stock on a U.S. based exchange between January 3, 2024 and December 2, 2024, inclusive. Excluded from the Class are: (i) Defendants; (ii) the current and former officers, directors, and employees of Applied (the "Excluded Persons"); (iii) any person or entity that purchased Applied securities in the March 1, 2024 Private Placement (the "Private Placement Investors"); (iv) members of Defendants', Excluded Persons', or Private Placement Investors' immediate families, legal representatives, heirs, successors or assigns; and (v) any entity in which Defendants, the Excluded Persons, or the Private Placement Investors have or had a controlling interest.  Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely excluded himself, herself, or itself therefrom.

3.      The Court finds, for the purpose of the Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Class Members is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of Lead Plaintiff are typical of the claims of the Class he seeks to represent; (d) Lead Plaintiff and Lead Counsel have and will fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to Members of the Class predominate over any questions affecting only individual Class Members; and (f) a class action is superior to other methods for the fair and efficient adjudication of the Litigation.

4.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, Lead Plaintiff Dr. Martin Dietrich, is preliminarily certified as Class Representative and Lead Counsel Wolf Popper LLP is preliminarily certified as Class Counsel.

5.     A hearing shall be held before this Court on _____ _____, 2026 (a date that is no fewer than one hundred eighteen (118) calendar days after entry of this Order), (the "Settlement Hearing"), at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 18B, New York, NY 10007, to: (a) determine whether the proposed Settlement of the Litigation on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate to the Class and should be approved by the Court; (b) determine whether a Judgment as provided in ¶ 1.25 of the Stipulation should be entered; (c) determine whether the proposed Plan of Allocation should be approved; (d) determine whether a Fee and Expense Award should be awarded to Lead Counsel and if so in what amount; (e) hear any objections by Class Members to the Settlement, Plan of Allocation, or to the Fee and Expense Application; and (f) consider such other matters the Court deems appropriate. The Court may adjourn or change the date and time of the Settlement Hearing without further notice to the Class, and may approve the proposed Settlement with such modifications as the Settling Parties may agree to, if appropriate, without further notice to the Class.

6.     The Court approves the form, substance, and requirements of the Notice Program to provide notice to the Class, including the (a) Postcard Notice of Proposed Settlement of Class Action ("Postcard Notice"), substantially in the form annexed hereto as Exhibit A-1; (b) Summary Notice of Proposed Settlement of Class Action ("Summary Notice"), substantially in the form annexed hereto as Exhibit A-2; (c) the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for

an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Longform Notice") and Proof of Claim and Release, substantially in the forms annexed hereto as Exhibits A-3 and A-4, respectively; and (d) Settlement Website.

7.      The firm of Angeion Group LLC ("Claims Administrator") is hereby appointed to supervise and administer the notice procedure as well as the processing of Claims as more fully set forth below.

8.      Notice of the Settlement and Settlement Hearing shall be given as follows:

(a)      Applied shall provide to the Claims Administrator, at no cost to Lead Plaintiff or the Class, within seven (7) business days after the Court signs this Order, reasonably available transfer, holder, and nominee records in electronic and searchable form, such as Microsoft Excel, containing the names, last known addresses and email addresses of Persons who purchased Applied common stock during the Class Period.

(b)      Within twenty-eight (28) business days after the Court signs this Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Postcard Notice, substantially in the form attached hereto as Exhibit A-1, to be mailed by First-Class Mail, or emailed, where practicable, to all Class Members who can be identified with reasonable effort. For all Postcard Notices returned as undeliverable, the Claims Administrator shall use its best efforts to locate updated addresses.

(c)      On or before the Notice Date, the Claims Administrator shall cause the Summary Notice to be published once over PRNewswire or a comparable national wire service with similar reach.

(d)      On or before the Notice Date, the Claims Administrator shall publish the Longform Notice and Proof of Claim and Release form in a form available for download (i.e., .pdf) on the

Settlement Website. In addition, the Claims Administrator shall mail or email a copy of the Longform Notice and Proof of Claim and Release form to any Class Member that requests one by phone, email, or mail. The Longform Notice and Proof of Claim and Release shall be substantially in the form attached as Ex. A-3 or A-4, respectively.

(e)     On or before the Notice Date, the Claims Administrator shall also post the following on the Settlement Website: (i) the Stipulation; (ii) the Complaint; (iii) the deadlines for Class Members to submit Objections, requests for exclusion, and Proof of Claim and Release forms; (iv) Lead Plaintiff's motion for preliminary approval of the Settlement; and (v) this Order.

9.     At least seven (7) calendar days prior to the Settlement Hearing, Lead Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such mailing and publishing of the Notices.

10.     The Claims Administrator shall use reasonable efforts to give notice to nominee purchasers such as brokerage firms and other persons or entities who purchased Applied common stock during the Class Period (between January 3, 2024 and December 2, 2024, inclusive) as record owners but not as beneficial owners. Such nominees and custodians shall WITHIN SEVEN (7) CALENDAR DAYS of their receipt of the Postcard Notice either: (a) provide to the Claims Administrator the name, last known address, and email address of each beneficial owner for whom they are nominee or custodian; (b) request copies of the Postcard Notice for the Claims Administrator sufficient to send to all beneficial owners for whom they are nominee or custodian, which will be provided to nominees or custodians free of charge, and WITHIN SEVEN (7) CALENDAR DAYS of receipt, mail the Postcard Notice directly to all such persons or entities, or (c) request the link to the Postcard Notice and Proof of Claim and Release form from the Claims Administrator, and WITHIN SEVEN (7) CALENDAR DAYS of receipt, email the link directly

to all beneficial owners for whom they are nominee or custodian. Nominees who elect to follow procedure (b) or (c), **MUST** send a statement to the Claims Administrator confirming that the mailing/emailing was made as directed and keep a record of the names and mailing/emailing addresses used. Upon receipt by the Claims Administrator of proper documentation, nominees may seek reimbursement of their reasonable expenses actually incurred, not to exceed (a) $0.03 per name, mailing address and email address (to the extent available) provided to the Claims Administrator; (b) $0.03 per postcard, plus postage at the pre-sort rate used by the Claims Administrator, for mailing the Postcard Notice; or (c) $0.03 per email for emailing the Postcard Notice and Proof of Claim and Release. Any disputes with respect to the reasonableness or documentation of expenses incurred shall be subject to review by the Court.

11.    The Court finds that the form and content of the Notice Program described herein and the methods set forth herein for notifying the Class of the Settlement and its terms and conditions, the Fee and Expense Application, and the Plan of Allocation meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

12.    All fees, costs, and expenses incurred in identifying and notifying Members of the Class shall be paid from the Settlement Fund and in no event shall any of the Released Defendant Parties bear any responsibility or liability for such fees, costs, or expenses. Notwithstanding the foregoing, Applied shall be responsible for the costs and expenses of providing to Lead Counsel and/or the Claims Administrator reasonably available transfer records for purposes of mailing notice to the Class, and for providing notice as required by the Class Action Fairness Act, pursuant to the Stipulation.

13. All Class Members shall be bound by all determinations and judgments in the Litigation concerning the Settlement (including, but not limited to, the releases provided for therein) whether favorable or unfavorable to the Class, regardless of whether such Persons seek or obtain by any means (including, without limitation, by submitting a Proof of Claim and Release or any similar document) any distribution from the Settlement Fund or the Net Settlement Fund.

14. Class Members who wish to participate in the Settlement shall complete and submit a Proof of Claim and Release in accordance with the instructions contained therein. Unless the Court orders otherwise, all Proofs of Claim and Release must be postmarked or submitted electronically online, at the Settlement Website, no later than one hundred and ten (110) calendar days from the Notice Date. Any Class Member who does not submit a Proof of Claim and Release within the time provided shall be barred from sharing in the distribution of the proceeds of the Net Settlement Fund, unless otherwise ordered by the Court, but shall in all other respects be bound by the terms of the Stipulation and by any final judgment entered by the Court. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund is not materially delayed thereby. No person shall have any claim against Lead Plaintiff, Lead Counsel, or the Claims Administrator by reason of the decision to exercise such discretion whether to accept late submitted Claims.

15. Any Member of the Class may enter an appearance in the Litigation, at his, her, or its own expense, individually or through counsel of his, her, or its own choice. If any Member of the Class does not enter an appearance, they will be represented by Lead Counsel.

16. Any Member of the Class who wishes to exclude himself, herself, or itself from the Class must request exclusion in writing within the time and in the manner set forth in the Longform

Notice. Any such Person must submit to the Claims Administrator a signed request for exclusion such that it is received by the Claim Administrator no later than twenty-one (21) calendar days prior to the Settlement Hearing. A request for exclusion must provide: (i) the name, address, and telephone number of the Person requesting exclusion; (ii) the caption of the Action; (iii) a list identifying all transactions in Applied common stock during the Class Period by the Person requesting exclusion, the date of each transaction, and the price of each transaction; (iv) documentation sufficient to evidence each listed transaction in Applied common stock during the Class Period by the Person requesting exclusion; and (v) a statement that the Person wishes to be excluded from the Class. Any request for exclusion must be in writing and signed under penalty of perjury by the beneficial owner(s) of the shares of Applied common stock that are the subject of the request for exclusion. All Persons who submit valid and timely requests for exclusion in the manner set forth in this paragraph and the Longform Notice shall have no rights under the Settlement, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by the Settlement or any final judgment. Unless otherwise ordered by the Court, any Person who purchased Applied common stock during the Class Period who fails to timely request exclusion from the Class in compliance with this paragraph shall be deemed to have waived his, her, or its right to be excluded from the Class and shall be barred from requesting exclusion from the Class.

17.    Lead Counsel or the Claims Administrator shall cause to be provided to Defendants' Counsel copies of all requests for exclusion, and any written revocation of requests for exclusion, promptly upon receipt and as expeditiously as possible. No later than fourteen (14) calendar days before the Settlement Hearing, Lead Plaintiff shall file with the Court a list of Persons who have submitted valid and timely requests for exclusion.

18.     Any Member of the Class who or which does not request exclusion from the Class may appear at the Settlement Hearing and object if he, she, or it has any reason why the proposed Settlement of the Litigation should not be approved as fair, reasonable and adequate, why a judgment should not be entered thereon, why the Plan of Allocation should not be approved, or why the Fee and Expense Application should not be granted or a Fee and Expense Award should not be awarded to Lead Counsel; provided that any such Class Member (or any other Person) files objections and copies of any papers and briefs with the Clerk of the United States District Court for the Southern District of New York and mails copies thereof by first-class mail to Wolf Popper LLP, Joshua W. Ruthizer, 845 Third Avenue, 12th Floor, New York, NY 10022, such that the objections are received no later twenty-one (21) calendar days before the Settlement Hearing. Any Member of the Class who does not make his, her, or its objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement as incorporated in the Stipulation, to the Plan of Allocation, or to the Fee and Expense Application or Fee and Expense Award, unless otherwise ordered by the Court. Attendance at the Settlement Hearing is not necessary. However, Persons wishing to be heard orally in opposition to the approval of the Settlement, the Plan of Allocation, and/or the Fee and Expense Application or Fee and Expense Award, are required to indicate in their written objection their intention to appear at the hearing and to include in their written objections the identity of any witnesses they may call to testify and copies of any exhibits they intend to introduce into evidence at the Settlement Hearing. Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.

19.     Any objections, filings, and other submissions by an objecting Class Member must: (i) state the name, address and telephone number of the Class Member objecting and must be signed personally under penalty of perjury by the Class Member; (ii) the caption of the Action; (iii) contain a statement of the Class Members' objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention and whether the objections apply only to the objector, a specific subset of the Class, or to the entire Class; (iv) a list identifying all transactions in Applied common stock during the Class Period by the Class Member objecting, the date of each transaction, and the price of each transaction; and (v) include documents sufficient to prove membership in the Class, including the objecting Class Member's purchases, and/or sales of Applied common stock during the Class Period, the dates, the number of shares purchased or sold, and the price paid or received for such purchase or sale.

20.     Lead Counsel shall cause to be provided to Defendants' Counsel copies of all objections received promptly upon receipt and as expeditiously as possible.

21.     Any Class Member who does not object to the Settlement, the Plan of Allocation, or the Fee and Expense Application or Fee and Expense Award, in the manner prescribed herein and in the Longform Notice shall be deemed to have waived such objection, and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the proposed Settlement, this Order and the Judgment to be entered approving the Settlement, the Plan of Allocation, and/or the Fee and Expense Application or the Fee and Expense Award.

22.     All funds and securities held by the Escrow Agent or in the Escrow Account or Securities Escrow Account shall be deemed and considered to be in *custodia legis*, and shall remain

subject to the jurisdiction of the Court until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

23.     All papers in support of the Settlement, Plan of Allocation, and any Fee and Expense Application, shall be filed and served no later than _____ ___, 2026 (a date that is thirty-five (35) calendar days prior to the Settlement Hearing), and any reply papers shall be filed and served no later than _____ ___, 2026 (a date that is seven (7) calendar days prior to the Settlement Hearing).

24.     The Released Defendant Parties shall have no responsibility or liability for the Plan of Allocation or any Fee and Expense Application submitted by Lead Counsel, and such matters will be considered by the Court separately from the fairness, reasonableness, and adequacy of the Settlement.

25.     At or after the Settlement Hearing, the Court shall determine whether the Plan of Allocation proposed by Lead Counsel and any Fee and Expense Application should be approved. The Court reserves the right to enter the Judgment finally approving the Settlement regardless of whether it has approved the Plan of Allocation or a Fee and Expense Application.

26.     All reasonable expenses incurred in identifying and notifying Class Members as well as administering the Settlement Fund shall be paid as set forth in the Stipulation. In the event the Court does not approve the Settlement, or the Settlement otherwise fails to become effective, neither Lead Counsel nor the Claims Administrator shall have any obligation to repay any amounts actually and properly incurred or disbursed pursuant to ¶¶2.18, 2.20 of the Stipulation.

27.     As provided in the Stipulation, before the Effective Date, Lead Counsel and the Escrow Agent may pay Notice and Administration Expenses in an amount up to $200,000 out of

the Settlement Fund without further approval from Defendants and without further order of the Court.

28.    As provided in the Stipulation, Lead Counsel and the Escrow Agent may pay from the Settlement Fund Warrant Exercise Expenses up to $480,000 without further approval from Defendants and without further order of the Court. Lead Counsel and the Escrow Agent shall have no liability for any action taken in connection with this paragraph except for willful misconduct.

29.    This Order and the Stipulation (including any of their respective terms or provisions), any of the negotiations, discussions, proceedings connected with them, and any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement or this Order, may not be construed as an admission or concession by the Released Defendant Parties of the truth of any of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind, and may not be offered or received in evidence (or otherwise used by any person in the Litigation, or in any other action or proceeding, whether civil, criminal, or administrative, in any court, administrative agency, or other tribunal) except in connection with any proceeding to enforce the terms of the Stipulation or this Order. The Released Defendant Parties, Lead Plaintiff, Class Members, and each of their counsel may file the Stipulation, and/or this Order, and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

30.    All proceedings in the Litigation are stayed until further order of this Court, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation. Pending final determination of whether the Settlement should be approved, neither the Lead

Plaintiff nor any Class Member, either directly, representatively, or in any other capacity shall commence or prosecute any of the Released Claims against any of the Released Defendant Parties in any action or proceeding in any court or tribunal.

31.     The Court reserves the right to alter the time or the date of the Settlement Hearing or to hold the hearing via video or telephone without further notice to Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to the Class.

32.     If the Settlement fails to become effective as defined in the Stipulation or is terminated, then, in any such event, the Stipulation, including any amendment(s) thereto (except as expressly provided in the Stipulation, and this Order) shall be null and void, of no further force or effect, and without prejudice to any Settling Party, and may not be introduced as evidence or used in any actions or proceedings by any person or entity against the Settling Parties. In any such event, the Settling Parties shall be deemed to have reverted to their respective litigation positions as of August 19, 2025.

        IT IS SO ORDERED.

DATED:

THE HONORABLE DENISE L. COTE UNITED STATES DISTRICT JUDGE

DocuSign Envelope ID: 08DCB633-C269-41A9-AF18-A0BB4923E67A

*In re Applied Therapeutics Securities Litigation,*
No. 1:24-cv-09715-DLC
United States District Court for the
Southern District of New York

**Court-Ordered Legal Notice of Proposed
Settlement of Class Action**

*Important Notice about a Securities Class Action Settlement. You may be entitled to a payment.*

*This Postcard Notice may affect your legal rights. Please read it carefully.*

**This card provides only limited information about the Settlement. For more information, or to read the Stipulation of Settlement and Longform Notice, please visit www.APLTSecuritiesSettlement.com.**

Special Notice to Nominees. If you hold APLT common stock as nominee for a beneficial owner, then you must, within 7 calendar days of receipt of this Postcard, follow the instructions on page ____ of the Longform Notice.

---

**Applied Therapeutics Securities Settlement**
**c/o Claims Administrator**
**1650 Arch Street, Suite 2210**
**Philadelphia, PA 19103**
**Toll-Free Number: 1-833-703-4229**
**Website:** APLTSecuritiesSettlement.com
**Email:** Info@APLTSecuritiesSettlement.com

«ScanString»
Postal Service: Please Do Not Mark or Cover Barcode

NOTICE ID «NoticeID»
[NAME1]
[ADDR1]
[CITY] [ST] [ZIP]
[COUNTRY]

Docusign Envelope ID: 08DCB633-C269-41A9-AF18-A0BB4923E67A        ...ment.com

**Why Did I Receive This Notice?** The Parties to the securities class action listed on the front upper left of this postcard have reached a proposed Settlement, under the terms and conditions set forth in the Stipulation of Settlement, dated November 4, 2025 ("Stipulation"). This Postcard Notice advises potential Class Members of information about the proposed Settlement. Capitalized terms used in this notice that are not otherwise defined are defined in the Stipulation.

