**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| IN RE APPLIED THERAPEUTICS SECURITIES LITIGATION | ) ) ) ) | Case No. 1:24-cv-09715 (DLC) (VF) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, (II) CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, (III) APPROVAL OF NOTICE TO THE CLASS, AND (IV) SCHEDULING OF A FINAL APPROVAL HEARING**

**WOLF POPPER LLP**
Robert C. Finkel
Joshua W. Ruthizer
Emer Burke
Samuel Coffin
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600
jruthizer@wolfpopper.com

*Attorneys for Court-Appointed Lead Plaintiff Dr. Martin*
*Dietrich and Court-Appointed Lead Counsel to the Proposed Class*

**Table of Contents**

Table of Authorities ...................................................................................................................iii

I.    Introduction.................................................................................................................. 1

II.   Background .................................................................................................................. 2

    A.  Overview of the Action ........................................................................................ 2

    B.  Terms of the Settlement........................................................................................ 4

III.  Argument .................................................................................................................... 5

    A.  The Rule 23(e)(2) and *Grinnell* Factors Support Preliminary Approval ........................ 5

        1.  Rule 23(e)(2)(A): Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ........................................................................................... 7

        2.  Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's Length ....... 8

        3.  Rule 23(e)(2)(C): The Relief Provided for the Class Is Adequate ........................... 8

            a)  Rule 23(e)(C)(i) and *Grinnell* Factors 1, 4, 5, and 6: The Costs, Risks, and Delay of Trial and Appeal; the Complexity, Expense and Likely Duration of the Litigation; and the Risks of Establishing Liability, Damages, and Maintaining the Class Through Trial ............................................................... 11

            b)  Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective .............................................................................................................. 12

            c)  Rule 23(e)(2)(C)(iii): The Anticipated Attorneys' Fees and Expenses Are Reasonable .............................................................................................. 14

            d)  Rule 23(e)(2)(C)(iv): Any Agreement Required to be Identified Under Rule 23(e)(3).......................................................................................................... 16

        4.  Rule 23(e)(2)(D): The Settlement Treats Class Members Equitably Relative to One Another.................................................................................................................. 16

        5.  *Grinnell* Factor 2: The Reaction of the Class to the Settlement............................. 17

        6.  *Grinnell* Factor 3: The Stage of the Proceedings .................................................... 17

        7.  *Grinnell* Factor 7: The Ability of Defendants to Withstand a Greater Judgment ... 17

        8.  *Grinnell* Factors 8 and 9: The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.................................... 19

B.   The Proposed Class Satisfies the Requirements of Rule 23 and Should Be Certified for Settlement Purposes ................................................................................................... 20

    1.   The Class Satisfies the Requirements of Rule 23(a) .............................................. 20

       a)   The Class Is So Numerous that Joinder Is Impracticable ................................ 21

       b)   There Are Common Questions of Law and Fact ............................................. 21

       c)   Lead Plaintiff's Claims Are Typical of the Class ............................................ 22

       d)   Lead Plaintiff Has and Will Fairly and Adequately Protect the Interests of the Class ................................................................................................................. 23

    2.   The Class Satisfies the Requirements of Rule 23(b)(3) .......................................... 24

       a)   Common Legal and Factual Questions Predominate ...................................... 24

       b)   A Class Action Is Superior to Other Methods of Adjudication ....................... 25

C.   The Proposed Notice Program Satisfies Rule 23, Due Process, and the PSLRA .......... 26

D.   Proposed Schedule for Notice and a Settlement Hearing ............................................... 27

IV.    Conclusion ..................................................................................................................... 28

Local Rule 7.1(c) Certification ................................................................................................... 29

## Table of Authorities

### Cases

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ..................................................................... 19

*In re Advanced Battery Techs., Inc. Secs. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................ 20

*In re Allergan PLC Sec. Litig.*,
  No. 18 Civ. 12089 (CM)( GWG),
  2021 U.S. Dist. LEXIS 170310 (S.D.N.Y. Sept. 8, 2021) .................................... 21, 25

*In re Alstom SA Sec. Litig.*,
  253 F.R.D. 266 (S.D.N.Y. 2008) ........................................................................ 21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................ 24, 25

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ........................................................................................ 23

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) .......................................................................... 8

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................. 8

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016) .......................................................................... 22

*In re Bear Stearns*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................ 19

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) .............................................................................. 22

*Christine Asia Co. v. Jack Yun Ma*,
  No. 1:15-md-02631 (CM) (SDA),
  2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) .................................... 11, 16

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ. 7132 (CM) (GWG),
  2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ........................................ 8, 15

*In re Credit Default Swaps Antitrust Litig.*,
   No. 13md2476 (DLC),
   2016 U.S. Dist. LEXIS 54587 (S.D.N.Y. April 26, 2016)........................................................ 14

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)......................................................................................................... 8

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)....................................................................................................... 6

*In re Deutsche Bank AG Sec. Litig.,*
   No. 1:09-cv-01714-GHW-RWL,
   2020 U.S. Dist. LEXIS 103134 (S.D.N.Y. June 11, 2020)...................................................... 15

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   MDL No. 12-2389,
   2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ....................................................... 19

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM) (PED),
   2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010) ....................................................... 19

*In re Giant Interactive Group Inc.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................................. 20

*In re Grab Holdings Ltd. Sec. Litig.,*
   No. 1:22-cv-02189-JLR,
   2025 U.S. Dist. LEXIS 95295 (S.D.N.Y. May 15, 2025)........................................................ 15

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) .............................................................................................. 22

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144 (CM),
   2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009)...................................................... 25

*Martínek v. Amtrust Fin. Servs., Inc.*,
   No. 19 Civ. 8030 (KPF),
   2022 U.S. Dist. LEXIS 209097 (S.D.N.Y., Nov. 16, 2022) .................................................... 27

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
   No. 17-cv-5543,
   2021 U.S. Dist. LEXIS 2807 (S.D.N.Y. Jan. 7, 2021)............................................................. 11

*Oleniak v. Time Warner Cable*,
   No. 12-CV-3971 (KPF),
   2013 U.S. Dist. LEXIS 207945 (S.D.N.Y. Dec. 17, 2013)........................................................ 5

*Pantelyat v. Bank of Am., N.A.*,
  No. 16-cv-8964 (AJN),
  2019 U.S. Dist. LEXIS 15714 (S.D.N.Y. Jan. 31, 2019)...................................................... 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................................... 5, 6

