**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLIED THERAPEUTICS SECURITIES LITIGATION | Case No.  1:24-cv-09715 (DLC) (VF) |

**DECLARATION OF DR. MARTIN DIETRICH IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

I, DR. MARTIN DIETRICH, declare under penalty of perjury as follows:

1.      I am the Court-appointed Lead Plaintiff and Class Representative in the above-captioned securities fraud class action ("Litigation" or "Action").

2.      I submit this declaration based on personal knowledge and in full support of Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement, Certification of the Class for Settlement Purposes, and Approval of the Notice to the Settlement Class (the "Motion").

3.      I currently reside in Orange County, Florida.

4.      I hold doctorates in medicine and cancer biology from the German Cancer Research Center, Heidelberg, Germany and in molecular genetics from the University of Texas Southwestern Graduate School. I completed my fellowships in Hematology/Oncology in the physician-scientist training track at the University of Texas Southwestern Track as a T32 scholar of the National Cancer Institute. I am a Board-certified oncologist.

5.      In my clinical practice, I address all aspects of hematologic and oncologic care, with a special research interest in the treatment of lung and breast cancer, and genetic evaluation and counseling of somatic and hereditary syndromes.  I also hold a faculty appointment at the University of Central Florida in Orlando as an assistant professor of internal medicine.

6.      I have authored numerous peer-reviewed articles published in *Cancer Cell*, *Cancer Research*, *Blood*, *Oncogene*, *Journal of Thoracic Oncology*, *Journal of Oncology Practice*, and

1

*JAMA Oncology*, as well as book chapters and abstracts. I have lectured extensively both nationally and internationally on the topics of molecular genetics, immunotherapies, and thoracic malignancies.

7. I have been an active investor for over 15 years, during which time I have managed my own accounts. I regularly review news sources related to business, biotechnology, and investing, including the Wall Street Journal. I also read online resources from the Fidelity, Vanguard and JP Morgan investment websites. With specific regard to Applied Therapeutics, Inc. ("Applied"), I studied scientific publications of released clinical trial data including printed publications, poster and conference data releases, press releases and other investor communications of the company. Given my current and past professional experience, I am very knowledgeable about biopharmaceutical stocks and investing.

8. During the January 3, 2024, to December 2, 2024 Class Period, I purchased Applied common stock in reliance on the accuracy and completeness of Defendants' public statements. I considered that the prospects for FDA approval of govorestat were very high and that I was likely to make money on my investment.

9. After there were partial corrective disclosures by Defendants and the Food and Drug Administration ("FDA") on November 27, 2024 and December 3, 2024, respectively, that the New Drug Application ("NDA") for Applied's only candidate for FDA approval, govorestat, had been rejected due to severe deficiencies that were known to Defendants, the value of my investment in Applied common stock declined significantly.

10. Subsequently, I had a series of conversations and emails with different counsels, including Adam T. Savett and Joshua W. Ruthizer at Wolf Popper LLP, about the damages I sustained, and whether a suit against Defendants was advisable. I discussed the contingency fee

model of payment with Mr. Savett and Mr. Ruthizer, and negotiated a fair percentage of attorneys' fees that was subsequently memorialized in a retainer agreement.  The agreement that I negotiated provided for different caps on the attorneys' fees that could be requested by Wolf Popper depending on what stage of the litigation a resolution was reached, if any. I negotiated a maximum amount of attorneys' fees of 20% if the litigation resolved before the start of fact discovery, and a maximum amount of attorneys' fees of 24% if the litigation resolved after the start of fact discovery and before a motion for class certification was filed. There were three additional maximum amounts of attorneys' fees if the litigation resolved at a later point.

11.     I discussed with Mr. Savett and Mr. Ruthizer my responsibilities as a potential lead plaintiff or a class representative.  I thereafter authorized Wolf Popper to seek appointment as Lead Plaintiff in this Action.  ECF Nos. 22, 24, 27.  I reviewed drafts of the motion for lead plaintiff and supporting papers, and authorized the filing of the motion on my behalf.

12.     Annexed to that motion for appointment as lead plaintiff was both a certification and a declaration that I signed attesting to my investments in Applied common stock during the January 3, 2024 to December 2, 2024, Class Period and my understanding of my potential responsibilities as lead plaintiff.  ECF No. 27-2, 27-3.  I undertook the responsibilities of a class representative both for my own benefit and in an effort to maximize recovery of similarly situated investors.

13.     The Court later issued an order appointing me as the Lead Plaintiff and Wolf Popper as Lead Counsel.  ECF No. 59.  I was provided with a copy of the Court's Lead Plaintiff Order. The Lead Plaintiff Order also set forth a schedule to file an amended complaint, and a briefing schedule for an answer or motion to dismiss.

14. Since my retention of Wolf Popper and my appointment as Lead Plaintiff, I have been actively involved in this litigation.

15. Lead Counsel filed an Amended Complaint on my behalf on May 2, 2025. ECF No. 86. I reviewed and discussed a draft of the Amended Complaint with Lead Counsel before authorizing its filing.

