PBJEADRC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

IN RE APPLIED THERAPEUTICS
SECURITIES LITIGATION.

                                        24 Civ. 9715 (DLC)


                                        Conference

-------------------------------x
                                        New York, N.Y.
                                        November 19, 2025
                                        11:00 a.m.

Before:

                    HON. DENISE COTE,

                                        District Judge

                        APPEARANCES

WOLF POPPER LLP
     Attorneys for Lead Plaintiff Dr. Martin Dietrich
BY:   JOSHUA W. RUTHIZER
      ROBERT C. FINKEL

WILMER CUTLER PICKERING HALE AND DORR LLP
     Attorneys for Defendant Applied Therapeutics, Inc.
BY:   TAMAR B. KAPLAN-MARANS
      -and-
WILMER CUTLER PICKERING HALE AND DORR
BY:    CHARLES BRIDGE

KIRKLAND & ELLIS LLP
     Attorneys for Defendant Shoshana Shendelman
BY:   RACHEL M. FRITZLER
      JULES H. CANTOR

MCGUIRE WOODS LLP
     Attorney for Defendant Riccardo Perfetti
BY:   JEFFREY J. CHAPMAN
      LOUIS D. GREENSTEIN
      LAUREN H. MANN

PBJEADRC

(Case called)

THE COURT:  I'll take appearances.

Who will be speaking for the lead plaintiff?

MR. RUTHIZER:  Good morning, your Honor.

Joshua Ruthizer on from Wolf Popper LLP on behalf of lead plaintiff Dr. Martin Dietrich and the proposed class.

THE COURT:  Thank you.

And who will be speaking for Applied Therapeutics?

MS. KAPLAN-MARANS:  Good morning, your Honor.

This is Tamar Kaplan-Marans, from Wilmer Hale, on behalf of Applied Therapeutics.

THE COURT:  Thank you.

And for Defendant Shendelman.

MS. FRITZLER:  Good morning, your Honor.

This is Rachel Fritzler, from Kirkland & Ellis, on behalf of Dr. Shendelman.

THE COURT:  Thank you.

And for Defendant Perfetti.

MR. CHAPMAN:  Good afternoon, your Honor.

Jeff Chapman, of McGuire Woods, on behalf of Dr. Perfetti.

THE COURT:  Thank you.

Is there anyone else who wishes to make an appearance?

Thank you.

I have received the proposed papers for the

PBJEADRC

preliminary approval of this class action settlement, and I wanted to review a few items with counsel.  Generally things look in good order.  Among other things, I reviewed the scope of the release.  I have one question about a reference to sanctions there, and we'll get to that in a moment.  I reviewed the notice for the class, and I have some minor suggestions or questions that I'll review with the parties in a few moments. I thought about the class period based on what I know about this litigation, and the class period appears to be the right length of time, the right dates for beginning and ending.

I have a question about allocation among class members.  And let me ask you, Mr. Ruthizer.  Is there any basis to distinguish among class members over the course of the roughly 11 months of the class period, in terms of the damages calculation or how any settlement funds should be allocated?

MR. RUTHIZER:  Your Honor, this is Mr. Ruthizer.

As currently drafted, the plaintiff allocation does not differentiate between the class members based upon when they purchased.  Given the changes in stock price during the class period, there will be sort of differences in the recognized lost amount based upon when class members purchased during the class period.  And the price of the stock did increase more towards the end of the class period.

THE COURT:  Yes.  I saw that that will have an effect on each individual's calculation of the damages.  I am not

PBJEADRC

aware of any basis to distinguish among class members, but I wanted to make sure, Mr. Ruthizer, to question you with respect to that issue and whether we need subclasses or different in the allocation formula, anything that would separate class members from each other.

MR. RUTHIZER:  No, your Honor.  I'm not aware of any basis to differentiate between the class members.

THE COURT:  Thank you.

There's a proposed schedule for notice, then opt-out periods, and ultimately a fairness hearing, and I'm going to ask counsel to coordinate and make a proposal.  I know you need from me the date in which I might preliminarily approve, and so why don't we say that hopefully by this Friday I can get a turnaround on the papers that have been submitted to me and preliminarily approved, and therefore I'd ask plaintiff's counsel to submit a list of proposed dates that will be filled in to the preliminary approval order and in other locations, of course, in the notice, assuming preliminary approval by this Friday, the 21st.

Can you do that, Mr. Ruthizer?

MR. RUTHIZER:  Yes, your Honor.

THE COURT:  Thank you.

Can you also send me to my chambers email box a Word version of the order for preliminary approval?  I think that will be helpful to me in making some revisions to the proposed

PBJEADRC

order.

