**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE APPLIED THERAPEUTICS
SECURITIES LITIGATION

Case No.  1:24-cv-09715 (DLC) (VF)

CLASS ACTION

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF
ALLOCATION AND AN AWARD OF ATTORNEYS' FEES AND LITIGATION
EXPENSES**

**WOLF POPPER LLP**
Robert C. Finkel
Joshua W. Ruthizer
Emer Burke
Samuel Coffin
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600

*Lead Counsel for Lead Plaintiff Dr. Martin Dietrich and the Class*

**INTRODUCTION**

Lead Plaintiff, Dr. Martin Dietrich, respectfully submits this Reply Memorandum of Law ("Reply") in further support of his Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Requests for Attorneys' Fees and Expenses (ECF Nos. 133-135, the "Final Approval Motion").[1]

**FACTUAL AND PROCEDURAL HISTORY**

A.    **Background on the Settlement**

On February 12, 2026, Lead Plaintiff moved for final approval of the proposed Settlement of this securities class action.  If approved, the Settlement will resolve all claims against Defendants in exchange for a cash payment of $15,000,000, and the $17,000 in Warrant Proceeds paid upon the acquisition of Applied by third-party private company Cycle Pharmaceuticals ("Cycle") (discussed further *infra* at 2-3).

The Settlement (as set forth in the Stipulation) is a product of a diligent litigation culminating in good-faith and arm's-length negotiations between highly experienced counsel, facilitated by a well-respected mediator, and made under distressed financial circumstances.  As described in Lead Plaintiff's opening brief, the Settlement represents a highly favorable result for the Class, recovering between 4% and 6.9% of *maximum* provable aggregate damages, depending on the damages model used. These percentages are well-within the range of percentages of maximum recoveries that courts typically approve in securities fraud class actions, and the Settlement amounts to an excellent recovery given the attendant risks and distinct challenges of continued litigation against a Company in such financial distress.  ECF No. 134 at 10-12.

---

[1] Unless otherwise defined herein, all capitalized terms are defined in the Stipulation of Settlement dated November 20, 2025 ("Stipulation"), previously filed at ECF No. 126. Unless otherwise noted, internal citations and quotation marks are omitted.

B.      **The Impact of Cycle Pharmaceuticals' Acquisition of Applied on the Warrants**

After the execution of the Stipulation, Applied was acquired on February 3, 2026, by third-party private company Cycle for $0.088 per share, plus the payment of a contingent value right ("CVR") depending on approval and commercialization of products under development by Applied (the "Merger").  *See* ECF No. 134 at 6.

As part of the Settlement, Lead Plaintiff and Lead Counsel negotiated, for the benefit of the Class, Warrants to purchase up to 1,000,000 shares of Applied common stock at a price of $0.48 per share (the closing price of Applied common stock on August 19, 2025, the date of settlement in principle).  Lead Counsel negotiated the Warrants to provide the Class with upside if Applied's financial condition improved and its stock price increased.  The Warrant Agreement negotiated between the parties anticipated that, in the event Applied was acquired by a private company and ceased to have publicly traded stock, then the Warrants would be converted to cash pursuant to a Black Scholes Value formula.

The Warrant Agreement, which is an exhibit to the Stipulation, provided specific outcomes in the event of a Fundamental Transaction (as that term is defined in the Warrant Agreement).  One such Fundamental Transaction was a "Change of Control," which was defined as "any transaction or series of transactions that, directly or indirectly, results in [Applied] not having [common stock] registered under the 1934 Act and listed on an Eligible Market."  ECF No. 126, Ex. C ¶ 3(d).  The Merger meets the terms of a Change of Control.

Pursuant to the terms of the Warrant Agreement, "in the event of a Change of Control…"

the Holder [Lead Plaintiff/the Class] shall surrender this Warrant and shall be entitled to receive from the Company or any Successor Entity, as of the date of consummation of such Change of Control, the same type or form of consideration (and in the same proportion), at the Black Scholes Value of the unexercised portion of this Warrant, that is being offered and paid to the holders of Common Stock of the Company in connection with the Change of Control, whether that consideration

2

be in the form of cash, stock or any combination thereof, or whether the holders of Common Stock are given the choice to receive from among alternative forms of consideration in connection with the Change of Control.

*Id*. The Warrant Agreement also sets forth the formula and inputs to calculate the Black Scholes Value. *Id.*

The Stipulation defines "Warrant Proceeds" to include "any cash issued or paid in connection with a Fundamental Transaction…." ECF No. 126 ¶ 1.67. The Stipulation also requires Applied to pay "Warrant Proceeds to the Escrow Account…within thirty (30) calendar days after … the effective date of a Fundamental Transaction…" *Id.* ¶ 2.8.