**What Is The Case About?** Plaintiff alleges, on behalf of himself and the Class, that Applied Therapeutics, Inc ("Applied") and two of its former officers and directors ("Defendants") made materially false and misleading statements in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 concerning, among other things, the viability of Applied's New Drug Application ("NDA") to the U.S. Food and Drug Administration ("FDA") for govorestat, and that these alleged misrepresentations allegedly caused the price of Applied's common stock to trade at artificially inflated levels during the January 3, 2024 through December 2, 2024 "Class Period." Defendants deny any wrongdoing, and the Court has not determined that Defendants did anything wrong.

**Who Is Included In The Class?** The Class includes all persons and entities that purchased or otherwise acquired Applied common stock on a U.S. exchange during the Class Period. As set forth in the Stipulation and Longform Notice, Defendants, their families, certain current and former employees of Applied, and other entities and Private Placement Investors, are excluded from the Class by definition.

**What Is The Proposed Settlement?** Defendants have agreed to pay or cause to be paid $15,000,000 in cash and warrants to purchase up to 1,000,000 shares of Applied common stock at $0.48 per share (together, the "Settlement Amount"). The proposed Settlement provides that the Settlement Amount, after deduction of any Court-approved attorneys' fees and expenses, Notice and Administration Expenses, Taxes and Tax Expenses, and Warrant Exercise Expenses, is to be divided among all Class Members who submit a valid Proof of Claim and Release ("Claim Form"), in exchange for the settlement of this Litigation and the releases by Class Members of all claims related to this case.

**To qualify for payment, you must submit a Claim Form.** The Claim Form can be found on the Settlement Website **www.APLTSecuritiesSettlement.com** or will be sent to you upon request to the Claims Administrator. **To be valid, Claim Forms must be postmarked or submitted online by** ▮▮▮▮, **2026**.

**Other Options.** If you do not want to be legally bound by the Settlement, you must submit a written request to exclude yourself (opt out) such that it is received no later than ▮▮▮▮, 2026. If you opt out, you will receive no benefits from the Settlement. If you do not opt out, you will be legally bound by the Settlement, and you will not be able to sue the Defendants about the legal claims in this case. If you do not opt out, you may submit a written objection to the Settlement such that it is received no later than ▮▮▮▮, 2026. The Longform Notice available on the Settlement Website explains how to submit a Claim Form, opt out or object.

**Settlement Hearing.** The Court will hold a Settlement Hearing on ▮▮▮▮, 2026, to consider whether to approve the Settlement, the Plan of Allocation, Plaintiff's Counsel's requested attorneys' fees of up to 20% of the Settlement Amount plus expenses not to exceed $50,000, and any objections thereto. You or your lawyer, at your own expense, may attend the hearing if you object, but you are not required to do so.

**If you have questions**, you may contact the Claims Administrator at the contact information on the front of this Postcard or the following Plaintiff's Counsel: Joshua Ruthizer, Wolf Popper LLP, 845 Third Avenue, New York, NY, 10022, 1- 877-370-7703.

**Do not call or write the Court with questions or regarding this notice.**

**Exhibit A-2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE APPLIED THERAPEUTICS SECURITIES LITIGATION | Case No. 1:24-cv-09715 (DLC) (VF)<br><br>CLASS ACTION |

SUMMARY NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

**TO: ALL PERSONS OR ENTITIES THAT PURCHASED OR OTHERWISE ACQUIRED THE PUBLICLY TRADED COMMON STOCK OF APPLIED THERAPEUTICS, INC. ON A U.S. BASED EXCHANGE BETWEEN JANUARY 3, 2024 AND DECEMBER 2, 2024, INCLUSIVE ("CLASS" OR "CLASS MEMBERS")**

**THIS NOTICE WAS AUTHORIZED BY THE COURT. IT IS NOT A LAWYER SOLICITATION. PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**

**Capitalized terms used in this notice that are not otherwise defined are defined in the Stipulation of Settlement, dated November 4, 2025 ("Stipulation") available at www.APLTSecuritiesSettlement.com (the "Settlement Website").**

YOU ARE HEREBY NOTIFIED that a hearing will be held on _____, 2026, at _:00 _.m., before the Honorable Denise L. Cote at the United States District Court, Southern District of New York, 500 Pearl Street, Courtroom 18B, New York, NY 11201, to determine whether: (1) the proposed settlement (the "Settlement") of the above-captioned action as set forth in the Stipulation for $15,000,000 in cash and warrants to purchase up to 1,000,000 shares of Applied Therapeutics Inc. ("Applied" or the "Company") common stock at $0.48 per share should be approved by the Court as fair, reasonable and adequate; (2) the Judgment as provided under the Stipulation should be entered dismissing the Litigation with prejudice; (3) to award Lead Counsel attorneys' fees and expenses out of the Settlement Fund and, if so, in what amount; and (4) the Plan of Allocation should be approved by the Court as fair, reasonable and adequate.

**Exhibit A-2**

IF YOU PURCHASED APPLIED COMMON STOCK BETWEEN JANUARY 3, 2024 THROUGH DECEMBER 2, 2024, INCLUSIVE, YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT OF THIS LITIGATION.

To share in the distribution of the Settlement Fund, you must establish your rights by submitting a Proof of Claim and Release ("Claim Form") and required documentation electronically through www.APLTSecuritiesSettlement.com **(no later than _____, 2026)** or by mail **(postmarked no later than _____, 2026)**. Your failure to submit your Claim Form by _____, 2026, will subject your claim to rejection and preclude your receiving any of the recovery in connection with the Settlement of this Litigation. If you purchased Applied common stock between January 3, 2024 through December 2, 2024, inclusive, and do not request exclusion from the Class, you will be bound by the Settlement and any judgment and release entered in the Litigation, including, but not limited to, the Judgment, whether or not you submit a Claim Form.

If you do not want to be legally bound by the settlement, you must submit a written request to exclude yourself (opt out) such that it is **received no later than _____, 2026**, in the manner and form explained in the Longform Notice. If your request to opt out is not received by _____, 2026 or fails to include the required information as set forth in the Longform Notice, your request to opt out will be rejected.

If you are a Class Member, you have the right to object to the Settlement, the Plan of Allocation, the request by Lead Counsel for an award of attorneys' fees not to exceed 20% of the Settlement Amount and expenses not to exceed $50,000. Any objections must be in writing and filed with the Court and sent to Lead Counsel and Defendants' Counsel so that it is **received no later than _____, 2026**, in the manner and form explained in the Longform Notice. If

**Exhibit A-2**

your objection is not received by ▢▢▢▢▢▢▢, 2026 or fails to include the required information as set forth in the Longform Notice, your objection will be rejected. Only Class Members may object. You cannot opt out of the Class and also object to the Settlement.

This Summary Notice advises potential Class Members of information about *In re Applied Therapeutics Securities Litigation*, No. 1:24-cv-09705 (S.D.N.Y.) ("Litigation") and the proposed Settlement of the Litigation. **For all details of the Settlement, read the Stipulation and Longform Notice, which are available for download from www.APLTSecuritiesSettlement.com, or by contacting the Claims Administrator at the contact information below in this Summary Notice.**

If you have not received or downloaded a copy of the Longform Notice, which more completely describes the Litigation, the Settlement, and your rights thereunder (including your right to object to or opt out of the Settlement), and a Claim Form, you may obtain these documents, as well as a copy of the Stipulation (which, among other things, contains definitions for the defined terms used in this Summary Notice) and other Settlement documents, online at www.APLTSecuritiesSettlement.com, or by contacting the Claims Administrator at:

Applied Therapeutics Securities Settlement
c/o Claims Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103
Email: info@APLTSecuritiesSettlement.com

Inquiries, other than requests for the Longform Notice, the Stipulation, or for a Claim Form, may be made to Lead Counsel:

WOLF POPPER LLP
Joshua W. Ruthizer
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone: 877-370-7703.

**PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**

**Exhibit A-2**


DATED: _____   _____
                                BY ORDER OF THE COURT
                                UNITED STATES DISTRICT COURT
                                SOUTHERN DISTRICT OF NEW YORK

**EXHIBIT A-3**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLIED THERAPEUTICS SECURITIES LITIGATION | Case No. 1:24-cv-09715 (DLC) (VF) <br><br> CLASS ACTION |

**NOTICE OF (I) PENDENCY OF CLASS ACTION, CERTIFICATION OF SETTLEMENT CLASS, AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

*A Federal Court authorized this notice.  This is not a solicitation from a lawyer.*

**TO:    ALL PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED THE PUBLICLY TRADED COMMON STOCK OF APPLIED THERAPEUTICS, INC. ("APPLIED" OR THE "COMPANY") ON A U.S. BASED EXCHANGE BETWEEN JANUARY 3, 2024 AND DECEMBER 2, 2024, INCLUSIVE, AND ARE NOT OTHERWISE EXCLUDED FROM THE CLASS (THE "CLASS")**

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS ACTION. PLEASE NOTE THAT IF YOU ARE A CLASS MEMBER, YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT DESCRIBED IN THIS NOTICE. TO CLAIM YOUR SHARE OF THE SETTLEMENT PROCEEDS, YOU MUST SUBMIT A VALID PROOF OF CLAIM AND RELEASE ("CLAIM FORM") **POSTMARKED OR SUBMITTED ONLINE ON OR BEFORE _____, 2026**.

This Notice of Pendency and Proposed Settlement of Class Action ("Notice") has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York (the "Court"). The purpose of this Notice is to inform you of the pendency of this class action (the "Litigation") between Lead Plaintiff Dr. Martin Dietrich ("Plaintiff"), and Defendants Applied, Dr. Shoshana Shendelman and Dr. Riccardo Perfetti (the "Individual Defendants"), and the proposed settlement consisting of fifteen million U.S. dollars (USD $15,000,000) in cash and a warrant to purchase up to one million (1,000,000) shares of Applied common stock (the "Settlement") and of the hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement as well as counsel's application for fees and expenses. This Notice describes what steps you may take in relation to the Settlement and this class action.[1]

This Notice is not intended to be, and should not be construed as, an expression of any opinion by the Court with respect to the truth of the allegations in the Litigation as to any of the Defendants or the merits of the claims or defenses asserted by or against the Defendants. This Notice is solely to advise you of the pendency and proposed Settlement of the Litigation and of your rights in connection therewith.

---

[1]    All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation of Settlement dated November 4, 2025 (the "Stipulation"), which is available on the website www.APLTSecuritiesSettlement.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to be eligible to receive a payment from the Settlement. **Claim Forms must be postmarked or submitted online on or before _____, 2026.** |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that *potentially* allows you to ever be part of any other lawsuit against the Defendants or any other Released Person about the legal claims being resolved by this Settlement. Should you elect to exclude yourself from the Class you should understand that Defendants and the other Released Defendant Parties will have the right to assert any and all defenses they may have to any claims that you may seek to assert, including, without limitation, the defense that any such claims are untimely under applicable statutes of limitations and statutes of repose. **Requests for exclusion must be *received* by the Claims Administrator on or before _____, 2026. Postmarked on _____, 2026 is not sufficient.** |
| **OBJECT** | Write to the Court about why you do not like the Settlement, the Plan of Allocation, and/or the request for attorneys' fees and expenses. You will still be a Member of the Class. If you submit a written objection, you may (but do not have to) attend the hearing. **Objections must be *received* by the Court and counsel on or before _____, 2026. Postmarked on _____, 2026 is not sufficient.** |
| **GO TO THE HEARING ON _____, 2026** | Ask to speak in Court about the fairness of the Settlement. **Requests to speak must be *received* by the Court and counsel on or before _____, 2026.** |
| **DO NOTHING** | Receive no payment. You will, however, still be a Member of the Class, which means that you give up your right to ever be part of any other lawsuit against the Defendants or any other Released Defendant Parties about the legal claims being resolved by this Settlement and you will be bound by any judgments or orders entered by the Court in the Litigation. |

## SUMMARY OF THIS NOTICE

**Statement of Class Recovery**

Subject to Court approval, Lead Plaintiff, on behalf of the Class, has agreed to settle the Litigation in exchange for a payment of $15,000,000 in cash and the issuance of a warrant to purchase up to 1,000,000 shares of Applied common stock, with an exercise price of $0.48 per share (the "Settlement Amount"). The Net Settlement Fund will be distributed to Class Members according to the Court-approved plan of allocation (the "Plan of Allocation"). The proposed Plan of Allocation is set forth on pages 11-15.

**Estimate of Average Recovery Per Share**

Based on Plaintiff's estimate of the maximum number of 97.8 million shares of Applied common stock eligible to recover under the Settlement, the average distribution from the cash portion of the Settlement Fund under the Plan of Allocation is estimated to be approximately $0.15 per share before deduction of any Taxes, Tax Expenses, Notice and Administration Expenses, Warrant Exercise Expenses, and the Fee and Expense Award as determined by the Court. In addition to any cash recovery, each Authorized Claimant will be eligible to receive a proportionate share of the proceeds from the Warrant, which will be distributed either in cash or in securities.

**Class Members should note, however, that these are only estimates.** A Class Member's actual recovery will be a proportion of the Net Settlement Fund (cash plus proceeds from the Warrant) determined by that claimant's Recognized Claim as compared to the total Recognized Claim of all Class Members who submit acceptable Proofs of Claim. An individual Class Member may receive more or less than this estimated average amount. See the Plan of Allocation set forth and discussed at pages 11-15 below for more information on the calculation of your claim.

## Statement of Potential Outcome of Case

The Settling Parties disagree on both liability and damages and do not agree on the amount of damages that would be recoverable if the Class prevailed on each claim alleged. Plaintiff's damages expert estimates that if Plaintiff and the Class were completely successful on all claims, and Plaintiff and the Class's damages theories and evidence were accepted in full by the Court and the jury, then the maximum recoverable damages for the Class would be approximately $377.5 million, or approximately $3.86 per share based on Plaintiff's estimate of the maximum number of 97.8 million shares of Applied common stock eligible to recover under the Settlement. Defendants deny that they are liable to the Class and deny that the Class has suffered any damages.

The issues on which the parties disagree are many, but include: (1) whether Defendants engaged in conduct that would give rise to any liability to the Class under the federal securities laws, or any other laws; (2) whether Defendants have valid defenses to any such claims of liability; (3) the appropriate economic model for determining the amount by which the prices of Applied common stock were allegedly artificially inflated (if at all) during the Class Period; (4) the amount, if any, by which the prices of Applied common stock were allegedly artificially inflated (if at all) during the Class Period; (5) the effect of various market forces on the prices of Applied common stock at various times during the Class Period; (6) the extent to which external factors influenced the prices of Applied common stock at various times during the Class Period; (7) the extent to which the various matters that Plaintiff alleged were materially false or misleading influenced (if at all) the prices of Applied common stock at various times during the Class Period; and (8) the extent to which the various allegedly adverse material facts that Plaintiff alleged were omitted influenced (if at all) the prices of Applied common stock at various times during the Class Period.

## Statement of Attorneys' Fees and Expenses Sought

Since the action's inception, Lead Counsel have expended considerable time and effort in the prosecution of this Litigation on a wholly contingent basis and have advanced the expenses of the Litigation in the expectation that if they were successful in obtaining a recovery for the Class, they would be paid from such recovery. Lead Counsel will apply to the Court for an award of attorneys' fees not to exceed twenty percent (20%) of the Settlement Amount, plus expenses not to exceed $50,000, plus interest earned on both amounts at the same rate as earned by the Settlement Fund. If the amounts requested are approved by the Court, the average cost per share of Applied common stock eligible to participate in the Settlement against the cash portion of the Settlement Fund is estimated to be approximately $0.03 per share, based on Plaintiff's estimate of the maximum number of 97.8 million shares of Applied common stock eligible to recover under the Settlement.

## Further Information

For further information regarding the Litigation, this Notice or to review the Stipulation, please contact the Claims Administrator toll-free at 1-833-703-4229, or visit the website www.APLTSecuritiesSettlement.com.

You may also contact a representative of counsel for the Class: Joshua W. Ruthizer, Wolf Popper LLP, 845 Third Avenue, 12th Floor. New York, NY 10022, (877) 370-7703, www.wolfpopper.com.

**Please do not call the Court or Defendants with questions about the Settlement.**

## Reasons for the Settlement

Plaintiff's principal reason for entering into the Settlement is the benefit to the Class now, without further risk or the delays inherent in continued litigation. The cash benefit under the Settlement must be considered

against the significant risk that a smaller recovery – or, indeed, no recovery at all – might be achieved after contested motions, trial, and likely appeals, a process that could last several years into the future. For the Defendants, who have denied and continue to deny, all allegations of liability, fault, or wrongdoing whatsoever, the principal reason for entering into the Settlement is to eliminate the uncertainty, risk, costs, and burdens inherent in any litigation, especially in complex cases such as this Litigation. The Settling Parties agree that further conduct of this Litigation could be protracted and distracting, would dissipate the insurance currently available to resolve Plaintiff's claims, and further diminish Applied's financial condition.

## BASIC INFORMATION

| 1. | Why did I get this Notice? |
|---|---|

You or someone in your family or an investment account for which you serve as custodian may have purchased or otherwise acquired publicly traded Applied common stock on a U.S. based exchange during the period between January 3, 2024 through and including December 2, 2024 (the "Class Period").

This Notice explains the class action lawsuit, the Settlement, Class Members' legal rights in connection with the Settlement, what benefits are available, who is eligible for them, and how to get them.

The Court directed that this Notice be made publicly available on www.APLTSecuritiesSettlement.com to inform Class Members of the terms of the proposed Settlement and about all of their options, before the Court decides whether to approve the Settlement at the upcoming hearing to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (the "Settlement Hearing").