*Pearlstein v. BlackBerry Ltd.*,
  No. 13 Civ. 7060 (CM) (KHP),
  2022 U.S. Dist. LEXIS 177786 (S.D.N.Y. Sept. 29, 2022)............................................... 10, 27

*In re Perrigo Company PLC Sec. Litig.*,
  No. 1:19-cv-00070-DLC, Dkt. 330-1 (S.D.N.Y. Feb. 18, 2022) ........................................... 15

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ...................................................................................... 23

*In re PPDAI Grp. Inc. Sec. Litig.*,
  No. 18-CV-6716 (TAM),
  2022 U.S. Dist. LEXIS 11427 (E.D.N.Y. Jan. 21, 2022)..................................................... 15

*In re Prudential Secs. Ltd. Pshps. Litig.*,
  164 F.R.D. 362 (S.D.N.Y 1996) ...................................................................................... 26

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) ....................................................................................... 6

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)............................................................................................. 24

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16 Civ. 6728 (CM) (RWL),
  2019 U.S. Dist. LEXIS 114695 (S.D.N.Y. July 10, 2019) ............................................... 21, 23

*Spann v. AOL Time Warner, Inc.*,
  No. 02 Civ. 8238,
  2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005).................................................... 5

*In re Twinlab Corp. Sec. Litig.*,
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) ............................................................................... 22

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) .......................................................................... 22, 24, 25

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515 (WHP),
  2008 U.S. Dist. LEXIS 99840 (S.D.N.Y. Nov. 20, 2008) ................................................ 17

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)................................................................................................ 20

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ...................................................................................... 23

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................... 16, 27

**Other Authorities**

2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D) .................................................. 16

Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* at 26, Figure 23 (NERA Jan. 22, 2025) ....................................................... 10

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................... 21

Fed. R. Civ. P. 23(b)(3)............................................................................................. 24, 25

Fed. R. Civ. P. 23(c) ................................................................................................... 26

Fed. R. Civ. P. 23(e) ........................................................................................... 5, 6, 20, 26

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................... 16, 27

## I.      Introduction

Lead Plaintiff, Dr. Martin Dietrich ("Lead Plaintiff") has reached a proposed class action settlement with defendants Applied Therapeutics, Inc. ("the Company"), Shoshana Shendelman, Ph.D., and Riccardo Perfetti, M.D., Ph.D. ("Defendants"), which, if approved, will resolve all claims alleged against Defendants in exchange for a cash payment of $15,000,000 and the issuance of warrants to purchase up to 1,000,000 shares of Applied common stock, with a term of one year from the Effective Date of the Settlement, and an exercise price of $0.48 per share (the "Warrants").[1] The Settlement (as set forth in the Stipulation) is a product of good-faith and arm's-length negotiations between highly experienced counsel, facilitated by a well-respected mediator (Jed D. Melnick, Esq.), and the result of a mediator's proposal.  The Settlement is a favorable outcome in light of the substantial risks and costs attendant to continued litigation, the financial condition of Applied at the time of the Settlement, and the immediate economic benefits to Class Members. Lead Plaintiff, therefore, respectfully moves this Court, pursuant to Rule 23, for entry of the Proposed Preliminary Approval Order ("Proposed Order"), attached to the Stipulation as Exhibit A, which will, among other things: (a) preliminarily certify the Class for settlement purposes; (b) preliminarily approve the proposed Settlement; (c) approve the form, content and manner of providing notice of the Settlement to the Class; and (d) set a schedule for Class members to submit Claim Forms and objections to the Settlement (if any), for persons to opt-out of the Settlement (if any), and for the Court to hold a Settlement Hearing to consider, among other things,

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated November 4, 2025 ("Stipulation"), filed herewith.  Unless otherwise noted, all references to "¶_" are to the Stipulation and internal citations and quotation marks are omitted.

final approval of the Settlement and Lead Counsel's application for an award of attorneys' fees and expenses (a Fee and Expense Application).

## II.    Background

### A.    Overview of the Action

On March 11, 2025, the Court entered an Order appointing Dr. Dietrich as Lead Plaintiff and Wolf Popper LLP as Lead Counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), setting a schedule for Lead Plaintiff to file an amended complaint, and setting a schedule for the parties to submit a proposed pre-trial schedule, confidentiality order, and order concerning electronically stored information ("ESI").  ECF 59. The parties submitted a joint proposed schedule for pre-trial proceedings on May 16, 2025 (ECF 77) and a joint proposed ESI order and a joint proposed confidentiality order on May 30, 2025 (ECF 88, 89).

On May 2, 2025, Lead Plaintiff filed a Consolidated Amended Complaint ("FAC"). ECF 72. On May 23, 2025, Applied filed an Answer to the FAC, and Shendelman and Perfetti moved to dismiss the FAC. *See* ECF 78-80, 82-85. Although Shendelman's and Perfetti's motions to dismiss were still pending, on May 27, 2025, the Court issued an Order lifting the PSLRA statutory discovery stay, setting a schedule for the parties to serve Rule 26(a)(1) initial disclosures, and a scheduling conference to set a schedule for pre-trial proceedings. ECF 87.  The Court's Order stated that "[f]or the sake of clarity, discovery is not stayed with respect to the individual defendants." ECF 87.

On June 12, 2025, the parties appeared for a pre-trial conference, and on June 13, 2025, the Court entered a Scheduling Order (ECF 98), which set a pre-trial schedule for fact discovery, expert discovery, motions for class certification, and motions for summary judgment. On July 3, 2025, Plaintiff served its initial requests for production of documents and interrogatories on all

Defendants, and on August 4, 2025, Defendants each served responses to those discovery demands. On June 13, 2025, the parties exchanged initial disclosures.

The Court's March 11, 2025 Order (ECF 59) allowed Lead Plaintiff, in the event a motion to dismiss was filed, to file a letter "indicating a desire to further amend its complaint in response to the motion." The Court's Order cautioned that it was "unlikely that Lead Plaintiff will be granted any further opportunities to amend." On June 6, 2025, Lead Plaintiff filed a letter indicating a desire to further amend the FAC. On June 9, 2025, the Court denied the pending motions to dismiss as moot.  ECF 95. On June 13, 2025, Lead Plaintiff filed the Second Amended Complaint ("SAC"). ECF 99. On June 27, 2025, Applied answered the SAC (ECF 106), and Shendelman and Perfetti moved to dismiss the SAC (ECF 100-105, 107-108). Lead Plaintiff opposed both motions, and the motions to dismiss were fully briefed as of July 18, 2025. See ECF 109-113.