16. On May 23, 2025, Defendants Shendelman and Perfetti moved to dismiss the amended complaint. ECF No. 78, 82. Applied answered the amended complaint. ECF 86. I was provided with a copy of the motion to dismiss briefs and Applied's answer, which I reviewed and discussed with Lead Counsel.

17. Under the scheduling order, if motions to dismiss were filed, Lead Plaintiff had until June 6, 2025 to file a letter indicating a desire to further amend the complaint, as according to the Court's Order, it would likely be the final opportunity to do so. ECF No. 72. I authorized Lead Counsel to file a letter to notify the Court that Lead Plaintiff intended to file a Second Amended Complaint. Lead Counsel filed that letter on June 6, 2025. ECF No. 94.

18. On June 13, 2025, Lead Counsel filed a Second Amended Complaint on my behalf. ECF No. 99. I reviewed and discussed the Second Amended Complaint with Lead Counsel before authorizing Lead Counsel to file it.

19. On June 27, 2025, Defendants Shendelman and Perfetti moved to dismiss the Second Amended Complaint. ECF No. 100, 104. Applied answered the Second Amended Complaint. ECF No. 106. I was provided with a copy of the motion to dismiss briefs, Applied's Answer, and with drafts of opposition briefs to the motions to dismiss, all of which I reviewed and discussed with Lead Counsel. With my authorization, Lead Counsel filed briefs in opposition to Defendant Shendelman and Perfetti's motions to dismiss on July 11, 2025. ECF No. 109, 110.

20.     On July 18, 2025, Defendants Shendelman and Perfetti filed reply briefs in support of their motions to dismiss, and I was provided with copies of these briefs, which I reviewed.

21.     I also authorized Lead Counsel to schedule a mediation with all parties. I consulted with Lead Counsel regarding the mediation and possible settlement of the Litigation, which included discussions regarding selection of the mediator, the strengths of and risks of the claims asserted, potential damages, and the relevant pros and cons of settlement (including of the proposed Settlement that was ultimately reached).  I reviewed and discussed with Lead Counsel a draft of the mediation statement before authorizing its exchange with Defendants. I was also provided with copies of Defendants' three separate mediation statements, and reviewed and discussed them with Lead Counsel.  While I did not attend the mediation sessions, I was updated by Lead Counsel throughout the course of the mediation by phone and email, and was available to speak with the mediator throughout the day, if necessary.

22.     Based on my review of Court filings and the mediation statements, as well as my conversations with Lead Counsel as well as my understanding of the biopharmaceutical industry and clinical testing for new drugs, I considered the merits of this litigation to be strong. However, I also understood that there were risks to the litigation, including that the Court could grant Defendants' motions to dismiss in whole or in part, the Court could refuse to certify a class, and that the Defendants could prevail at summary judgment, trial, or on appeals. I also understood there were risks associated with Applied's poor financial condition, uncertain prospects, the distraction to management and the dissipation of available insurance from continued litigation.

23.     Near the conclusion of the mediation, I spoke with Lead Counsel by telephone and authorized them, on behalf of the Class, to accept the mediator's proposal of a settlement of $15 million in cash and warrants to purchase up to one million shares of Applied common stock (at an

exercise price of $0.48 per share) based on my understanding of the risks and costs of continued litigation, compared to the amounts that I and other Class members would receive from the Settlement.

24. Based on my involvement in this Action and discussions with my counsel, and my understanding of the financial condition and uncertain prospects of Applied, I am satisfied that the $15 million in cash and issuance of a Warrant to purchase up to 1,000,000 shares of Applied common stock represents a fair and adequate result for the Settlement Class and is in the best interests of the Class.

25. The Warrant will remain effective for one year from the Effective Date of the settlement, which I understand will be, assuming the Settlement is approved in March 2026, until approximately March or April 2027. Also, while future events concerning Applied and the price of its common stock are uncertain, the share price of Applied common stock has increased from its closing price of $0.48 as of the date of the mediation, to $1.22 per share as of October 29, 2025, already creating additional value for the class.

26. I applaud my counsel for their tenacity and effectiveness in developing highly compelling claims, which resulted in Defendants' eagerness to negotiate a favorable settlement for the Class.

27. I am informed by Lead Counsel that under the Private Securities Litigation Reform Act of 1995, a lead plaintiff is entitled to request reimbursement for "reasonable costs and expenses (including lost wages) directly relating to the representation of the Class." 15 U.S.C. § 78u-4(a)(4). Any costs I have incurred, including lost wages, were insubstantial. Accordingly, I am not requesting separate compensation for myself.

28.    I have spoken with Lead Counsel with respect to their fee request. Lead Counsel's representation that they intend to request an award of attorneys' fees of up to 20% of the Settlement Fund is less than the 24% they are entitled to under our retention agreement. Given my active involvement and familiarity with the work performed in this case, I support Lead Counsel's request for an award of attorneys' fees of up to 20% of the Settlement Fund, and I believe that request to be reasonable. I also support Lead Counsel's request for reimbursement of costs and expenses of up to $50,000 (consisting primarily of mediation, legal research, expert, and investigation expenses), and I believe that request to be reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this  3  day of November, 2025.

Signed by:

Martin Dietrich

2DD85B5E88194A2...

Dr. Martin Dietrich