MR. RUTHIZER:  Certainly, your Honor.

May I ask two question on that point?

THE COURT:  Yes.

MR. RUTHIZER:  First, can you provide me just the proper email address to send it to?  And also, would you like us to fill in those proposed dates into the Word version or would you like us to leave those blank for your chambers to fill in?

THE COURT:  Oh.  You could fill in the dates into the Word version you send.  That would be very helpful.

And you can talk to my law clerk or deputy after this call is over with respect to our email box address.

MR. RUTHIZER:  Thank you, your Honor.

THE COURT:  Yes.

Let's turn then to the notice and we'll walk through some issues, and again there are only a few.

Mr. Ruthizer, is there only one warrant that is being issued in connection with this settlement?

MR. RUTHIZER:  Your Honor, one form of warrant, one warrant document, but that warrant document is warrants to purchase one million shares.  Like, the warrant does not have to be executed in total, it can be executed -- a part of the one million shares could be purchased.

THE COURT:  Yes.

PBJEADRC

MR. RUTHIZER:  So it's technically warrants to purchase one million shares.

THE COURT:  Yes, I see that.  And I'm on page two of the notice to the class.  And it, under the statement of class recovery, about two-thirds down the page, refers to the warrant as a single warrant.  And from what I understood, it might be better to describe this as the issuance of warrants to purchase up to one million shares, but I leave that to counsel to discuss with each other.  There may be implications here I'm not aware of, whether it's singular or plural.

MR. RUTHIZER:  Thank you, your Honor.

THE COURT:  Thank you.

Let's turn to page three of the proposed notice, and the first full paragraph in the third line there is capitalized term "recognized claim," and I think that should be plural the second time, so it would read to "the total recognized claims of all class members."

MR. RUTHIZER:  We will make that change.

THE COURT:  Thank you.

In the next section, statement of potential outcome of case, strike the first sentence.  And the last sentence in that first full paragraph begins with the words "defendants deny," et cetera, and make that the first sentence of the next paragraph, which describes many of the parties' agreements.

Minor point, but I don't use the middle initial, and

PBJEADRC

that pops up at various points.

Page four, the bottom half of the page, what is this lawsuit about, section two.  I would like counsel to explain in more detail what action the FDA took and the dates of those actions.

Towards the bottom of the first paragraph there is a reference to the FDA's discovery of the deletion of clinical trial records, and I think it's important for class members to understand the relationship between this class action and what was publicly disclosed as to the FDA's investigation and its activities.

Stay with that same section of the notice, the last line of the first paragraph begins "undisclosed facts," and I think the word "undisclosed" should be stricken.  There may be some other minor edits.  I'll wait for the turnaround on Friday, or Thursday if you can get it to me, with respect to the description about the FDA.

Turning to page five, and this is the last paragraph in section two, you can strike that entire paragraph.  It's repetition of the defendant's denial, but we've already indicated in an earlier page that the defendants deny wrongdoing.

MR. RUTHIZER:  Your Honor, this is Mr. Ruthizer.

I'd just like to confirm that my notes are correct. It was to strike the entire last paragraph of section two of

PBJEADRC

the notice on page five of the notice; correct?

THE COURT:  Yes.

MR. RUTHIZER:  Thank you, your Honor.

THE COURT:  The paragraph that begins with the phrase "defendants deny each and all."

Okay.  Let's turn to page seven, and the first full paragraph there recites something that appears in the settlement agreement, and that is a definition of what are the released claims, and I think it's very important for the notice to include that, and I have only one question, and it's about that reference to claims for sanction, and I don't understand what that is a reference to.  I don't think -- I just don't understand.

So, Mr. Ruthizer?

MR. RUTHIZER:  Well, your Honor, that was language that we've included in other agreements, but if it's something that the Court is uncomfortable with, we can take that out.  There's been no demand for sanctions by any party in the litigation.

THE COURT:  Yeah.  Unless a class member is going to understand it or it has some legal implication here, which I'm not aware of yet, I don't think it should be part of this.

Okay.  So that'll be stricken.

MR. RUTHIZER:  And that's from the definition of the claims.  Yes, your Honor.

PBJEADRC

THE COURT:  Okay.  So, let's turn to the proposed order.  That's all I have on the proposed notice for the class.

I will make minor edits as I think appropriate when I have the Word document, but I had a question on page seven, paragraph 13.  It says "all class members shall be bound."  Well, that's not true if you've opted out, but perhaps you're reading the definition of "class member" to exclude those who have opted out.

So can you walk me through that, Mr. Ruthizer?