In sum, pursuant to the Warrant Agreement, as a result of the Merger, the Warrants must be surrendered in exchange for the Black Scholes Value of the Warrants. And, pursuant to the Stipulation, the Black Scholes Value is Warrant Proceeds, and those Warrant Proceeds were required to be paid to the Escrow Account 30 days after the closing of the Merger.

After the closing of the Merger, Lead Counsel conferred with counsel to Applied concerning the Change of Control and Black Scholes Value provisions of the Warrant Agreement. As a result of those conversations, Cycle has transferred into the Settlement Fund the amount of $17,000, which represents the Black Scholes Value of the Warrant based on the calculation set forth in the Warrant Agreement.

C.    **Updates on the Notice Program**

As detailed in the Final Approval Motion papers and the accompanying declaration from Dawn C. Cody of Angeion Group LLC ("Angeion") (ECF No. 135-1, "Cody Decl."), the Settlement Notice Program was implemented pursuant to the Court's Preliminary Approval Order dated November 19, 2026 (ECF No. 127). *See* ECF No. 134 at 7, 17; ECF No. 135-1 ¶¶ 5-32. Lead Plaintiff now provides the Court with updates regarding the implementation of the notice plan, as reflected in the Supplemental Declaration of Dawn M. Cody Regarding: (I) Mailing and

Emailing of Notice; (II) Report on Requests for Exclusion; and (III) Claims Received To Date, dated March 12, 2026 ("Suppl. Cody Decl."), and attached to this Reply as Exhibit 1.

In total, Angeion disseminated 60,382 copies of the Postcard Notice, including 39,864 Court-approved Postcard Notices and 20,518 link emails to potential Class Members and their nominees. *See* Suppl. Cody Decl. ¶ 3. The Postcard Notice informed Class Members of a summary of the terms of the proposed Settlement and that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 20% of the Settlement Amount ($3,000,000), plus litigation expenses not to exceed $50,000. *See* Cody Decl. Ex. A. The Postcard Notice also apprised Class Members of: (1) their right to exclude themselves from the Class; (2) their right to object to the terms of the Settlement or any of Lead Counsel's Requests; (3) the February 26, 2026 deadline for filing objections; (4) the February 26, 2026 deadline for submitting requests for exclusions; and (5) the April 8, 2026 deadline for submitting Claim Forms. Finally, the Postcard Notice also advised Class Members how to obtain more information about the Settlement, including directing Class Members to the Settlement Website, where they could obtain copies of the Longform Notice and other important documents, identifying a toll-free number and a unique email address where Class Members could contact the Claims Administrator, and providing Lead Counsel's contact information. *See* Cody Decl. Ex. A.

A toll-free telephone number and an interactive voice response system is active and will remain active until the conclusion of the administration process. As of March 11, 2026, 69 callers have called this number. *See* Suppl. Cody Decl. ¶¶ 8-12.

The Settlement Website is also active and will remain active until the conclusion of the administration process. The Settlement Website was visited 3,196 times through March 11, 2026. The Settlement Website contains downloadable copies of relevant documents, including the

4

Longform Notice, the Claim Form, and Lead Plaintiff's Final Approval Motion.  *See* Suppl. Cody Decl. ¶¶ 16-21.  This Reply will also be posted to the Settlement Website.

The Claims Administrator also continues to maintain a settlement specific email address - info@APLTSecuritiesSettlement.com – through which Class Members can send inquiries. Through March 11, 2026, Angeion has received 138 emails at this email address, and each email received a response. *See* Suppl. Cody Decl. ¶¶ 13-15.

## ARGUMENT

I.      **The Positive Reaction of the Class Supports Approval of the Settlement, the Plan of Allocation, and the Fee and Expense Application**

Lead Plaintiff advises the Court that in response to the 60,382 Postcard Notices distributed to potential Class Members, no Class Member objected to any aspect of the Settlement, the Plan of Allocation, or the Fee and Expense Application.  Only one Class Member made a request for exclusion from the Class.  *See* Suppl. Cody Decl. ¶¶ 25-26.

This positive response from the Class provides additional support for the final approval of the Settlement and the Plan of Allocation.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) ("[T]he favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. ... In fact, the lack of objections may well evidence the fairness of the [s]ettlement."); *see also Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 5:15-CV-00441-MAD-TWD, 2016 WL 3406111, at *4 (N.D.N.Y. June 17, 2016) ("In the present matter, no objections had been filed to the settlement agreement up until the time of the hearing on June 9, 2016, and no Class Members appeared at the hearing.  As such, the second *Grinnell*

factor weighs in favor of final approval."); *Kochilas v. Nat'l Merch. Servs.*, No. 1:14-CV-00311, 2015 WL 5821631, at *5 (E.D.N.Y. Oct. 2, 2015) (noting that there were no objections and requests for exclusions received and holding that "[t]his overwhelmingly favorable response recommends final approval."); *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006) (A "[l]ack of objection is strong evidence of the settlement's fairness.").