The Court in charge of the Litigation is the United States District Court for the Southern District of New York, and the case is known as *In re Applied Therapeutics Securities Litigation*, Case No. 1:24-cv-09715-DLC-VF. The case has been assigned to the Honorable Denise L. Cote. The individual representing the Class is the Plaintiff Dr. Martin Dietrich, and the Company, and individuals he sued and who have now settled are called the Defendants.

| 2. | What is this lawsuit about? |
|---|---|

Plaintiff's Second Amended Consolidated Complaint (the "Complaint"), filed on June 13, 2025, alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. More specifically, Plaintiff alleges that, throughout the Class Period (January 3, 2024 through December 2, 2024, inclusive), Defendants made materially false and misleading statements to investors and the Class in violation of Section 10(b) and Rule 10b-5 concerning, among other things, the viability of Applied's New Drug Application ("NDA") to the U.S. Food and Drug Administration ("FDA") for govorestat to treat Classic Galactosemia ("Galactosemia"), a rare genetic metabolic disorder that can be fatal if untreated; Defendants' interactions with the FDA concerning the NDA; the reliability of the data underlying the NDA; and alleged known material deficiencies with the NDA. The Complaint alleges that the Defendants made these and other statements detailed in the Complaint while aware of, among other things, (a) dosing errors where certain clinical trial patients received the wrong dose of govorestat, which were not reported to the FDA in the NDA, in violation of FDA regulations, and (b) that clinical trial records were allegedly deleted, in violation of FDA regulations, and the FDA had discovered the deletion of clinical trial records during an inspection of Applied. The Complaint alleges that the failure to disclose these and other undisclosed facts rendered Defendants' statements materially false and misleading.

The Complaint also alleges that these alleged misrepresentations and omissions caused the price of Applied's common stock to trade at artificially inflated levels during the Class Period, until the market learned the truth through, among other things, the November 27, 2024 disclosure of a complete response letter ("CRL") from the FDA to Applied rejecting the NDA and the December 3, 2024 publication by the FDA of a Warning Letter from the FDA to Applied that identified the alleged deletion of clinical study data and that certain clinical

study patients received the incorrect dose of govorestat. The Complaint alleges that these disclosures resulted in a sharp decline in Applied's share price.

Defendants deny each and all of the claims and contentions of wrongdoing alleged by Plaintiff in the Litigation, as well as any and all allegations of fault, liability, wrongdoing, or damages whatsoever arising out of any of the conduct, statements, acts, or omissions that have been alleged, or that could have been alleged, in the Litigation. Defendants contend that they did not make any materially false or misleading statements, that they disclosed all material information required to be disclosed by the federal securities laws, and that any alleged misstatements or omissions were not made with the requisite intent or knowledge of wrongdoing. Defendants also contend that any losses allegedly suffered by Members of the Class were not caused by any allegedly false or misleading statements by them. Defendants continue to believe that the claims asserted against them in the Litigation are without merit and that the Litigation itself should not be certified as a class action for purposes of trial or adjudication of liability and damages. Defendants also maintain that they have meritorious defenses to all claims that were raised or could have been raised in the Litigation.

| 3. | Why is there a settlement? |
|---|---|

The Court has not decided in favor of Defendants or of the Plaintiff and the Class. Instead, both sides agreed to the Settlement to avoid the distraction, costs, and risks of further litigation, and Plaintiff agreed to the Settlement in order to ensure that Class Members will receive compensation.

## WHO IS IN THE SETTLEMENT

| 4. | How do I know if I am a Member of the Class? |
|---|---|

The Court directed that everyone who fits this description is a Class Member: all Persons who purchased or otherwise acquired the publicly traded common stock of Applied on a U.S. based exchange during the period from January 3, 2024 through December 2, 2024, inclusive, except those Persons and entities that are excluded.

Excluded from the Class are: (i) Defendants; (ii) the current and former officers, directors, and employees of Applied (the "Excluded Persons"); (iii) any person or entity that purchased Applied securities in the March 1, 2024 Private Placement (the "Private Placement Investors"); (iv) members of Defendants', Excluded Persons', or Private Placement Investors' immediate families, legal representatives, heirs, successors or assigns; and (v) any entity in which Defendants, the Excluded Persons, or the Private Placement Investors have or had a controlling interest. Also excluded from the Class are those Persons who timely and validly exclude themselves therefrom by submitting a request for exclusion in accordance with the requirements set forth in question 11 below.

**Please Note:** Receipt of this Notice or the Postcard Notice does not mean that you are a Class Member or that you will be entitled to receive a payment from the Settlement. Please check your records or contact your broker to see if you are a Class Member. If you are a Class Member and you wish to be eligible to participate in the distribution of proceeds from the Settlement, you are required to submit the Claim Form available on the Settlement Website, www.APLTSecuritiesSettlement.com, and the required supporting documentation as set forth therein postmarked or submitted online on or before ＿＿＿＿＿＿＿, 2026.

| 5. | What if I am still not sure if I am included? |
|---|---|

If you are still not sure whether you are included, you can ask for free help. You can contact the Claims Administrator toll-free at 1-833-703-4229, via email at Info@APLTSecuritiesSettlement.com, or you can submit a Claim Form online or via US Mail, to see if you qualify.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| 6. | What does the Settlement provide? |
|---|---|

The Settlement provides that, in exchange for the release of the Released Claims (defined below) and dismissal of the Litigation, Defendants have agreed to provide consideration consisting of $15,000,000 cash and the issuance of a Warrant to purchase up to 1,000,000 shares of Applied common stock, with an exercise price of $0.48 per share (together, the "Settlement Amount").

The Warrant will be held and administered by the Securities Escrow Agent on behalf of the Class. The Securities Escrow Agent, under the supervision of Lead Counsel, will determine whether and when to exercise the Warrant. Warrant Proceeds may be paid in cash or in Applied common stock or other securities (in the event Applied is acquired or merges with another company, pursuant to the terms of the Warrant). No Class Member will receive an interest in the Warrant itself. The Securities Escrow Agent, under the supervision of Lead Counsel, will decide whether to sell the Warrant Proceeds paid in the form of Applied common stock or other securities and to distribute the resulting cash proceeds, or to distribute the Applied common stock or other securities to Class Members.

Any Warrant Proceeds realized from the exercise of the Warrant and/or sale of Warrant Proceeds paid in the form of Applied common stock or other securities shall be added to the Net Settlement Fund and distributed to Authorized Claimants pursuant to this Plan of Allocation. The Plan of Allocation is described in more detail on pages 11-15. No Class Member will receive individual warrant certificates. In the event the Warrant expires unexercised or proves to have no realizable value, no additional distribution will be made on account of the Warrant.

| 7. | How much will my payment be? |
|----|------------------------------|

Your share of the Net Settlement Fund (as defined and described in the Plan of Allocation on page ___ below) will depend on several things, including the total claims for Applied common shares represented by the valid Claim Forms that Class Members send in, compared to the value of your claim, all as calculated under the Plan of Allocation described below.

## HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

| 8. | How can I get a payment? |
|----|--------------------------|

To be eligible to receive a payment from the Settlement, you must submit a timely and valid Claim Form. You can request a Claim Form be mailed to you by calling the Claims Administrator toll-free at 1-833-703-4229, or download a Claim Form from www.APLTSecuritiesSettlement.com. Read the instructions carefully, fill out the Claim Form, include all the documents the form asks for, sign it, and **mail or submit it online** through www.APLTSecuritiesSettlement.com **so that it is postmarked or received no later than _____, 2026**.

| 9. | When would I get my payment? |
|----|------------------------------|

**The Court will hold a Settlement Hearing on _____, 2026, at __.m.**, to decide whether to approve the Settlement. If the Court approves the Settlement, there might be appeals. It is always uncertain whether appeals can be resolved, and if so, how long it would take to resolve them. It also takes time for all the Claim Forms to be processed. Please be patient.

| 10. | What am I giving up to get a payment or to stay in the Class? |
|-----|--------------------------------------------------------------|

Unless you timely and validly exclude yourself, you are staying in the Class, and that means you cannot sue, continue to sue, or be part of any other lawsuit against Defendants or their Related Parties about the Released Claims (as defined below) in this case. It also means that all of the Court's orders will apply to you and legally bind you. If you remain a Class Member, and if the Settlement is approved, you will give up all "Released Claims" (as defined below), including "Unknown Claims" (as defined below), against the "Released Persons" (as defined below):

- **"Released Claims"** means any and all rights, liabilities, suits, debts, obligations, demands, damages, losses, judgment, matters, issues, claims (including "Unknown Claims," as defined below), and causes of action, of every nature and description whatsoever, in law, equity, or otherwise, whether known or unknown, asserted or unasserted, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, whether arising under federal, state, local, statutory, common, or foreign law, or any other law, rule, or regulation, whether class and/or individual in nature, that (a) Lead Plaintiff or any other Class Member asserted or could have asserted in the Litigation, or could in the future assert in any court or forum based upon, relating to, in connection with, or arising from the allegations, transactions, facts, matters or occurrences, errors, representations, misrepresentations, actions, failures to act, or omissions that were alleged, set forth, or referred to in the Litigation, including claims for sanctions, and (b) also relate to the purchase of publicly traded shares of Applied common stock on a U.S. based exchange during the Class Period. "Released Claims" does not include: (i) derivative claims; (ii) ERISA claims; and (iii) claims to enforce the Settlement.

- **"Released Defendants' Claims"** means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, against Lead Plaintiff, Lead Counsel or any Class Member that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Litigation, including claims for sanctions. Released Defendants' Claims do not include claims relating to the enforcement of the Settlement.

- **"Released Defendant Parties"** means each and all of Defendants, Defendants' Counsel, and any of their Related Parties means each and all of the Defendants, Defendants' Counsel and their Related Parties.

- **"Related Parties"** means any Person's former, present or future parents, subsidiaries, divisions, controlling persons, associates, related entities and affiliates, any entity in which a Person has a controlling interest, and each and all of their respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors (including financial or investment advisors), accountants, auditors, consultants, underwriters, investment bankers, commercial bankers, entities providing fairness opinions, general or limited partners or partnerships, limited liability companies, members, joint ventures and insurers and reinsurers or co-insurers of each of them; as well as the predecessors, successors, estates, immediate family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such..

- **"Unknown Claims"** means: (a) any and all Released Claims, which any of the Lead Plaintiff, Members of the Class, or Lead Counsel do not know or suspect to exist in their favor at the time of the release of the Released Defendant Parties, which, if known by them, might have affected their settlement with and release of the Released Defendant Parties, or might have affected their decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement; and (b) any and all Released Defendants' Claims that any of the Defendants or Defendants' Counsel do not know or suspect to exist in their favor at the time of the release of Released Plaintiff Parties, which, if known by them might have affected their settlement and release of Released Plaintiff Parties. With respect to (a) any and all Released Claims against the Released Defendant Parties, and (b) any and all Released Defendants' Claims against Released Plaintiff Parties, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive, and each Released Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive, and each Released Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common

law, which is similar, comparable, or equivalent to California Civil Code § 1542. The Released Plaintiff Parties and Released Defendant Parties acknowledge that they may hereafter discover facts, legal theories or authorities in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but (a) the Released Plaintiff Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish and release, and each Released Plaintiff Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and, upon the Effective Date, and by operation of the Judgment, shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Claims against the Released Defendant Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed, or may hereafter exist, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities, and (b) the Released Defendant Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish and release, and, upon the Effective Date, and by operation of the Judgment, shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Defendants' Claims against the Released Plaintiff Parties, the Class and Lead Counsel, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. The Settling Parties acknowledge, and the Released Plaintiff Parties and Released Defendant Parties shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is an essential element of the Settlement of which this release is a part.

The Settlement also bars any and all claims for contribution or indemnity against any of the Released Defendant Parties arising out of, relating to or concerning any acts, facts, statements, or omissions that were or could have been alleged in the Litigation.

## EXCLUDING YOURSELF FROM THE CLASS

If you do not want to participate in this Settlement, and you want to keep the right to potentially sue the Defendants and the other Released Persons, on your own, about the claims being released by the Settlement, then you must take steps to remove yourself from the Settlement. This is called excluding yourself – or is sometimes referred to as "opting out." If you are requesting exclusion because you want to bring your own lawsuit based on the matters alleged in this Litigation, you may want to consult an attorney and discuss whether any individual claim that you may wish to pursue would be time-barred by the applicable statutes of limitation or repose.

| **11.** | **How do I get out of the Class and the proposed Settlement?** |
|---|---|

To exclude yourself from the Class and the Settlement, you must send a letter or other document by First-Class Mail stating that you "request exclusion from the Class in the *Applied Therapeutics Settlement*." The request for exclusion must include (i) the name, address, and telephone number of the Person requesting exclusion; (ii) the caption of the Action; (iii) a list identifying all transactions in Applied common stock during the Class Period by the Person requesting exclusion, the date of each transaction, and the price of each transaction; (iv) documentation sufficient to evidence each listed transaction in Applied common stock during the Class Period by the Person requesting exclusion and the date of each transaction; and (v) a statement that the Person wishes to be excluded from the Class. Any request for exclusion must be in writing and signed under penalty of perjury by the beneficial owner(s) of the shares of Applied common stock that are the subject of the request for exclusion. You must submit your exclusion request so that it is **received no later than** _____**, 2026** to:

Applied Therapeutics Securities Settlement
c/o Claims Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

If you ask to be excluded, you will not get any payment from the Settlement, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue the Defendants and the other Released Persons about the Released Claims in the future.

| 12. | If I do not exclude myself, can I sue the Defendants and the other Released Persons for the same thing later? |
|---|---|

No. Unless you exclude yourself, you give up any rights you may potentially have to sue the Defendants and the other Released Persons for any and all Released Claims. If you have a pending lawsuit against the Released Persons, speak to your lawyer in that case immediately. You must exclude yourself from the Class in this Litigation to continue your own lawsuit. Remember, the exclusion deadline is ＿＿＿＿＿＿, 2026.

| 13. | If I exclude myself, can I get money from the proposed Settlement? |
|---|---|

No. If you exclude yourself, you should not send in a Claim Form to ask for any money. But you may have the right to potentially sue or be part of a different lawsuit against the Defendants and the other Released Persons.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or any part of it.

| 14. | How do I tell the Court that I object to the proposed Settlement? |
|---|---|

If you are a Class Member, you can comment on or object to the proposed Settlement, the proposed Plan of Allocation and/or Lead Counsel's Fee and Expense Application. You can write to the Court setting out your comment or objection. The Court will consider your views. To comment or object, you must send a letter or other document saying that you wish to comment on or object to the proposed Settlement in the *Applied Therapeutics Settlement*. Any objection must be signed personally under penalty of perjury by the Class Member submitting the objection and include (i) the name, address and telephone number of the Class Member objecting; (ii) the caption of the Action; (iii) a statement of the Class Members' objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention and whether the objections apply only to the objector, a specific subset of the Class, or to the entire Class; (iv) a list identifying all transactions in Applied common stock during the Class Period by the Class Member objecting, the date of each transaction, and the price of each transaction; and (v) documents sufficient to prove membership in the Class, including the objecting Class Member's purchases, and/or sales of Applied common stock during the Class Period, the dates, the number of shares purchased or sold, and the price paid or received for such purchase or sale. Your comments or objection must be filed with the Court and mailed or delivered to each of the following addresses such that it is ***received*** **no later than** ＿＿＿＿＿＿, **2026:**

| COURT | LEAD COUNSEL |
|---|---|
| Clerk of Court<br>United States District Court<br>Southern District Of New York<br>500 Pearl Street<br>New York, NY 10007 | WOLF POPPER LLP<br>Joshua W. Ruthizer, Esq.<br>845 Third Avenue, 12th Floor<br>New York, NY 10022 |

**PLEASE NOTE that all objections will be filed publicly with the Court. You should redact any personally identifiable information before submitting your objection, such as account numbers or social security numbers.**

| 15. | What is the difference between objecting and excluding? |
|---|---|

Objecting is simply telling the Court that you do not like something about the Settlement. You can object **only** if you stay in the Class.

Excluding yourself is telling the Court that you do not want to recover money from the Settlement and do not want to release any claims you think you may have against Defendants and their Related Parties. If you exclude yourself, you cannot object to the Settlement because it does not affect you.

### THE LAWYERS REPRESENTING YOU

| 16. | Do I have a lawyer in this case? |
|---|---|

The Court ordered that the law firm of Wolf Popper LLP represent the Class Members, including you. These lawyers are called Lead Counsel. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 17. | How will the lawyers be paid? |
|---|---|

Lead Counsel will apply to the Court for a Fee and Expense Award for (a) an award of attorneys' fees not to exceed twenty percent (20%) of the Settlement Amount and (b) expenses, costs and charges in an amount not to exceed $50,000 in connection with prosecuting the Litigation, plus interest on such fees and expenses at the same rate as earned by the Settlement Fund. Such sums as may be approved by the Court will be paid from the Settlement Fund. Lead Counsel's Fee and Expense Application will ask that it be awarded attorneys' fees in a percent of the cash settlement consideration and any Warrant Proceeds that result from exercise of the Warrant.

### THE COURT'S SETTLEMENT HEARING

The Court will hold a hearing to decide whether to approve the proposed Settlement. You may attend and you may ask to speak, but you do not have to.

| 18. | When and where will the Court decide whether to approve the proposed Settlement? |
|---|---|

The Court will hold a Settlement Hearing at __:00 _.m., on _____, 2026, at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 18B, New York, NY 10007. At the hearing, the Court will consider whether the Settlement and the Plan of Allocation are fair, reasonable, and adequate. If there are objections, the Court will consider them, even if you do not ask to speak at the hearing. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Lead Counsel and Plaintiff. After the Settlement Hearing, the Court will decide whether to approve the Settlement and the Plan of Allocation. We do not know how long these decisions will take. You should be aware that the Court may change the date and time of the Settlement Hearing without another notice being sent to Class Members. If you want to attend the hearing, you should check with Lead Counsel or the Settlement Website www.APLTSecuritiesSettlement.com beforehand to be sure that the date and/or time has not changed.

| 19. | Do I have to come to the hearing? |
|---|---|

No. Lead Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as your written objection was received by the deadline stated herein and otherwise complies with the requirements set forth herein, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary. Class Members do not need to appear at the hearing or take any other action to indicate their approval.

| 20. | May I speak at the hearing? |
|---|---|

If you object to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application, you may ask the Court for permission to speak at the Settlement Hearing. To do so, you must include in your written objection (see question 14 above) a written statement of your intention to appear at the hearing and to include in your written objections the identity of any witnesses you may call to testify and copies of any exhibits you intend to introduce into evidence at the Settlement Hearing. Your notice of intention to appear must be received with your written objection and be ***received* no later than** _____, **2026**, and addressed to the Clerk of Court, Lead Counsel, and Defendants' Counsel, at the addresses listed above in question 14.