Given the case's merits and the Company's financial circumstances, the parties agreed to engage in private mediation in an attempt to expeditiously resolve the Action while the motions to dismiss were pending.  In advance of the mediation, Applied made a limited initial production of documents totaling 255 pages on August 5, 2025 in response to Lead Plaintiff's discovery requests, comprised of certain priority documents Lead Plaintiff requested be produced before the mediation. These documents contained important information underlying the allegations of the SAC with respect to information that was first revealed to the market by the FDA at the end of the Class Period in the Complete Response Letter ("CRL") and Warning Letter. The parties exchanged mediation statements.  A mediation session before Jed Melnick was held on August 19, 2025.  Mr. Melnick, who is affiliated with JAMS, has over twenty years of experience mediating complex business disputes, including many securities fraud class actions.  After a full-day mediation, the parties ultimately agreed to the Settlement based on Mr. Melnick's proposal.

B.    **Terms of the Settlement**

This Settlement requires the Company to pay or cause to be paid $15,000,000 in cash plus the Warrants.  ¶¶ 1.53, 2.2.  Under the Stipulation, Lead Counsel has the sole authority and discretion whether and when to exercise the Warrants, and whether or when to sell the shares resulting from exercise of the Warrants or to distribute the underlying shares or cash proceeds from the sale of the underlying shares to Authorized Claimants (the "Warrant Proceeds").  ¶¶ 2.9, 2.10. The Warrants will not be distributed to Class Members. ¶ 2.9. Once Taxes, Tax Expenses, Notice and Administrative Costs, a Court-awarded Fee and Expense Award for attorneys' fees and litigation costs and expenses, any Warrant Exercise Expenses, any Warrant Registration Expenses, and any other Court-approved costs or fees are deducted from the Settlement Fund, the remaining balance plus any Warrant Proceeds (*i.e.*, the Net Settlement Fund), whether consisting only of cash or a combination of cash and securities, will be distributed to Authorized Claimants pursuant to the Stipulation and Plan of Allocation.  ¶ 6.3.  There will be no reversion to Defendants of any portion of the Settlement Fund.  ¶ 2.20. In exchange, Lead Plaintiff and each Class Member will be deemed to have fully, finally, and forever waived, compromised, settled, released, resolved, relinquished, waived, and discharged any and all Released Plaintiff's Claims against Defendants and the other Defendants' Releasees, and will be forever barred and enjoined from prosecuting any and all Released Plaintiff's Claims against any of the Defendants' Releasees.  ¶ 5.1.

The Stipulation also reflects that Angeion Group, LLC will be retained as the Claims Administrator subject to the Court's approval. ¶ 1.7. According to the Stipulation, the Claims Administrator will, under Lead Counsel's supervision, disseminate Notice to Class Members, and administer the Settlement, including but not limited to the process of receiving, reviewing, and approving or denying Claims, and requests for exclusion (i.e., "opt outs") from the Class and the

4

Settlement.  ¶¶ 4.4, 6.1-6.14, 7.1-7.4.  The details of the Notice and Settlement administration are discussed below.

The Stipulation also anticipates that Lead Counsel will file a Fee and Expense Application to request attorneys' fees and reimbursement of litigation expenses (a Fee and Expense Award), however such awards are not a condition or material term of the Settlement, nor are such requests the subject of any agreement between the parties.  ¶ 8.1.

## III.    <u>Argument</u>

### A.    <u>The Rule 23(e)(2) and *Grinnell* Factors Support Preliminary Approval</u>

Strong judicial policy favors settlement of class actions in the Second Circuit.  *See Oleniak v. Time Warner Cable*, No. 12-CV-3971 (KPF), 2013 U.S. Dist. LEXIS 207945, at *13 (S.D.N.Y. Dec. 17, 2013); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, at *18 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").  Moreover, Courts have recognized that, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Oleniak*, 2013 U.S. Dist. LEXIS 207945, at *13.

Rule 23(e) sets forth the procedures for the judicial approval of class action settlements.  A motion for preliminary approval of the settlement is the first step, where the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A).  Giving notice of such a settlement to the class is justified through "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019) (The preliminary approval process is governed by a "likelihood standard,"

requiring the Court to assess whether the parties have shown that "the court will likely be able to grant final approval and certify the class.").

Rule 23(e)(2) provides that "[i]f the [proposed settlement] would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition to these factors, Courts in the Second Circuit also considers the factors set forth in *Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Payment Card*, 330 F.R.D. at 29. "[A] full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval." *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006).

6

The proposed Settlement readily satisfies Rule 23(e)(2) and the *Grinnell* factors.[2] Accordingly, it is respectfully submitted that the Settlement should be preliminarily approved, and that Notice be sent to the Class in advance of the Settlement Hearing.

### 1. Rule 23(e)(2)(A): Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

Lead Plaintiff and Lead Counsel have diligently and vigorously prosecuted the Action since Lead Plaintiff's appointment in March 2025.  Lead Counsel, among other things: (a) investigated potential claims against Defendants, including by (i) reviewing Company SEC filings, press releases, other public statements by Defendants, publicly available FDA documents, analyst reports and news articles concerning the Defendants, (ii) retaining an investigator to gather information and locate potential witnesses, and (ii) speaking with potential witnesses and consulting with professionals and experts in the pharmaceutical industry; (b) prepared the FAC and reviewed Shendelman's and Perfetti's separate motions to dismiss the FAC; (c) prepared the SAC and opposed Shendelman's and Perfetti's separate motions to dismiss the SAC; (d) served demands for discovery, reviewed Defendants' responses to those demands, and requested and received strategically-focused discovery in anticipation of the mediation; (e) consulted with a forensic economist to evaluate damages for the Class as a result of the Defendants' alleged violations of the Exchange Act; and (f) prepared a detailed mediation statement and engaged in a mediation session with all Defendants and the help of an experienced mediator to settle the Litigation in the best interests of the Class. Lead Plaintiff as well has devoted time to supervision

---

[2] Where *Grinnell* factors overlap with Rule 23(e)(2) factors, they are discussed together.

the litigation. Dietrich Dec. ¶¶ 10-23.[3] Moreover, Lead Plaintiff and Lead Counsel have no interests antagonistic to the Class.