MR. RUTHIZER:  Yes, your Honor.

I'm just confirming the definition of "class member" right now.  Your Honor, the definition of "class" in paragraph 1.8 of the settlement agreement states that "also excluded from the class is any person who would otherwise be a member of the class but who validly and timely excludes himself, herself, or itself," and then it continues, "therefrom, pursuant to the terms of the stipulation and the preliminary approval order," and then class member or member of the class in the next paragraph, 1.9, is defined to be a person who is the member of the class.  So, those who opted out would not be included in the definition of "class."

THE COURT:  Okay.  Thank you.

And if you could go to paragraph 28 on page 12 of the proposed order.  Can you describe to me how the number of $480,000 was arrived at, and how that works in connection with

PBJEADRC

the exercise of warrants?

MR. RUTHIZER:  Certainly, your Honor.

The warrant allows for either cash, cash exercise, or cashless exercise.  For a cash exercise it's 48 cents per warrant, and there are one million warrants, 48 cents times one million is the 480,000 number.

And the reason why we included this was if for some reason there is some sort of corporate action prior to the final approval where there needed to be some sort of cash exercise, that the money would be able to be paid in order to get the profit from the warrant back for the class.

THE COURT:  Thank you.

I still don't understand why this is described as a warrant exercise expense of up to $480,000.

MR. RUTHIZER:  Well, your Honor, the warrant exercise expense is the cost that would need to be paid in order to exercise the warrant.  The warrant can be exercised either on a cashless basis where the cost would be netted out or by paying the cash.  The warrant exercise expense, I believe, is a defined term in the settlement agreements of the amount of money paid from the settlement fund to exercise the warrants up to a maximum of $480,000.  So, if for some reason there needed to be cash to be paid to exercise the warrants, the settlement agreement contemplates that that money would come from the settlement fund under --

PBJEADRC

THE COURT:  I have lost you if you're still speaking.

MR. RUTHIZER:  I am not still speaking, your Honor.  I just mumbled.  I apologize.

THE COURT:  That's okay.

So, essentially, this depends upon a class counsel judgment.  And I believe under the terms of what you're asking me to approve here, it's your sole judgment, you don't have to come to the Court for approval, as to whether or not it makes financial sense for the class to exercise the warrants, both the time at which the exercise would take place and the expenditure of this sum of money.

Do I understand that correctly?

MR. RUTHIZER:  Yes, your Honor.

We drafted the settlement agreement believing that there could be a need to exercise the warrant on an expedited basis and that may not -- while we understand your Honor does work very quickly, that there might be a delay in exercising the warrant if court approval to exercise the warrant was necessary.

As I said earlier, the warrant also can be exercised on a cashless basis, and it is -- if it could be exercised on a cashless basis, which would mean that the cost of exercising the warrant would just be subtracted from the number of shares that are paid out upon exercise of the warrant, it would be done that way.  However, if for some reason cash did need to be

PBJEADRC

paid to exercise the warrant, that's where the $480,000 comes in.

And yes, the agreement is drafted to give lead counsel that authority to exercise on the timing and the amount of the warrant to exercise.

THE COURT:  Thank you.

So I think I've reviewed all the issues that I spotted.  I just want to give everyone a chance to raise any other issue with me.

Mr. Ruthizer, is there anything else that you felt we should discuss during this conference?

MR. RUTHIZER:  The only question I had, your Honor, was once these edits are made to the document, per your request, to the notice and the settlement agreement, would you like us to refile those on the docket or would you like us to email them to chambers?  What is your preference for those changes?

THE COURT:  They should be filed on the docket so that everyone has the ability to look at what you're submitting to me, but you should also send me a Word version of the preliminary approval order so that I can revise it as I wish.

MR. RUTHIZER:  Does your Honor also prefer a red-line showing the changes that have been made?  And should we email that or file that on the docket?

THE COURT:  A red-line would be lovely, and you can

PBJEADRC

email that.

MR. RUTHIZER:  Thank you, your Honor.

Other than speaking with your clerk to obtain the correct email address, those are all of our questions.

THE COURT:  Thank you.

Ms. Kaplan-Marans, anything?

MS. KAPLAN-MARANS:  No.  Thank you, your Honor.

THE COURT:  Ms. Fritzler?

MS. FRITZLER:  Nothing from us, your Honor.

THE COURT:  Mr. Chapman?

MR. CHAPMAN:  Nothing.  Thank you, your Honor.

THE COURT:  Thank you all.  Appreciate it.

And have a happy Thanksgiving if we don't need to talk again before that wonderful day arrives.

Thanks so much.

(Adjourned)