The positive reaction of the Class as noted above also provides support to the reasonableness of the Fee and Expense Application. *See Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) ("The fact that no class members have explicitly objected to these attorneys' fees supports their award."); *see also Maley*, 186 F. Supp. 2d at 374 (the lack of any objection to the fee request supported its approval).

In this case, Lead Counsel requests an award of attorneys' fees equal to 20% of the Settlement Fund, or $3 million plus 20% of the Warrant Proceeds, expenses in the amount of $46,313.15, and interest on these amounts at the same rate earned by the Settlement Fund. In the Final Approval Motion, Lead Counsel cited several examples of securities class action settlements where a similar or greater percentage of the relevant settlement fund was awarded at a similar procedural posture to this matter – while motions to dismiss were pending. *See* ECF No. 134 at 20. In addition to those cases, other courts in this Circuit have approved similar requests for attorneys' fees in cases where settlements were reached while motions to dismiss were pending. *See, e.g., In re Camelot Information Systems Inc. Sec. Litig.*, No. 1: 12-cv-00086-PGG, ECF No. 75 (S.D.N.Y. July 1, 2015) (approving attorneys' fees of 30% of $11.8 million settlement fund reached while motions to dismiss were pending); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007) (approving attorneys' fees of 18% of a $7.725 million settlement fund reached while motions to dismiss were pending); *In re Merrill*

*Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 176 (S.D.N.Y. 2007) (approving attorneys' fees of 24% of a $125 million settlement fund reached while motions to dismiss were pending while noting that the fact that the settlement "occurred relatively early in litigation" did not cut against the award of that percentage); *Maley*, 186 F. Supp. 2d at 368 (approving attorneys' fees of 33.33% of $11.5 million settlement fund reached while motions to dismiss were pending, while noting that "Courts in this and nearby Districts have recently awarded 33 1/3% in securities class actions where there has been a significant monetary recovery early on in the litigation.").

As noted in the opening papers, while this Court awarded attorneys' fees of 15% in *In re Bumble, Inc. Sec. Litig.*, No. 22-cv-624 (DLC), ECF 93 (S.D.N.Y. Aug. 8, 2023), Lead Counsel respectfully submits that this action had a higher degree of complexity than *Bumble*. *See, e.g.,* ECF No. 134 at 21; ECF No. 135, ¶ 138.   In sum, this action alleges claims under the Securities Exchange Act of 1934, for which scienter and loss causation are affirmative elements, and concerns complex issues of falsity related to the FDA new drug approval process.  *Bumble* alleged strict liability and negligence-based claims under the Securities Act of 1933, and scienter and loss causation were not affirmative elements.  Lead Counsel respectfully submits that the complexity of this action warrants an award of attorneys' fees in the amount requested of 20%, which is also less than the maximum amount of attorneys' fees of 24% that Lead Plaintiff negotiated with Lead Counsel, given the stage of the litigation when the Settlement was reached.  ECF No. 135 ¶ 121; ECF No. 135-2 ¶¶ 12-13.

## CONCLUSION

For the reasons stated herein and in the Final Approval Motion (ECF Nos. 133-35), Lead Plaintiff respectfully requests that the Court grant his Final Approval Motion and Fee and Expense Application. A proposed Final Judgment is attached to this Reply as Exhibit 2. A redline

comparison showing changes from the proposed Final Judgment to the proposed Final Judgment

filed with the Stipulation (ECF No. 126 Ex. B) is attached as Exhibit 3.

Dated: March 12, 2026                                     Respectfully submitted,

**WOLF POPPER LLP**

By: */s/ Joshua W. Ruthizer*
Joshua W. Ruthizer
jruthizer@wolfpopper.com
Robert C. Finkel
rfinkel@wolfpopper.com
Emer Burke
eburke@wolfpopper.com
Samuel Coffin
scoffin@wolfpopper.com
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600

*Lead Counsel for Lead Plaintiff Dr. Martin Dietrich and the Class*

## WORD COUNT CERTIFICATION

Pursuant to Southern District of New York Local Civil Rule 7.1(c), the undersigned hereby certifies that this memorandum of law contains 2,308 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

By: */s/ Joshua W. Ruthizer*
Joshua W. Ruthizer

8