You cannot speak at the hearing if you exclude yourself from the Class.

## IF YOU DO NOTHING

| 21. | What happens if I do nothing? |
|-----|-------------------------------|

If you do nothing, you will not receive any money from this Settlement. In addition, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants and their Related Parties about the Released Claims in this case.

## GETTING MORE INFORMATION

| 22. | How do I get more information? |
|-----|--------------------------------|

For even more detailed information concerning the matters involved in this Litigation, you can obtain answers to common questions regarding the proposed Settlement by contacting the Claims Administrator toll-free at 1-833-703-4229. Reference is also made to the Settlement Agreement, to the documents filed in support of the Settlement, to the Orders entered by the Court and to the other Settlement related papers filed in the Litigation, which are posted on the Settlement Website at www.APLTSecuritiesSettlement.com, and which may also be inspected at the Office of the Clerk of the United States District Court for the Southern District of New York, during regular business hours. For a fee, all papers filed in this Litigation are available at www.pacer.gov.

## PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG CLASS MEMBERS

Each Class Member's share of the Settlement Fund will depend on several factors, including, but not limited to, how many Class Members timely send in valid Claim Forms; the amount of Applied common stock you purchased during the Class Period; the prices and dates of those purchases; and the prices and dates of any sales you made. The Plan of Allocation below will provide more detail on your potential recovery.

The Settlement Amount (together with any interest earned thereon) constitutes the "Settlement Fund." The "Net Settlement Fund" means the Settlement Fund less: (i) any Court-awarded Fee and Expense Award to Lead Counsel, and interest thereon; (ii) Notice and Administration Expenses that are paid, incurred, or due and owing; (iii) Taxes and Tax Expenses that are paid, incurred, or due and owing; (iv) any Warrant Exercise Expenses that are paid, incurred, or due and owing; and (v) any other Court-approved deductions that are paid, incurred, or due and owing. If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible members of the Class who timely submit valid Claim Forms ("Authorized Claimant(s)") in accordance with the Plan of Allocation.

The Plan of Allocation is intended to distribute the proceeds of the Net Settlement Fund equitably among all Class Members who are alleged to have suffered economic losses as a proximate result of Defendants' conduct. The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Loss." The Recognized Loss formula will be the Authorized Claimant's Recognized Loss divided by the total of the Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. The Recognized Loss formula is not a formal damage analysis, and the calculations made in accordance with the formula are not intended to be estimates, or indicative, of the amount of what a Class member lost or might have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement.

In order to have recoverable damages under Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5, disclosure of the alleged misrepresentation and/or omission must be the cause of the decline in the price of the security. In this Litigation, Lead Plaintiff alleges that the truth concerning Defendants' materially false and misleading statements (corrective disclosures) was revealed to the market after the close of trading on Wednesday November 27, 2024 (the day before the Thanksgiving Holiday, when U.S. trading markets were closed), when Applied announced it had received the CRL and the FDA had rejected the NDA, and during the trading day on December 3, 2024, when the FDA published the Warning Letter on its website disclosing reasons for the rejection of the NDA, and that those disclosures allegedly caused statistically significant declines in the price of Applied's common stock and removed the alleged artificial inflation in Applied common stock. Accordingly, for a Class member to have a compensable loss in this Settlement, the Applied common stock must have been purchased during the Class Period and (i) held through at least the opening of trading on November 29, 2024 (the first trading day after November 27, 2024) to be eligible for loss associated with the first disclosure, and (ii) held through at least the close of the trading day on December 2, 2024 to be eligible for loss associated with the second disclosure.

**THE COURT MAY APPROVE THE PLAN OF ALLOCATION, OR MODIFY IT, WITHOUT ADDITIONAL NOTICE TO THE CLASS. ANY ORDER MODIFYING THE PLAN OF ALLOCATION WILL BE POSTED ON THE SETTLEMENT WEBSITE, www.APLTSecuritiesSettlement.com.**

### CALCULATION OF RECOGNIZED LOSS AND RECOGNIZED GAIN AMOUNTS

The premise of the Plan of Allocation is that the true value of Applied common shares during the Class Period was allegedly $1.69 per share, the closing price on December 3, 2024, after the disclosure of the CRL and the Warning Letter. A Recognized Loss shall be calculated by the Claims Administrator for shares of Applied common stock purchased during the Class Period as follows:

1. For shares purchased during the Class Period and sold prior to November 29, 2024, the Recognized Loss will be zero.

2. For shares purchased during the Class Period and sold on November 29, 2024 or December 2, 2024, the Recognized Loss will be the lesser of (i) the difference between the purchase price and the sale price, (ii) the difference between the purchase price and $1.75 per share (the closing price on December 2, 2024), or (iii) $6.82 per share (the combined share price decline on November 29, 2024 and December 2, 2024).

3. For shares purchased during the Class Period and sold on December 3, 2024, the Recognized Loss will be the lesser of (i) the difference between the purchase price and the sale price, (ii) the difference between the purchase price and $1.69 per share (the closing price on December 3, 2024), or (iii) $6.88 per share (the combined share price decline on November 29, 2024, December 2, 2024, and December 3, 2024).

4. For shares purchased during the Class Period and still held at the close of trading on December 3, 2024 the Recognized Loss will be the lesser of (i) the difference between the purchase price and $1.69 per share (the closing price on December 3, 2024), or (ii) $6.88 per share (the combined share price decline on November 29, 2024, December 2, 2024, and December 3, 2024).

5. Gains on shares both purchased and sold from November 29, 2024 through December 3, 2024 will offset a class member's Recognized Loss.


### ADDITIONAL PROVISIONS

1. **Calculation of Claimant's "Recognized Claim":** A Claimant's "Recognized Claim" will be the sum of his, her, or its Recognized Loss Amounts as calculated above with respect to all Applied common stock purchased or otherwise acquired during the Class Period.

2. **Purchase/Sale Dates:** Purchases and sales of Applied common stock will be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance or operation of law of Applied common stock during the Class Period will not be deemed a purchase, acquisition or sale of publicly traded Applied common stock for the calculation of Recognized Loss, unless (i) the donor or decedent purchased such shares of Applied common stock on the open market on a U.S. based exchange during the Class Period; (ii) no Proof of Claim was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of Applied common stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

3. The purchase price of Applied common stock will be the price paid on the open market and will not include any commissions or fees.

4. Any transactions executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.)

5. **FIFO Matching:** If a Class Member made multiple purchases, acquisitions, or sales of Applied common stock during the Class Period, the Applied common stock sold will be matched, in chronological order, against the first Applied common stock purchased or acquired during the Class Period (First-in, First-Out, or "FIFO").

6. **Short Sales**: The date of covering a "short sale" is deemed to be the date of purchase or acquisition of Applied common stock. The date of a "short sale" is deemed to be the date of sale of Applied common stock. Under the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero.

7. If a claimant has an opening short position in Applied common stock, his, her, or its earliest Class Period purchases or acquisitions of Applied common stock will be matched against the opening short position, and not be entitled to a recovery, until that short position is fully covered.

8. **Shares Purchased/Sold Through the Exercise of Options:** Option contracts are not securities eligible to participate in the Settlement. With respect to shares of Applied common stock purchased or sold through the exercise of an option, the purchase/sale date of the Applied common stock is the exercise date of the option, and the purchase/sale price of the Applied common stock is the exercise price of the option.

9. **Market Gains and Losses:** The Claims Administrator will determine whether the Claimant had a "Market Gain" or a "Market Loss" with respect to his, her, or its overall transactions in Applied common stock during the Class Period. For purposes of making this calculation, the Claims Administrator will determine the difference between (i) the Claimant's Total Purchase Amount[2] and (ii) the sum of the Claimant's Total Sales Proceeds[3] and the Claimant's Holding Value.[4] If the Claimant's Total Purchase Amount minus the

---

[2] The "Total Purchase Amount" is the total amount the claimant paid (excluding commissions and other charges) for Applied common stock purchased or acquired during the Class Period.

[3] The Claims Administrator will match any sales of Applied common stock from the start of the Class Period through and including the close of trading on December 2, 2024, first against the claimant's opening position (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received (excluding commissions and other charges) for the remaining sales of Applied common stock sold from the start of the Class Period through and including the close of trading on December 2, 2024, will be the "Total Sales Proceeds."

[4] The Claims Administrator will ascribe a value of $1.69 per share for Applied common stock purchased or acquired during the Class Period and still held as of the close of trading on December 2, 2024 (the "Holding Value").

sum of the Claimant's Total Sales Proceeds and the Holding Value is a positive number, that number will be the Claimant's Market Loss; if the number is a negative number or zero, that number will be the Claimant's Market Gain.

10. If a Claimant had a Market Gain with respect to his, her, or its overall transactions in Applied common stock during the Class Period, the value of the Claimant's Recognized Claim will be zero, and the Claimant will in any event be bound by the Settlement. If a Claimant suffered an overall Market Loss with respect to his, her, or its overall transactions in Applied common stock during the Class Period but that Market Loss was less than the Claimant's Recognized Claim calculated pursuant to the Plan of Allocation, then the Claimant's Recognized Claim will be limited to the amount of the Market Loss.

11. **Determination of Distribution Amount**: The Net Settlement Fund will be distributed to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims. Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

12. Class Members who do not incur a Recognized Loss as defined in the Plan of Allocation, will not receive a cash distribution from the Net Settlement Fund, but will be bound by all determinations and judgments of the Court in connection with the Settlement, including being barred from asserting any of the Released Claims against the Released Parties.

13. If the sum total of Recognized Loss of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive their *pro rata* share of the Net Settlement Fund.

14. If the Net Settlement Fund exceeds the sum total amount of the Recognized Losses of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund will be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

15. Given the costs of distribution, the Net Settlement Fund will be allocated among only those Authorized Claimants whose distributable share of Net Settlement Fund is $10.00 or greater or more than ten whole shares of Warrant Proceeds, calculated on an adjusted basis.

16. Class Members who do not submit a valid and timely Proof of Claim and Release form will not share in the Settlement proceeds, but will nevertheless be bound by the Settlement, the Judgment of the Court dismissing this Litigation, and the releases provided therein.

17. After the initial distribution of the Net Settlement Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the Net Settlement Fund after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator, six (6) months after the initial distribution, will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution. Additional re-distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determine that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective. At such time as it is determined that the re-distribution of funds remaining in the Net

14

Settlement Fund is not cost-effective, the remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

18. Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, will be conclusive against all Claimants. No person shall have any claim against Lead Plaintiff, Lead Counsel, Defendants, Defendants' counsel, or any of the other Released Person or the Claims Administrator or other agent designated by Lead Counsel, arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court. Lead Plaintiff, Defendants, and their respective counsel, and all other Released Persons, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund; the plan of allocation; the determination, administration, calculation, or payment of any Claim or nonperformance of the Claims Administrator; the payment or withholding of taxes owed by the Settlement Fund; or any losses incurred in connection therewith.

## SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you hold Applied common stock pursuant to a transaction that took place within the United States within the Class Period as nominee for a beneficial owner, then you must either: (a) provide to the Claims Administrator the name, last known address, and email address of each beneficial owner for whom they are nominee or custodian; (b) request copies of the Postcard Notice for the Claims Administrator sufficient to send to all beneficial owners for whom they are nominee or custodian, which will be provided to nominees or custodians free of charge, and WITHIN SEVEN (7) CALENDAR DAYS of receipt, mail the Postcard Notice directly to all such persons or entities, or (c) request the link to the Postcard Notice and Proof of Claim and Release form from the Claims Administrator, and WITHIN SEVEN (7) CALENDAR DAYS of receipt, email the link directly to all beneficial owners for whom they are nominee or custodian.

Nominees who elect to follow procedure (b) or (c), **MUST** send a statement to the Claims Administrator confirming that the mailing/emailing was made as directed and keep a record of the names and mailing/emailing addresses used. Upon receipt by the Claims Administrator of proper documentation, nominees may seek reimbursement of their reasonable expenses actually incurred, not to exceed (a) $0.03 per name, mailing address and email address (to the extent available) provided to the Claims Administrator; (b) $0.03 per postcard, plus postage at the pre-sort rate used by the Claims Administrator, for mailing the Postcard Notice; or (c) $0.03 per email for emailing the Postcard Notice and Proof of Claim and Release. Any disputes with respect to the reasonableness or documentation of expenses incurred shall be subject to review by the Court.

DATED: _____        _____
                                    BY ORDER OF THE COURT
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE APPLIED THERAPEUTICS SECURITIES
LITIGATION

Case No. 1:24-cv-09715 (DLC) (VF)

<u>CLASS ACTION</u>

**PROOF OF CLAIM AND RELEASE**

1.    **GENERAL INSTRUCTIONS**

1.    To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement[1] of the above-captioned action (the "Action"), you must complete and, on page 7 below, sign this Proof of Claim and Release ("Claim Form") and mail it by first-class mail to the address below, ***postmarked* no later than [____,] 2026,** or submit a Claim Form online at www.APLTSecuritiesSettlement.com, **on or before [____,] 2026.**

2.    Failure to submit your Claim Form by the date specified will subject your claim to rejection and may preclude you from being eligible to receive any money in connection with the Settlement.

3.    Submission of this Claim Form does not assure that you will share in the proceeds of the Settlement of the Action.

4.    If you are not a Class Member, as defined below and in the Longform Notice, DO NOT submit a Claim Form. **You may not, directly or indirectly, participate in the Settlement if you are not a Class Member.**

5.    If you are a Class Member and you do not timely request exclusion you are bound by the terms of any judgment entered in the Action, including the releases provided therein, whether or not you submit a Claim Form.

6.    It is important that you completely read the Longform Notice (the "Notice"), available on the *Important Documents* page at www.APLTSecuritiesSettlement.com. The Notice describes the proposed Settlement, how Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court. By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the releases described therein and provided for herein.

7.    **YOU MUST SUBMIT YOUR COMPLETED CLAIM FORM, ACCOMPANIED BY COPIES OF THE DOCUMENTS REQUESTED HEREIN, SO THAT IT IS POSTMARKED OR RECEIVED BY THE CLAIMS ADMINISTRATOR (IF SUBMITTED ONLINE) NO LATER THAN [_____,] 2026, ADDRESSED AS FOLLOWS:**

Applied Therapeutics Securities Settlement
c/o Claims Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103
Toll-free: 1-833-703-4229
info@APLTSecuritiesSettlement.com

**Do not mail or deliver your Claim Form to the Court, the parties to the Action, or their counsel.**

---

[1] This Proof of Claim and Release incorporates the definitions in the Stipulation of Settlement (the "Stipulation"), which can be obtained at www.APLTSecuritiesSettlement.com

Questions? Visit www.APLTSecuritiesSettlement.com
Email info@APLTSecuritiesSettlement.com or call 1-833-703-4229
Page 1 of 9

## II.    CLAIMANT IDENTIFICATION

1.    You are a Class Member if you purchased or otherwise acquired the publicly traded common stock of Applied Therapeutics, Inc., ("Applied") on a U.S. based exchange between January 3, 2024 and December 2, 2024, inclusive ("Class Period"). Excluded from the Class are: (i) Defendants; (ii) the current and former officers, directors, and employees of Applied; (iii) any person or entity that purchased Applied securities in the March 1, 2024 Private Placement (the "Private Placement Investors"); (iv) members of Defendants', Excluded Persons', or Private Placement Investors' immediate families, legal representatives, heirs, successors or assigns; and (v) any entity in which Defendants, the Excluded Persons, or the Private Placement Investors have or had a controlling interest.

2.    Use **Part A** of this form entitled "Claimant Information" to identify the beneficial owner(s) of Applied common stock. The complete name(s) of the beneficial owner(s) must be entered. If you held the eligible Applied common stock in your own name, you are the beneficial owner as well as the record owner. If, however, your shares of eligible Applied common stock were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these shares, but the third party is the record owner. **This claim must be signed and filed by the actual beneficial owner(s) or the legal representative of such owner(s)**.

3.    All joint owners must sign this claim. The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

4.    **One Claim Form should be submitted for each separate legal entity.** A separate Claim Form should be submitted for each separate legal entity (e.g., a claim for joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name).

5.    Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons or entities represented by them, and they must: expressly state the capacity in which they are acting; identify the name, account number, Social Security number (or taxpayer identification number), address, and telephone number of the beneficial owner, or other person or entity on whose behalf they are acting; and provide evidence of their authority to bind the person or entity on whose behalf they are acting. For example, letters testamentary, letters of administration, or a copy of trust documents.

## III.    IDENTIFICATION OF TRANSACTIONS

1.    Use **Part B** of this form entitled "Schedule of Transactions" to supply all required details of your transaction(s) in Applied common stock. If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form. Sign and print or type your name on each additional sheet.

2.    On the schedule, provide all of the requested information with respect to all purchases, acquisitions, sales, and holdings of Applied common stock that occurred during the Class Period, whether the transactions resulted in a profit or a loss. **Failure to report all such transactions may result in the rejection of your claim**.