Accordingly, this factor favors preliminary approval of the settlement.

### 2.    Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires that a proposed settlement be procedurally adequate *i.e.*, negotiated at arm's length.  A settlement that has been negotiated at arm's length has been well-recognized to be fair and reasonable, and the use of a mediator further supports a finding that the settlement was negotiated at an arm's length.  *See, e.g., In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement" during negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").  Further, the Settlement was the result of a mediator's proposal that the parties accepted. This factor also favors preliminary approval of the Settlement.

### 3.    Rule 23(e)(2)(C): The Relief Provided for the Class Is Adequate

In assessing a settlement for preliminary approval, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517, at *26 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court need only determine whether the settlement falls within a range of reasonableness that "recognizes the uncertainties of law and fact in any particular

---

[3] Declaration of Dr. Martin Dietrich in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Class for Settlement Purposes, and Approval of Notice to the Settlement Class, dated November 3, 2025, and filed herewith ("Dietrich Decl.").

case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Pantelyat v. Bank of Am., N.A.*, No. 16-cv-8964 (AJN), 2019 U.S. Dist. LEXIS 15714, at *22 (S.D.N.Y. Jan. 31, 2019).

The $15,000,000 cash recovery and issuance of the Warrants represents an excellent result for the Class under the circumstances. The $15 million cash Settlement Amount (not including the Warrants) represents the following percentages of potential damages, as calculated by Lead Plaintiff's damages expert using a traditional "one-day drop" model related to the alleged corrective disclosure:[4]

- approximately 4% of the Class's alleged best-case maximum estimated aggregate damages of $377.5 million based on all of the SAC's alleged stock price declines in response to alleged corrective disclosures that also had statistical significance;

- approximately 4.3% of the Class's maximum aggregated damages under the expert's model for the November 29, 2024 one-day stock drop (which is also the most significant stock drop) in response to the first alleged corrective disclosure on November 27, 2024 of $348.8 million;

- approximately 6.2% of the Class's maximum aggregate damages under the expert's model of $241.6 million if Defendants' arguments concerning scienter for statements related to the alleged dosing errors were accepted, and as a result the Class Period started on May 9, 2024, when Applied was informed that the FDA had learned of the deletion of clinical data, rather than January 4, 2024 (*see* discussion *infra* at pp. 11-12); and

- approximately 6.9% of the Class's maximum aggregate damages under the expert's model for the November 29, 2024 one-day stock drop and if the Class Period started on May 9, 2024 of $217.4 million.

While valuation of the Warrants is a complex task, Lead Counsel estimates that, based on a Black-Scholes model, at the time of the mediation the Warrants had an estimated value of $342,600. While future events are still uncertain, the day before this motion was filed, Applied's

---

[4] Defendants do not concede the accuracy of Lead Plaintiff's damages expert's calculation of potential damages.

common stock closed at $1.04 per share. Lead Counsel estimates based on a Black-Scholes model that at the $1.04 closing price on November 3, 2025, the value of the Warrants is approximately $1,030,000.

Notably, the percentages discussed above assume (a) Lead Plaintiff would be able to prove every aspect of his claims on liability, (b) Lead Plaintiff's damages model would be accepted by the jury in full, and (c) after a judgment in favor of Lead Plaintiff and the Class, all damaged Class Members filed claims on all shares purchased during the Class Period and all such Claims were approved. Circumstances aside, the $15 million plus Warrants risk-free Settlement represents a reasonable percentage of the range of potential maximum provable damages in a securities fraud class action. A recent report from National Economic Research Associates, Inc. ("NERA") identified the median percentage recovery in settlements of class actions during the period December 2015 through December 2024 involving aggregate investor losses between $200 million to $399 million to be *2.9%*, less than the percentage implied by the cash portion of the Settlement Amount here.[5] NERA also noted that in 2024, the median settlement value for all securities class actions (excluding merger objection cases, settlements of over $1 billion, and settlements for $0 to the class) was $14 million, again less than the cash portion of the Settlement Amount.[6] Thus, the Settlement Amount is well within the range of reasonableness. *See, e.g., Pearlstein v. BlackBerry Ltd.*, No. 13 Civ. 7060 (CM) (KHP), 2022 U.S. Dist. LEXIS 177786, at *6 (S.D.N.Y. Sept. 29, 2022) (noting that the "median recovery [in securities class actions was] of 4.2% of damages in 2021"); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, No. 17-cv-5543,

---

[5] *See* Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* at 26, Figure 23 (NERA Jan. 22, 2025), available at www.nera.com/publications/archive/2022/recent-trends-in-securities-class-actionlitigation--2021-full-y.html.

[6] *Id.* at 23, Figure 22.

2021 U.S. Dist. LEXIS 2807, at *3 (S.D.N.Y. Jan. 7, 2021) (noting that "the range previously approved by judges in this District" was 3% to 11% of estimated damages).

a) **Rule 23(e)(C)(i) and _Grinnell_ Factors 1, 4, 5, and 6: The Costs, Risks, and Delay of Trial and Appeal; the Complexity, Expense and Likely Duration of the Litigation; and the Risks of Establishing Liability, Damages, and Maintaining the Class Through Trial**

"In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain. As such, settlement is favored where trial of [the] class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court." _Christine Asia Co. v. Jack Yun Ma_, No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836, at *40-41 (S.D.N.Y. Oct. 16, 2019).

In this case, there were risks to providing liability, damages, and maintaining a class through trial. At the time the Settlement was reached, Shendelman's and Perfetti's motions to dismiss were pending. While Lead Plaintiff and Lead Counsel believe that Lead Plaintiff would have been successful in defeating Defendants' motions to dismiss, there was a risk that Defendants would be partially or fully successful the motion to dismiss stage. For example, the Court could have been convinced by Defendants' arguments that certain of the alleged false statements were inactionable puffery. _See_ ECF 105 at 23-25. Similarly, the Court could have found merit to Defendants' contention that Shendelman's or Perfetti's Class Period stock sales did not evidence motive, and there was insufficient circumstantial evidence of knowledge to find that Shendelman's or Perfetti's statements were made with requisite scienter. _See_ ECF 101 at 15-22; ECF 105 at 12-23. If the Court partially denied the motions to dismiss, for example finding that only statements made after Defendants received the Form 483 on May 9, 2024 were pled to have been made with the requisite scienter, then the Class Period could have been significantly narrowed. Also, if the

11

motions to dismiss were granted, Applied, which answered the SAC, could have then moved for judgment on the pleadings or for summary judgment, which could have ended the Action without any recovery for the Class.