3.    List each transaction separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each transaction you list.

4.    You are required to submit valid and sufficient documentation for all your transactions in and holdings of Applied common stock included in the Claim Form. Documentation may consist of copies of broker confirmation slips, monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement. If these documents are not in your possession, please contact your broker. Failure to supply documentation could delay verification of your claim or result in the rejection of your claim. **The Parties and the Claims Administrator do not independently have information about your investments**.

Questions? Visit www.APLTSecuritiesSettlement.com
Email info@APLTSecuritiesSettlement.com or call 1-833-703-4229

Page 2 of 9

5. **Do not send original documents.** Please keep a copy of all documents that you send to the Claims Administrator. Also, do not highlight any portion of the Claim Form or any supporting documents.

6. The requests in this Claim Form are designed to gather the minimum amount of information necessary to process the simplest claims. The Claims Administrator may request additional information as required to efficiently and reliably process your claim.

7. If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after any appeals are resolved, and after the completion of all claims processing. **The claims process will take substantial time to complete fully and fairly. Please be patient.**

8. **PLEASE NOTE:** As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her or its pro rata share of the Net Settlement Fund. If the pro-rated payment to any Authorized Claimant calculates to less than $10.00 or ten shares of Applied common stock or other securities received as Warrant Proceeds, on an adjusted basis, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

9. If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator at the address on the first page of the Claim Form, by email at info@APLTSecuritiesSettlement.com, or by toll-free phone at 1-833-703-4229. Copies of the Claim Form and Notice are available to download at www.APLTSecuritiesSettlement.com.

10. NOTICE REGARDING ONLINE FILING: Claims may be submitted online using the Submit Claim page at www.APLTSecuritiesSettlement.com. If your claim contains a large number of transactions, you may request, or may be requested, to submit an electronic spreadsheet showing your transactions to accompany your Claim Form.

11. NOTICE REGARDING INSTITUTIONAL FILERS: Certain claimants with large numbers of transactions may request, either personally or through a legal representative ("Representative Filers"), to submit information regarding their transactions in electronic files. This is different than submitting your claim online using the Settlement website. All such claimants MUST submit a manually signed paper Claim Form whether or not they also submit electronic copies. If you wish to file your claim electronically, you must contact the Claims Administrator at 1-833-703-4229 or info@APLTSecuritiesSettlement.com to obtain the required electronic spreadsheet for reporting your transactions. The Claims Administrator may also request that claimants with a large number of transactions file their claims electronically. **No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the claimant a written acknowledgment of receipt and acceptance of electronically submitted data. Claims which are not submitted in accordance with the Claims Administrator's instructions may be subject to rejection**.

## IMPORTANT: PLEASE NOTE

**YOUR CLAIM IS NOT DEEMED SUBMITTED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD OR EMAIL. THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR INDIVIDUAL CLAIM FORM WITHIN 60 DAYS. IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT WITHIN 60 DAYS, CALL THE CLAIMS ADMINISTRATOR TOLL FREE AT 1-833-703-4229.**

Questions? Visit www.APLTSecuritiesSettlement.com
Email info@APLTSecuritiesSettlement.com or call 1-833-703-4229

Page 3 of 9

<table>
<tr><td>

**Your Claim Form must be submitted on or before [_____,] 2026**

</td><td>

**PROOF OF CLAIM AND RELEASE**

*Applied Therapeutics Securities Settlement*
**1650 Arch Street, Suite 2210**
**Philadelphia, PA 19103**
**Email: info@APLTSecuritiesSettlement.com**
**Website:  www.APLTSecuritiesSettlement.com**

</td><td>

**Applied Therapeutics, Inc.**

</td></tr>
</table>

### PART A – CLAIMANT INFORMATION

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above. Complete names of all persons and entities must be provided.

| |
|---|
| Beneficial Owner Name |
| Co-Beneficial Owner Name |
| Entity Name (if claimant is not an individual) |
| Representative or Custodian Name (if different from Beneficial Owner(s) listed above) |
| Address 1 (Street Name and Number) |
| Address 2 (Apartment, unit, or box number) |

| City | State | ZIP |
|---|---|---|
| Foreign Province | Foreign Country | Postal Code |
| Telephone Number (cell or home) | Telephone Number (work) | |

| |
|---|
| Email Address |
| Account Number (if filing for multiple accounts, file a separate Claim Form for each unique account type) |

| Last four digits of Social Security Number (individuals) | OR | Taxpayer Identification Number (estates, trusts, etc.) |
|---|---|---|

Claimant Account Type (check appropriate box):

☐ Individual / Joint          ☐ Pension Plan          ☐ Trust
☐ Corporation                ☐ Estate
☐ IRA/401K                   ☐ Other _____ (please specify)

Questions? Visit www.APLTSecuritiesSettlement.com
Email info@APLTSecuritiesSettlement.com or call 1-833-703-4229

Page 4 of 9

## PART B: SCHEDULE OF TRANSACTIONS

Do not include information regarding any securities other than Applied common stock. Please include proper documentation with your Claim Form as described in detail in Section III – Identification of Transactions, above.

| APPLIED COMMON STOCK |
|---|
| **Ticker:** APLT |
| **CUSIP:** 03828A101 |

| 1. HOLDINGS AS OF THE CLOSE OF TRADING ON **JANUARY 2, 2024** – State the total number of Applied shares held as of the close of trading on January 2, 2024. If none, write "zero" or "0." (Must be documented.) | **TOTAL NUMBER OF SHARES** |
|---|---|
| | |

**2. PURCHASES/ACQUISITIONS FROM JANUARY 3, 2024 THROUGH DECEMBER 3, 2024** – Separately list each and every purchase or acquisition of Applied common stock from January 3, 2024, through December 3, 2024, inclusive. (Must be documented.)

| Trade Date of Purchase / Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased / Acquired | Purchase / Acquisition Price Per Share | Total Purchase / Acquisition Price (excluding any taxes, commissions, and fees) |
|---|---|---|---|
| /    / | | $ | $ |
| /    / | | $ | $ |
| /    / | | $ | $ |
| /    / | | $ | $ |

**3. SALES FROM JANUARY 3, 2024 THROUGH DECEMBER 3, 2024** – Separately list each and every sale or disposition of Applied common stock from January 3, 2024, through December 3, 2024, inclusive. (Must be documented.)

| Trade Date of Sale / Disposition (List Chronologically) (Month/Day/Year) | Number of Shares Sold / Disposed | Sale Price Per Share | Total Sale Price (excluding any taxes, commissions, and fees) |
|---|---|---|---|
| /    / | | $ | $ |
| /    / | | $ | $ |
| /    / | | $ | $ |
| /    / | | $ | $ |

| 4. HELD AS OF THE CLOSE OF TRADING ON DECEMBER 3, 2024 – State the total number of Applied common stock held as of the close of trading on December 3, 2024. If none, write "zero" or "0." (Must be documented.) | **TOTAL NUMBER OF SHARES** |
|---|---|
| | |

| **IF YOU REQUIRE ADDITIONAL SPACE** for the schedule above, attach extra schedules in the same format. Print the beneficial owner's full name and last four digits of social security/taxpayer identification number on each additional page. **If you attach extra schedules, check this box:** | ☐ |
|---|---|

| FOR USE WITH ADDITIONAL SCHEDULES |
|---|

| Beneficial Owner Name | Last four digits of Social Security / Taxpayer ID No. |
|---|---|

**YOU MUST READ AND SIGN THE RELEASE ON PAGE 7. FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

Questions? Visit www.APLTSecuritiesSettlement.com
Email info@APLTSecuritiesSettlement.com or call 1-833-703-4229

Page 5 of 9

## SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

By signing and submitting this Claim Form, the claimant(s) or the person(s) acting on behalf of the claimant(s) certify(ies) that: I (We) submit this Claim Form under the terms of the Stipulation described in the Notice. I (We) also submit to the jurisdiction of the United States District Court for the Southern District of New York (the "Court") with respect to my (our) claim as a Class Member(s) and for purposes of enforcing the releases set forth herein. I (We) further acknowledge that I (we) will be bound by the terms of any judgment entered in connection with the Settlement in the Action, including the releases set forth therein. I (We) agree to provide additional information to the Claims Administrator to support this claim, such as additional documentation for transactions in eligible Applied common stock, if required to do so. I (We) have not submitted any other claim covering the same transactions in Applied common stock during the Class Period and know of no other person having done so on my (our) behalf.

## RELEASES, WARRANTIES, AND CERTIFICATION

1.      I (We) hereby warrant and represent that I am (we are) a Class Member as defined in the Notice, that I am (we are) not excluded from the Class, that I am (we are) not one of the "Released Defendant Parties" as defined below.

2.      As a Class Member, I (we) hereby acknowledge, on behalf of myself (ourselves) and each of my (our) heirs, executors, trustees, administrators, predecessors, successors, and assigns, full and complete satisfaction of, and do hereby fully, finally, and forever settle, release, and discharge with prejudice the "Released Claims" (as defined below) as to each and all of the Released Defendant Parties. I (we) further acknowledge that I (we), and each of my (our) heirs, executors, trustees, administrators, predecessors, successors, and assigns, shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against any and all of the Released Defendant Parties. This release shall be of no force or effect unless and until the Court approves the Settlement and it becomes effective on the Effective Date.

a.    "Released Claims" means any and all rights, liabilities, suits, debts, obligations, demands, damages, losses, judgment, matters, issues, claims (including "Unknown Claims," as defined below), and causes of action, of every nature and description whatsoever, in law, equity, or otherwise, whether known or unknown, asserted or unasserted, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, whether arising under federal, state, local, statutory, common, or foreign law, or any other law, rule, or regulation, whether class and/or individual in nature, that (a) Lead Plaintiff or any other Class Member asserted or could have asserted in the Litigation, or could in the future assert in any court or forum based upon, relating to, in connection with, or arising from the allegations, transactions, facts, matters or occurrences, errors, representations, misrepresentations, actions, failures to act, or omissions that were alleged, set forth, or referred to in the Litigation, including claims for sanctions, and (b) also relate to the purchase of publicly traded shares of Applied common stock on a U.S. based exchange during the Class Period. "Released Claims" does not include: (i) derivative claims; (ii) ERISA claims; and (iii) claims to enforce the Settlement.

b.    "Unknown Claims" means: (a) any and all Released Claims, which any of the Lead Plaintiff, Members of the Class, or Lead Counsel do not know or suspect to exist in their favor at the time of the release of the Released Defendant Parties, which, if known by them, might have affected their settlement with and release of the Released Defendant Parties, or might have affected their decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement; and (b) any and all Released Defendants' Claims that any of the Defendants or Defendants' Counsel do not know or suspect to exist in their favor at the time of the release of Released Plaintiff Parties, which, if known by them might have affected their settlement and release of Released Plaintiff Parties. With respect to (a) any and all Released Claims against the Released Defendant Parties, and (b) any and all Released Defendants' Claims against Released Plaintiff Parties, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive, and each Released Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive, and each Released Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and

Questions? Visit www.APLTSecuritiesSettlement.com
Email info@APLTSecuritiesSettlement.com or call 1-833-703-4229

Page 6 of 9

benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542. The Released Plaintiff Parties and Released Defendant Parties acknowledge that they may hereafter discover facts, legal theories or authorities in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but (a) the Released Plaintiff Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish and release, and each Released Plaintiff Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and, upon the Effective Date, and by operation of the Judgment, shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Claims against the Released Defendant Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed, or may hereafter exist, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities, and (b) the Released Defendant Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish and release, and, upon the Effective Date, and by operation of the Judgment, shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Defendants' Claims against the Released Plaintiff Parties, the Class and Lead Counsel, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. The Settling Parties acknowledge, and the Released Plaintiff Parties and Released Defendant Parties shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is an essential element of the Settlement of which this release is a part.

c.    "Released Defendant Parties" means each and all of "Defendants", "Defendants' Counsel", and any of their "Related Parties," as defined in the Stipulation.

d.    "Released Plaintiff Parties" means each and all of "Lead Plaintiff," "Class Members," "Lead Counsel," and any of their "Related Parties," as defined in the Stipulation

3.    I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

4.    I (We) hereby warrant and represent that I (we) have included information about all of my (our) purchases, acquisitions and sales of Applied common stock that occurred during the Class Period and the number of shares held by me (us), to the extent requested.

5.    I (We) certify that I am (we are) NOT subject to backup tax withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code.

☐    Check this box if you are subject to backup withholding.

I (We) declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied on this Claim Form by the undersigned is true and correct.

Executed this ____ day of _____, in _____, _____,
                                        (Month / Year)              (City)              (State/Country)


_____            _____
Signature of Claimant                                          Signature of Joint Claimant, if any


_____            _____
Print Name of Claimant                                        Print Name of Joint Claimant, if any

Questions? Visit www.APLTSecuritiesSettlement.com
Email info@APLTSecuritiesSettlement.com or call 1-833-703-4229

Page 7 of 9

_____

(Capacity of person(s) signing, *e.g.*, Beneficial Purchaser, Executor or Administrator)

Questions? Visit www.APLTSecuritiesSettlement.com
Email info@APLTSecuritiesSettlement.com or call 1-833-703-4229

Page 8 of 9

ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.
THANK YOU FOR YOUR PATIENCE.

**REMINDER CHECKLIST:**

1. Please sign this Claim Form.

2. DO NOT HIGHLIGHT THE CLAIM FORM OR YOUR SUPPORTING DOCUMENTATION.

3. Attach only copies of supporting documentation as these documents will not be returned to you.

4. Keep a copy of your Claim Form for your records.

5. The Claims Administrator will acknowledge receipt of your Claim Form by mail or email, within 60 days. **Your claim is not deemed submitted until you receive an acknowledgment email (or postcard if email is not available).** If you do not receive an acknowledgment within 60 days, please call the Claims Administrator toll free at 1-.

6. If you move after submitting this Claim Form please notify the Claims Administrator of the change in your address, otherwise you may not receive additional notices or payment.

Questions? Visit www.APLTSecuritiesSettlement.com
Email info@APLTSecuritiesSettlement.com or call 1-833-703-4229

Page 9 of 9

**Exhibit B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLIED THERAPEUTICS SECURITIES LITIGATION | Case No. 1:24-cv-09715 (DLC) (VF)<br><br>CLASS ACTION |

[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE

This matter came before the Court pursuant to the Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Class ("Notice Order") dated _____ _____, 2025, on the application of the parties for approval of the Settlement set forth in the Stipulation of Settlement dated November 4, 2025 (the "Stipulation"). Due and adequate notice having been given to the Class as required in said Notice Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Judgment incorporates by reference the definitions in the Stipulation, and all capitalized terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise set forth herein.

2.      This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including all Members of the Class.

3.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby affirms its determination in the Notice Order and finally certifies, for purposes of settlement only, a Class defined as: all persons and entities who purchased or otherwise acquired the publicly traded common stock of Applied on a U.S. based exchange between January 3, 2024 and December 2, 2024, inclusive (the "Class Period"). Excluded from the Class are: (i) Defendants; (ii) the current and former officers, directors, and employees of Applied (the "Excluded Persons"); (iii) any person or entity that purchased Applied securities in the March 1, 2024 Private Placement (the "Private Placement Investors"); (iv) members of Defendants', Excluded Persons', or Private Placement Investors' immediate families, legal representatives, heirs, successors or assigns; and (v) any entity

in which Defendants, the Excluded Persons, or the Private Placement Investors have or had a controlling interest.

4.      Also excluded from the Class are those Persons identified in Exhibit 1 attached hereto who would otherwise be a Member of the Class but who have validly and timely excluded themselves therefrom.

5.      The Court finds that: (a) the Members of the Class are so numerous that joinder of all Class Members in the Class is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual question; (c) the claims of Lead Plaintiff are typical of the claims of the Class; (d) Lead Plaintiff and his counsel have fairly and adequately represented and protected the Members of the Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering (i) the interests of the Members of the Class individually controlling the prosecution with separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by Members of the Class; (iii) the desirability or undesirability of concentrating the litigation of these claims in this particular forum; and (iv) the difficulties likely to be encountered in the management of the class action.

6.      Pursuant to Federal Rule of Civil Procedure 23, the Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation, the amount of the Settlement, the Releases provided for therein, and the dismissal with prejudice of the claims asserted against Defendants in the Litigation) and finds that:

    (a)      said Stipulation and the Settlement contained therein, are, in all respects, fair, reasonable, and adequate and in the best interest of the Class;

    (b)      Lead Plaintiff and Lead Counsel have adequately represented the Class;

-2-

    (c)    The Settlement was negotiated at arm's-length with the assistance of an experienced mediator, and there was no collusion in connection with the Stipulation;

    (d)    the Stipulation was the product of informed, arm's-length negotiations among competent, able counsel;

    (e)    the relief provided for the Class is adequate, having taken into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class Members' Claims; (iii) the terms of any proposed award of attorneys' fees, including the timing of payment; and (iv) any agreement required to be identified under Federal Rule of Civil Procedure 23(e)(2);

    (f)    the proposed Plan of Allocation treats Class Members equitably relative to each other; and

    (g)    the record is sufficiently developed and complete to have enabled Lead Plaintiff and Defendants to have adequately evaluated and considered their positions.

7.    Accordingly, the Court authorizes and directs implementation and performance of all the terms and provisions of the Stipulation, as well as the terms and provisions hereof. Except as to any individual claim of those Persons (identified in Exhibit 1 attached hereto) who have validly and timely requested exclusion from the Class, the Court hereby dismisses the Litigation and all claims asserted therein with prejudice. The Settling Parties are to bear their own costs, except as and to the extent provided in the Stipulation and herein.

8.    Upon the Effective Date, and as provided in the Stipulation, Lead Plaintiff shall, and each of the Class Members, on behalf of themselves, their successors and assigns, shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed with prejudice all Released Claims (including Unknown Claims) against the Released Defendant Parties, whether or not such Class Member executes and delivers the Proof of Claim and Release form or shares in the Net Settlement Fund. Claims to enforce the terms of the Stipulation or any order of the Court in the Litigation are not

released. Nothing contained herein shall release or bar any Releasing Plaintiff Party or Released

Defendant Parties from bringing any action or claim to enforce the terms of the Stipulation or this

Final Judgment.