If the motions to dismiss were denied, Defendants likely would have opposed class certification and moved for summary judgment. If Lead Plaintiff and Lead Counsel succeeded in having the Class certified and defeating Defendants' expected motion for summary judgment, Lead Plaintiff would be required to prove all elements of his claims to prevail at trial, while Defendants would need to only succeed on one defense to potentially defeat the entire action. Defendants could also file an appeal, which could further extend the lawsuit for years, and risk reversal. A prolonged litigation would take years and incur additional significant costs that would reduce the limited funds available to provide recourse for the Class.

These risks and complexities in prosecuting this action underscore the desirability of this Settlement, and support preliminary approval of the Settlement.

      **b)**    <u>**Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective**</u>

As discussed below at pp. 26-27, the proposed form and manner of Notice to the Settlement Class, including a Postcard Notice to be mailed to potential Class Members, a Summary Notice to be published on a national wire service, and a Settlement Website where the Longform Notice and Proof of Claim and Release form ("Proof of Claim") can be downloaded, are effective and satisfy Rule 23, due process, and the PSLRA.[7]

The proposed claims administration process is also effective. The Settlement will be effectuated with the assistance of the Claims Administrator, who will employ a well-established

---

[7] Proposed drafts of the class notice documents are attached as exhibits to the Stipulation.

protocol for the processing of securities claims. Class Members will submit, in paper or electronic form, a Claim, in accordance with the instructions for those submissions and supported by designated or acceptable documents that demonstrate a Claimant's loss. ¶ 6.4. All Claims must be submitted by the date set by the Court in the Proposed Order and specified in the Postcard Notice, Summary Notice, and Longform Notice. *Id.* Based on the information and supporting documentation provided by Claimants, the Claims Administrator will determine the extent, if any, to which each Claim will be allowed. ¶ 6.7. Before rejecting a Claim in whole or in part, the Claims Administrator will communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim submitted. ¶ 6.8. Any claim disputes that cannot be resolved will be presented to the Court for resolution. *Id.*

The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund as described in the Plan of Allocation. ¶ 6.10. The Plan of Allocation (set forth on pages 11-15 of the proposed Longform Notice) was developed based on a damages report prepared by Plaintiff's damages expert. The premise of the Plan of Allocation is that the true value of Applied common shares during the Class Period was allegedly $1.69 per share, the closing price on December 3, 2024, after the disclosure of the CRL and the Warning Letter. Under the Plan of Allocation, shares of Applied common stock purchased during the Class Period and held through at least November 29, 2024, will be assigned a recognized loss based on several factors, including purchase price, sale price, and the per share decline in Applied's common stock on November 29, 2024, December 2, 2024, and December 3, 2024 Claimants' will receive a *pro rata* payment from the Net Settlement Fund in the ratio of their Recognized Loss to the total Recognized Losses submitted by all Authorized Claimants. No Authorized Claimant will receive a distribution of less than $10.00 in cash or ten whole shares of common stock, calculated on an adjudged basis.

Thus, the Plan of Allocation, which adopts a procedure to equitably distribute the Net Settlement Fund, is fair, reasonable and adequate. *See e.g.*, *In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2016 U.S. Dist. LEXIS 54587, at *13-14 (S.D.N.Y. April 26, 2016) (approving plan that estimated price inflation caused by the defendants' conduct and calculated "each claimant's recovery based on its *pro rata* share of the available Settlement Funds in relation to the recoveries to which all claimants who have submitted a valid claim are entitled").

After the Settlement reaches its Effective Date and completion of the Claims Administrator's work calculating the Authorized Claimants' claims, Lead Plaintiff will move this Court for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account that are not already authorized by the Stipulation and Preliminary Approval Order; and (c) directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account on a *pro rata* basis. ¶¶ 6.10-6.11. If there is any balance remaining in the Net Settlement Fund six months after the initial distribution, the Claims Administrator will, if feasible and economical, redistribute that balance among Authorized Claimants who have cashed their initial distributions, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund. Otherwise, the balance will be distributed to a non-sectarian 501(c)(3) organization to be recommended by Lead Counsel and approved by the Court. ¶ 6.11.

c) **Rule 23(e)(2)(C)(iii): The Anticipated Attorneys' Fees and Expenses Are Reasonable**

As set forth in the Notice, Lead Counsel will ask the Court for a Fee and Expense Award of up to 20% of the Settlement Fund, or up to $3,000,000 (20% of the $15 million cash portion of

Settlement Fund), and 20% of any Warrant Proceeds that result from exercise of the Warrants, plus interest earned on those amounts at the same rate as the Settlement Fund, plus reimbursement of costs and expenses of up to $50,000. The fee percentage (20%) is less than the 24% permitted under the retention agreement negotiated between Lead Plaintiff and Lead Counsel prior to the filing of Dr. Dietrich's lead plaintiff motion.  Because the case was resolved after the start of fact discovery and prior to filing a motion for class certification, the maximum amount of attorneys' fees that could be requested was 24% of the recovery.  *See* Dietrich Decl. ¶ 10. Lead Plaintiff supports the request for an award of attorneys' fees of up to 20% of the Settlement Fund and reimbursement of expenses of up to $50,000, and believes the requests to be reasonable. *Id.* ¶ 28.