9.      Upon the Effective Date, and as provided in the Stipulation, all Class Members and

anyone claiming through or on behalf of any of them, will be forever barred and enjoined from

asserting, commencing, instituting, prosecuting, continuing to prosecute or maintaining any action

or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum,

asserting any of the Released Claims against any of the Released Defendant Parties.

10.     Upon the Effective Date, as provided in the Stipulation and to the fullest extent

permitted by law, all Persons shall be permanently enjoined, barred, and restrained from bringing,

commencing, prosecuting, or asserting any claims, actions, or causes of action for contribution,

indemnity, or otherwise against any of the Released Defendant Parties seeking as damages or

otherwise the recovery of all or any part of any liability, judgment, or settlement which they pay,

are obligated to pay, agree to pay, or that are paid on their behalf to the Class or any Class Member

arising out of, relating to or concerning any acts, facts, statements, or omissions that were or could

have been alleged in the Litigation, whether arising under state, federal, or foreign law as claims,

cross-claims, counterclaims, third-party claims, or otherwise, in the Court or any federal, state or

foreign court, or in any arbitration proceeding, administrative agency proceeding, tribunal, or any

other forum. For avoidance of doubt, nothing in the Bar Order shall bar or otherwise affect any

claim for insurance coverage, indemnity, or advancement between Released Defendant Parties.

11.     Upon the Effective Date, and as provided in the Stipulation, each of the Released

Defendant Parties shall be deemed to have, and by operation of this Judgment shall have, fully,

finally, and forever released, relinquished, and discharged all Released Defendants' Claims

(including Unknown Claims) against the Lead Plaintiff, each and all of the Class Members, and Lead Counsel. Claims to enforce the terms of the Stipulation or any order of the Court in the Litigation are not released.

12. The Notice of Pendency and Proposed Settlement of Class Action (the "Notice") given to the Class was the best notice practicable under the circumstances, including the individual notice to all Members of the Class who could be identified through reasonable effort. Said notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Stipulation, to all Persons entitled to such notice, and said notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process. No Class Member is relieved from the terms of the Settlement, including the releases provided for therein, based upon the contention or proof that such Class Member failed to receive actual or adequate notice. A full opportunity has been offered to the Class Members to object to the proposed Settlement and to participate in the hearing thereon. The Court further finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. §1715, were fully discharged and that the statutory waiting period has elapsed. Thus, the Court hereby determines that all Members of the Class are bound by this Judgment.

13. Notice of Lead Counsel's Fee and Expense Application was directed to Class Members in a reasonable manner and complies with Rule 23(h)(1) of the Federal Rules of Civil Procedure, due process, and the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

14.     Pursuant to and in full compliance with Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finds and concludes that due and adequate notice was directed to all persons who are Class Members who could be identified with reasonable effort, advising them of the Plan of Allocation and of their right to object thereto, and a full and fair opportunity was accorded to all persons and entities who are Class Members to be heard with respect to the Plan of Allocation.

15.     Neither this Judgment, the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is, or may be deemed to be, or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Defendant Parties or their respective Related Parties, or (b) is, or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the Released Defendant Parties or their respective Related Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. The Released Defendant Parties and/or their respective Related Parties may file the Stipulation and/or this Judgment from this Litigation in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

16.     The Court finds that Defendants have satisfied their financial obligations under the Stipulation by paying or causing to be paid **$15,000,000 in cash** to the Settlement Fund, in accordance with ¶ 2.6 of the Stipulation. Pursuant to the terms of the Stipulation, Applied is directed to issue and deliver, or cause to be issued and delivered, to the Securities Escrow Agent Warrants to purchase up to **1,000,000 shares of Applied common stock at $0.48 per share** within

fourteen (14) days calendar days after entry of Final Judgment, in accordance with ¶ 2.7 of the Stipulation. Issuance and delivery of the Warrant is a condition for occurrence of the Effective Date as set forth in ¶ 9.1, and should the Warrant not be issued and delivered, the Stipulation and this Judgment will terminate and be rendered null and void pursuant to the terms of the Stipulation and paragraph ___ of this Judgment.

17.     As set forth in the Stipulation, Lead Counsel shall have sole discretion when and whether to exercise the Warrant on behalf of the Class and when or whether to sell the shares underlying the Warrant prior to distribution of the Net Settlement Fund to Class Members. Lead Counsel is authorized to expend up to $480,000 from the Settlement Fund in Warrant Exercise Expenses without further order of this Court.  Lead Counsel and any person acting at the direction of Lead Counsel shall have no liability for any action taken in connection with the Warrant or the underlying Applied common shares except for willful misconduct.

18.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees, expenses, and interest in the Litigation; and (d) all parties herein for the purpose of construing, enforcing, and administering the Stipulation.

19.     The Court finds and concludes that during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11 in connection with the institution, prosecution, defense, and settlement of the Litigation.

20.     The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiff, and all other Class Members (regardless of whether or not any individual Class Member submits a Proof of Claim and Release form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns.

21.     In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, or the Effective Date does not occur, or in the event that the Settlement Fund, or any portion thereof, is returned to the Defendants or their insurers, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation, and the Settling Parties shall revert to their respective positions in the Litigation as of August 19, 2025, as provided in the Stipulation.

22.     Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation. The Settling Parties are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Class Members in connection with the Settlement.

23.     This Litigation and all Released Claims are dismissed with prejudice. The parties are to bear their own costs, except as otherwise agreed to in writing by the Settling Parties or as otherwise provided in the Stipulation or Judgment.

24.     The Court hereby grants Lead Counsel's Fee and Expense Application and awards Lead Counsel a Fee and Expense Award of attorneys' fees of _____% of the Settlement Fund, or

$_____ plus _____% of any Warrant Proceeds received by the Settlement Fund, plus expenses in the amount of $_____, together with the interest earned on both amounts for the same period and at the same rate as that earned on the Settlement Fund until paid. The Court finds that the amount of fees awarded is fair, reasonable, and appropriate under the "percentage-of-recovery" method.

25.    The awarded attorneys' fees and expenses and interest earned thereon, shall be paid to Lead Counsel immediately upon execution of this Final Judgment and Order of Dismissal with Prejudice and subject to the terms, conditions, and obligations of the Stipulation, and in particular, ¶ 8.2 thereof, which terms, conditions, and obligations are incorporated herein.

26.    In making this award of fees and expenses to Lead Counsel, the Court has considered and found that:

(a)    the Settlement has created a fund consisting of $15,000,000 in cash and a warrant to purchase up to 1,000,000 shares of Applied common stock at an exercise price of $0.48 per share, and numerous Class Members who submit, or have submitted, valid Proof of Claim and Release forms will benefit from the Settlement created by Lead Counsel;

(b)    at least _____ copies of the Notice were disseminated to potential Class Members indicating that Lead Counsel would move for attorneys' fees in an amount not to exceed 20% of the Settlement Amount and for expenses in an amount not to exceed $50,000, plus interest on both amounts, and no objections to the fees or expenses were filed by Class Members;

(c)    Lead Counsel pursued the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(d)    Lead Counsel expended substantial time and effort pursuing the Litigation on behalf of the Class;

(e)     Lead Counsel pursued the Litigation entirely on a contingent basis;

(f)     the Litigation involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings who resolution would be uncertain;

(g)     had Lead Counsel not achieved the Settlement, there would remain a significant risk that the Class may have recovered less or nothing from Defendants;

(h)     Lead Counsel represented that they have devoted over _____ hours, with a lodestar value of $_____, to achieve the Settlement;

(i)     public policy concerns favor the award of reasonable attorneys' fees; and

(j)     the attorney's fees and expenses awarded are fair and reasonable.

27.     The Court finds and concludes that the Plan of Allocation for the calculation of the claims of Authorized Claimants which is set forth in the Notice provides a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Fund among Authorized Claimants, with due consideration having been given to administrative convenience and necessity.

28.     This Court finds and concludes that the Plan of Allocation, as set forth in the Notice, is, in all respects, fair and reasonable and the Court approves the Plan of Allocation.

29.     The Court directs immediate entry of this Judgment by the Clerk of the Court.

IT IS SO ORDERED.

DATED: _____    _____
                              The Honorable Denise L. Cote
                              United States District Judge

**Exhibit C**

NEITHER THIS SECURITY NOR THE SECURITIES FOR WHICH THIS SECURITY IS EXERCISABLE HAVE BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND, ACCORDINGLY, MAY NOT BE OFFERED OR SOLD EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS. THIS SECURITY AND THE SECURITIES ISSUABLE UPON EXERCISE OF THIS SECURITY MAY BE PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER LOAN SECURED BY SUCH SECURITIES.

**COMMON STOCK PURCHASE WARRANT**

**Applied Therapeutics, Inc.**

Warrant number: _____

Warrant Shares: _____                                                    Issue Date: [●]

THIS **COMMON STOCK PURCHASE WARRANT** (the "Warrant") certifies that, for value received, _____ or its assigns (the "Holder") is entitled, upon the terms and subject to the limitations on exercise and the conditions hereinafter set forth, at any time on or after the date hereof (the "Issue Date") and on or prior to 5:00 p.m. (New York City time) on [●][1] (the "Termination Date") but not thereafter, to subscribe for and purchase from Applied Therapeutics, Inc., a Delaware corporation (the "Company"), up to _____ shares (as subject to adjustment hereunder, the "Warrant Shares") of common stock, $0.0001 par value per share, of the Company ("Common Stock"). The purchase price of one share of Common Stock under this Warrant shall be equal to the Exercise Price, as defined in Section 2(b).

Section 1.  Definitions. In addition to the terms defined elsewhere in this Warrant, the following terms have the meanings indicated in this Section 1:

"Bid Price" means, for any date, the price determined by the first of the following clauses that applies: (a) if the Common Stock is then listed or quoted on a Trading Market, the bid price of the Common Stock for the time in question (or the nearest preceding date) on the Trading Market on which the Common Stock is then listed or quoted as reported by Bloomberg (based on a Trading Day from 9:30 a.m. (New York City time) to 4:00 p.m. (New York City time)), (b) if OTCQB or OTCQX is not a Trading Market, the volume weighted average price of the Common Stock for such date (or the nearest preceding date) on OTCQB or OTCQX as applicable, (c) if the Common Stock is not then listed or quoted for trading on OTCQB or OTCQX and if prices for the Common Stock are then reported on The Pink Open Market (or a similar organization or agency succeeding to its functions of reporting prices), the most recent bid price per share of the Common Stock so reported, or (d) in all other cases, the fair market value of a share of Common Stock as determined by an independent appraiser selected in good faith by the holders of a majority in interest of the Warrants then outstanding and reasonably acceptable to the Company, the fees and expenses of which shall be paid by the Company.

"Person" means an individual or corporation, partnership, trust, incorporated or unincorporated association, joint venture, limited liability company, joint stock company, government (or an agency or subdivision thereof) or other entity of any kind.

"Subsidiary" means any subsidiary of the Company and shall, where applicable, also include any direct or indirect subsidiary of the Company formed or acquired after the date hereof.

"Trading Day" means a day on which the Common Stock is traded on a Trading Market.

"Trading Market" means any of the following markets or exchanges on which the Common Stock is listed or quoted for trading on the date in question: the NYSE American, the Nasdaq Capital Market, the Nasdaq Global Market, the Nasdaq Global Select Market, the New York Stock Exchange, the OTCQB or the OTCQX (or any successors to any of the foregoing).

_____
[1] NTD: Such date to be one year anniversary of the Effective Date.

Exhibit C

"Transfer Agent" means Computershare Trust Company, N.A., the current transfer agent of the Company, with a mailing address of 150 Royall Street, Canton, MA, 02021, and an email address of victoria.rue@computershare.com, and any successor transfer agent of the Company.

"VWAP" means, for any date, the price determined by the first of the following clauses that applies: (a) if the Common Stock is then listed or quoted on a Trading Market, the daily volume weighted average price of the Common Stock for such date (or the nearest preceding date) on the Trading Market on which the Common Stock is then listed or quoted as reported by Bloomberg (based on a Trading Day from 9:30 a.m. (New York City time) to 4:02 p.m. (New York City time)), (b) if OTCQB or OTCQX is not a Trading Market, the volume weighted average price of the Common Stock for such date (or the nearest preceding date) on OTCQB or OTCQX as applicable, (c) if the Common Stock is not then listed or quoted for trading on OTCQB or OTCQX and if prices for the Common Stock are then reported in The Pink Open Market (or a similar organization or agency succeeding to its functions of reporting prices), the most recent bid price per share of the Common Stock so reported thereon, or (d) in all other cases, the fair market value of a share of Common Stock as determined by an independent appraiser selected in good faith by the holders of a majority in interest of the Warrants then outstanding and reasonably acceptable to the Company, the fees and expenses of which shall be paid by the Company.

Section 2. Exercise.

a) Exercise of Warrant. Exercise of the purchase rights represented by this Warrant may be made, in whole or in part, at any time or times on or after the Issue Date and on or before the Termination Date by delivery to the Company of a duly executed facsimile copy or PDF copy submitted by e-mail (or e-mail attachment) of the Notice of Exercise in the form annexed hereto (the "Notice of Exercise"). Within the earlier of (i) two (2) Trading Days and (ii) the number of Trading Days comprising the Standard Settlement Period (as defined in Section 2(d)(i) herein) following the date of exercise as aforesaid, the Holder shall deliver the aggregate Exercise Price for the Warrant Shares specified in the applicable Notice of Exercise by wire transfer or cashier's check drawn on a United States bank unless the cashless exercise procedure specified in Section 2(c) below is specified in the applicable Notice of Exercise. No ink-original Notice of Exercise shall be required, nor shall any medallion guarantee (or other type of guarantee or notarization) of any Notice of Exercise be required. Notwithstanding anything herein to the contrary, the Holder shall not be required to physically surrender this Warrant to the Company until the Holder has purchased all of the Warrant Shares available hereunder and the Warrant has been exercised in full, in which case, the Holder shall surrender this Warrant to the Company for cancellation within three (3) Trading Days of the date on which the final Notice of Exercise is delivered to the Company. Partial exercises of this Warrant resulting in purchases of a portion of the total number of Warrant Shares available hereunder shall have the effect of lowering the outstanding number of Warrant Shares purchasable hereunder in an amount equal to the applicable number of Warrant Shares purchased. The Holder and the Company shall maintain records showing the number of Warrant Shares purchased and the date of such purchases. The Company shall deliver any objection to any Notice of Exercise within one (1) Trading Day of its receipt of such notice. **The Holder and any assignee, by acceptance of this Warrant, acknowledge and agree that, by reason of the provisions of this paragraph, following the purchase of a portion of the Warrant Shares hereunder, the number of Warrant Shares available for purchase hereunder at any given time may be less than the amount stated on the face hereof.**

b) Exercise Price. The exercise price per share of Common Stock under this Warrant shall be $0.48, subject to adjustment hereunder (the "Exercise Price").

c) Cashless Exercise. This Warrant may also be exercised, in whole or in part, at such time by means of a "cashless exercise" in which the Holder shall be entitled to receive a number of Warrant Shares equal to the quotient obtained by dividing [(A-B) (X)] by (A), where:

Exhibit C

(A) = as applicable: (i) the VWAP on the Trading Day immediately preceding the date of the applicable Notice of Exercise if such Notice of Exercise is (1) both executed and delivered pursuant to Section 2(a) hereof on a day that is not a Trading Day or (2) both executed and delivered pursuant to Section 2(a) hereof on a Trading Day prior to the opening of "regular trading hours" (as defined in Rule 600(b) of Regulation NMS promulgated under the federal securities laws) on such Trading Day, (ii) at the option of the Holder, either (y) the VWAP on the Trading Day immediately preceding the date of the applicable Notice of Exercise or (z) the Bid Price of the Common Stock on the principal Trading Market as reported by Bloomberg L.P. ("Bloomberg") as of the time of the Holder's execution of the applicable Notice of Exercise if such Notice of Exercise is executed during "regular trading hours" on a Trading Day and is delivered within two (2) hours thereafter (including until two (2) hours after the close of "regular trading hours" on a Trading Day) pursuant to Section 2(a) hereof or (iii) the VWAP on the date of the applicable Notice of Exercise if the date of such Notice of Exercise is a Trading Day and such Notice of Exercise is both executed and delivered pursuant to Section 2(a) hereof after the close of "regular trading hours" on such Trading Day;

(B) = the Exercise Price of this Warrant, as adjusted hereunder; and

(X) = the number of Warrant Shares that would be issuable upon exercise of this Warrant in accordance with the terms of this Warrant if such exercise were by means of a cash exercise rather than a cashless exercise.