A request for an award of attorneys' fees in the amount of up to 20% of the Settlement Fund, plus reimbursement of costs and expenses of up to $50,000, is well within the range of a reasonable fee and an appropriate cap for purposes of the Notice. *See, e.g., In re Grab Holdings Ltd. Sec. Litig.,* No. 1:22-cv-02189-JLR, 2025 U.S. Dist. LEXIS 95295, at *19 (S.D.N.Y. May 15, 2025) (awarding 33% of $80 million recovery, plus expenses); *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 U.S. Dist. LEXIS 11427 (E.D.N.Y. Jan. 21, 2022) (awarding 33.33% of $9 million recovery, plus expenses); *In re Perrigo Company PLC Sec. Litig.*, No. 1:19-cv-00070-DLC, Dkt. 330-1 (S.D.N.Y. Feb. 18, 2022) (Cote, J.) (awarding one third of $31.9 million recovery, plus expenses); *In re Deutsche Bank AG Sec. Litig.,* No. 1:09-cv-01714-GHW-RWL,* 2020 U.S. Dist. LEXIS 103134, at *6-7 (S.D.N.Y. June 11, 2020) (awarding one-third of $18.5 million recovery, plus expenses); *Providence*, 2014 U.S. Dist. LEXIS 64517, at *2-3 (awarding 33% of $15 million recovery, plus expenses).

Lead Plaintiff's costs and expenses, including lost wages, were not significant, and he has decided not to seek an reimbursement relating to his representation of the Class, as permitted by the PSLRA, 15 U.S.C. § 78u-4(a)(4).

Lead Plaintiff respectfully submits that these factors support preliminary approval of the Settlement.

### d) Rule 23(e)(2)(C)(iv): Any Agreement Required to be Identified Under Rule 23(e)(3)

The parties have entered into a confidential Supplemental Agreement that allows Applied to terminate the Settlement if a certain threshold of class members meeting certain criteria request exclusion from the class. ¶ 9.3. Lead Plaintiff respectfully submits that "[t]his type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *54.

### 4. Rule 23(e)(2)(D): The Settlement Treats Class Members Equitably Relative to One Another

The Court also considers whether "the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

In this case, the Settlement Agreement's release language (*see* ¶¶ 1.43-1.47, 5.1-5.5) treats all Class Members equitably relative to one another. Subject to Court approval, all Class Members will be giving Defendants an identical release. Further, as discussed above (pp. 12-14), the Plan of Allocation, set forth in the Notice, treats all Class Members equitably based on the timing of their acquisitions and sales of Applied common stock. Therefore, this factor weighs in favor of preliminary approval.

16

5.    *Grinnell* **Factor 2: The Reaction of the Class to the Settlement**

The Class's reaction is generally not considered prior to disseminating notice. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840, at *5 (S.D.N.Y. Nov. 20, 2008). Lead Plaintiff has actively participated throughout the prosecution of the case and believes the Settlement is in the best interests of the Class.  Dietrich Decl. ¶ 14. The Settlement allows for Class Members to object to the Settlement and opt out of the Settlement if they so decide. Lead Plaintiff will report on any objections or opt outs in connection with its motion for final approval of the Settlement.

6.    *Grinnell* **Factor 3: The Stage of the Proceedings**

At the time the Settlement was reached, discovery had commenced. While the amount of documents produced at the time of Settlement was limited, those documents contained important information, and information underlying the allegations of the Complaint had also been publicly released by the FDA. The resulting accumulation of information permitted Lead Plaintiff and Lead Counsel to knowledgably evaluate the merits and circumstances of their case, and the Settlement. Lead Plaintiff respectfully submits that the stage of the proceedings is a neutral *Grinnell* factor.

7.    *Grinnell* **Factor 7: The Ability of Defendants to Withstand a Greater Judgment**

Here, based on the Defendants' own publicly reported financial disclosures, there is significant doubt that Defendants are able to withstand a greater judgment.  Applied's SEC filings since the end of the Class Period have contained "going concern" warnings such that Applied's management (in Applied's Form 10-Qs for the fiscal quarters ended March 31, 2025 (dated May

17

14, 2025) and June 30, 2025 (dated August 13, 2025)),[8] and Applied's independent outside auditor (in Applied's Form 10-K for the fiscal year ended December 31, 2024, dated April 15, 2025),[9] had substantial doubt about Applied's ability to continue as a going concern for 12 months after the date of the filing. Further, as of June 30, 2025, Applied had cash and cash equivalents on hand of approximately $30.4 million (not including liabilities of $20 million), and a cash burn rate of approximately $25 million per quarter. Therefore, when the Settlement was reached, Applied was projected to have just $5 million in cash on hand by September 30, 2025, which would likely be insufficient to cover its already-existing liabilities. Also, The $15 million cash portion of the Settlement represents 21% of the market capitalization of Applied on the date when the Settlement was reached (of approximately $69 million).  The $15 million settlement also represented almost the entire amount of funds available under the Company's relevant insurance policies, which would only decrease if the litigation were to continue, to the detriment of the Class. Further litigation likely would have significantly decreased the available insurance.

However, the Settlement protects the Class against the possibility of improvement of Defendants' financial circumstance through the issuance the Warrants, which can confer substantial benefit to the Class if the Company's financial circumstances improve.

Accordingly, it is respectfully submitted that this factor favors preliminary approval.

---

[8] Available at www.sec.gov/ix?doc=/Archives/edgar/data/0001697532/000095017025053840/aplt-20241231.htm; available at www.sec.gov/ix?doc=/Archives/edgar/data/0001697532/000095017025108172/aplt-20250630.htm

[9] Available at www.sec.gov/ix?doc=/Archives/edgar/data/0001697532/000095017025053840/aplt-20241231.htm.

**8.** ***Grinnell* Factors 8 and 9: The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

"In analyzing the size of the settlement compared to the best possible recovery and in view of the attendant risks, the issue for the Court is not whether the Settlement represents the best possible recovery, but how the Settlement relates to the strengths and weaknesses of the case." *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *57 (S.D.N.Y. Nov. 8, 2010). The Court only need determine the "range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Bear Stearns*, 909 F. Supp. 2d 259, 269 (S.D.N.Y. 2012).

As discussed herein, there were significant risks to success of the litigation and the Defendants' ability to withstand a judgment greater than the Settlement Amount. The $15 million cash portion of the Settlement is more than the median settlement amount of securities class actions in 2024, as calculated by NERA ($14 million). The percentage of the $15 million cash portion of the settlement compared to estimated maximum aggregate damages (approximately 4% to 6.9%), is also greater than the settlement percentage for similar cases from December 2015 through December 2024, as calculated by NERA (2.9%). Lead Plaintiff respectfully submits that the Settlement Amount is well within the range of reasonableness. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *16 (S.D.N.Y. Nov. 9, 2015) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) ("The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.")).