If Warrant Shares are issued in such a cashless exercise, the parties acknowledge and agree that in accordance with Section 3(a)(9) of the Securities Act, the holding period of the Warrant Shares being issued may be tacked on the holder period of this Warrant. The Company agrees not to take any position contrary to this Section 2(c).

d) Mechanics of Exercise.

i. Delivery of Warrant Shares Upon Exercise. On or before the second Trading Day following the date on which the Company has received a Notice of Exercise (or such earlier date as required pursuant to the Exchange Act or other applicable law), provided that payment of the aggregate Exercise Price (other than in the case of a cashless exercise) is received within the earlier of (i) two Trading Days and (ii) the number of Trading Days comprising the Standard Settlement Period following delivery of the Notice of Exercise (such date, the "Warrant Share Delivery Date"), rule or regulation for the settlement of a trade of such Warrant Shares initiated on the applicable date of exercise, the Company shall (X) provided that the Transfer Agent is participating in The Depository Trust Company ("DTC") Fast Automated Securities Transfer Program ("FAST") and such Holder has (i) resold the Warrant Shares in a manner described under the caption "Plan of Distribution" in a then-effective and available registration statement filed under the Securities Act covering the resale of the Warrant Shares (the "Registration Statement") or pursuant to Rule 144 or other available exemption from registration under the Securities Act and (ii) delivered to the Company, the Transfer Agent and counsel to the Company a customary seller's representation letter and, if requested by the Transfer Agent, a customary broker's representation letter confirming the resale of such Warrant Shares in the manner described above, together with any other documentation reasonably required by the Transfer Agent and/or the Depository Trust Company and, if applicable and requested by the Company, a legal opinion of Holder's counsel that the sale of such Warrant Shares did not require registration under the Securities Act, in a form and substance reasonably satisfactory to the Company and its counsel (the "Resale Eligibility Conditions"), upon the request of the Holder, credit such aggregate number of Warrant Shares to which the Holder is entitled pursuant to such exercise to the Holder's or its designee's balance account with DTC through its Deposit/Withdrawal at Custodian system, or (Y) if the Transfer Agent is not participating in the FAST or the Resale Eligibility Conditions are not satisfied, upon the

Exhibit C

request of the Holder, issue and deliver (via reputable overnight courier) to the address as specified in the Notice of Exercise, a certificate, registered in the name of the Holder or its designee, for the number of Warrant Shares to which the Holder shall be entitled pursuant to such exercise. Upon delivery of the Notice of Exercise, the Holder shall be deemed for all corporate purposes to have become the holder of record of the Warrant Shares with respect to which this Warrant has been exercised, irrespective of the date of delivery of the Warrant Shares are credited to the Holder's DTC account or the date of delivery of the certificates evidencing such Warrant Shares (as the case may be), provided that payment of the aggregate Exercise Price (other than in the case of a cashless exercise) is received within the earlier of (i) one (1) Trading Day and (ii) the number of Trading Days comprising the Standard Settlement Period following delivery of the Notice of Exercise. As used herein, "Standard Settlement Period" means the standard settlement period, expressed in a number of Trading Days, on the Company's primary Trading Market with respect to the Common Stock as in effect on the date of delivery of the Notice of Exercise to the Company.

ii. Delivery of New Warrants Upon Exercise. If this Warrant shall have been exercised in part, the Company shall, at the request of a Holder and upon surrender of this Warrant certificate, at the time of delivery of the Warrant Shares, deliver to the Holder a new Warrant evidencing the rights of the Holder to purchase the unpurchased Warrant Shares called for by this Warrant, which new Warrant shall in all other respects be identical with this Warrant.

iii. Rescission Rights. If the Company fails to cause the Transfer Agent to transmit to the Holder the Warrant Shares pursuant to Section 2(d)(i) by the Warrant Share Delivery Date, then the Holder will have the right to rescind such exercise.

iv. No Fractional Shares or Scrip. No fractional shares or scrip representing fractional shares shall be issued upon the exercise of this Warrant. As to any fraction of a share which the Holder would otherwise be entitled to purchase upon such exercise, the Company shall, at its election, either pay a cash adjustment in respect of such final fraction in an amount equal to such fraction multiplied by the Exercise Price or round up to the next whole share.

v. Charges, Taxes and Expenses. Issuance of Warrant Shares shall be made without charge to the Holder for any issue or transfer tax or other incidental expense in respect of the issuance of such Warrant Shares, all of which taxes and expenses shall be paid by the Company, and such Warrant Shares shall be issued in the name of the Holder or in such name or names as may be directed by the Holder; *provided*, *however*, that, in the event that Warrant Shares are to be issued in a name other than the name of the Holder, this Warrant when surrendered for exercise shall be accompanied by the Assignment Form attached hereto duly executed by the Holder and the Company may require, as a condition thereto, the payment of a sum sufficient to reimburse it for any transfer tax incidental thereto. The Company shall pay all Transfer Agent fees required for same-day processing of any Notice of Exercise and all fees to the Depository Trust Company (or another established clearing corporation performing similar functions) required for same-day electronic delivery of the Warrant Shares.

vi. Closing of Books. The Company will not close its stockholder books or records in any manner which prevents the timely exercise of this Warrant, pursuant to the terms hereof.

e) Holder's Exercise Limitations. The Company shall not effect any exercise of this Warrant, and a Holder shall not have the right to exercise any portion of this Warrant, pursuant to Section 2 or otherwise, to the extent that after giving effect to such issuance after exercise as set forth on the applicable Notice of Exercise, the Holder (together with the Holder's Affiliates, and any other Persons acting as a group together with the Holder or any of the Holder's Affiliates (such Persons, "Attribution Parties")), would beneficially own in excess of the Beneficial Ownership Limitation (as defined below). For purposes of the foregoing sentence, the number of shares of Common Stock beneficially owned by the Holder and its Affiliates and

Exhibit C

Attribution Parties shall include the number of shares of Common Stock issuable upon exercise of this Warrant with respect to which such determination is being made, but shall exclude the number of shares of Common Stock which would be issuable upon (i) exercise of the remaining, nonexercised portion of this Warrant beneficially owned by the Holder or any of its Affiliates or Attribution Parties and (ii) exercise or conversion of the unexercised or nonconverted portion of any other securities of the Company subject to a limitation on conversion or exercise analogous to the limitation contained herein beneficially owned by the Holder or any of its Affiliates or Attribution Parties. Except as set forth in the preceding sentence, for purposes of this Section 2(e), beneficial ownership shall be calculated in accordance with Section 13(d) of the Exchange Act and the rules and regulations promulgated thereunder, it being acknowledged by the Holder that the Company is not representing to the Holder that such calculation is in compliance with Section 13(d) of the Exchange Act and the Holder is solely responsible for any schedules required to be filed in accordance therewith. To the extent that the limitation contained in this Section 2(e) applies, the determination of whether this Warrant is exercisable (in relation to other securities owned by the Holder together with any Affiliates and Attribution Parties) and of which portion of this Warrant is exercisable shall be in the sole discretion of the Holder, and the Holder's submission of a Notice of Exercise to the Company shall be deemed to be the Holder's determination of whether this Warrant is exercisable (in relation to other securities owned by the Holder together with any Affiliates and Attribution Parties) and of which portion of this Warrant is exercisable, in each case subject to the Beneficial Ownership Limitation, and, absent manifest error, the Company shall have no obligation to verify or confirm the accuracy of such determination. In addition, a determination as to any group status as contemplated above shall be determined in accordance with Section 13(d) of the Exchange Act and the rules and regulations promulgated thereunder. For purposes of this Section 2(e), in determining the number of outstanding shares of Common Stock, a Holder may rely on the number of outstanding shares of Common Stock as reflected in (A) the Company's most recent periodic or annual report filed with the Commission, as the case may be, (B) a more recent public announcement by the Company or (C) a more recent written notice by the Company or the Transfer Agent setting forth the number of shares of Common Stock outstanding. Upon the written or oral request of a Holder, the Company shall within one Trading Day confirm orally and in writing to the Holder the number of shares of Common Stock then outstanding. In any case, the number of outstanding shares of Common Stock shall be determined after giving effect to the conversion or exercise of securities of the Company, including this Warrant, by the Holder or its Affiliates or Attribution Parties since the date as of which such number of outstanding shares of Common Stock was reported. As used herein, "Affiliate" shall mean any Person directly or indirectly controlled by, controlling or under common control with, a Holder, as such terms are used in and construed under Rule 405 under the Securities Act, but only for so long as such control shall continue. The "Beneficial Ownership Limitation" shall be 9.99% of the number of shares of the Common Stock outstanding immediately after giving effect to the issuance of shares of Common Stock issuable upon exercise of this Warrant. Notwithstanding the foregoing, in the case of a Holder who immediately prior to the Issue Date beneficially owns in excess of 9.99% of the number of shares of the Common Stock outstanding at such time, as calculated in accordance with Section 13(d) of the Exchange Act, the Beneficial Ownership Limitation shall be 19.99% of the number of shares of Common Stock outstanding immediately after giving effect to the issuance of shares of Common Stock issuable upon exercise of this Warrant. The provisions of this paragraph shall be construed and implemented in a manner otherwise than in strict conformity with the terms of this Section 2(e) to correct this paragraph (or any portion hereof) which may be defective or inconsistent with the intended Beneficial Ownership Limitation herein contained or to make changes or supplements necessary or desirable to properly give effect to such limitation. The limitations contained in this paragraph shall apply to a successor holder of this Warrant.

Section 3. Certain Adjustments.

a) Stock Dividends and Splits. If the Company, at any time while this Warrant is outstanding: (i) pays a stock dividend or otherwise makes a distribution or distributions on shares of its Common Stock or any other equity or equity equivalent securities payable in shares of Common Stock (which, for avoidance of doubt, shall not include any shares of Common Stock issued by the Company upon exercise of this Warrant), (ii) subdivides outstanding shares of Common Stock into a larger number of shares, (iii) combines (including by way of reverse stock split) outstanding shares of Common Stock into a smaller number of shares, or (iv) issues by reclassification of shares of the Common Stock any shares of capital stock of the Company, then in each case the Warrant Shares shall be multiplied by a fraction of which the numerator shall be the number of shares of Common Stock (excluding treasury shares, if any) outstanding immediately after such event and

5

of which the denominator shall be the number of shares of Common Stock outstanding immediately before such event, and the Exercise Price shall be proportionately adjusted such that the aggregate Exercise Price of this Warrant shall remain unchanged. Any adjustment made pursuant to this Section 3(a) shall become effective immediately after the record date for the determination of stockholders entitled to receive such dividend or distribution and shall become effective immediately after the effective date in the case of a subdivision, combination or re-classification.

b) <u>Subsequent Rights Offerings</u>. In addition to any adjustments pursuant to Section 3(a) above, if at any time the Company grants, issues or sells any rights to purchase stock, warrants, securities or other property pro rata to the record holders of any class of shares of Common Stock (the "<u>Purchase Rights</u>"), then the Holder will be entitled to acquire, upon the terms applicable to such Purchase Rights, the aggregate Purchase Rights which the Holder could have acquired if the Holder had held the number of shares of Common Stock acquirable upon complete exercise of this Warrant (without regard to any limitations on exercise hereof, including without limitation, the Beneficial Ownership Limitation) immediately before the date on which a record is taken for the grant, issuance or sale of such Purchase Rights, or, if no such record is taken, the date as of which the record holders of shares of Common Stock are to be determined for the grant, issue or sale of such Purchase Rights (*provided*, *however*, that, to the extent that the Holder's right to participate in any such Purchase Right would result in the Holder exceeding the Beneficial Ownership Limitation, then the Holder shall not be entitled to participate in such Purchase Right to such extent (or beneficial ownership of such shares of Common Stock as a result of such Purchase Right to such extent) and such Purchase Right to such extent shall be held in abeyance for the Holder until such time, if ever, as its right thereto would not result in the Holder exceeding the Beneficial Ownership Limitation).

c) <u>Pro Rata Distributions</u>. During such time as this Warrant is outstanding, if the Company shall declare or make any dividend or other distribution of its assets (or rights to acquire its assets) to holders of shares of Common Stock, by way of return of capital or otherwise (including, without limitation, any distribution of cash, stock or other securities, property or options by way of a dividend, spin off, reclassification, corporate rearrangement, scheme of arrangement or other similar transaction) (a "<u>Distribution</u>"), at any time after the issuance of this Warrant, then, in each such case, the Holder shall be entitled to participate in such Distribution to the same extent that the Holder would have participated therein if the Holder had held the number of shares of Common Stock acquirable upon complete exercise of this Warrant (without regard to any limitations on exercise hereof, including without limitation, the Beneficial Ownership Limitation) immediately before the date of which a record is taken for such Distribution, or, if no such record is taken, the date as of which the record holders of shares of Common Stock are to be determined for the participation in such Distribution (*provided*, *however*, that, to the extent that the Holder's right to participate in any such Distribution would result in the Holder exceeding the Beneficial Ownership Limitation, then the Holder shall not be entitled to participate in such Distribution to such extent (or in the beneficial ownership of any shares of Common Stock as a result of such Distribution to such extent) and the portion of such Distribution shall be held in abeyance for the benefit of the Holder until such time, if ever, as its right thereto would not result in the Holder exceeding the Beneficial Ownership Limitation).

d) <u>Fundamental Transaction</u>. If, at any time while this Warrant is outstanding, (i) the Company, directly or indirectly, in one or more related transactions effects any merger or consolidation of the Company with or into another Person, (ii) the Company (and all of its Subsidiaries, taken as a whole), directly or indirectly, effects any sale, lease, license, assignment, transfer, conveyance or other disposition of all or substantially all of its assets in one or a series of related transactions, (iii) any, direct or indirect, purchase offer, tender offer or exchange offer (whether by the Company or another Person) is completed pursuant to which holders of Common Stock are permitted to sell, tender or exchange their shares for other securities, cash or property and has been accepted by the holders of 50% or more of the outstanding Common Stock or 50% or more of the outstanding voting power of the common equity of the Company, (iv) the Company, directly or indirectly, in one or more related transactions effects any reclassification, reorganization or recapitalization of the Common Stock or any compulsory share exchange pursuant to which the Common Stock is effectively converted into or exchanged for other securities, cash or property, or (v) the Company, directly or indirectly, in one or more related transactions consummates a stock or share purchase agreement or other business combination (including, without limitation, a reorganization, recapitalization, spin-off, merger or scheme of arrangement) with another Person or group of Persons whereby such other Person or group acquires 50% or more of the outstanding shares of Common Stock or 50% or more of the outstanding

6

Exhibit C

voting power of the common equity of the Company (each a "Fundamental Transaction"), then, upon any subsequent exercise of this Warrant, the Holder shall have the right to receive, for each Warrant Share that would have been issuable upon such exercise immediately prior to the occurrence of such Fundamental Transaction, at the option of the Holder (without regard to any limitation in Section 2(e) on the exercise of this Warrant), the number of shares of Common Stock of the successor or acquiring corporation or of the Company, if it is the surviving corporation, and any additional consideration (the "Alternate Consideration") receivable as a result of such Fundamental Transaction by a holder of the number of shares of Common Stock for which this Warrant is exercisable immediately prior to such Fundamental Transaction (without regard to any limitation in Section 2(e) on the exercise of this Warrant). For purposes of any such exercise, the determination of the Exercise Price shall be appropriately adjusted to apply to such Alternate Consideration based on the amount of Alternate Consideration issuable in respect of one share of Common Stock in such Fundamental Transaction, and the Company shall apportion the Exercise Price among the Alternate Consideration in a reasonable manner reflecting the relative value of any different components of the Alternate Consideration. If holders of Common Stock are given any choice as to the securities, cash or property to be received in a Fundamental Transaction, then the Holder shall be given the same choice as to the Alternate Consideration it receives upon any exercise of this Warrant following such Fundamental Transaction. The Company shall cause any successor entity in a Fundamental Transaction in which the Company is not the survivor (the "Successor Entity") to assume in writing all of the obligations of the Company under this Warrant and the other Transaction Documents in accordance with the provisions of this Section 3(d) pursuant to written agreements in form and substance reasonably satisfactory to the Holder and approved by the Holder (without unreasonable delay) prior to such Fundamental Transaction and shall, at the option of the Holder, deliver to the Holder in exchange for this Warrant a security of the Successor Entity evidenced by a written instrument substantially similar in form and substance to this Warrant which is exercisable for a corresponding number of shares of capital stock of such Successor Entity (or its parent entity) equivalent to the shares of Common Stock acquirable and receivable upon exercise of this Warrant (without regard to any limitations on the exercise of this Warrant) prior to such Fundamental Transaction, and with an exercise price which applies the exercise price hereunder to such shares of capital stock (but taking into account the relative value of the shares of Common Stock pursuant to such Fundamental Transaction and the value of such shares of capital stock, such number of shares of capital stock and such exercise price being for the purpose of protecting the economic value of this Warrant immediately prior to the consummation of such Fundamental Transaction), and which is reasonably satisfactory in form and substance to the Holder. Upon the occurrence of any such Fundamental Transaction, the Successor Entity shall succeed to, and be substituted for (so that from and after the date of such Fundamental Transaction, the provisions of this Warrant and the other Transaction Documents referring to the "Company" shall refer instead to the Successor Entity), and may exercise every right and power of the Company and shall assume all of the obligations of the Company under this Warrant and the other Transaction Documents with the same effect as if such Successor Entity had been named as the Company herein. Notwithstanding the foregoing, in the event of a Change of Control, that is approved by the Company's Board of Directors (and not for avoidance of doubt if the Change of Control is not within the Company's control), the Holder shall surrender this Warrant and shall be entitled to receive from the Company or any Successor Entity, as of the date of consummation of such Change of Control, the same type or form of consideration (and in the same proportion), at the Black Scholes Value of the unexercised portion of this Warrant, that is being offered and paid to the holders of Common Stock of the Company in connection with the Change of Control, whether that consideration be in the form of cash, stock or any combination thereof, or whether the holders of Common Stock are given the choice to receive from among alternative forms of consideration in connection with the Change of Control. As used herein, "Black Scholes Value" means the value of this Warrant based on the Black-Scholes Option Pricing Model obtained from the "OV" function on Bloomberg determined as of the day immediately following the first public announcement of the applicable Change of Control, or, if the Change of Control is not publicly announced, the date the Change of Control is consummated, for pricing purposes and reflecting (i) a risk-free interest rate corresponding to the U.S. Treasury rate for a period equal to the remaining term of this Warrant as of such date of request, (ii) an expected volatility equal to the lesser of (x) 100% and (y) the 30 day volatility obtained from the HVT function on Bloomberg as of the Trading Day immediately following the public announcement of the applicable Change of Control, (iii) the underlying price per share used in such calculation shall be the greater of (a) the highest VWAP during the five (5) Trading Days prior to the closing of the Change of Control and (b) the sum of the price per share being offered in cash, if any, plus the value of any non-cash consideration, if any, being offered in such Change of