19

Accordingly, it is respectfully submitted that these factors favor preliminary approval.

**B.**   **The Proposed Class Satisfies the Requirements of Rule 23 and Should Be Certified for Settlement Purposes**

In determining whether to grant preliminary approval, the Court also determines whether it "will likely be able to" grant certification to the proposed Class for purposes of the Settlement at final approval. Fed. R. Civ. P. 23(e)(1)(B).  The proposed Class, which has been stipulated to by the Parties, is:

> all Persons or entities who purchased or otherwise acquired the publicly traded common stock of Applied on a U.S. based exchange between January 3, 2024 and December 2, 2024, inclusive (the Class Period). Excluded from the Class are: (i) Defendants; (ii) the current and former officers, directors, and employees of Applied (the "Excluded Persons"); (iii) any person or entity that purchased Applied securities in the March 1, 2024 Private Placement (the "Private Placement Investors"); (iv) members of Defendants', Excluded Persons', or Private Placement Investors' immediate families, legal representatives, heirs, successors or assigns; and (v) any entity in which Defendants, the Excluded Persons, or the Private Placement Investors have or had a controlling interest. Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely excludes himself, herself, or itself therefrom pursuant to the terms of the Stipulation and the Preliminary Approval Order. ¶ 1.8.

The Second Circuit has long acknowledged the propriety of certifying a class for purposes of a class action settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Secs. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014).  Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Giant Interactive Group Inc.*, 279 F.R.D. 151, 158 (S.D.N.Y. 2011).

The proposed Class satisfies all the applicable requirements of Rules 23(a) and 23(b)(3).

**1.**   **The Class Satisfies the Requirements of Rule 23(a)**

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

20

claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### a) The Class Is So Numerous that Joinder Is Impracticable

In the Second Circuit, Rule 23(a)(1)'s numerosity requirement is presumed for classes larger than 40 members and, in securities fraud class actions, can be shown where there are a large number of shares outstanding and traded during the relevant period. *See In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM)( GWG), 2021 U.S. Dist. LEXIS 170310, at *6 (S.D.N.Y. Sept. 8, 2021); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728 (CM) (RWL), 2019 U.S. Dist. LEXIS 114695, at *8 (S.D.N.Y. July 10, 2019).

Applied common stock was registered and traded on the NASDAQ. Before the start of the Class Period on November 8, 2023, Applied had over 77 million shares of common stock outstanding, and by November 6, 2024, near the end of the Class Period, it had more than 116 million shares of common stock issued and outstanding. These metrics demonstrate numerosity.

### b) There Are Common Questions of Law and Fact

Commonality exists when "common issues of law or fact affect all class members." *Signet*, 2019 WL 3001084, at *8. Courts in this District hold that, in securities cases, commonality is satisfied where "plaintiffs allege that class members have been injured by similar material misrepresentations and omissions." *Allergan*, 2021 U.S. Dist. LEXIS 170310, at *6; *see also In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 276 (S.D.N.Y. 2008) (same). The common questions of law and fact in this case are numerous and include: (a) whether Defendants' statements were materially false and misleading when made; (b) whether Defendants acted with scienter; (c) whether the price of Applied common stock was artificially inflated during the Class Period due to these alleged misstatements; and (d) whether Defendants' alleged misrepresentations caused

Class Members to suffer economic losses when the alleged truth was revealed. Because these questions of law and fact are common to all members of the Class, the commonality requirement of Rule 23(a)(2) is met.

### c) Lead Plaintiff's Claims Are Typical of the Class

Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007); *accord In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 98 (S.D.N.Y. 2016). The typicality requirement does not require the plaintiff's claims to be identical; rather, the plaintiff must show the claims are "'so interrelated that the interests of the class members will be fairly and adequately protected in their absence,' and that the claims of the potential class members 'share a common question of law or of fact.'" *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176 (S.D.N.Y. 2008).

Here, Lead Plaintiff purchased Applied common stock during the Class Period, and was damaged when the alleged truth was revealed and the price of Applied common stock declined. Lead Plaintiff's claims arise from the same alleged course of conduct that gives rise to claims of other Class Members, are based on the same legal theory, and will be proven by the same set of operative facts. As such, Lead Plaintiff "ha[s] the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006). The typicality requirement is therefore satisfied. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

### d)    Lead Plaintiff Has and Will Fairly and Adequately Protect the Interests of the Class

To satisfy the adequacy requirement, the proposed class representative must "fairly and adequately protect the interests of the class." *Signet*, 2019 U.S. Dist. LEXIS 114695, at *25. The adequacy requirement "seeks to ensure that Plaintiff's interests are not antagonistic to those of the Class and that Plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Id.* "The focus is on uncovering 'conflicts of interest between named parties and the class they seek to represent.' In order to defeat a motion for certification, however, the conflict 'must be fundamental.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Lead Plaintiff satisfies each factor of the adequacy inquiry.

First, Lead Plaintiff "suffer[ed] the same injury as the class members" as a result of Defendants' material misrepresentations and omissions and thus "possess the same interest" in obtaining the best possible recovery. *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (Cote, J.). No conflicts exist between Lead Plaintiff and the Class. If Lead Plaintiff were to prove his claims at trial, he would also prove the Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions). Thus, the interests of Lead Plaintiff and the other Class members are aligned, and they share the common objective of maximizing their recovery. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Second, Lead Plaintiff vigorously led and prosecuted this Action on behalf of the Class. Lead Plaintiff reviewed and discussed with Lead Counsel draft court filings, the motions to

23

dismiss, a draft mediation statement, and the Defendants' mediation statements. Lead Plaintiff discussed the mediation with Lead Counsel in advance of the mediation, and was in communication with Lead Counsel during the mediation. Lead Plaintiff fully understands his duties and responsibilities as a class representative, has demonstrated its commitment to lead this Action for the Class. *See* Declaration of Dr. Martin Dietrich, ECF 27-3; Dietrich Decl. ¶ 23. Lead Plaintiff also retained qualified counsel who have extensive experience and success in prosecuting securities litigation. *See* Resume of Wolf Popper LLP, ECF 27-5.