7

Exhibit C

Control, (iv) a zero cost of borrow and (v) a 360 day annualization factor. As used herein, "Change of Control" means any Fundamental Transaction other than (i) any reorganization, recapitalization or reclassification of the Common Stock in which holders of the Company's voting power immediately prior to such reorganization, recapitalization or reclassification continue after such reorganization, recapitalization or reclassification to hold publicly traded securities and, directly or indirectly, are, in all material respects, the holders of the voting power of the surviving entity (or entities with the authority or voting power to elect the members of the board of directors (or their equivalent if other than a corporation) of such entity or entities) after such reorganization, recapitalization or reclassification, (ii) pursuant to a migratory merger effected solely for the purpose of changing the jurisdiction of incorporation of the Company or (iii) a merger in connection with a bona fide acquisition by the Company of any Person in which (x) the gross consideration paid, directly or indirectly, by the Company in such acquisition is not greater than 20% of the Company's market capitalization as calculated on the date of the consummation of such merger and (y) such merger does not contemplate a change to the identity of a majority of the board of directors of the Company. Notwithstanding anything herein to the contrary, any transaction or series of transactions that, directly or indirectly, results in the Company or the Successor Entity not having Common Stock or common stock, as applicable, registered under the 1934 Act and listed on an Eligible Market shall be deemed a Change of Control. As used herein, "Eligible Market" means The Nasdaq Capital Market, the NYSE American LLC, The Nasdaq Global Select Market, The Nasdaq Global Market or The New York Stock Exchange, Inc.

    e) Calculations. All calculations under this Section 3 shall be made to the nearest one-hundredth of one cent or the nearest 1/100th of a share, as the case may be. For purposes of this Section 3, the number of shares of Common Stock deemed to be issued and outstanding as of a given date shall be the sum of the number of shares of Common Stock (excluding treasury shares, if any) issued and outstanding.

    f) Voluntary Adjustment By Company. Subject to the rules and regulations of the Trading Market, the Company may at any time during the term of this Warrant, subject to the prior written consent of the Holder, reduce the then current Exercise Price to any amount and for any period of time deemed appropriate by the board of directors of the Company.

    g) Notice to Holder.

        i. Adjustment to Exercise Price. Whenever the Exercise Price is adjusted pursuant to any provision of this Section 3, the Company shall promptly deliver to the Holder by facsimile or email a notice setting forth the Exercise Price after such adjustment and any resulting adjustment to the number of Warrant Shares and setting forth a brief statement of the facts requiring such adjustment.

        ii. Notice to Allow Exercise by Holder. If (A) the Company shall declare a dividend (or any other distribution in whatever form) on the Common Stock, (B) the Company shall declare a special nonrecurring cash dividend on or a redemption of the Common Stock, (C) the Company shall authorize the granting to all holders of the Common Stock rights or warrants to subscribe for or purchase any shares of capital stock of any class or of any rights, (D) the approval of any stockholders of the Company shall be required in connection with any reclassification of the Common Stock, any consolidation or merger to which the Company (and all of its Subsidiaries, taken as a whole) is a party, any sale or transfer of all or substantially all of the assets of the Company, or any compulsory share exchange whereby the Common Stock is converted into other securities, cash or property, or (E) the Company shall authorize the voluntary or involuntary dissolution, liquidation or winding up of the affairs of the Company, then, in each case, the Company shall cause to be delivered by facsimile or email to the Holder at its last facsimile number or email address as it shall appear upon the Warrant Register of the Company, at least 20 calendar days prior to the applicable record or effective date hereinafter specified, a notice stating (x) the date on which a record is to be taken for the purpose of such dividend, distribution, redemption, rights or warrants, or if a record is not to be taken, the date as of which the holders of the Common Stock of record shall be entitled to such dividend, distributions, redemption, rights or warrants are to be determined or (y) the date on which such reclassification, consolidation, merger, sale, transfer or share exchange is expected to become effective or close, and the date as of which it is expected that holders of the Common Stock of record

8

Exhibit C

shall be entitled to exchange their shares of the Common Stock for securities, cash or other property deliverable upon such reclassification, consolidation, merger, sale, transfer or share exchange; *provided* that the failure to deliver such notice or any defect therein or in the delivery thereof shall not affect the validity of the corporate action required to be specified in such notice. To the extent that any notice provided in this Warrant constitutes, or contains, material, non-public information regarding the Company or any of the Subsidiaries, the Company shall simultaneously file such notice with the Commission pursuant to a Current Report on Form 8-K. The Holder shall remain entitled to exercise this Warrant during the period commencing on the date of such notice to the effective date of the event triggering such notice except as may otherwise be expressly set forth herein.

Section 4. Transfer of Warrant.

a) Transferability. This Warrant and all rights hereunder (including, without limitation, any registration rights) are transferable, in whole or in part, upon surrender of this Warrant at the principal office of the Company or its designated agent, together with a written assignment of this Warrant substantially in the form attached hereto duly executed by the Holder or its agent or attorney and funds sufficient to pay any transfer taxes payable upon the making of such transfer. Upon such surrender and, if required, such payment, the Company shall execute and deliver a new Warrant or Warrants in the name of the assignee or assignees, as applicable, and in the denomination or denominations specified in such instrument of assignment, and shall issue to the assignor a new Warrant evidencing the portion of this Warrant not so assigned, if any, and this Warrant shall promptly be cancelled. Notwithstanding anything herein to the contrary, the Holder shall not be required to physically surrender this Warrant to the Company unless the Holder has assigned this Warrant in full, in which case, the Holder shall surrender this Warrant to the Company within three (3) Trading Days of the date on which the Holder delivers an assignment form to the Company assigning this Warrant in full. The Warrant, if properly assigned in accordance herewith, may be exercised by a new holder for the purchase of Warrant Shares without having a new Warrant issued.

b) New Warrants. This Warrant may be divided or combined with other Warrants upon presentation hereof at the aforesaid office of the Company, together with a written notice specifying the names and denominations in which new Warrants are to be issued, signed by the Holder or its agent or attorney. Subject to compliance with Section 4(a), as to any transfer which may be involved in such division or combination, the Company shall execute and deliver a new Warrant or Warrants in exchange for the Warrant or Warrants to be divided or combined in accordance with such notice. All Warrants issued on transfers or exchanges shall be dated the original Issue Date and shall be identical with this Warrant except as to the number of Warrant Shares issuable pursuant thereto.

c) Warrant Register. The Company shall register this Warrant, upon records to be maintained by the Company for that purpose (the "Warrant Register"), in the name of the record Holder hereof from time to time. The Company shall deem and treat the registered Holder of this Warrant as the absolute owner hereof for the purpose of any exercise hereof or any distribution to the Holder, and for all other purposes, absent actual notice to the contrary.

Section 5. Miscellaneous.

a) No Rights as Stockholder Until Exercise; No Settlement in Cash. This Warrant does not entitle the Holder to any voting rights, dividends or other rights as a stockholder of the Company prior to the exercise hereof as set forth in Section 2(d)(i), except as expressly set forth in Section 3. Without limiting any rights of a Holder to receive Warrant Shares on a "cashless exercise" pursuant to Section 2(c) or to receive cash payments pursuant to Section 2(d)(i) and Section 2(d)(iv) herein, in no event shall the Company be required to net cash settle an exercise of this Warrant.

b) Loss, Theft, Destruction or Mutilation of Warrant. The Company covenants that upon receipt by the Company of evidence reasonably satisfactory to it of the loss, theft, destruction or mutilation of this Warrant or any stock certificate relating to the Warrant Shares, and in case of loss, theft or destruction, of indemnity or security reasonably satisfactory to it (which, in the case of the Warrant, shall not include the posting of any bond), and upon surrender and cancellation of such Warrant or stock certificate, if mutilated, the Company will make and deliver a new Warrant or stock certificate of like tenor and dated as of such cancellation, in lieu of such Warrant or stock certificate.

Exhibit C

c) <u>Saturdays, Sundays, Holidays, etc</u>. If the last or appointed day for the taking of any action or the expiration of any right required or granted herein shall not be a Trading Day, then such action may be taken or such right may be exercised on the next succeeding Trading Day.

d) <u>Authorized Shares</u>.

The Company covenants that, during the period the Warrant is outstanding, it will reserve from its authorized and unissued Common Stock a sufficient number of shares to provide for the issuance of the Warrant Shares upon the exercise of any purchase rights under this Warrant. The Company further covenants that its issuance of this Warrant shall constitute full authority to its officers who are charged with the duty of issuing the necessary Warrant Shares upon the exercise of the purchase rights under this Warrant. The Company will take all such reasonable action as may be necessary to assure that such Warrant Shares may be issued as provided herein without violation of any applicable law or regulation, or of any requirements of the Trading Market upon which the Common Stock may be listed. The Company covenants that all Warrant Shares which may be issued upon the exercise of the purchase rights represented by this Warrant will, upon exercise of the purchase rights represented by this Warrant and payment for such Warrant Shares in accordance herewith, be duly authorized, validly issued, fully paid and nonassessable and free from all taxes, liens and charges created by the Company in respect of the issue thereof (other than taxes in respect of any transfer occurring contemporaneously with such issue).

Except and to the extent as waived or consented to by the Holder, the Company shall not by any action, including, without limitation, amending its certificate of incorporation or through any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms of this Warrant, but will at all times in good faith assist in the carrying out of all such terms and in the taking of all such actions as may be necessary or appropriate to protect the rights of Holder as set forth in this Warrant against impairment. Without limiting the generality of the foregoing, the Company will (i) not increase the par value of any Warrant Shares above the amount payable therefor upon such exercise immediately prior to such increase in par value, (ii) take all such action as may be necessary or appropriate in order that the Company may validly and legally issue fully paid and nonassessable Warrant Shares upon the exercise of this Warrant and (iii) obtain all such authorizations, exemptions or consents from any public regulatory body having jurisdiction thereof, as may be, necessary to enable the Company to perform its obligations under this Warrant.

Before taking any action which would result in an adjustment in the number of Warrant Shares for which this Warrant is exercisable or in the Exercise Price, the Company shall obtain all such authorizations or exemptions thereof, or consents thereto, as may be necessary from any public regulatory body or bodies having jurisdiction thereof.

e) <u>Governing Law</u>. All questions concerning the construction, validity, enforcement and interpretation of this Warrant shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the principles of conflicts of law thereof. Each party agrees that all legal proceedings concerning the interpretations, enforcement and defense of the transactions contemplated by this Warrant (whether brought against a party hereto or their respective affiliates, directors, officers, shareholders, partners, members, employees or agents) shall be commenced exclusively in the state and federal courts sitting in the City of New York. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is improper or is an inconvenient venue for such proceeding. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Warrant and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any other manner permitted by law. If either party shall

10

Exhibit C

commence an action, suit or proceeding to enforce any provisions of this Warrant, each party shall bear their own costs and expenses, including attorneys' fees.

f) <u>Restrictions</u>. The Holder acknowledges that the Warrant Shares acquired upon the exercise of this Warrant, if not registered, and the Holder does not utilize cashless exercise, will have restrictions upon resale imposed by state and federal securities laws.

g) <u>Nonwaiver and Expenses</u>. No course of dealing or any delay or failure to exercise any right hereunder on the part of Holder shall operate as a waiver of such right or otherwise prejudice the Holder's rights, powers or remedies. Without limiting any other provision of this Warrant, if the Company willfully and knowingly fails to comply with any provision of this Warrant, which results in any material damages to the Holder, the Company shall promptly pay to the Holder such amounts as shall be sufficient to cover any costs and expenses including, but not limited to, reasonable external attorneys' fees of one counsel, including those of appellate proceedings, incurred by the Holder in collecting any amounts due pursuant hereto or in otherwise enforcing any of its rights, powers or remedies hereunder.

h) <u>Notices</u>. Any notices, consents, waivers or other document or communications required or permitted to be given or delivered under the terms of this Warrant must be in writing and will be deemed to have been delivered: (i) upon receipt, if delivered personally; (ii) when sent, if sent by facsimile (*provided* confirmation of transmission is mechanically or electronically generated and kept on file by the sending party); (iii) when sent, if sent by e-mail (*provided* that such sent e-mail is kept on file (whether electronically or otherwise) by the sending party and the sending party does not receive an automatically generated message from the recipient's e-mail server that such e-mail could not be delivered to such recipient) and (iv) if sent by overnight courier service, one (1) Trading Day after deposit with an overnight courier service with next day delivery specified, in each case, properly addressed to the party to receive the same. If notice is given by facsimile or email, a copy of such notice shall be dispatched no later than the next business day by first class mail, postage prepaid. The addresses, facsimile numbers and e-mail addresses for such communications shall be:

If to the Company:

Applied Therapeutics, Inc.
545 5th Avenue, Suite 1400
New York, NY 10017
Attention: Les Funtleyder
Interim Chief Executive Officer
Email: lfuntleyder@appliedtherapeutics.com

With a copy (for informational purposes only) to:

Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Attention: Joseph Theis; Janet Hsueh
E-mail: jtheis@goodwinlaw.com; jhsueh@goodwinlaw.com

If to a Holder, to its address, facsimile number or e-mail address set forth herein or on the books and records of the Company.

Or, in each of the above instances, to such other address, facsimile number or e-mail address and/or to the attention of such other Person as the recipient party has specified by written notice given to each other party at least five (5) days prior to the effectiveness of such change. Written confirmation of receipt (A) given by the recipient of such notice, consent, waiver or other communication, (B) mechanically or electronically generated by the sender's facsimile machine containing the time, date and recipient facsimile number or (C) provided by an overnight courier service shall be rebuttable evidence of personal service, receipt by facsimile or receipt from an overnight courier service in accordance with clause (i), (ii) or (iv) above, respectively. A copy of the e-mail transmission containing the time, date and recipient e- mail address shall be rebuttable evidence of receipt by e-mail in accordance with clause (iii) above. Notwithstanding anything in this Warrant to the contrary, the Company shall not publicly disclose the name of Holder or any of its Affiliates, or include the name of Holder or any of its Affiliates in any press release or in any filing with the Commission or any regulatory agency or Trading Market,

11

**Exhibit C**

without the prior written consent of Holder, except (i) as required by the federal or state securities laws and (ii) to the extent such disclosure is required by law, rules or regulation of any applicable governmental authority or self regulatory organization (including Nasdaq or other stock exchange).

i) <u>Limitation of Liability</u>. No provision hereof, in the absence of any affirmative action by the Holder to exercise this Warrant to purchase Warrant Shares, and no enumeration herein of the rights or privileges of the Holder, shall give rise to any liability of the Holder for the purchase price of any Common Stock or as a stockholder of the Company, whether such liability is asserted by the Company or by creditors of the Company.

j) <u>Remedies</u>. The Holder, in addition to being entitled to exercise all rights granted by law, including recovery of damages, will be entitled to specific performance of its rights under this Warrant. The Company agrees that monetary damages would not be adequate compensation for any loss incurred by reason of a breach by it of the provisions of this Warrant and hereby agrees to waive and not to assert the defense in any action for specific performance that a remedy at law would be adequate.

k) <u>Successors and Assigns</u>. Subject to applicable securities laws, this Warrant and the rights and obligations evidenced hereby shall inure to the benefit of and be binding upon the successors and permitted assigns of the Company and the successors and permitted assigns of Holder. The provisions of this Warrant are intended to be for the benefit of any Holder from time to time of this Warrant and shall be enforceable by the Holder or holder of Warrant Shares.

l) <u>Amendment</u>. This Warrant may be modified or amended or the provisions hereof waived with the written consent of the Company and the Holder.

m) <u>Severability</u>. Wherever possible, each provision of this Warrant shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Warrant shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Warrant.

n) <u>Headings</u>. The headings used in this Warrant are for the convenience of reference only and shall not, for any purpose, be deemed a part of this Warrant.

*********************

*(Signature Page Follows)*

**Exhibit C**

        IN WITNESS WHEREOF, the Company has caused this Warrant to be executed by its officer thereunto duly authorized as of the date first above indicated.

**APPLIED THERAPEUTICS, INC.**

By: _____

    Name: Les Funtleyder
    Title: Interim Chief Executive Officer

**Exhibit C**

## NOTICE OF EXERCISE

TO:    Applied Therapeutics, Inc. (the "Company")

    (1) The undersigned hereby elects to purchase _____ Warrant Shares of the Company pursuant to the terms of the attached Warrant (only if exercised in full), and tenders herewith payment of the exercise price in full, together with all applicable transfer taxes, if any.

    (2) Payment shall take the form of (check applicable box):

        ☐ in lawful money of the United States; or

        ☐ if permitted the cancellation of such number of Warrant Shares as is necessary, in accordance with the formula set forth in subsection 2(c), to exercise this Warrant with respect to the maximum number of Warrant Shares purchasable pursuant to the cashless exercise procedure set forth in subsection 2(c).

    (3) Please issue said Warrant Shares in the name of the undersigned or in such other name as is specified below:

_____

The Warrant Shares shall be delivered to the following DWAC Account Number:

_____

_____

_____

By its delivery of this Notice of Exercise, the undersigned represents and warrants to the Company that in giving effect to the exercise evidenced hereby the Holders will not beneficially own in excess of the number of shares of Common Stock permitted to be owned under Section 2(e) of the Warrant to which this notice relates.

[SIGNATURE OF HOLDER]

Name of Investing Entity:

*Signature of Authorized Signatory of Investing Entity*:

Name of Authorized Signatory:

Title of Authorized Signatory:

Date:

(Signature must conform in all respects to name of Holder as specified on the face of the Warrant)

14

**Exhibit C**

### ASSIGNMENT FORM

*(To assign the foregoing Warrant, execute this form and supply required information. Do not use this form to purchase shares.)*

FOR VALUE RECEIVED, the foregoing Warrant and all rights evidenced thereby are hereby assigned to

Name: _____

(Please Print)

Address: _____

(Please Print)

Phone Number: _____

Email Address:

Dated: _____ __,

_____.

Holder's Signature: _____

Holder's Address:

15