### 2.   The Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Class satisfies these requirements.

### a)   Common Legal and Factual Questions Predominate

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *Veeco*, 235 F.R.D. at 240. "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *Id.* This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, "the critical issues for establishing Defendants' liability include whether the Defendants (1) made misstatements or omissions of material fact; (2) with scienter; (3) in

24

connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.  Each of these issues is susceptible of generalized proof and, accordingly, the predominance requirement of Rule 23(b)(3) is satisfied." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *35 (S.D.N.Y. Dec. 23, 2009); *see also Veeco*, 235 F.R.D. at 240 ("[Q]uestions of fact regarding the content and implications of defendants' statements and defendants' intent in making these statements are central to the claims of each member of the putative class.  Any individual issues will necessarily be secondary.").

### b)    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also asks whether class resolution will be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "Courts have long recognized that class actions are a desirable means for resolving claims based on securities laws," and find superiority is easily established.  *Allergan*, No. 2021 U.S. Dist. LEXIS 170310, at *50.  Each of the factors courts consider in assessing superiority is satisfied here.  First, the number of Class members is too numerous, and the typical claim is too small, for each individual Class Member to have an interest in maintaining a separate action.  Second, Lead Plaintiff is aware of no other action that seeks recovery under the federal securities laws for damages caused by Defendants' alleged fraud. Third, the geographical dispersion of the Class Members makes it desirable to litigate Lead Plaintiff's claims in this forum.  Finally, there are no management difficulties that would preclude this Action from being maintained as a class action. *See Amchem*, 521 U.S. at 616; *Allergan*, 2021 U.S. Dist. LEXIS 170310, at *16.

In sum, the proposed Class meets all of the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

**C.    The Proposed Notice Program Satisfies Rule 23, Due Process, and the PSLRA**

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1)(b) (noting that the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal").  In order to satisfy due process, the notice must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *In re Prudential Secs. Ltd. Pshps. Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y 1996).

Here, as reflected in the Proposed Order, Lead Counsel proposes to provide Class Members notice through: (a) mailing of the Postcard Notice to potential Class Members at the addresses set forth in the records provided or caused to be provided by Defendants, or who otherwise may be identified through further reasonable effort, or if feasible, the sending of the Postcard Notice or Longform Notice and Proof of Claim by email; (b) publication of the Summary Notice over a national wire service; and (c) a Settlement Website, from which copies of the Longform Notice, Proof of Claim, Summary Notice, and Postcard Notice, as well as the Stipulation, and other Court documents, such as the Complaint, this motion for preliminary approval, a copy of the Court's Preliminary Approval Order (if granted), and when filed, the motions for final approval and a Fee and Expense Award, can be downloaded or viewed.

The proposed Postcard Notice and Summary Notice contain summaries of the terms of the Settlement and instructions for submitting a Proof of Claim, an objection to the Settlement, or a request to be excluded from the Settlement, and will direct Class Members to the Settlement Website and the Longform Notice for further information.  The Longform Notice and Proof of Claim and Release Form will also be available by mail or email to Class Members upon request to the Claims Administrator.

The proposed Longform Notice provides more detailed information concerning the Settlement, including: (a) the formula used to calculate payments to Class Members, and a description of the proposed Plan of Allocation; (b) instructions, requirements, and deadlines for objections to, or requests to opt out of, the Settlement, including that objections and opt-out requests must be mailed to a specified address and received by a specified deadline; (c) Class Members' right to appear at the Settlement Hearing in person or through an attorney, and the requirements to do so; and (d) other information required by the PSLRA, including (i) the average per share amount of the Settlement Fund expected to be distributed to the Class, (ii) the amount of attorneys' fees and expenses to be requested and a brief explanation supporting the fees and costs sought; and (iii) "a brief statement explaining the reasons why the parties are proposing the settlement." *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Similar notice programs have been approved by Courts in the Second Circuit. *See, e.g., Martínek v. Amtrust Fin. Servs., Inc.*, No. 19 Civ. 8030 (KPF), 2022 U.S. Dist. LEXIS 209097 (S.D.N.Y., Nov. 16, 2022); *Pearlstein,* 2022 U.S. Dist. LEXIS 177786, at *6.

Accordingly, the proposed notice plan satisfies Rule 23, the PSLRA, and due process.

### D.  **Proposed Schedule for Notice and a Settlement Hearing**

Lead Plaintiff respectfully submits the following schedule for the Court's review and approval, which summarizes certain important deadlines to be identified in the Proposed Order:

| Event | Date |
|---|---|
| Last day to mail Postcard Notice, and publish the Settlement Website, and publish the Summary Notice | 28 calendar days after entry of the Preliminary Approval Order ("Notice Date") |
| Last day for filing and serving opening papers in support of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's Requests | Filed and served no later than 35 calendar days before the Settlement Hearing. |

| Event | Date |
|---|---|
| Last day for to submit exclusion requests | Received no later than 21 calendar days before the Settlement Hearing. |
| Last day for to file and submit objections | Received no later than 21 calendar days before the Settlement Hearing. |
| Last day for reply papers in response to the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's Requests | Filed and served no later than 7 calendar days before the Settlement Hearing. |
| Settlement Hearing | Set by the Court under Rule 23(e)(2), but in order to provide sufficient notice to the Class, no earlier than 118 calendar days after entry of the Preliminary Approval Order (equal to 90 days after the Notice Date) |
| Last Day for Class Members to submit a Proof of Claim and Release Form | 110 calendar days after the Notice Date. |

## IV.    **Conclusion**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the Motion and issue the Proposed Order in the form proposed herein.

Dated: November 4, 2025                    Respectfully submitted,

**WOLF POPPER LLP**

By: */s/ Joshua W. Ruthizer*
Robert C. Finkel
rfinkel@wolfpopper.com
Joshua W. Ruthizer
jruthizer@wolfpopper.com
Emer Burke
eburke@wolfpopper.com
Samuel Coffin
scoffin@wolfpopper.com
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600

*Attorneys for Court-Appointed Lead Plaintiff Dr. Martin Dietrich and Court-Appointed Lead Counsel to the Proposed Class*

**<u>Local Rule 7.1(c) Certification</u>**

I hereby certify that the foregoing Memorandum of Law complies with the word-count limitations set forth in Local Rule 7.1(c). The foregoing Memorandum contains 8,743 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but does include material contained in footnotes, according to the word processing software used to prepare it.

Dated: New York, New York
      November 4, 2025

                                       */s/ Joshua W. Ruthizer*
                                       Joshua W. Ruthizer

29